IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSLYVANIA

| | |
|---|---|
| RYSTA LEONA SUSMAN, as Legal Guardian of SHANE ALLEN LOVELAND; and JACOB SUMMERS<br><br>Plaintiffs<br><br>v.<br><br>GOODYEAR TIRE & RUBBER COMPANY Et al.,<br><br>Defendants | : CIVIL ACTION NO.:2:17-cv-03521-JHS<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND**

Plaintiffs by and through their attorney, file the immediate Memorandum of Law in support of their Motion to Remand, and would show the Court that it does not have jurisdiction because of the presence of a resident defendant. There is no dispute that Goodwear Tire and Rubber Company is a citizen of Pennsylvania, thereby preventing removal pursuant to Section 1441(b)(2) of Chapter 28 of the United States Code.

**LEGAL STANDARD**

This Honorable Court may remand a case at any time on the basis of a defect to jurisdiction identified in a motion for remand. 28 U.S.C. §1447(c). "When a party challenges removal and requests remand to the state court, the removing party has the burden of demonstrating that the removal was proper." *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). "All doubts are to be resolved against removal." *Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir.1982). This Honorable Court "must deny such jurisdiction if not affirmatively

apparent on the record." *Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp.*, 149 Fed.Appx. 775, 778 (10th Cir.2005).

## ARGUMENT

The Goodyear Tire & Rubber Company (hereinafter, "Ohio Goodyear") removed the case to this court on the premise that 1) Goodwear Tire & Rubber Company was fraudulently joined, and 2) Goodyear Tire & Rubber Company (hereinafter, "Pennsylvania Goodyear") does not exist. If there are uncertainties about either one of these arguments, this Court must resolve those uncertainties in favor of remand as a case removed solely on the basis of diversity "may not be removed if any of the parties… is a citizen of the State in which such action is brought." 28 U.S.C. 1441(b)(2).

### I. Goodwear was not fraudulently joined

As a threshold matter, there is a dispute as to whether the fraudulent joinder doctrine applies in this situation. Fraudulent joinder represents an exception to the requirement that removal be predicated solely upon complete diversity, not an exception to the home state defendant rule. While the Third Circuit has not opined on this issue, many courts have held that the fraudulent joinder doctrine does not apply to a home state defendant, and that such a party may defeat removal in any case. *See, e.g., Davenport v. Toyota Motor Sales*, 2009 WL 4923994 (S.D.Ill. Dec.14, 2009) (refusing to apply fraudulent joinder doctrine to a diverse, in-state defendant); *Yount v. Shashek*, 472 F.Supp.2d 1055, 1059 (S.D.Ill.2006) (same); *Morris v. Nuzzo*, 718 F.3d 660, 668–71 (7th Cir.2013) (declining to decide whether to extend the fraudulent joinder doctrine to diverse, in-state defendants, but cautioning that the costs of expanding the doctrine, such as an increased number of removal petitions filed in federal court, which conflicts with "long-established precedent that the removal statutes are to be strictly construed to preserve the limited jurisdiction of federal

courts," could "far outweigh the benefits," such as preventing plaintiffs from engaging "in what appears to be an exceptionally rare abusive pleading tactic" of using the forum defendant rule as a "'device' to defeat removal where an out-of-state defendant would otherwise have that right.").

Assuming the fraudulent joinder doctrine does as an exception to the home state defendant rule, the defendant, here Ohio Goodyear, bears a heavy burden of proving a claim of fraudulent joinder, as it must show there is no possibility the plaintiffs can establish a cause of action against Goodwear. *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990). The removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand. *Id.* In the context of fraudulent joinder, the Third Circuit has held:

> Joinder is fraudulent where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment. But, if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court.

*Batoff v. State Farm Ins. Co.*, 977 F.2d 848 (3d Cir.1992). Accordingly, the district court should not conduct a merits determination in the context of a fraudulent joinder analysis, but rather must find the joinder "wholly insubstantial and frivolous" to be considered fraudulent. *Id.* Ohio Goodyear fails substantially short of meeting this burden.

First and foremost, Plaintiffs complaint plainly states a cause of action against Goodwear Tire & Rubber Company. Plaintiffs have brought a claim for negligence, strict liability and breach of warranty against all defendants related to the failure of a tire. The four corners of the complaint require remand as a colorable claim has been made against a forum defendant.

Ohio Goodyear submitted an affidavit from its Assistant Secretary, Daniel T. Young. The affidavit is not unequivocal. Instead, Mr. Young states "[t]o the best of my knowledge and belief…" Goodwear is not related to Ohio Goodyear.[1]

> 7. To the best of my knowledge and belief, The Goodyear Tire & Rubber Company is not and never has been related to a Pennsylvania business entity known as "Goodwear Tire & Rubber Company," does not do business as "Goodwear Tire & Rubber Company," and has not permitted "Goodwear Tire & Rubber Company" to do business as The Goodyear Tire & Rubber Company.

Mr. Young's best beliefs do not carry the burden of showing there is no possibility plaintiffs can maintain a cause of action against Goodwear. If Ohio Goodyear cannot conclusively state Goodwear is not affiliated with it, neither the plaintiffs nor this Court can make that ultimate determination, which is necessary to remove based on fraudulent joinder. In fact, Ohio Goodyear's failure to unequivocally prove that Goodwear is unrelated to Ohio Goodyear leaves the possibility open that they are indeed related, and plaintiffs can maintain a cause of action against Goodwear. Accordingly, the case should be remanded on this basis alone.

Perhaps Mr. Young was less than certain about the relationship between Goodyear and Goodwear because Plaintiffs' research suggests that Goodyear did use the "Goodwear" name for corporate purposes during its early history, including the years when the incorporating documents for "Goodwear" were filed in Pennsylvania. It appears that over the years, Goodyear stopped using "Goodwear" in its various business ventures and advertising, but some of its operations in various states were incorporated while the name was still in use and continue to exist under that name.

---

[1] See Young Affidavit at ¶ 7, attached as Exhibit 1.

As this Court is likely aware, Goodyear is one of the nation's largest and oldest manufacturers of rubber products, with a primary focus on tires. Headquartered in Akron, Ohio, Goodyear emerged as an industry leader near the turn of the 20th century. At that time, the company was variously referred to in print as Goodyear or Goodwear. For example, in the October 28, 1916 edition of the *Textile World Journal*, an article about corporations capable of manufacturing "dye crudes" features a list including "Goodwear Tire & Rubber Company, Akron, Ohio."[2] Moreover, "Goodwear Tire & Rubber Company" was referenced in the April 7, 1922 edition of the *Official Journal of the United Garment Workers of America*, a leftist labor organizing newspaper. An article entitled "Big Rubber Profits" references the fact that "Goodwear" had become a titan of American industry, and claims the company was engaged in extensive union-busting activities:

> The Goodwear Tire & Rubber Company reports net profits of $9,649,235[3] for the last 11 months of last year. After meeting all interest charges and costs to subsidiary companies there is a surplus of $3,620,043.
>
> These profits, that would create a sensation 15 years ago, were made at Akron, Ohio, where swarms of spies, company men, and detectives have established an anti-union espionage system that would shame the late Czar.[4]

When the company began to expand its operations into states beyond Ohio, it was variously referred to as Goodyear or Goodwear. For example, both variations appear in print media regarding the construction of its plant in Minnesota. In the April 1916 edition of a trade publication known as *The American Contractor*, an entry reads: "RED WING, MINN. Factory: $20,000. 2 sty. & bas. Owner Goodyear Tires Co., Scott Ewers, pres., Frank O'Berg, secy."[5] In a 1916 edition of *The*

---

[2] *See* Exhibit 2, Excerpt from the October 28, 1916 edition of the *Textile World Journal*.
[3] Adjusted for inflation into 2017 dollars, this figure would be $140,029,353 in profits.
[4] *See* Exhibit 3, Excerpt from April 7, 1922 edition of the Official Journal of the United Garment Workers of America, https://books.google.com/books?id=kTYsAQAAMAAJ
[5] *See* Exhibit 4, Excerpt from The American Contractor, Volume 37, April 1916, p. 95, https://books.google.com/books?id=Ni9YAAAAYAAJ