## IN THE UNITED STATE DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CIVIL ACTION NO.: 2:17-CV-03521

RYSTA LEONA SUSMAN, both Individually and : 
as Legal Guardian of SHANE ALLEN LOVELAND; : 
JACOB SUMMERS :
:
:
                              Plaintiffs :
:
            v. :
:
GOODYEAR TIRE & RUBBER COMPANY :
C/O CORPORATION SERVICE COMPANY :
:
and :
:
THE GOODYEAR TIRE & RUBBER COMPANY :
:
and :
:
THE GOODYEAR TIRE & RUBBER :
COMPANY d/b/a GOODYEAR TIRE AND :
RUBBER COMPANY :
and :
:
THE GOODYEAR TIRE & RUBBER :
COMPANY d/b/a GOODWEAR TIRE :
AND RUBBER COMPANY :
:
and :
:
GOODWEAR TIRE & RUBBER COMPANY :
:
and :
:
GOODWEAR TIRE & RUBBER COMPANY :
d/b/a THE GOODYEAR TIRE & RUBBER :
COMPANY :
:
and :
:
GOODWEAR TIRE & RUBBER COMPANY :
d/b/a GOODYEAR TIRE & RUBBER :
COMPANY :

| | |
|---|---|
| and | : |
| | : |
| GOODYEAR TIRE & RUBBER COMPANY | : |
| | : |
| and | : |
| | : |
| GOODYEAR TIRE & RUBBER COMPANY | : |
| d/b/a THE GOODYEAR TIRE & RUBBER | : |
| COMPANY | : |
| | : |
| and | : |
| | : |
| GOODYEAR TIRE & RUBBER COMPANY | : |
| d/b/a GOODWEAR TIRE & RUBBER | : |
| COMPANY | : |
| Defendants | : |

## **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO REMAND**

Comes now Plaintiffs, and file this Reply in Support of their Motion to Remand.

## INTRODUCTION

Ultimately, resolution of Plaintiffs' Motion comes down to whether it is possible that "The Goodyear Tire & Rubber Company" ("Goodyear") created a corporate organ in the Commonwealth of Pennsylvania, originally registered as "Goodwear Tire & Rubber Company" but subsequently listed as "Goodyear Tire & Rubber Company" ("Pennsylvania Goodyear"), in connection with tire manufacturing and marketing activities. Because the answer to that question remains equivocal and uncertain, remand should be granted. Remand is the appropriate action in a case involving differing allegations and "uncertainties surrounding the identity and citizenship" of a party. *MCP Trucking, LLC v. Speedy*

*Heavy Hauling, Inc.*, 2014 WL 5002116, 2 (D. Colo. Oct. 6, 2014), *citing Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir.2001). This is because the Court must remand the case "if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants." *Boyer v. Snap-on Tools Corp.,* 913 F.2d 108, 111 (3rd Cir.1990). In this case, despite a hedging declarant who provides statements "to the best of his knowledge," it appears extremely likely that Goodyear is responsible for the creation of the Pennsylvania corporation, thereby potentially subjecting that entity to liability for Goodyear's tire manufacturing and marketing activities.

## ARGUMENT

## I. There is a Reasonable Basis to Conclude that Pennsylvania Goodyear was Created by The Goodyear Tire & Rubber Company.

First Goodyear claims that no Pennsylvania business entity known as "Goodyear Tire & Rubber Company" exists. However, the Pennsylvania Department of State certified the existence of that entity's registration on April 17, 2017, after the filing of Plaintiffs' first lawsuit. This entity had been continually registered in the Commonwealth and had not been dissolved. Since that time, Goodyear obviously contacted the Department of State. It would be naïve to believe that that the Department's May 12, 2017 letter occurred without Goodyear's direct intervention and based on Goodyear's representations to the Department.

However, even assuming the entity which originally applied as "Goodwear Tire & Rubber Company" did not update its registered name to "Goodyear" at some

3

unknown point as reflected in Department records,[1] it does not meaningfully change the analysis. Whether it was formally registered as "Goodwear" or "Goodyear," the determinative question is whether it is possible Plaintiffs are correct that the Pennsylvania entity was created as a part of Goodyear's array of corporate organs registered in other states for the purposes of its tire manufacturing and marketing endeavors.

Goodyear claims this is impossible because it has produced "affirmative and unequivocal proof of the nonexistence of" Pennsylvania Goodyear." (Def. Br., Doc. 10, at 15). Goodyear refers to a declaration by one of its corporate lawyers, which it claims is an "unequivocal statement that Goodyear is not affiliated with "Goodwear Tire & Rubber Company." (Def. Br., Doc. 10, at 18). The declarant is Daniel T. Young. Mr. Young is an attorney employed as Assistant Secretary of The Goodyear Tire & Rubber Company, where he claims he is "generally familiar" with Goodyear's business operations. He declaration is the very definition of equivocal, prefacing his statements with the qualifier "To the best of my knowledge and belief..." (Young Decl. para 7). It is clear this declarant could not sign a statement without these qualifiers and that he lacks the personal knowledge and/or failed to conduct the kind of investigation which would allow him to make a definitive, unequivocal assertion or to support it with anything more than a bare and tepid statement. Goodyear has provided a declaration in which the text is intentionally and

---

[1] Again, the opposite conclusion is consistent with the April 17th certification from the Department of State.

emphatically equivocal in nature. The obvious conclusion is that this language is necessary because Mr. Young knows all too well that he may well be wrong.

This Court should be even more hesitant of Mr. Young's equivocal declaration because it appears he is unfamiliar with Goodyear's corporate history. The archive materials discussed in Plaintiffs' Motion show that Goodyear has frequently operated as Goodwear at the time period in which the corporate application was made. Goodyear is unjustifiably dismissive of these facts, all of which cumulatively show that Goodyear is almost certainly responsible for the Pennsylvania application.

Goodyear dismisses the various advertisements, telling this Court that "Company advertisements from the mid-1920s used the slogan "Goodyear means Good Wear," referring to the tread wear of a tire." (Def. Br., Doc. 10, at 20). The fact that Goodyear has inserted a space into the word "Goodwear" in these advertisements is telling:



The phrase "For Years the Recognized Leader" is meant to alert the reader that both of these names refer to the same industry giant. However, the real importance of these advertisements is show the use of the term by Goodyear and how the name evolved, as well as to reinforce the other evidence showing that "Goodyear" was known to operate as "Goodwear."

For example, Plaintiffs cited contemporary news accounts discussing the startling news that in 1922, "Goodwear Tire & Rubber Company reports net profits of $9,649,235." (Pltf. Mt., Doc. 8-1, at 5). It appears Goodyear is now suggesting in its brief that a separate company named "Goodwear" was also announcing record-breaking profits, and that it was doing so next door to Goodyear in "Akron, Ohio," where this unrelated entity had also unleashed "swarms of spies, company men, and detectives who have established an anti-union espionage system that would shame the late Czar." (*Id*).

Regarding the two trade almanacs cited in Plaintiffs' motion showing listings for the construction of a Goodyear factory under both names, Goodyear admits that "Goodyear Tires Co.'…apparently also operated as 'Goodwear Tire Company.'" (Def. Br., Doc. 10, at 20). However, Goodyear says this provides no link, because its name is "The Goodyear Tire & Rubber Company," and not "Goodyear Tires Co." However, a view at the relevant listing for the "Goodyear" variant suggests that space was likely a factor in the abbreviation, considering that nearly every other word is also abbreviated:

To believe otherwise is to believe that another unrelated entity, "Goodyear Tires Co." was building tire factories in the Midwest at the same Goodyear was expanding across the nation. Moreover, if this had no connection to Goodyear, then it should have been easy to prove in response to Plaintiffs' Motion to Remand that Goodyear never built such a factory, or to show that Goodyear made efforts to verify that it never employed chief officers in regional subsidiaries named Scott Ewers or Frank O'Berg. Instead, Goodyear only offered a bare, qualified declaration from a corporate attorney delivered "to the best of [his] knowledge and belief," on the basis of general familiarity with business operations, and with no indication that any steps had been undertaken to verify his statements or address the inconsistencies raised in Plaintiff's Motion.

In a final argument, Goodyear seems to grudgingly acknowledge the connection between "Goodyear" and "Goodwear," but speculates that Pennsylvania Goodyear could have been a trademark infringer. Goodyear claims that "during the early decades of the twentieth century, many different and *unrelated* entities traded on the "Goodyear" and "Goodwear" names." (Def. Br., Doc. 10, at 21). However, Goodyear only claims it is possible that the Pennsylvania entity is a trademark

infringer. It is also possible that it is a bona fide Goodyear registration. Indeed, Goodyear cited an example where it had policed the use of its trademark against a company named "The Good Wear Tire & Tube Co." in 1920. If the Pennsylvania registration was similarly fraudulent, it would have likely been challenged sometime in the last 90 years. Certainly, there must have been attorneys in Goodyear's legal department who have combed through state registrations over the years, looking for improper use of the company's intellectual property.

The identity and nature of Pennsylvania Goodyear is an issue of disputed substantive fact, and this Court "must resolve all contested issues of substantive fact in favor of plaintiff." *In re Diet Drugs Products Liab. Litig.,* 220 F.Supp.2d 414, 419–20 (E.D. Pa. 2002). Goodyear has failed its burden for removal because Pennsylvania Goodyear has not been "shown by unequivocal evidence to be "a straw-man defendant."" (Def. Br., Doc. 10, at 21). Judge Surrick wrote in *Egger v. Marriott* that at the fraudulent joinder stage, the district court should refrain from resolving questions hinging on the relationships between alleged "related corporate entities" because those parties had not "had the benefit of uncovering facts about the relationship between [parent corporation] and [alleged agent] through discovery." *Egger v. Marriott Int'l, Inc.,* 2011 WL 6133280, at *5 (E.D. Pa. Dec. 8, 2011). Accordingly, the court rejected the fraudulent joinder claim, noting that "[h]ere, we are unable to determine at this stage in the litigation whether an agency relationship existed." *Id.*

In this case, the situation is similarly murky with no discovery, but it appears not just possible, but extremely probable that Goodyear registered the Pennsylvania entity. If Goodyear registered an entity in Pennsylvania, that corporation gained all rights, privileges and responsibilities of a natural person citizen of the Commonwealth. During subsequent years up to the present, Goodyear has continually conducted business in Pennsylvania, all while the maintaining the benefits of having a domestic subsidiary registered in the Commonwealth. It is an irony of our legal system that if the situation arose in which Goodyear could secure a desirable legal benefit from having a corporate organ domiciled in Pennsylvania, it would enthusiastically embrace its Pennsylvania corporate registration. Instead, it has used an equivocal affidavit to disclaim a connection which it clearly has.

## II.   Plaintiffs' Lack of Success in Serving Pennsylvania Goodyear is Irrelevant Because Plaintiffs Made a Meaningful Attempt and Intend to Proceed Against the Forum Defendant.

Goodyear cites cases in which a failure to achieve service can be viewed as evidence that the Plaintiff has "no real intention in good faith to prosecute the action against" that defendant." (Def. Br., Doc. 10, at 22, quoting *Batoff*, 977 F.2d at 851). However, as those cases note, "[f]ailure to serve in-state defendants *can* be indicative of fraudulent joinder but *not* necessarily determinative." *Selfridge v. Boston Sci. Corp.*, 2013 WL 1390680, at *7 (S.D.W. Va. Apr. 4, 2013) (emphasis added). Courts only take this view "where plaintiff made no meaningful effort to serve that defendant." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir.1999).

Such unexplained conduct supports a finding that there is no real intent to proceed. As the Western District of Pennsylvania observed, a plaintiff's failure to attempt service weighs heavily towards a finding of no intent to proceed, but "some evidence of its attempts to effectuate service might weigh in favor of finding good cause for the failure to serve." *Krupa v. Hilcorp Energy I LP,* 2014 WL 2506144, at *2 (W.D. Pa. June 3, 2014). Here, Plaintiffs made a meaningful effort to serve Pennsylvania Goodyear.

In the first lawsuit, Plaintiffs accomplished service on Pennsylvania Goodyear by mailing a copy to complaint to Goodyear's corporate headquarters, where Plaintiffs assumed, correctly, that the corporate parent would accept service. (Def. Br., Doc. 10, at 2). After filing the second suit, Plaintiffs attempted service in the same manner, given that Goodyear had voluntarily accepted service on behalf of the Pennsylvania corporation in the prior suit. In this suit, however, Goodyear refused to accept service. If it is eventually shown that Goodyear did not accept service for the Pennsylvania corporation despite operating such an entity within its corporate family, then the reasons stated for its rejection of service were in bad faith.

For this reason, and given the speed of Goodyear's removal, Plaintiffs have been forced to address this jurisdictional issue first. If this Court finds that it has jurisdiction (meaning that it is impossible for Pennsylvania Goodyear to have any connection Ohio Goodyear), then serving the in-state entity will become meaningless. If this Court grants the Motion to Remand, then service will either be

accepted or litigated in state court. Plaintiffs' ultimate goal is to serve a Goodyear entity in Pennsylvania, and here "at least subjectively, the '[p]laintiffs' conduct ... [is] consistent with an intention to actually proceed.'" *In re Briscoe,* 448 F.3d 201, 219 (3d Cir. 2006), quoting *Abels*, 770 F.2d at 29.

## CONCLUSION

Goodyear's declaration is not only facially equivocal, but it is seriously undermined by the certification of the Department of State as well as evidence showing that Goodyear is almost certainly responsible for the creation of the Pennsylvania entity. There remain doubts about the nature and history of the Pennsylvania entity and Goodyear's activities in the Commonwealth, and "all doubts are to be resolved against removal." *Fajen v. Found. Reserve Ins. Co*., 683 F.2d 331, 333 (10th Cir.1982). This Court "must deny such jurisdiction if not affirmatively apparent on the record." *Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp*., 149 Fed.Appx. 775, 778 (10th Cir.2005). As such, Plaintiffs pray that this Court grants their Motion to Remand.

Respectfully submitted by:

Dated: September 19, 2017

/s/ Daniel J. Sherry
Eisenberg, Rothweiler, Winkler,
Eisenberg & Jeck, P.C.
1634 Spruce Street
Philadelphia, PA 19103
*Attorney for Plaintiffs*