# Exhibit C

2010 WL 2773382
Only the Westlaw citation is currently available.
United States District Court,
E.D. Pennsylvania.

Azriel WEAVER, Plaintiff,
v.
CONRAIL, INC., et. al., Defendants.

Civil Action No. 09–5592.
|
July 13, 2010.

**Attorneys and Law Firms**

Thomas A. Lynam, III, Villari, Lentz & Lynam, LLC, Philadelphia, PA, for Plaintiff.

John E. Wall, Dickie, McCamey & Chilcote, PC, Pittsburgh, PA, Richard K. Hohn, Hohn & Scheuerle, Philadelphia, PA, for Defendants.

West KeySummary

1   **Railroads**
    🗝 Ownership, Possession, and Control of Road in General
    **Railroads**
    🗝 Defects and Obstructions at Crossings

There was no reasonable basis in fact or even a colorable ground to support a claim brought by an injured minor for liability against the previous owner of railroad property for the alleged failure to disclose to the purchaser a known condition which involved an unreasonable risk. The minor alleged that the ground-level permissive crossing was unreasonably dangerous, and that the dangerous crossing was the cause of her injury when she was struck by a train after she entered the crossing. There was no dispute that the prior owner did own, operate, maintain, or control the tracks referenced in the complaint at the time of the injury. Furthermore, the minor did not plead sufficient facts to state a claim for vendor liability. She failed to allege that the prior owner concealed or failed to disclose the condition to the purchaser or that it had reason to believe that the purchaser would not discover the condition or realize the risk. She also failed to allege that the purchaser had a reasonable opportunity to discover the condition and take appropriate precautions. Restatement (Second) of Torts, § 353.

Cases that cite this headnote

*OPINION AND ORDER*

SLOMSKY, District Judge.

**I. INTRODUCTION**
**\*1** Before the Court is Defendants' Motion for Reconsideration of the December 30, 2009, Order Granting Plaintiff's Petition to Remand (Doc. No. 18). On or about August 14, 2009, Plaintiff commenced this action in the Court of Common Pleas of Philadelphia County, Pennsylvania, against Defendants Conrail, Inc., Consolidated Rail Corporation, Conrail Shared Assets (hereinafter "Conrail Defendants"), CSX Corporation, CSX Transportation, Inc., Norfolk Southern Corporation, and Norfolk Southern Railway Company, alleging claims in negligence against all Defendants for injuries Plaintiff sustained when she was struck by a train. (Not. Of Removal, Doc. No. 1, Ex. A, at ¶¶ 47–48, 57 (hereinafter "Doc. No. 1–A")).

**II. SUMMARY OF THE FACTS AND PROCEDURAL HISTORY**
On or about May 16, 2009, Plaintiff Azriel Weaver, who was then a minor residing with her older brother and his family in Erie, Pennsylvania, was seriously injured while crossing railroad tracks on her way home from a friend's house. (Doc. No. 1–A, at ¶¶ 31, 43, 48). The City of Erie is "divided by railroad tracks that run parallel to the shoreline of Lake Erie," and there are "permissive crossings at nearly every street intersection of the railroad in the heavily populated residential areas of the City." (*Id.*, at ¶¶ 32, 34). On May 16, 2009, Plaintiff's route to her home required her to cross the railroad tracks. (*Id.*, at

¶ 43). Pedestrian underpass crossings are provided along the railroad tracks in the City. However, Plaintiff's route that day took her down Chestnut Street, which is roughly midway between the two closest underpasses located at Sassafras and Cherry Streets, which are nearly one mile apart from each other. (*Id.,* at ¶¶ 37, 43, 44). In order to avoid crossing the railroad tracks at Chestnut Street, which has a ground-level permissive crossing,[1] a pedestrian would have to walk approximately one mile to the nearest underpass and then return to her original route. (*Id.,* at ¶¶ 37–38, 43). Accordingly, when she reached Chestnut Street, Plaintiff opted to cross at the permissive crossing, rather than to walk to the distant underpass. (*Id.*)

---

[1] A "permissive crossing" is an express or implied license to pass over a well-defined location of property of another and is evidenced by frequent, continuous and notorious use by the public. *Laurie v. Nat'l Passenger R.R. Corp.,* 105 Fed. Appx. 387, 390 (3d Cir.2004).

---

When Plaintiff crossed the railroad tracks at the Chestnut Street permissive crossing on May 16, she encountered a one-mile long stationary train blocking the crossing. (*Id.,* at ¶¶ 44–44). Because the railcars were "stopped, had been stopped for some time, and [gave] no indication whatsoever that they would begin to move at any time in the near future, [Plaintiff] proceeded to cross in between two gondola style rail cars that were blocking the crossing." (*Id.,* at ¶ 46). As Plaintiff was climbing over the coupler that connected the rail cars, "the consist lurched forward and began to roll, without warning of any kind, thereby knocking [Plaintiff] down and causing her to fall to the tracks." (*Id.,* at ¶ 47). Once on the tracks, Plaintiff was run over by the rail car twice, which instantly amputated her left leg at the knee and caused substantial soft tissue damage to her thigh and past her hip. (*Id.,* at ¶¶ 48–49). Plaintiff then crawled about twenty feet to the edge of Chestnut Street and made a tourniquet from a shirt she had in her back pack. (*Id.,* at ¶¶ 50–51). With calls for help, she was able to attract assistance from a pedestrian. (*Id.*).

**\*2** In Count I of her Complaint, Plaintiff alleges "Negligent Maintenance of Railroad Facilities" against all Defendants. (Doc. No. 1–A, at ¶¶ 58–69). In Count II of her Complaint, Plaintiff alleges "Negligent Maintenance and Operation of Rail Vehicles" against CSX Corporation and CSX Transportation, Inc. (hereinafter "CSX Defendants"). (*Id.,* at ¶¶ 70–81). Defendants' Motion addresses only the claims in Count I against Conrail Defendants.

Plaintiff alleges that the crossing at Chestnut Street is a "well-defined, frequently used and well-beaten" permissive crossing that all Defendants knew existed or should have known existed, based on the following factors: the tracks are located in a residential area and are not fenced off; the street is paved without interruption up to the railroad ballast; well defined foot paths are visible crossing the tracks; pedestrians frequently cross while in the presence of Defendants' employees; graffiti and garbage are present near the tracks; schools and residential areas that house the students are divided by the tracks; and there are reported injuries at permissive crossings in the area that date back many decades. (Doc. No. 1–A, at ¶ 42). Plaintiff alleges that the permissive crossing at Chestnut Street is not fenced, blocked or barricaded in any way, and that there are no signs posted to keep pedestrians off the track area. (*Id.,* at ¶¶ 39–40). Plaintiff further alleges that all Defendants' negligence and carelessness consisted of the following: "[c]reating a known dangerous hazard in the nature of uncontrolled permissive crossings [and] ... [i]gnoring actual knowledge of permissive crossings in the City of Erie and, in particular, at Chestnut Street." (*Id.,* at ¶ 59).

Plaintiff alleges in her Complaint that she is a citizen of Pennsylvania, and that Conrail Defendants are citizens of Pennsylvania by virtue of their organization under the laws of the Commonwealth and the location of their primary place of business in Pennsylvania. (Doc. 1–A, at ¶¶ 1–8); *Hertz Corp. v. Friend,* ––– U.S. ––––, ––––, 130 S.Ct. 1181, 1186, –––L.Ed.2d ––––, –––– (2010) (defining "principal place of business," for purposes of determining a corporation's citizenship, as "the place where the corporation's high level officers direct, control and coordinate the corporation's activities"). Defendants CSX Corporation, CSX Transportation, Norfolk Southern Corporation, and Norfolk Southern Railway Company are citizens of Virginia and/or Florida. (*Id.,* at ¶¶ 11–26).

On November 23, 2009, despite lack of diversity of citizenship among Plaintiff and every Defendant, all Defendants except Norfolk Southern Corporation and Norfolk Southern Railway Company[2] filed a Notice of Removal, asserting that the citizenship of Conrail Defendants should be disregarded for diversity jurisdiction purposes as "there is no reasonable basis in fact or colorable ground supporting Plaintiff's ... [claim] against these Defendants." (Doc. No. 1, at 4). On November 30, 2009, CSX Defendants answered the Complaint. (Doc. Nos. 5 and 6). Defendants Norfolk Southern Corporation and Norfolk Southern Railway Company (hereinafter "Norfolk Defendants") answered the Complaint with cross-claims on December 4, 2009. (Doc. No. 10).

2    Norfolk Southern Corporation and Norfolk Southern Railway Company joined in the removal. (Doc. No. 1, Ex. E, "Stipulation of Counsel").

**\*3** On November 30, 2009, Conrail Defendants filed a Motion to Dismiss, asserting that because Conrail Defendants neither own, operate, maintain nor control the railroad tracks referenced in Plaintiff's Complaint, they cannot be held liable to Plaintiff under Count I of the Complaint. (Doc. No. 8, "Brief in Supp. Of Mot. To Dismiss," at 2 (hereinafter "Doc. No. 8")). On December 18, 2009, and December 23, 2009, Plaintiff filed a Response in Opposition to Conrail Defendants' Motion to Dismiss (Doc. No. 12), and a Petition to Remand to the Court of Common Pleas of Philadelphia County (hereinafter "Doc. No. 13"). Conrail Defendants filed a Supplement to their Motion to Dismiss and a Reply Brief in Support of Motion to Dismiss on December 23, 2009. (Doc. Nos. 14 and 15).

On December 30, 2009, this Court entered an Order Remanding this case to the Court of Common Pleas of Philadelphia County, Pennsylvania, and Denying Defendants' Motion to Dismiss. On January 4, 2010, Conrail Defendants filed the instant Motion for Reconsideration of this Court's Order (hereinafter "Doc. No. 18"). Plaintiff filed a Response in Opposition on January 27, 2010, (hereinafter "Doc. No. 20"). A hearing was held on the Motion on February 1, 2010. At the hearing, the Court requested further briefing from the parties. On March 2, 2010, Conrail Defendants filed a Supplemental Brief in Opposition to Plaintiff's Motion to Remand (hereinafter "Doc. No. 23"), and on March 10, 2010, Plaintiff filed a Response to Defendant's Supplemental Brief (hereinafter "Doc. No. 25").

In the current Motion for Reconsideration, Conrail Defendants assert that Plaintiff fraudulently joined Conrail Defendants in order to deprive a federal court of jurisdiction under diversity of citizenship jurisdiction and that the Court may consider evidence apart from the pleadings in determining whether Conrail Defendants have shown fraudulent joinder. Conrail Defendants further assert that public records prove that Conrail Defendants do not own, operate, maintain or control the premises on which Plaintiff was injured, and as a result, the Court should reconsider its prior Order, dismiss Conrail Defendants as named parties and deny Plaintiff's Motion to Remand. Plaintiff asserts that she has stated a claim for negligence against Conrail Defendants based not upon their current ownership or control of the premises where Plaintiff was injured, but rather based upon their failure to disclose the existence of the dangerous condition at Chestnut Street when they transferred ownership to CSX Defendants. For the following reasons, the Court is persuaded that the Motion for Reconsideration should be granted. Conrail Defendants will be dismissed without prejudice, and Plaintiff will be granted leave to file an amended complaint.

### III. STANDARD ON MOTION FOR RECONSIDERATION

A motion for reconsideration may be filed pursuant to Fed. R. Civ. Proc. 59(e) and E.D. Pa. Local Rule of Civ. Proc. 7.1(g): "Motions for reconsideration or reargument shall be served and filed within fourteen (14) days after the entry of the ... order ... concerned." "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." *Drysdale v. Woerth,* 153 F.Supp.2d 678, 682 (E.D.Pa.2001) (internal citation and quotation marks omitted). "The purpose of a motion for reconsideration ... is to correct manifest errors of law or fact or to present newly discovered evidence." *Howard Hess Dental Labs., Inc. v. Dentsply Intern., Inc.,* 602 F.3d 237, 251 (3d Cir.2010) (internal citation and quotation marks omitted). Accordingly, a motion for reconsideration will only be granted on one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available" when the court issued the contested order; "or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Id.*

**\*4** With regard to the third ground, "[a] motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of ... In other words, such a motion is not properly grounded on a request that a court rethink a decision it has already made." *Drysdale,* 153 F.Supp.2d at 682 (internal citation and quotation marks omitted). To succeed on a motion for reconsideration on the ground of clear error of law or fact, the movant must "show that there were facts or legal issues properly presented but overlooked by the court in its decision." *Blue Mountain Mushroom Co., Inc. v. Monterey Mushroom, Inc.,* 246 F.Supp.2d 394, 398–99 (E.D.Pa.2002) (quoting E.D. Pa. R. Local Rule of Civ. Proc. 7.1(g) cmt., 6.b.)).

### IV. DISCUSSION
Defendants ask this Court to reconsider its December 30, 2009 Order which was based in part on this Court's reliance on *Baum v. NGK Metals Corp.,* 155 F.Supp.2d

376 (E.D.Pa.2001), and cited "for the proposition that in ruling on Plaintiff's petition, the Court is constrained to focus solely upon Plaintiff's Complaint and accept as true all facts pled in such pleading." (Doc. No. 18, at 2 (citing Doc. No. 17, Order, at 2 n. 1 (hereinafter "Doc. No. 17"))). Defendants assert the Court should reevaluate this legal principle in light of *In re: Briscoe,* 448 F.3d 201, 219 (3d Cir.2006), which was cited by Defendants in their Supplemental Brief in Opposition to Plaintiff's Motion to Remand (hereinafter "Doc. No. 23"). In *Briscoe,* the Third Circuit held that in determining whether a defendant was fraudulently joined by the plaintiff, a court may look beyond the face of the complaint "for indicia of fraudulent joinder." (Doc. No. 23, at 3). Defendants assert that under *Briscoe,* the Court may examine matters of public record demonstrating that Conrail Defendants did not own, operate, maintain or control the track area in question in May 2009. For this reason, Conrail Defendants argue that they cannot be liable to Plaintiff under Count I of the Complaint, and must be dismissed as being fraudulently joined defendants. (*Id.* at 4–5).

Plaintiff asserts that her claim under Count I against Conrail Defendants is premised on the Restatement (Second) of Torts, § 353, "Undisclosed Dangerous Conditions Known to Vendor." Plaintiff asserts that Section 353 imposes liability on Conrail Defendants for failing to disclose a dangerous condition to the vendee of the property when it allegedly sold the property to CSX Defendants. (Doc. No. 25, at 6). Plaintiff asserts that her Complaint states a colorable claim against Conrail Defendants under Section 353 of the Restatement (Second) of Torts, that Conrail Defendants therefore were not fraudulently joined, and the Motion for Reconsideration should accordingly be denied. (*Id.* at 7, 10–11).

**A. Remand and Fraudulent Joinder Standards**

Title 28 U.S.C. § 1447(c) provides that if, "at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." In this case, jurisdiction and removal are based on diversity of citizenship jurisdiction, which requires "satisfaction of the amount in controversy requirement as well as complete diversity between the parties, that is, every plaintiff must be of diverse state citizenship from every defendant." *Briscoe,* 448 F.2d at 215. When, as here, plaintiff has sued a non-diverse defendant, "in the absence of a substantial federal question [,] the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined." *Briscoe,* 448 F.3d at 217 (quoting *Batoff v. State Farm Insurance Co.,* 977 F.2d 848, 851 (3d Cir.1992)).

**\*5** If the court finds the non-diverse defendant was fraudulently joined, "the court can 'disregard, for jurisdictional purposes, the citizenship of certain [non-diverse] defendants, assume jurisdiction over a case, dismiss the [non-diverse] defendants, and thereby retain jurisdiction.'" *Briscoe,* 448 F.3d at 216 (quoting *Mayes v. Rapoport,* 198 F.3d 457, 461 (4th Cir.1999)). If, however, the court determines the joinder was not fraudulent, the removed action must be remanded to state court. *Briscoe,* 448 F.3d at 216 (citing 28 U.S.C. § 1447(c)).

A defendant is fraudulently joined "if 'there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment.'" *Briscoe,* 448 F.3d at 216 (quoting *Abels v. State Farm Fire & Casualty Co.,* 770 F.2d 26, 32 (3d Cir.1985)). However, in seeking to demonstrate fraudulent joinder of the non-diverse defendant, the removing defendant "carries a heavy burden of persuasion." *Batoff,* 977 F.2d at 851. " '[I]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the [non-diverse] defendants, the federal court must find that joinder was proper and remand the case to state court.' " *Id.* (quoting *Boyer v. Snap–On Tools Corp.,* 913 F.2d 108, 111 (3d Cir.1990)). "Where there are colorable claims or defenses asserted against or by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were fraudulently joined based on its view of the merits of those claims or defenses." *Batoff,* 977 F.2d at 851 (internal citation and quotation marks omitted).

In evaluating whether a defendant was fraudulently joined, the court:

> must focus on the plaintiff's complaint at the time the petition for removal was filed. In so ruling, the district court must assume as true all factual allegations of the complaint. It also must resolve any uncertainties as to the state of controlling substantive law in favor of the plaintiff.

*Briscoe,* 448 F.3d at 217 (quoting *Batoff,* 977 F.2d at 851–52). The Third Circuit has emphasized that the district court must not conduct a merits determination within the context of a fraudulent joinder inquiry, and must be careful not to delve too deeply into substantive

matters:

> [T]he inquiry into the validity of a complaint triggered by a motion to dismiss under Rule 12(b)(6) is more searching than that permissible when a party makes a claim of fraudulent joinder. Therefore, it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted.

*Batoff,* 977 F.2d at 852; *see Briscoe,* 488 F.3d at 217–18 (citing and discussing *Batoff* ). Accordingly, unless a plaintiff's claims against the non-diverse defendant can be deemed "wholly insubstantial and frivolous," the joinder will not be considered fraudulent. *Briscoe,* 488 F.3d at 218.

**\*6** Generally, in considering allegations of fraudulent joinder, the court's analysis must focus on the plaintiff's complaint at the time the petition for removal was filed. *Id.* at 217. However, as noted above, the Third Circuit has directed that district courts may look beyond the pleadings "to identify indicia of fraudulent joinder." *Id.* at 218. In doing so, the Third Circuit has cautioned that the "district court must not step from a threshold jurisdictional issue into a decision on the merits." *Id.* (internal citation and quotation marks omitted).

In *Abels v. State Farm Fire & Casualty Co.,* the Third Circuit faced an allegation of fraudulent joinder and examined facts apart from plaintiff's pleadings to determine whether plaintiff exhibited a subjective intent to prosecute the action against the non-diverse defendant. 770 F.2d at 32. Subsequent Third Circuit decisions have applied the principle of "piercing the pleadings" to their analysis of whether there is a reasonable basis in fact or a colorable ground supporting plaintiff's claim against the non-diverse defendant, emphasizing that review of extrinsic evidence must be limited to reliable evidence that does not go to the merits of the plaintiff's case. Thus, in *Boyer,* the Third Circuit reasoned:

> Defendants argue that the court may pierce the pleadings to determine whether there has been a fraudulent joinder. *Assuming some piercing is appropriate to decide whether plaintiffs have asserted a "colorable" ground supporting the claim against the joined defendant,* that inquiry is far different from the summary judgment type inquiry made by the district court here. The limited piercing of the allegations to discover fraudulent joinder is illustrated by *Smoot v. Chicago, Rock Island, & Parc. R.R. Co.,* ... where the non-diverse employee of the defendant railroad had uncontestedly discontinued his employment with the railroad 15 months before the accident in question.

913 F.2d at 112 (emphasis added). In *Boyer,* the defense asserted was based on the terms of a release clause in a termination agreement between the parties, "and went directly to the merits of the plaintiff's cause of action ... As such, [the Third Circuit held] it was improper for the district court to reach the merits of that defense as part of its fraudulent joinder inquiry." *Briscoe,* 448 F.3d at 220, n. 8 (discussing the holding and reasoning of *Boyer,* 913 F.2d at 112–13).

In *Briscoe,* the Third Circuit stated when reviewing a statute of limitations defense raised by a non-diverse defendant:

> in reviewing a [statute of] limitations question, we see no reason to preclude a district court from a limited consideration of reliable evidence that the defendant may proffer to support the removal. Such evidence may be found in the record from prior proceedings, which firmly establishes the accrual date of the plaintiff's claim, or in other relevant matters that are properly subject to judicial notice. Such a limited look outside the pleadings does not risk crossing the line between a proper threshold jurisdictional inquiry and an improper decision on the merits. After all, a statute of limitations defense is not a merits-based defense to the plaintiff's case.

**\*7** 448 F.3d at 220. The court next opined that when the "policy judgment that stale claims should not see the light of day" is considered together with the "defendant's statutory right to remove an action that falls within the

original jurisdiction of a federal court," both factors "counse[l] against confining a district court strictly to the pleading allegations when it assesses a fraudulent joinder/statute of limitations question. A limited look beyond the pleadings, as described above, runs no risk of usurping jurisdiction over cases that properly belong in state court." *Id.*

**B. Reconsideration of This Court's December 30, 2009 Order**

In this Court's December 30, 2009 Order remanding this case to the Philadelphia Court of Common Pleas, the Court reasoned that it "must accept as true all facts in Plaintiff's Complaint." (Doc. No. 17, at 2). The Court considered Plaintiff's claim for negligence against Conrail Defendants to be based on their alleged possession of the railroad tracks where Plaintiff's accident occurred, and the concomitant duty of reasonable care to licensees who enter onto that land. (*Id.*) The Court then held that because Plaintiff "alleges in her Complaint that 'it is believed and therefore averred that the [subject] railroad tracks are owned, operated, maintained and controlled by the Defendants in this action,'" Plaintiff presented a colorable claim for negligence against all Defendants and that Conrail Defendants were not fraudulently joined. (*Id.* (citing Doc. No. 1–A, at ¶ 33)). The Court did not consider facts outside the complaint contained in documents subject to judicial notice, such as a quitclaim deed filed with the Erie County Register of Deeds and a decision by the Surface Transportation Board. The Court is now persuaded that law cited in Defendants' Motion for Reconsideration was not previously considered and, in conjunction with the limited additional information provided by Defendants, Reconsideration should be granted to correct a clear error of law and fact.

As discussed above, the Third Circuit has permitted limited piercing of the pleadings in assessing fraudulent joinder claims. *Briscoe,* 448 F.3d at 220. As the court in *Briscoe* explained, "we see no reason to preclude a district court from a limited consideration of reliable evidence that the defendant may proffer to support the removal." *Id.* Although the court in *Briscoe* was considering a statute of limitations defense—a defense, it emphasized, which "is not a merits-based defense to the plaintiff's case"—the application of *Briscoe* and its predecessors counsel here in favor of "limited consideration of [Conrail Defendants'] reliable evidence." *Id.* The information which a court may properly consider beyond the face of a complaint in deciding whether a non-diverse party's joinder was fraudulent includes matters of record in other and prior proceedings, facts subject to judicial notice, the absence of proof of a defendant's involvement in claimed conduct, and even a defendant's business records. *Briscoe,* 448 F.3d at 220; *Bernstein v. Bali Steel, PLC,* 2008 WL 862470, at *5–6 (E.D.Pa. Mar.31, 2008); *In re: Diet Drugs,* 220 F.Supp.2d 414, 419–20 (E.D.Pa.2002).

**\*8** Here, Conrail Defendants assert that Plaintiff's claim against them is premised upon the allegation that Conrail Defendants "owned, operated, maintained and controlled" the railroad tracks where Plaintiff was injured. Conrail Defendants assert that this allegation is belied by several sources of which the Court may take judicial notice or which were matters of record in other and prior proceedings.

First, co-defendant CSX Transportation, Inc. admits in its Answer to Plaintiff's Complaint that in May 2009 it owned, operated, maintained and controlled the railroad tracks described in Plaintiff's Complaint. (Doc. No. 5, at ¶¶ 32–33). An answer is a judicial admission,[3] and as such binds the party who makes it, establishes the truth of the admitted fact for the purposes of the instant proceedings, and may "estop" the party from making a contrary argument at trial and on appeal. *Berckeley Inv. Group, Ltd. v. Colkitt,* 455 F.3d 195, 211 n. 20 (3d Cir.2006); *Parilla v. IAP Worldwide Serv., VI, Inc.,* 368 F.3d 269, 275 (3d Cir.2004).

[3] An admission is "any deliberate, clear and unequivocal statement, either written or oral, made in the course of judicial proceedings," *Medcom Holding Co. v. Baxter Travenol Lab.,* 106 F.3d 1388, 1404 (7th Cir.1997) (internal citation and quotation marks omitted), and may include a party's statements in its pleadings, *Parilla, infra,* or its legal briefs, *Purgess v. Sharrock,* 33 F.3d 134, 43–44 (2d Cir.1994).

Second, Conrail Defendants' assertion that they did not own the tracks in question on the date of the May 2009 accident is confirmed by a quitclaim deed filed with the Erie County Recorder of Deeds, dated June 1, 1999. The deed states that the rail lines and real property owned by Consolidated Rail Corporation in Erie were transferred to the New York Central Lines and the Pennsylvania Lines LLC. (Doc. No. 1, Ex. B–1, at 1, B–3 at 1). The rail lines were then acquired by CSX Defendants on August 26, 2004, when it merged with New York Central Lines. A Notice of Merger evidencing this corporate merger was filed with the Erie County Recorder of Deeds. (Doc. No. 1, Ex. B, "Notice of Merger," at 153–68 of 168). A court may take judicial notice of a public record, including a publicly recorded deed, and may accept the deed as establishing the record ownership of the property. *Gagliardi v. Kratzenberg,* 188 Fed. Appx. 86, 89 (3d Cir.2006). Accordingly, the deed dated June 1, 1999 and

the Notice of Merger are evidence the Court may consider in deciding the propriety of joining Conrail Defendants.

Third, Conrail Defendants' transfer of its ownership of the rail lines to the New York Central Lines and Pennsylvania Lines was approved by the federal Surface Transportation Board in a July 20, 1998 decision. *CSX Corp. And CSX Transportation, Norfolk Souther Corp. And Norfolk Souther Railway Co.—Control and Operating Leases/Agreements—Conrail nc. And Consolidated Rail Corp.,* STB Finance Doc. No. 33388, Decision No. 89, at "The Primary Application and Related Filings" (July 20, 1998) (hereinafter "STB Decision"). In this decision, the Surface Transportation Board approved "the joint acquisition of control [of Conrail] by CSX and [Norfolk Southern]," and the division of the use and operation of Conrail's assets between the two, including the allocation of the rail lines in Erie to the New York Central and Pennsylvania Lines. *Id.* The Surface Transportation Board is a federal regulatory agency, and the Court may take judicial notice of its decision. *City of Pittsburgh v. West Penn Power Co.,* 147 F.3d 256, 259 (3d Cir.1998) (noting that a court may take judicial notice of matters of public record, including the results of regulatory proceedings); *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.,* 998 F.2d 1192, 1197 (3d Cir.1993) (defining "public record" to include "published reports of administrative bodies").

**\*9** Finally, during the February 1, 2010 hearing, Plaintiff's counsel conceded that he would "take [Conrail] at their word for the fact that in 1999 they ceased to—to operate those rail lines and that they didn't have anything to do with that." (Doc. No. 26, Transcript of Hearing, at 54 (hereinafter "Doc. No. 26")). He indicated he would accept an affidavit stating that Conrail had "absolutely no control or right to say how those trains were run on those particular tracks after they—after they got rid of them" as evidence that Conrail did not own or control the subject railroad tracks at the time of Plaintiff's accident. (*Id.*). Conrail Defendants provided such an affidavit in their Supplemental Brief in Opposition to Plaintiff's Motion to Remand. (Doc. No. 23, Ex. A, Affidavit of Jonathan Broder).

After reviewing these facts, and *Briscoe* and its predecessors, it is clear that this Court may pierce the pleadings and consider evidence proffered by Conrail Defendants that they did not own, operate, maintain or control the railroad tracks where Plaintiff was injured in 2009. In reaching this conclusion, this Court is persuaded by an analogous case, *Smoot v. Chicago Rock Island & Pac. R.R. Co.,* 378 F.2d 879 (10th Cir.1967), cited favorably by the Third Circuit in *Boyer,* 913 F.2d at 112, as an example of proper limited piercing of the pleadings when faced with an allegation of fraudulent joinder. In *Smoot,* plaintiff sued a railroad company and one of its employees after plaintiff's decedent was killed when his car was struck by a train. 378 F.2d at 881. Although the employee was not diverse from plaintiff, the railroad company removed the case to federal court, asserting that the employee was fraudulently joined because he was not an employee of the railroad at the time of the accident. *Id.* The Tenth Circuit held that it was proper for the district court to consider the uncontested affidavit of the employee that he discontinued his employment with the railroad over a year before the accident and to dismiss the non-diverse defendant as fraudulently joined. *Id.* at 882.

Here, Conrail Defendants have submitted three separate methods of proof, all of which the Court may take judicial notice, to demonstrate that Conrail Defendants did not own, operate, maintain or control the railroad tracks where Plaintiff was injured at the time of her accident. Furthermore, Plaintiff has not contested this evidence. Accordingly, Plaintiff's claim against Conrail Defendants under Count I cannot be premised upon Conrail Defendants' alleged ownership, maintenance, operation, or control of the railroad tracks in 2009.

**C. Plaintiff's § 353 Theory of Liability**
If Plaintiff's claim against Conrail Defendants depended only upon Conrail Defendants' ownership, maintenance, operation or control of the subject railroad tracks, the inquiry here would be over, and the Court would dismiss Conrail Defendants on the basis of fraudulent joinder. Plaintiff, however, insists that her claim against Conrail Defendants is not dependent upon their control or ownership of the subject tracks. Plaintiff asserts a different theory of liability, which was not reached by the Court in its prior ruling on remand. The Court therefore turns to Plaintiff's theory of liability under § 353 of the Restatement (Second) of Torts.

**\*10** Plaintiff asserts that under Section 353 of the Restatement (Second) of Torts, Conrail Defendants are liable for Plaintiff's injury because Conrail Defendants failed to disclose a dangerous condition on the property when they sold the property to CSX Defendants.[4] Section 353 provides:

[4] Although the rail line in Erie was conveyed by Conrail to the New York Central and Pennsylvania Lines, the New York Central Lines and Pennsylvania Lines later merged into CSX. The Court will therefore refer to the transfer, for the sake of simplicity, as from Conrail

Defendants to CSX Defendants, which were the New York Central and Pennsylvania Lines' successors in interest.

(1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendees and others upon the land with the consent of the vendee ... for physical harm caused by the condition after the vendee has taken possession, if[:]

    (a) the vendee does not know or have reason to know of the condition or the risk involved, and

    (b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.

(2) If the vendor actively conceals the condition, the liability stated in Subsection (1) continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise, the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions.

Pennsylvania courts have applied Restatement (Second) of Torts § 353 to impose liability on a vendor for failure to disclose a "known condition which involves an unreasonable risk to people on the land." *E.g., Anderson v. Harper,* 424 Pa.Super. 161, 622 A.2d 319, 323–25 (Pa.Super.1993) (imposing liability on vendors of a home for failure to disclose the existence of serious defects with the septic system to the vendees). It does not appear that any Pennsylvania court has rendered a decision applying § 353 to impose liability on a vendor for injuries to a third party. However, in *Palmore v. Morris, Tasker & Co.,* 182 Pa. 82, 37 A. 995, 999 (Pa.1897), the Pennsylvania Supreme Court reasoned in dicta, in considering a claim by a third-party individual who was injured by the collapse of a gate on the defendant-vendors' former property, that "[t]here may be a case where the [vendor] conceals from the [vendee] a defect in a structure, known to him alone, and not discoverable by careful inspection, that the [vendor] would be held liable, though out of possession." "[R]esolv[ing] any uncertainties as to the current state of controlling substantive law in favor of the plaintiff," *Batoff,* 977 F.2d at 852, the Court must conclude in considering fraudulent joinder claims that Plaintiff has tenably stated a valid theory of liability.[5]

[5] Conrail Defendants assert that the exception under § 353 to the general rule against vendor liability cannot be applied to a claim premised on the existence of a permissive crossing because § 353 requires a vendee not know or not have reason to know of a condition, while a permissive crossing can only exist where use of the crossing is frequent, continuous and notorious. Defendants' argument raises an issue of substantive law that a state court should more properly consider. The Third Circuit has constrained a district court from delving into substantive issues of law in a fraudulent joinder claim. *Briscoe,* 448 F.3d at 218 (quoting *Batoff,* 977 F.2d at 851–52).

Plaintiff, however, has failed to plead sufficient facts to state a claim under § 353. In order to state a cause of action against Conrail Defendants as vendors under § 353 of the Restatement (Second) of Torts, Plaintiff must allege the following elements: 1) the existence of a condition which involves an unreasonable risk to persons on the land; 2) the vendor knows or has reason to know of the condition and realizes or should realize the risk involved; 3) the vendor concealed or failed to disclose the condition to the vendee; 4) the vendee does not know or have reason to know of the condition or the risk involved; and 5) the vendor has reason to believe the vendee will not discover the condition or realize the risk. If Conrail Defendants, as the vendor, actively concealed the condition, their liability "continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it." *Id.* If Conrail Defendants did not actively conceal the condition, their liability only continues "until the vendee has had reasonable opportunity to discover the condition and take such precautions." *Id.*

**\*11** Here, Plaintiff alleged the existence of an unreasonably dangerous condition (Doc. No. 1–A, at ¶¶ 35–42) and that Conrail Defendants knew or had reason to know of the condition and realized or should have realized the risk involved (*Id.* at ¶ 42). The Court will accept the pleadings in CSX Defendants' Answers—which deny CSX Defendants knew or had reason to know of the permissive crossing or the risk involved—as satisfying the fourth element listed above.[6]

[6] Plaintiff's complaint alleges that all Defendants, including CSX Defendants, knew or should have known of the permissive crossing, and that all Defendants, including CSX Defendants, ignored actual knowledge of the permissive crossing at Chestnut Street. (Doc. No. 1–A, at ¶¶ 42, 58–69). These allegations directly contradict the fourth element of the § 353 claim. Plaintiff suggests the Court should

overlook this contradiction because Pennsylvania law permits plaintiffs to assert inconsistent and alternative causes of action. Although Pennsylvania law permits alternative pleading, *Schreiber v. Republic Intermodal Corp.,* 473 Pa. 614, 626, 375 A.2d 1285 (1977), Plaintiff's complaint does not state alternative theories—Plaintiff's only allegation regarding the knowledge of the permissive crossing by CSX Defendants states that they had or should have had knowledge of the risk.

> However, CSX Defendants' deny in their Answers that they knew or had reason to know of the permissive crossing or the risk involved. (CSX Trans. Ans., Doc. No. 5, at ¶ 42; CSX Corp. Ans., Doc. No. 6, at ¶ 42). An answer is a judicial admission, *Berckeley Inv. Group Ltd. v. Colkitt,* 455 F.3d 195, 211 n. 20 (3d Cir.2004), and may be considered by the Court in assessing fraudulent joinder, *Briscoe,* 448 F.3d at 220. Viewing the pleadings in the light most favorable to Plaintiff, the Court will accept CSX Defendants' denial as satisfying this element of the § 353 claim.

Plaintiff has failed to allege facts constituting any of the other elements of the claim. The pleadings in no way address the third element—that Conrail Defendants concealed or failed to disclose the condition to the vendee—or the fifth element—that Conrail Defendants had reason to believe the vendee would not discover the condition or realize the risk. Furthermore, the pleadings fail to address whether, if Conrail Defendants did not actively conceal the condition, the vendee had a reasonable opportunity to discover the condition and take appropriate precautions.[7]

[7] Conrail Defendants assert that the Court should hold that because CSX Defendants owned the railroad lines for ten years prior to Plaintiff's accident, they had a reasonable opportunity to discover the condition as a matter of law. (Doc. No. 23, at 13–14). Conrail Defendants point to *Finnerty v. Wiley,* 2007 WL 1140641, *1 (M.D.Pa. Apr.17, 2007), a case in which the district court granted a motion to dismiss, and held that a four-year period of ownership constituted a reasonable opportunity to discover a defect. *Finnerty'* s facts and procedural posture distinguish it from the instant case. The inquiry into the validity of a complaint occasioned by an assertion of fraudulent joinder is less searching than that of a Rule 12(b)(6) motion, the motion under consideration in *Finnerty. Batoff,* 977 F.2d at 852. The facts in the instant case differ from the facts in *Finnerty. Finnerty,* therefore, is not compelling authority on which the Court can rely in order to hold as a matter of law that CSX Defendants had a reasonable opportunity to discover the defect. The amount of time that constitutes a reasonable opportunity to discover and cure a defect may raise a substantive issue of law. The Third Circuit has clearly directed that in the context of fraudulent joinder analyses, the court "must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *Briscoe,* 448 F.3d at 217. Had Plaintiff alleged sufficient facts to satisfy the elements of § 353, Conrail Defendants' assertion that CSX Defendants had a reasonable opportunity to discover the condition would not have defeated her claim at this stage in the proceedings.

Plaintiff asserts these elements can be inferred from the pleadings. (Doc. No. 25, at 7). Although Plaintiff is entitled to all reasonable inferences that arise from the pleadings, Plaintiff's proffered conclusions fall far beyond the bounds of "reasonable inferences." Plaintiff has alleged Conrail Defendants knew of the condition; CSX Defendants deny knowledge of the condition. Although the Court can infer based on these pleadings that Conrail Defendants failed to disclose the condition to the vendee, these two pleadings do not offer a basis for the inference that Conrail Defendants concealed the condition, or that Conrail Defendants had a reason to believe the vendee would not discover the condition or realize the risk. Accordingly, based on the Complaint filed by Plaintiff, there is no reasonable basis in fact or even a colorable ground to support a claim arising under Restatement (Second) of Torts § 353 against Conrail Defendants.

**D. Permission to Amend**
Although Plaintiff's Complaint is technically deficient, Plaintiff's memoranda of law convince the Court that Plaintiff's claims may be properly stated in an amended complaint. "[I]nadequate complaints should be dismissed without granting leave to amend *only* if amendment would be inequitable or futile." *Grayson v. Mayview State Hospital,* 293 F.3d 103, 106 (3d Cir.2002) (emphasis added). Plaintiff here has not requested leave to amend her Complaint. However, circuit case law provides that leave to amend must be given even when a plaintiff does not request permission to amend unless the amendment would be inequitable or futile. *Shane v. Fauver,* 213 F.3d 113, 116 (3d Cir.2000). As stated above, Pennsylvania law recognizes claims under the Restatement (Second) of Torts § 353, and Conrail Defendants' arguments seeking a ruling from this Court on substantive issues of law will not bar Plaintiff's claims at this stage. Accordingly, an amendment to the complaint would not be futile, nor inequitable.[8]

[8] In their Motion for Reconsideration, Conrail Defendants insist that if Plaintiff's case is remanded to state court and if Plaintiff's claims against Conrail Defendants are later dismissed by the state court, the remaining diverse defendants will not be able to remove the action back to federal court. In support of their position, Conrail Defendants point to *Santos v. Norfolk Southern Railway Co.,* 2008 U.S. Dist. Lexis 85532, 2008 WL 4694558 (E.D.Pa. Oct. 22, 2008). There, Plaintiff, a Pennsylvania citizen, was injured falling from a bridge and sued both Conrail and Norfolk Southern. *Id.* at *2. Norfolk Southern did not file a notice of removal with the federal court until after Conrail was dismissed as a defendant, almost eleven months after plaintiffs initially filed suit. *Id.* at *5–7. The court held 28 U.S.C. § 1446(b)'s thirty-day time limit on removal acted to bar defendant's removal in the case, "[g]iven the clear evidence that defendant Norfolk Southern knew that Conrail was fraudulently joined within thirty days of receiving the complaint." *Id.* at * 12. The court reasoned defendants should have removed the action immediately and sought Conrail's dismissal based on fraudulent joinder. Conrail Defendants here assert that if this case is remanded and Conrail is eventually dismissed, *Santos* would bar the removal of the suit by the remaining diverse defendants.

> *Santos,* however, is factually different from the instant case. Here, all Defendants removed or joined in the removal of the action within 30 days of the filing of Plaintiff's complaint in compliance with § 1446(b), and asserted fraudulent joinder of Conrail Defendants. Unlike defendants in *Santos,* all Defendants asserted their right to remove within the required time frame. When courts have held a notice of removal to be untimely, they focused on a defendant's knowledge of a basis for removal and failure to act on that knowledge in a timely manner. *E.g., Santos, supra; Delaney v. Viking Freight, Inc.,* 41 F.Supp.2d 672, 677 (E.D.Tex.1999); *Deming v. Nationwide Mutual Insurance Co.,* 2004 WL 332741, at *4–6 (D.Conn. Feb.14, 2004). Defendants here have not been dilatory at all in asserting their rights, and accordingly should not be prevented from exercising their right to removal if this case is eventually remanded and if Conrail Defendants are later dismissed by the state court.
> Moreover, Plaintiff first brought this suit on August 14, 2009. Pursuant to § 1446(b), a case that is not initially removable must be removed within one year of commencement of the action. The Court notes, however, that the Third Circuit has held this requirement to be procedural, rather than jurisdictional, and subject to equitable considerations. *Ariel Land Owners, Inc. v. Dring,* 351 F.3d 611, 614–15 (3d Cir.2003). Other courts in this Circuit have considered the application of equitable exceptions to § 1446(b)'s one year requirement. *Namey v. Malcolm,* 534 F.Supp.2d 494, 498 (M.D.Pa.2008); *Lee v. Carter–Reed Co., LLC,* 2006 WL 3511160 (D.N.J. Dec.5, 2006). If the Plaintiff's case is remanded and Conrail Defendants are eventually dismissed, equitable considerations may operate to toll the one year removal period and exclude the time this Court had under consideration the parties' motions.

### IV. CONCLUSION

**\*12** In conclusion, Conrail Defendants' Motion for Reconsideration of December 30, 2009 Order Granting Plaintiff's Petition to Remand (Doc. No. 18) will be granted. This Court may properly consider to a limited extent evidence beyond the pleadings in assessing Conrail Defendants' allegations of fraudulent joinder. After a review of the proffered evidence, the Court concludes Plaintiff's claim against Conrail Defendants cannot be premised upon Conrail Defendant's alleged ownership, operation, maintenance or control of the tracks where Plaintiff was injured in 2009. Furthermore, Plaintiff's Complaint fails to allege the facts necessary to establish the elements of a claim under Restatement (Second) of Torts § 353. Accordingly, Conrail Defendants will be dismissed without prejudice.

However, the Court is persuaded that if properly pled, Plaintiff may present a colorable claim against Conrail Defendants. Accordingly, Plaintiff will be granted leave to amend her complaint .[9] Thereafter, the Court will then reconsider if remand is appropriate.

[9] The inclusion of Conrail Defendants as non-diverse defendants in a properly pled amended complaint will implicate the provisions of 28 U.S.C. § 1447(e), which govern joinder of a non-diverse defendant in a removed case. Section 1447(e) provides that a district court may permit joinder of a defendant whose joinder would destroy subject matter jurisdiction, and then remand the action to the state court. District courts in this Circuit apply four factors in considering whether to grant leave to join a non-diverse party: (1) whether the purpose of joinder is to defeat diversity jurisdiction; (2) whether the plaintiff was dilatory in seeking joinder of the party; (3) whether the plaintiff will be prejudiced if he is not given leave to join; and (4) any other equitable factors. *City of Perth v. Safeco Insurance Co. Of Amer.,* 539 F.Supp.2d 742, 746 (D.N.J.2008).

*ORDER*

**Weaver v. Conrail, Inc., Not Reported in F.Supp.2d (2010)**

AND NOW, this 12th day of July, 2010, upon consideration of the Motion to Dismiss (Doc. No. 7) and Brief in Support (Doc. No. 8) of Defendants Conrail, Inc., Consolidated Rail Corporation and Conrail Shared Assets (hereinafter "Conrail Defendants"), Plaintiff's Response in Opposition (Doc. No. 12), Plaintiff's Petition to Remand (Doc. No. 13), Conrail Defendants' Supplement to their Motion to Dismiss and Reply Brief in Support of Motion to Dismiss (Doc. Nos. 14 and 15), Conrail Defendants' Motion for Reconsideration of December 30, 2009 Order Granting Plaintiff's Motion to Remand (Doc. No. 18), Plaintiff's Response in Opposition (Doc. No. 20), Conrail Defendants' Supplemental Brief in Opposition to Plaintiff's Motion to Remand (Doc. No. 23), and Plaintiff's Response to Defendants' Supplemental Brief (Doc. No. 25), and after a hearing on the Motion, it is ORDERED as follows:

1. The Motion for Reconsideration of December 30, 2009 Order Granting Plaintiff's Motion for Remand (Doc. No. 18) and the Motion to Dismiss (Doc. No. 7) are GRANTED;

2. Defendants Conrail, Inc., Consolidated Rail Corporation and Conrail Shared Assets are DISMISSED WITHOUT PREJUDICE;

3. Plaintiff is granted leave to file an amended complaint and, if appropriate, a motion to remand, on or before **July 26, 2010.**

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 2773382

---

**End of Document** © 2017 Thomson Reuters. No claim to original U.S. Government Works.