# Exhibit D

**Davis v. OneBeacon Ins. Group, 721 F.Supp.2d 329 (2010)**

KeyCite Yellow Flag - Negative Treatment
Distinguished by Dillon v. Liberty Mut. Ins. Co., D.N.J., July 25, 2011

721 F.Supp.2d 329
United States District Court,
D. New Jersey.

Frank DAVIS, Sr. and Carolyn Davis, Plaintiffs,
v.
ONEBEACON INSURANCE GROUP, John Doe(s) I–V, ABC Partnership(s) I–V, and XYZ Corporation(s) I–V, Defendants.

Civil Action No. 09–cv–4179 (NLH)(KMW).
|
June 28, 2010.

**Synopsis**
**Background:** Employee brought state-court action against entity he believed to be employer's workers' compensation carrier seeking compensatory and punitive damages for pain and suffering and other injuries caused by carrier's denial of necessary medical treatment. Subsequently, insurer claiming to be employer's actual workers' compensation carrier removed the case to federal court, and moved to dismiss the complaint. Employee cross-moved to remand.

**Holdings:** The District Court, Hillman, J., held that:

[1] workers' compensation carrier was not required to be deemed a citizen of the state to which employer was a citizen;

[2] removal did not depend upon the named defendant's participation, consent, or citizenship;

[3] employee's action was timely; and

[4] employee stated a common law cause of action against carrier.

Motions denied.

West Headnotes (15)

[1]     **Removal of Cases** ⚷ **Evidence**

As the party removing the case to federal court, the defendant bears the burden to demonstrate that at all stages of litigation there is federal subject matter jurisdiction over the case; further, the district court must resolve all contested issues of fact and uncertainties of law in favor of the plaintiff.

Cases that cite this headnote

[2]  **Removal of Cases** Constitutional and statutory provisions
     **Removal of Cases** Evidence

Courts should strictly construe removal statutes and resolve all doubts in favor of remand.

Cases that cite this headnote

[3]  **Removal of Cases** Citizenship or residence of corporations

Employee's removed action seeking compensatory and punitive damages for pain and suffering and other injuries caused by insurance carrier's denial of necessary medical treatment was not a "direct action against the insurer of a policy or contract of liability insurance," so to require carrier to be deemed a citizen of the state to which employer was a citizen; employee's cause of action could have only been brought against the insurer who refused to abide by its own authorized treating physician's recommendations, and not the employer who was uninvolved in the insurer's alleged wrongdoing. 28 U.S.C.A. § 1332(c)(1).

1 Cases that cite this headnote

[4]  **Federal Courts** Insurers

A "direct action against the insurer of a policy or contract of liability insurance," as contemplated by federal diversity jurisdiction statute, exists only if the cause of action against the insurance company is of such a nature that the liability sought to be imposed could be imposed against the insured. 28 U.S.C.A. § 1332(c)(1).

3 Cases that cite this headnote

[5]  **Insurance** Parties

That an entity's letterhead is used on documents or correspondences, such as an insurance contract, does not necessarily render that entity a party to litigation.

Cases that cite this headnote

[6]  **Removal of Cases** Diversity of Citizenship of Coplaintiffs and Codefendants
     **Removal of Cases** Necessary and unnecessary parties
     **Removal of Cases** Parties to notice or petition

Named defendant in employee's action seeking compensatory and punitive damages for pain and suffering and other injuries caused by employer's workers' compensation carrier's denial of necessary medical treatment was a non-existent business entity, such that removal to federal court did not depend upon the named defendant's participation, consent, or citizenship, even though named defendant was continuously identified as the workers' compensation insurance carrier throughout the administrative proceedings, and employee effected service on named defendant; secretary of insurer claiming to be employer's actual workers' compensation carrier attested that named defendant was not a legal entity, but rather a trade name for a group of affiliated companies that included carrier, and that named defendant had no assets or obligations, no employees, and no business location, and did not and could not issue insurance policies, collect premiums or administer claims.

1 Cases that cite this headnote

[7]  **Removal of Cases** — Diversity of Citizenship of Coplaintiffs and Codefendants
     **Removal of Cases** — Parties to notice or petition

A defendant that is a non-existent business entity is not required to join in or consent to the removal of a case, nor is the citizenship of the non-existent entity considered for purposes of complete diversity of citizenship.

3 Cases that cite this headnote

[8]  **Federal Civil Procedure** — Pleading, Defects In, in General

A district court, in weighing a motion to dismiss, asks not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.

Cases that cite this headnote

[9]  **Federal Civil Procedure** — Motion and proceedings thereon

On a motion to dismiss, the defendant bears the burden of showing that no claim has been presented.

Cases that cite this headnote

[10] **Limitation of Actions** — Negligence
     **Limitation of Actions** — Nature of harm or damage, in general

Under New Jersey law, the statute of limitations for a common law cause of action generally accrues from the date of the negligent act or omission; but, pursuant to the discovery rule, the limitations period does not commence until the injured party actually discovers or should have discovered through reasonable diligence the fact essential to the

cause of action.

Cases that cite this headnote

[11]   **Workers' Compensation** Exclusiveness
       **Workers' Compensation** Necessity

Under New Jersey law, the Division of Workers' Compensation, which is granted "exclusive original jurisdiction of all claims for workers' compensation benefits," is the proper forum in which an injured employee should initially pursue any remedies that may be available to him or her; only after the employee litigates before the Division should he or she generally pursue any judicial relief or enforcement in the ordinary courts. N.J.S.A. 34:15–49.

Cases that cite this headnote

[12]   **Workers' Compensation** Proceedings to Enforce Payment or Compliance

Under New Jersey law, employee's cause of action against employer's workers' compensation carrier seeking compensatory and punitive damages for pain and suffering and other injuries caused by carrier's denial of necessary medical treatment accrued, and statute of limitations began to run, on the day compensation judge ordered carrier to provide medical and temporary disability benefits, along with other relief, and concluded his involvement in the case. N.J.S.A. 34:15–49.

Cases that cite this headnote

[13]   **Workers' Compensation** Exclusiveness of Remedies Afforded by Acts

Absent limited exceptions, New Jersey's Workers' Compensation Act provides the exclusive remedy for an employee who suffers a work-related injury. N.J.S.A. 34:15–1 et seq.

Cases that cite this headnote

[14]   **Workers' Compensation** Exclusiveness of Remedies Afforded by Acts
       **Workers' Compensation** What Persons Liable as Third Persons

In New Jersey, there is no direct action available to an injured employee against the employer, or against the employer's insurer when the insurer takes no action beyond that which is required under the Workers' Compensation Act and the carrier's insurance policy; under such circumstances, injured employees must pursue their exclusive remedies in the Division of Workers' Compensation, even when an employer, acting through its insurer, does not furnish necessary medical treatment when requested to do so by an employee. N.J.S.A. 34:15–1 et seq.

1 Cases that cite this headnote

[15]  **Workers' Compensation** ⚖ Proceedings to Enforce Payment or Compliance

Under New Jersey law, employee stated a common law cause of action against employer's workers' compensation carrier, which was not categorically precluded by the Workers' Compensation Act, by alleging that carrier frivolously, negligently, willfully, wantonly and maliciously failed or refused to authorize the surgery recommended by its own authorized treating physician. N.J.S.A. 34:15–1 et seq.

Cases that cite this headnote

**Attorneys and Law Firms**

**\*331** Amy K.Z. Catlett, Esq., Henry J. Kowalski, III, Esq., Lee J. Hughes, Esq., Rone, Hughes & Kowalski, Milmay, NJ, for Plaintiffs Frank Davis, Sr. and Carolyn Davis.

William P. Shelley, Esq., Jacob C. Cohn, Esq., Micah Justin Morris Knapp, Esq., Cozen & O'Connor, PC, Cherry Hill, NJ, for Defendant OneBeacon Insurance Group.

**OPINION**

HILLMAN, District Judge.

Plaintiff, Frank Davis, Sr., suffered severe injuries, including to his left shoulder, while working for his employer.[1] Davis consulted with an orthopedic surgeon who recommended surgery to repair his shoulder. Although it selected and appointed **\*332** the physician to treat Davis, defendant, OneBeacon Insurance Company ("OneBeacon" or "defendant")—identified by plaintiff as the workers' compensation insurance carrier for Davis's employer—refused to authorize the surgery. After pursuing his remedies through the New Jersey Division of Workers' Compensation, Davis filed suit in the Superior Court of New Jersey, seeking compensatory and punitive damages against OneBeacon for pain and suffering and other injuries caused by OneBeacon's denial of necessary medical treatment.

[1]  Carolyn Davis, the wife of Frank Davis, Sr., is suing for loss of consortium and, thus, is also named as a plaintiff in this suit. For reasons of clarity and simplicity, and given the factual circumstances of this case, the Court, except where otherwise noted, will refer exclusively to Frank Davis as the plaintiff in this case.

Subsequently, Pennsylvania General Insurance Company ("PA General" or "defendant") removed the suit to this Court, explaining that it—and not the fictitious OneBeacon—is the workers' compensation insurance carrier for Davis's employer and, thus, is the proper defendant in this case. PA General now moves to dismiss Davis's complaint. Davis opposes PA General's motion and cross-moves to remand his suit to the New Jersey Superior Court.

For the reasons stated below, PA General's Motion to Dismiss is denied, and Davis's Cross-motion to Remand to the State Court is denied.

## I. JURISDICTION[2]

[2]   Given that diversity jurisdiction is at issue in this case, the Court will address it more thoroughly below.

This Court exercises subject matter jurisdiction over the underlying claim pursuant to 28 U.S.C. § 1332. There is complete diversity between plaintiffs and defendant in the underlying action. Plaintiffs, Frank Davis, Sr. and Carolyn Davis, reside in Vineland, New Jersey and are citizens of the State of New Jersey. Defendant, PA General, is incorporated in the Commonwealth of Pennsylvania with its principal place of business in Canton, Massachusetts. Plaintiffs allege that the amount in controversy exceeds $75,000.

## II. BACKGROUND

On August 11, 2000, Frank Davis, Sr., suffered a serious injury to, among other things, his left shoulder while working for his employer, South Jersey Overhead Door Company ("Overhead Door"), in Vineland, New Jersey.[3] As a result of the accident, Davis filed a claim petition in the New Jersey Division of Workers' Compensation. OneBeacon, identified in Davis's complaint as the workers' compensation insurance carrier for Overhead Door, selected and appointed Dr. Robert Dalsey, an orthopedic surgeon, to serve as the authorized treating physician to care for and treat Davis.[4]

[3]   As set forth below, given that the present matter comes before the Court by way of PA General's Motion to Dismiss, plaintiffs' allegations are accepted as true and viewed in a light most favorable to plaintiffs, as is required when reviewing a motion to dismiss. *See Evancho v. Fisher,* 423 F.3d 347, 350 (3d Cir.2005).

[4]   On November 5, 2001, Davis suffered another work-related injury for which Dr. Dalsey, at the behest of a different insurer, treated him. According to Davis and the workers' compensation judge, the November 2001 accident did not affect Davis's shoulder. Therefore, it appears that the November 2001 accident and its consequent injuries are irrelevant for purposes of this Opinion.

On March 16, 2005, Dr. Dalsey evaluated Davis and recommended an MRI exam of his left shoulder. About a week later, avers Davis, "The Honorable Robert F. Butler, Judge of Compensation, entered an Order Approving Settlement of Plaintiff['s] ... claim for permanent disability benefits arising out of the August 11, 2000 accident, awarding 40% permanent partial total disability **\*333** including, *inter alia,* 2.5 % permanent partial total disability stemming from tendinopathy and impingement syndrome of the left shoulder."

On March 15, 2006, Dr. Dalsey recommended that Davis undergo surgery for his left shoulder as a result of the August 2000 accident. Despite being advised of Dr. Dalsey's recommendation and several requests made by Davis, OneBeacon refused to authorize the surgery. Consequently, on September 20, 2006, Davis filed a Motion for Temporary Disability and Medical Benefits with the Division of Workers' Compensation (or, "the Division"), seeking to compel the treatment recommended by Dr. Dalsey along with temporary benefits.

On April 18, 2007, Judge Butler rendered his decision, finding that OneBeacon was obligated to authorize the shoulder surgery as recommended by Dr. Dalsey, its authorized treating physician, and that OneBeacon's refusal to authorize the surgery violated Section 15 of the Workers' Compensation Act (or, "the Act"), N.J.S.A. 34:15–1 *et seq.,* and was unconscionable. In reaching its conclusion that OneBeacon's violation of the Act was unconscionable, the Judge explained that OneBeacon's denial of surgery was not predicated on any sound medical basis, was made with disregard to the seriousness of Davis's injury and the possible consequences he could suffer due to a delay in treatment, and defied the recommendations of OneBeacon's own authorized physician.

Further, the Judge suggested that, apart from the Act, Davis could pursue a civil remedy for his pain and suffering in another court.

> The additional and prolonged pain and obvious mental anguish of the Petitioner that has been caused by the appalling and unconscionable conduct of OneBeacon are neither cognizable nor compensable based upon the provisions of the Workers' Compensation Act. Only the nature and extent of the Petitioner's permanent disability following his recuperation from surgery is compensable in this court.
>
> As regrettable as that may be, the Petitioner is not left without a possible source of redress against OneBeacon for his pain and suffering. The Court suggests that Petitioner's counsel direct his attention to the case of *Rothfuss versus Bakers Mutual Insurance Company of New York,* 107 N.J.Super. 189, 257 A.2d 733 (1969).

In apparent response to the Judge's opinion, Davis filed a two-count complaint in the Superior Court of New Jersey on April 13, 2009. In the first count, Davis alleges that OneBeacon's egregious refusal to authorize necessary medical treatment has caused him "injuries that are not compensable under the Workers' Compensation Act, including but not limited to, pain and suffering, deterioration, worsening, wasting, inability to return to work sooner, prolonged pain and mental anguish and severe emotional distress." Further, in the second count, Davis's wife, Carolyn, asserts a claim for loss of consortium. Together, Davis and his wife seek compensatory and punitive damages, among other expenses.

On August 17, 2009, defendant removed Davis's suit to this Court. In so doing, defendant explained that Davis incorrectly named OneBeacon as the defendant in this case when in fact the proper defendant is PA General, a Pennsylvania corporation with its principal place of business in Massachusetts. According to PA General, there is no legal entity known as "OneBeacon Insurance Group"; rather, PA General is the entity that issued the insurance policy to Overhead Door.

**\*334** On August 28, 2009, PA General moved to dismiss Davis's complaint. Soon thereafter, Davis cross-moved to remand the case to the New Jersey Superior Court.

Presently before the Court are PA General's Motion to Dismiss and Davis's Cross-motion to Remand to State Court.

### III. DISCUSSION

#### A. Plaintiff Davis's Cross-motion to Remand

The Court will first address Davis's Cross-motion to Remand to the State Court. As a preliminary matter, Davis argues that this case should be remanded to the New Jersey Superior Court because diversity jurisdiction does not exist here. In particular, Davis asserts that, like he and his wife, OneBeacon, the named defendant, is a citizen of the State of New Jersey, thereby stripping this Court of subject matter jurisdiction in this case. Bolstering his claim that OneBeacon is the workers' compensation insurance carrier for Davis's employer and, thus, the appropriate defendant, Davis points to the Answer to his claim petition in the Division of Workers' Compensation, the Division's Order Approving Settlement, and his service of process in this action—all of which implicated OneBeacon and its New Jersey address, and not PA General. Davis notes that PA General has not identified itself as the workers' compensation insurance carrier for Davis's employer until filing the Notice of Removal and that both PA General and OneBeacon are licensed to conduct business in New Jersey.

Moreover, Davis contends that, in accordance with 28 U.S.C. § 1332(c)(1), the workers' compensation insurance carrier for Davis's employer must be deemed a citizen of the state of which the insured is a citizen—in this case, New Jersey. Finally, Davis submits that the issues in this case, steeped in New Jersey law, are novel and should be addressed by the New Jersey state judiciary. Hence, in the event that this Court has jurisdiction over this matter, Davis asks the Court to decline exercising it.

PA General counters that OneBeacon is not a legal entity but a trade name for a group of affiliated companies, as it had attempted to explain to Davis in a pair of letters dated September 13, 2007 and October 4, 2007, respectively. Regardless of whether Davis may sue PA General under the guise of OneBeacon, PA General submits that it is the workers' compensation insurance carrier for Davis's employer, and for purposes of diversity jurisdiction, it is incorporated in the Commonwealth of Pennsylvania with its principal place of business in Massachusetts—facts, says PA General, that are undisputed by Davis. Additionally, PA General challenges Davis's interpretation of 28 U.S.C. § 1332(c)(1). By PA General's assessment, the citizenship of its insured is not attributable to PA General in this case because Davis's claims are directed at alleged misconduct committed by PA General as opposed to any misconduct on behalf of the insured employer. Finally, PA General

asserts that if this Court may properly exercise jurisdiction over this case, it may not evade its responsibility to do so simply because Davis believes the case implicates important state law.

[1] [2] A defendant may remove a suit in state court to a federal district court pursuant to 28 U.S.C. § 1441 and in accordance with the procedures set forth by 28 U.S.C. § 1446. However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to the state court. 28 U.S.C. § 1447(c). As the party removing the case, the defendant bears the burden to demonstrate that at **\*335** all stages of litigation there is federal subject matter jurisdiction over the case. Samuel–Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 396 (3d Cir.2004). Further, "[t]he district court must resolve all contested issues of fact and uncertainties of law in favor of the plaintiff." Bank of N.Y. as Tr. for the Certificate Holders CWABS, Inc. v. Ukpe, 2009 WL 4895253, at \*4, 2009 U.S. Dist. LEXIS 115557, at \*11 (D.N.J. Dec. 9, 2009) (citing Boyer v. Snap–On Tools Corp., 913 F.2d 108, 111 (3d Cir.1990)). As such, "the court should strictly construe removal statutes and resolve all doubts in favor of remand." Id. (citing Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29 (3d Cir.1985)).

The Court turns its attention to this case. First of all, as stated in 28 U.S.C. § 1332(c)(1), "in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen." Based on this jurisdictional statute, Davis believes that defendant must be deemed a citizen of New Jersey because Overhead Door, for whom defendant is the workers' compensation insurance carrier, is not a defendant in this suit and is a citizen of New Jersey. The Court disagrees with Davis's analysis.

[3] [4] A "direct action," as contemplated by 28 U.S.C. § 1332(c)(1), exists only if "the cause of action against the insurance company is of such a nature that the liability sought to be imposed could be imposed against the insured." McGlinchey v. Hartford Accident & Indem. Co., 866 F.2d 651, 653 (3d Cir.1989) (citations and internal quotation marks omitted). For that reason, although Overhead Door is not named as a defendant, its citizenship is not ascribed to defendant for jurisdictional purposes because in this case Davis's cause of action could only be brought against the insurer who refused to abide by its own authorized treating physician's recommendations, and not Davis's employer who was uninvolved in the insurer's alleged wrongdoing. Such a procedural posture does not qualify as a "direct action" under 28 U.S.C. § 1332(c)(1). See Travelers Indem. Co. v. Bailey, 557 U.S. 137, 129 S.Ct. 2195, 2200 n. 2, 174 L.Ed.2d 99 (2009) (explaining that "[a] true 'direct action' suit is a lawsuit by a person claiming against an insured but suing the insurer directly instead of pursuing compensation indirectly through the insured," and that suits seeking to "hold [the insurer] liable for independent wrongdoing rather than for a legal wrong by [the insured] ... are not direct actions in the terms of strict usage" (citation, internal quotation marks, and brackets omitted)); Myers v. State Farm Ins. Co., 842 F.2d 705, 707 (3d Cir.1988) (finding that a suit between an insured, as an injured party, and an insurer is not a "direct action" as contemplated by 28 U.S.C. § 1332(c)(1) because the insurer's status is not that of a "payor of a judgment based on the negligence of one of its insureds" (citation and internal quotation marks omitted)); see also Walborn v. Chun Szu, 2009 WL 983854, at \*3, 2009 U.S. Dist. LEXIS 29156, at \*\*8–9 (D.N.J. Apr. 7, 2009) (stating that "the term 'direct action' does not encompass cases such as this one, where an insured brings suit against his or her own insurance company for benefits that were allegedly withheld" because "it is limited to tort actions in which an injured party brings suit directly against the tortfeasor's insurance company").

Second, the Court agrees with PA General that no matter the significance or rareness of the New Jersey law at issue in this case, if diversity jurisdiction enables PA General to remove this case and empowers **\*336** this Court to hear this dispute, the Court shall do so. Davis proffers no persuasive legal support for his insistence that this Court decline jurisdiction because the case may involve matters of first impression in New Jersey jurisprudence. Absent any such authority, the Court is duty-bound to perform its judicial function and to adjudicate a case that is properly before it.

Third, and finally, the Court must determine whether OneBeacon is a properly named defendant in this case and whether its citizenship destroys diversity jurisdiction, as Davis contends. Based on the arguments and proofs submitted, the Court agrees with PA General that it, alone, is the properly named defendant in this case and that the Court may exercise diversity jurisdiction over this case.

Again, PA General asserts that OneBeacon is merely a trade name for an non-existent entity and that PA General, itself, was the workers' compensation insurance carrier for Davis's employer. In support of its argument, PA General presents the affidavit of Dennis R. Smith, the Secretary of PA General.[5] Smith attests that OneBeacon is not a legal entity, but rather "a

trade name for a group of affiliated companies, including [PA General]." Smith adds, OneBeacon "has no assets or obligations, no employees, and no business location, ... no charter, by-laws or articles, no mailing address, no bank account and has never transacted any business ... has no board of directors or similar organization," and "does not and cannot issue insurance policies, collect policy premiums or administer claims." Further, Smith states that "[t]he insurance company providing coverage under the policy in question with South Jersey Overhead Door was [PA General]."

5   To resolve a factual question pertaining to jurisdiction and to assure itself of its authority to hear a case, the Court may examine facts and evidence outside of the pleadings. See *Robinson v. Dalton,* 107 F.3d 1018, 1021 (3d Cir.1997).

[5] Additionally, PA General furnishes a copy of the insurance policy it issued to Overhead Door, which, although written beneath OneBeacon letterhead,[6] identifies PA General as the insurance issuer. Similarly, a copy of the Workers Compensation Policy for Overhead Door sets forth on its cover: "Insured by: Pennsylvania General Insurance Co." Further, PA General provides copies of letters dated September 13, 2007 and October 4, 2007, both written on behalf of PA General and addressed to Davis's counsel approximately eighteen months before Davis filed his complaint in state court. The letter dated September 13, 2007 explains that OneBeacon is not a legal entity but a trade name and that PA General is the insurer at issue in this case. The letter dated October 4, 2007 reiterates PA General as the proper defendant.

6   That an entity's letterhead is used on documents or correspondences, such as an insurance contract, does not necessarily render that entity a party to litigation. See, e.g., *Totty v. Chubb Corp.,* 455 F.Supp.2d 376, 381–82 (W.D.Pa.2006); *Lockhart v. Fed. Ins. Co.,* 1998 WL 151019, at *3, 1998 U.S. Dist. LEXIS 4046, at *8 (E.D.Pa. Mar. 31, 1998).

In response, Davis reminds the Court that OneBeacon, not PA General, was continuously identified as the workers' compensation insurance carrier throughout the administrative proceedings in the Division of Workers' Compensation and that Davis effected service on OneBeacon in New Jersey. In addition, Davis presents the Court with documentation acquired from the New Jersey Department of Banking and Insurance, which suggests that both OneBeacon and PA General are licensed to do business in New Jersey.

**\*337** In light of the parties' submissions, the Court finds that diversity jurisdiction does exist here. Apart from alleging otherwise, Davis has not offered any evidence to sufficiently undermine the veracity of those representations made by Smith and PA General. That OneBeacon was referred to as the insurance carrier in the state administrative proceedings or served process does not prove that OneBeacon is a legal entity who insured Davis's employer.[7] The same may be said of the "Certificates of Authority" issued by the Department of Banking and Insurance. Several of the certificates identify OneBeacon and declare that it "is licensed to transact" the business of insurance in New Jersey. In and of itself, these documents do not convince the Court that PA General's representations are frivolous or false. Davis has not demonstrated that the "Certificates of Authority" denominate the entity named as a legal entity subject to suit in New Jersey or, in other words, that an entity named does, in fact, exist and is not merely a trade name. To the extent that the certificates offer any insight into the nature of the parties' relationships in this case, the Court notes that on each certificate, like PA General, OneBeacon is associated with either Philadelphia, Pennsylvania or Canton, Massachusetts—which are synonymous with PA General's state of incorporation and principal place of business, leading to the inference that OneBeacon and PA General are interrelated as suggested by PA General.

7   It is reasonable to assume that OneBeacon was frequently referenced in the state administrative proceedings because OneBeacon's name often appears on the documents identifying PA General as Overhead Door's insurance carrier or because PA General is part of the affiliation of companies nominally referred to as OneBeacon.

[6] [7] "[A] defendant that is a non-existent business entity is not required to join in or consent to the removal of a case, nor is the citizenship of the non-existent entity considered for purposes of complete diversity of citizenship." *Newsom v. Caliber Auto Transfer of St. Louis, Inc.,* 2009 WL 4506298, at *2, 2009 U.S. Dist. LEXIS 110706, at *4 (S.D.Ill. Nov. 26, 2009). Because the Court concludes, based on the record before it, that OneBeacon is a non-existent entity, removal to this Court need not depend upon OneBeacon's participation, consent, or citizenship.[8] See, e.g., *Frith v. Blazon–Flexible Flyer, Inc.,* 512

F.2d 899, 900 (5th Cir.1975) (noting that district court denied motion to remand because named defendant "was only a trade name and not a legal entity"); *Schwartz v. CNA Ins. Co.,* 2005 WL 3088570, at *4, 2005 U.S. Dist. LEXIS 30320, at *10 (N.D.Ohio Nov. 17, 2005) (denying motion to remand because named defendants were trade names for conglomerate of insurance companies and real parties in interest were insurance companies identified in insurance contracts).

8     There is no need to address the doctrine of fraudulent joinder because the Court accepts PA General's representations that OneBeacon is a non-existent entity.

For the reasons stated above, Davis's Cross-motion to Remand is denied, and the Court will exercise diversity jurisdiction over this case.

### B. PA General's Motion to Dismiss

PA General seeks to dismiss Davis's common law cause of action concerning the denial of his medical treatment. According to PA General, Davis's common law cause of action is barred by both the statute of limitations and New Jersey's Workers' Compensation Act. The Court will address each argument in turn.

#### *338 1. Standard for Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher,* 423 F.3d 347, 350 (3d Cir.2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

[8] A district court, in weighing a motion to dismiss, asks " 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.' " *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 563 n. 8, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)); *see Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' ...." (citation omitted)). Under the *Twombly /Iqbal* standard, the Third Circuit has instructed a two-part analysis. First, a claim's factual and legal elements should be separated; a "district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210–11 (3d Cir.2009) (citing *Iqbal,* 129 S.Ct. at 1950).

[9] Second, a district court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' " *Id.* at 211 (quoting *Iqbal,* 129 S.Ct. at 1950). "[A] complaint must do more than allege the plaintiff's entitlement to relief." *Id.; see Phillips v. County of Allegheny,* 515 F.3d 224, 234 (3d Cir.2008) ("The Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955)). The defendant bears the burden of showing that no claim has been presented. *Hedges v. U.S.,* 404 F.3d 744, 750 (3d Cir.2005).

#### 2. Statute of Limitations

PA General argues that Davis's cause of action is predicated upon the alleged personal injuries he suffered and, thus, is subject to New Jersey's two-year statute of limitations. By PA General's assessment, Davis's claim accrued no later than

September 20, 2006, the day on which Davis filed the Motion for Temporary Disability and Medical Benefits. As of that date, PA General posits, Davis knew of PA General's refusal to authorize his surgery in spite of Dr. Dalsey's recommendation. Because Davis did not file this suit until April 2009, PA General concludes that his claim is untimely and barred by the statute of limitations. Further, PA General challenges any assertions made by Davis that the doctrines of equitable tolling or the discovery rule apply in this context to save Davis's claim.

In response, Davis argues that his common law cause of action did not accrue until he exhausted his administrative remedies on April 18, 2007, the day when the workers' compensation judge ruled on Davis's Motion for Medical and Temporary Benefits. Second, Davis contends that his claim, analogous to a tortious injury to legislatively established rights or a breach of the covenant of good faith, is subject to **\*339** a six-year statute of limitations. Lastly, Davis contends that the doctrine of equitable tolling and the discovery rule apply in this case.

To adequately adjudicate the issues presented in this case, the Court must look to the origins of this unusual common law cause of action. In *Rothfuss v. Bakers Mutual Insurance Company of New York,* 107 N.J.Super. 189, 257 A.2d 733 (1969), the Appellate Division of New Jersey considered "whether an employee who suffers a compensable accident can maintain a common law action against his employer's insurance carrier for alleged wrongful and wanton acts of such carrier, resulting in injuries to the employee, which are not compensable under the Workmen's Compensation Act." *Id.* at 734. The plaintiff in that case was injured on the job, but the defendant, his employer's insurer, refused to provide medical treatment. *Id.* at 735. Sometime after the injury, the plaintiff agreed to allow the defendant's physician to examine and treat him. *Id.* Though the physician concluded that the plaintiff's condition required an operation, the defendant repeatedly refused to authorize the procedure. *Id.* As a result, the plaintiff brought suit, but the trial court, finding that the Workmen's Compensation Act provided the exclusive remedy for his claims, dismissed the action. *Id.* Subsequently, the Appellate Division affirmed the trial court's ruling with respect to the plaintiff's claims charging the defendant with "fail[ure] to furnish prompt and adequate medical treatment." *Id.* The panel reasoned that "[t]he remedy for such alleged wrongs lies within the provisions of the Workmen's Compensation Act, N.J.S.A. 34:15–15 and 34:15–15.1, and a suit at common law cannot be maintained." *Id.*

The Appellate Division, however, reversed the trial court's dismissal of those claims asserting that the defendant, in spite of voluntarily examining and treating the plaintiff with its own physician in the hospital, "wrongfully, willfully and maliciously caused the [plaintiff] to leave the hospital, resulting in the unnecessary suffering of prolonged pain and mental anguish." *Id.* at 735–36. Looking to the New Jersey workers' compensation statutory law and an assortment of case law, the panel concluded that a common law remedy for such injuries and suffering are not compensable under the Workmen's Compensation Act and, thus, are not statutorily barred. *Id.* at 736–37.

Subsequent to *Rothfuss,* the Appellate Division has further defined the common law cause of action enunciated in that case, describing it as arising "when the [insurance] carrier failed to provide medical benefits that its own physician had deemed necessary." *Flick v. PMA Ins. Co.,* 394 N.J.Super. 605, 928 A.2d 54, 60 (2007). From *Rothfuss* and its spare progeny, the Court must determine whether Davis's claim survives the statute of limitations. Central to this endeavor is determining when Davis's cause of action accrued.

[10] The statute of limitations for a common law cause of action "generally accrues from the date of the negligent act or omission." *R.A.C. v. P.J.S., Jr.,* 192 N.J. 81, 927 A.2d 97, 106 (2007) (citation and internal quotation marks omitted). But, pursuant to the "discovery rule," "the limitations period does not commence until the injured party actually discovers or should have discovered through reasonable diligence the fact essential to the cause of action." *Id.* This case, however, is unique insofar as Davis's claim, although not subsumed by the Workers' Compensation Act,[9] is interrelated to his action before the **\*340** Division for Workers' Compensation in which Davis sought to compel defendant to provide medical treatment and benefits to him.

---

[9]   The relationship between Davis's claim and the Workers' Compensation Act will be discussed in more detail below.

---

[11] N.J.S.A. 34:15–15 governs an employer's obligation to provide necessary medical treatment to an injured employee. "The Division's control and superintendence of the employer's treatment obligation is emphasized in that statute." *Cortes v. Interboro Mut. Indem. Ins. Co.,* 232 N.J.Super. 519, 557 A.2d 1019, 1020 (1988); *see Univ. of Mass. Mem'l Med. Ctr., Inc. v. Christodoulou,* 180 N.J. 334, 851 A.2d 636, 642 (2004) (stating that "if the employer refuses to cover the medical expenses

incurred by the injured worker, the worker must file a claim petition seeking payment in the Division" (citing N.J.S.A. 34:15–15)). Consequently, the Division, which is granted "exclusive original jurisdiction of all claims for workers' compensation benefits," N.J.S.A. 34:15–49, is the proper forum in which an injured employee should initially pursue any remedies that may be available to him or her. Only after the employee litigates before the Division should he or she generally pursue any judicial relief or enforcement in the ordinary courts. See *Flick,* 928 A.2d at 55 (dismissing plaintiff's action in Superior Court because "plaintiff has failed to exhaust administrative remedies available to him before the judge of compensation").

While the Division may have been unable to litigate the particular claim now before this Court, it is reasonable that the Division should have had the first opportunity to address the comprehensive issues underlying both this case and Davis's administrative action. See *R.A.C.,* 927 A.2d at 106 ("The limitations period [for a common law cause of action] is not construed strictly, but rather flexibly, guided by equitable principles to achieve a just end."). It makes sense, then, that Davis's cause of action did not necessarily accrue until after the compensation judge issued his opinion, awarded Davis whatever relief he deemed appropriate, and concluded his involvement in this case. To have required Davis to bring this suit during the pendency of his administrative proceedings is to disrespect and possibly trample upon the primacy accorded to the Division's jurisdiction and authority. See *Flick,* 928 A.2d at 59 ("The doctrine of exhaustion is sensibly designed to allow administrative bodies to perform their statutory functions in an orderly manner without preliminary interference from the courts." (citation and internal quotation marks omitted)).

[12] For those reasons, Davis's cause of action accrued on April 18, 2007, the day when the compensation judge ordered defendant to provide medical and temporary disability benefits, along with other relief, and concluded his involvement in this case.[10] Therefore, regardless of whether the *Rothfuss* cause of action is subject to a two-year or six-year statute of limitations, Davis's present suit, filed in the Superior Court on April 14, 2009, was timely commenced.

[10]   Alternatively, even if the accrual date were September 20, 2006—*i.e.,* when Davis filed his Motion for Medical and Temporary Benefits—for the reasons stated above, the principles of equitable tolling would still save Davis's case. Before Davis was obligated to pursue his common law action, he was entitled to receive, and the Division was entitled to issue, an opinion addressing defendant's denial of medical treatment and benefits.

Accordingly, for the foregoing reasons, the statute of limitations does not bar Davis's claim. The Court must then examine Davis's claim further.

### *341 3. *Rothfuss* and the Workers' Compensation Act

PA General challenges the viability of Davis's common law cause of action, as articulated in *Rothfuss.* First, referring to more recent precedent, PA General notes that *Rothfuss* was decided prior to the enactment of N.J.S.A. 34:15–28.1 and N.J.A.C. 12:235–3.14, which empower the Division of Workers' Compensation with greater measures to enforce the Workers' Compensation Act. The more expansive remedies set forth in the Act and its accompanying regulations, opines PA General, have obviated the cause of action enunciated in *Rothfuss* or, because he has not exhausted all administrative remedies, at least preclude Davis's claim in this case. Further, PA General submits that Davis's claim is predicated upon the same misconduct for which the workers' compensation judge, pursuant to the Act, awarded disability benefits, assessed a twenty-five percent penalty against PA General, and ordered it to pay attorney's fees and costs. Thus, again, PA General posits that Davis's current claim is barred by the Act, which has already provided him with a remedy for PA General's unreasonable delay in authorizing his shoulder surgery.

In response to PA General's motion, Davis contends that as an insurer, PA General cannot rely upon an employer's immunity from tort liability under the Act. Moreover, Davis distinguishes between temporary disability benefits and medical benefits. According to Davis, the workers' compensation statutory and regulatory scheme offers recourse for an insurer's bad faith denial of temporary disability benefits, but entails no such remedy for the denial of medical benefits. For that reason, Davis surmises, the compensation judge's issuance of awards under N.J.S.A. 34:15–28.1 do not preclude relief under a *Rothfuss* cause of action. Davis also concludes that in accordance with N.J.A.C. 12:235–3.14(a)(5), the compensation judge referred

this matter for further proceedings, specifically this suit.

[13] [14] Absent limited exceptions, the Workers' Compensation Act, N.J.S.A. 34:15–1 et seq. provides the exclusive remedy for an employee who suffers a work-related injury. Christodoulou, 851 A.2d at 643 (citing N.J.S.A. 34:15–8). Moreover, in New Jersey, "there is no direct action available to an injured employee against the employer, or against the employer's insurer when the insurer takes no action beyond that which is required under the Act and the carrier's insurance policy." Basil v. Wolf, 193 N.J. 38, 935 A.2d 1154, 1165 (2007). Under such circumstances, injured employees must pursue their exclusive remedies in the Division of Workers' Compensation, "even when an employer, acting through its insurer, does not furnish necessary medical treatment when requested to do so by an employee." Id.; see Rothfuss, 257 A.2d at 735 (dismissing claim that insurer failed "to furnish prompt and adequate medical treatment"). On the contrary, "[a]n action at law has been permitted against a workers' compensation carrier when the carrier has performed services that go beyond providing workers' compensation coverage to an employer." Basil, 935 A.2d at 1165.

The Rothfuss common law cause of action appears to fall within the purview of this narrow exception to exclusive remedies under the Workers' Compensation Act. See id. at 1167 n. 10 (noting that "an insurer's affirmative acts can cause injuries that are not compensable solely within the workers' compensation scheme," and that in Rothfuss, "the plaintiffs brought separate claims that alleged that the insurer negligently ignored the advice of its own medical expert when making determinations about an injured worker's treatment. *342 Those claims were held to be actionable and not barred by the workers' compensation exclusive remedy" (citations omitted)); see also Rothfuss, 257 A.2d at 736 (supporting its holding with citation to Mager v. United Hospitals of Newark, 88 N.J.Super. 421, 212 A.2d 664 (1965), aff'd o.b., 46 N.J. 398, 217 A.2d 325 (1966), in which the court found insurance carrier could be liable "if its acts negligently caused harm to the employee which are alleged to have occurred in the course of an independent undertaking not under the insurance policy or the act"). Consistent with Rothfuss, Davis alleges that PA General "frivolously, negligently, willfully, wantonly and maliciously failed or refused to authorize the surgery recommended by" its own authorized treating physician. Assuming arguendo that the factual circumstances of this case mirror those in Rothfuss, the only question to answer at this time is whether the Rothfuss common law cause of action survives subsequent amendments to the workers' compensation statutory and regulatory scheme.

In addition to Rothfuss, two other cases are significant to the Court's analysis to resolve this issue. First, in Dunlevy v. Kemper Insurance Group, 220 N.J.Super. 464, 532 A.2d 754 (1987), the plaintiff "sought compensatory and punitive damages for emotional and mental anguish sustained when defendant [the insurance carrier for the plaintiff's employer] unilaterally terminated her temporary disability benefits required by a compensation court award." Id. at 755. The plaintiff alleged that the insurer "negligently, willfully, wantonly, fraudulently and with intentional bad faith refused to make payments," resulting in "mental, emotional and 'physical' anguish." Id. Affirming the trial court's dismissal, the Appellate Division held that N.J.S.A. 34:15–28.1 provided the sole remedy, to the exclusion of any common law redress, for an insurer's intentional and wrongful termination of temporary disability benefits. Id. at 755–56. In support of its holding, the panel cited to Rothfuss and its dismissal of the plaintiff's claims regarding the insurer's failure to provide medical benefits. Id. at 756. The panel explained:

> The holding [in Rothfuss] recognized a correlation between the specificity of redress in N.J.S.A. 34:15–15 and the specificity of redress in N.J.S.A. 34:15–8. By making the comparison, the court, in essence, said any specific remedy for enforcement of workers compensation law must delineate the full scope of redress. In absence of redress alternatives, as occurred under N.J.S.A. 34:15–8 allowing common law redress for intentional acts, the worker is limited to the specific redress of the remedial provision.

> The reasoning of Rothfuss is applicable here. The Legislature recognized the need to impose sanctions when the party responsible for providing temporary disability benefits unreasonably or negligently fails to do so. It therefore provided the specific remedy of penalties in N.J.S.A. 34:15–28.1. Had the lawmakers intended common law redress also be available for intentional conduct in failing to provide benefits, it could have readily done so in the manner of N.J.S.A. 34:15–8. The legislative omission persuades us that the lawmakers intended the penalty provisions of N.J.S.A. 34:15–28.1 to be the exclusive remedy.

Id.

PA General cites to *Dunlevy* for the broad proposition that the Legislature's adoption of N.J.S.A. 34:15–28.1 reflects the full spectrum of relief legislatively intended for litigants to seek against insurers and that any common law redress is therefore **\*343** categorically preempted and foreclosed. Based on a plain reading of *Dunlevy* and N.J.S.A. 34:15–28.1, PA General's assertion sweeps too broadly. *Dunlevy* addresses a plaintiff's common law cause of action seeking relief for an insurer's improper termination of court-ordered temporary disability benefits. Unlike *Dunlevy,* this case does not involve temporary disability benefits or the wrongful termination of court-ordered benefits. Rather, this case focuses on PA General's alleged refusal to approve a medical procedure that its own physician recommended.

Further, based on its clear and unambiguous language, N.J.S.A. 34:15–28.1 provides a remedy for an insurer's refusal or denial of temporary disability benefits. N.J.S.A. 34:15–28.1, entitled "Delay or refusal in payment of temporary disability compensation; penalty" provides:

> If a self-insured or uninsured employer or employer's insurance carrier, having actual knowledge of the occurrence of the injury, or having received notice thereof such that temporary disability compensation is due pursuant to R.S. 34:15–17, unreasonably or negligently delays or refuses to pay temporary disability compensation, or unreasonably or negligently delays denial of a claim, it shall be liable to the petitioner for an additional amount of 25% of the amounts then due plus any reasonable legal fees incurred by the petitioner as a result of and in relation to such delays or refusals. A delay of 30 days or more shall give rise to a rebuttal presumption of unreasonable and negligent conduct on the part of a self-insured or uninsured employer or an employer's insurance carrier.

The statute does not purport to address an insurer's refusal to authorize medical treatment recommended by its own physician.[11]

---

[11] In *Flick v. PMA Insurance Company,* 394 N.J.Super. 605, 928 A.2d 54 (2007), the Appellate Division was cautious to note that, although the case involved the delay or denial of medical benefits, the court could not "tell for certain from the sparse record whether or not [the defendant-insurer's] alleged noncompliance implicates any temporary disability compensation covered by N.J.S.A. 34:15–28.1." *Id.* at 59 n. 4. If the case did not implicate temporary disability benefits, and thus involved only medical benefits, the court concluded that exhaustion of administrative remedies was still necessary, but only under N.J.A.C. 12:235–3.14. *Id.* This footnote suggests an exclusive relationship between N.J.S.A. 34:15–28.1 and temporary disability benefits, without any connection between the provision and medical benefits.

---

In light of *Rothfuss* and *Dunlevy,* another relevant decision is *Flick v. PMA Insurance Company,* 394 N.J.Super. 605, 928 A.2d 54 (2007). In that case, the plaintiff filed a suit in the New Jersey Superior Court against his employer's workers' compensation administrator while his disability claim was still pending before the Division of Workers' Compensation. *Id.* at 55. In his suit, the plaintiff alleged that the defendant improperly delayed and denied medical treatment and disability benefits and disregarded the orders of the compensation judge, leading to his pain and suffering, the worsening of his condition, and financial harm. *Id.* at 55–56. The Appellate Division affirmed the trial court's dismissal of the action, concluding that the plaintiff failed to exhaust his administrative remedies, "particularly the numerous forms of relief and sanctions set forth at N.J.S.A. 34:15–28.1 and at N.J.A.C. 12:235–3.14." *Id.* at 55.

In reaching its decision, the panel discussed *Rothfuss,* explaining that in that case the court "recognized an employee's limited right to maintain a common-law cause of action against an employer's insurance **\*344** carrier for willful failure to provide medical benefits in a circumstance where it 'voluntarily undertook to examine and treat an injured employee by its own doctor ....' " *Id.* at 59 (quoting *Rothfuss,* 257 A.2d at 735). In particular, the court in *Rothfuss,* the panel clarified, "found that when the carrier failed to provide medical benefits that its own physician had deemed necessary, it opened the door to a common-law cause of action." *Id.* at 60 (citing *Rothfuss,* 257 A.2d at 735–36). Distinguishing *Rothfuss* from its own case, the panel noted that the defendant-insurer "has not undertaken to provide its own physician to plaintiff, as in *Rothfuss,* but instead has allegedly hindered plaintiff's ability to gain coverage for medical procedures to be performed by third-party doctors." *Id.* Additionally, the panel recognized that "the expansive list of enforcement measures in the Division, first enacted in 1997 and now codified at N.J.A.C. 12:235–3.14, did not exist at the time *Rothfuss* was decided." The panel also referenced *Dunlevy* to further illustrate the exclusivity of the workers' compensation scheme. *Id.*

Based on this Court's reading of *Flick,* a plaintiff may still advance the limited cause of action articulated in *Rothfuss,* but only under the precise circumstances described in *Rothfuss, Flick,* and other precedent.[12] *See, e.g., Basil,* 935 A.2d at 1167 n. 10 (noting that claims in *Rothfuss* "were held to be actionable and not barred by the workers' compensation exclusive remedy" when "the insurer negligently ignored the advice of its own medical expert when making determinations about an injured worker's treatment"); *Flick,* 928 A.2d at 60 (noting that claim in *Rothfuss* arose "when the [insurance] carrier failed to provide medical benefits that its own physician had deemed necessary"); *Cortes,* 557 A.2d at 1021 (noting that *Rothfuss* involved a compensation carrier's refusal to authorize operation recommended by its own physician "who was employed by the carrier," and "that the jurisdiction of our law courts was posited on the carriers' undertaking to treat, a duty not imposed on them by the Workers' Compensation Act" (emphasis omitted)). It appears that *Rothfuss* awards a plaintiff for the damages he or she suffers as a result of an insurer's affirmative undertaking to examine and treat the plaintiff with its own physician and then refusing to abide by its own physician's recommendations. While the end result may include an unreasonable or negligent delay or denial of medical benefits—which would seem to fall within the purview of the Workers' Compensation Act—it is the insurer's actions beyond its statutory obligations that creates a basis for common law liability. Therefore, without more authority to the contrary, the Court cannot categorically hold that the *Rothfuss* cause of action is no longer available under its limited set of circumstances.

[12] While the Workers' Compensation Act and its regulations do not preclude a cause of action under *Rothfuss* entirely, they have circumscribed the scope of the claim.

Nevertheless, PA General also points to N.J.A.C. 12:235–3.14 as a reason why Davis's *Rothfuss* claim should be precluded.[13] As explained in *Flick,* N.J.A.C. 12:235–3.14 "provides that numerous remedies may be imposed by the Division for an employer or other party's 'unreasonable failure to comply with any written order of a Judge of Compensation or with any requirement of statute or regulation ....' " **\*345** *Flick,* 928 A.2d at 57 (quoting N.J.A.C. 12:235–3.14). Among those remedies are the power to:

[13] Since the submission of PA General's Motion to Dismiss and Davis's response, it appears that N.J.A.C. 12:235–3.14 has been repealed. However, the regulation was in effect at the time when the parties were before the Division of Workers' Compensation.

1. Dismiss or grant the motion or application for enforcement of order;

2. Close proofs, dismiss a claim or suppress a defense;

3. Exclude evidence;

4. Order costs or reasonable expenses, including interest or monies due and/or attorney's fees, to be paid to the Second Injury Fund of the State of New Jersey or an aggrieved party, attorney, or other representative of a party;

5. Refer matters for other administrative, civil or criminal proceedings; or

6. Take other appropriate case-related action.

N.J.A.C. 12:235–3.14(a). The regulation further stipulates:

> (b) A party or the court on its own motion may move for enforcement of an order. After receiving notice of an application for enforcement, a party shall file a written response to the application within 10 days of such notice. The response shall include the reasons for any noncompliance and manner and time periods to ensure compliance with the order at issue. Before taking any action under (a) above, the judge of Compensation shall hold a hearing on the appropriateness of the action and the reasonableness of any compensatory levy or sanction.

N.J.A.C. 12:235–3.14(b).

Although this regulation may expand the remedies and means of enforcement available to compensation judges, nothing in its provisions would appear to vitiate the *Rothfuss* cause of action. The primary function of the regulation, it seems, is to empower compensation judges with the ability to enforce their own orders and judgments and to further vindicate the workers' compensation statutory and regulatory scheme. In this case, however, PA General has not disobeyed a compensation judge's order nor does Davis seek to enforce such an order. Rather, at the suggestion of the compensation judge, Davis is pursuing a cause of action that the compensation judge, himself, acknowledged as being independent of the Workers' Compensation Act. Distinct from the substance and intent of N.J.A.C. 12:235–3.14, the *Rothfuss* claim involves a particular set of circumstances that give rise to a cause of action for misconduct committed beyond the reach of and for injuries not compensable by the Act. Accordingly, the regulation, like N.J.S.A. 34:15–28.1, is not a bar to Davis's current suit.[14]

[14]    The Court agrees with PA General that the compensation judge in this case did not "refer" Davis's case for civil proceedings in accordance with N.J.A.C. 12:235–3.14(a)(5). Contrary to the provisions of N.J.A.C. 12:235–3.14(b), there is no suggestion that a motion was made before or by the compensation court or that a hearing was held to determine "the appropriateness of the action and the reasonableness of any compensatory levy or sanction" under Section (a) of the regulation. Moreover, the compensation judge's orders in this matter do not appear to mention any relief enumerated in N.J.A.C. 12:235–3.14. The Court nonetheless disagrees with PA General's assertion that to exhaust his administrative remedies and pursue his current action, Davis had to file a motion and request a referral from the compensation judge. Rejecting an argument similar to PA General's, the Appellate Division in *Flick* clarified that it "regard[ed] the referral mechanism of N.J.A.C. 12:235–3.14(a)(5) as an additional, but not exclusive, means for an enforcement application to be presented to the Law Division" and that "[t]he petitioner may bring such an action ... without the compensation judge's acquiescence, once administrative remedies have been exhausted." *Flick,* 928 A.2d at 57 n. 2.

[15] The Court does not opine as to whether Davis will ultimately prevail on a **\*346** *Rothfuss* cause of action. Rather, we merely find that, based on *Rothfuss* and its progeny, a limited cause of action still exists and is not categorically precluded by the Workers' Compensation Act or its regulations. Therefore, PA General's Motion to Dismiss is denied.

### IV. CONCLUSION

For the foregoing reasons, PA General's Motion to Dismiss is denied. Further, Davis's Cross-motion to Remand to the State Court is denied. An Order consistent with this Opinion will be entered.

**All Citations**

721 F.Supp.2d 329

End of Document    © 2017 Thomson Reuters. No claim to original U.S. Government Works.