IN THE U.S. DISTRICT COURT FOR NEBRASKA

| | |
|---|---|
| RYSTA LEONA SUSMAN, BOTH INDIVIDUALLY AND AS NATURAL MOTHER OF SHANE ALLEN LOVELAND, A PROTECTED PERSON, SHANE ALLEN LOVELAND, A PROTECTED PERSON BY AND THROUGH HIS TEMPORARY GUARDIAN AND CONSERVATOR, JOHN SAUDER, and JACOB SUMMERS,<br><br>Plaintiffs,<br><br>vs.<br><br>THE GOODYEAR TIRE & RUBBER COMPANY,<br><br>Defendant. | CASE NO. CI 8:18-CV-00127<br><br>**Reply Brief in Support of Kearney Towing and Repair Center, Inc.'s Petition to Intervene for Purposes of Modifying the existing Protective Order to avoid duplication of discovery in a similar case filed by Plaintiffs in Buffalo County, Nebraska concerning the same tire, truck, accident, and damages that are the subject of this litigation.** |

## I. INTRODUCTION

COMES NOW, Kearney Towing and Repair Center, Inc. ("Kearney"), pursuant to Fed. R. Civ. P. 24(b), Fed. R. Civ. P. 26(b)(3) and 26(c), and NECivR 7.1(c), and hereby replies to briefs filed by Plaintiffs and Goodyear in opposition to Kearney's Petition to Intervene in this litigation for purposes of modifying the Protective Order currently in place (see Doc. No. 66) to avoid duplicative discovery in a collateral case filed by Plaintiffs against Kearney in Nebraska state court. Plaintiffs take issue with Kearney's request that the Court prohibit depositions from Kearney's representatives in THIS case until Plaintiffs certify that they are ready to proceed with the depositions for purposes of using them in both litigations. Goodyear takes issue with Kearney's request to modify the Protective Order (Doc. No. 66) so as to allow the disclosure of evidence exchanged in this case with Kearney for use in the collateral Kearney case. Both Plaintiffs and Goodyear misconstrue the facts and legal issues to make their arguments.

## II. FACTUAL DISPUTES

Plaintiffs misconstrue Kearney's request as one for an injunction prohibiting them from taking the deposition of Kearney's corporate representative in the state court action. That is not the request before this Court. The request is asking that Kearney's representatives not be deposed

1

for this case until and unless Plaintiffs are also prepared to take those depositions for use in the Kearney case. There is no intention to prohibit Plaintiffs from taking the depositions of Kearney's representatives in either case. The sole purpose of this request is to prevent Plaintiffs from deposing Kearney's representatives on multiple occasions concerning the exact same facts and legal issues that are in dispute in both cases.

Goodyear argues that the facts and legal issues are different as between this case and the case Plaintiffs filed against Kearney in the state court action. This argument ignores the factual allegations in the two Complaints, which are nearly identical. Doc. No. 95-2 and Doc. No. 95-4. It also ignores the fact that Kearney's Answer pled multiple affirmative defenses making the defenses in the Kearney case nearly identical to (and sometimes overlapping of) the defenses asserted by Goodyear in this case, including the defenses that: (1) Plaintiffs contributed to their own damages so as to bar their recovery, (2) Plaintiffs' damages were caused by the negligence of a third-party [i.e. Goodyear] over which Kearney had no control and which would bar or reduce Plaintiffs' recovery against Kearney, (3) judicial estoppel based upon statements made by Plaintiffs in the Goodyear case preclude Plaintiffs recovery in the Kearney case, and (4) res judicata and collateral estoppel based upon the Goodyear case bar and/or reduce Plaintiffs recovery against Kearney. See Doc. No. 95-5, Kearney's Answer, Affirmative Defense Nos. 6, 8, 16, and 18; see also Neb. Rev. Stat. § 25-21,185.11. Accordingly, Goodyear's representation that "documents regarding the design or manufacture of the tire are not relevant to the claims or defenses in the Buffalo County case" fails to appreciate the defenses being asserted by Kearney, particularly Kearney's defense that Goodyear's product/negligence was the proximate cause of Plaintiffs damages.

### III. REPLY TO PLAINTIFFS' LEGAL ARGUMENTS

#### a. This Petition does not ask this Court to limit discovery in the Kearney case

The first argument presented by Plaintiffs in opposition to Kearney's Motion is fundamentally flawed because it suggests that Kearney is seeking this Court's intervention or oversight in the state court action. This is just plain inaccurate. The Protective Order sought through this Petition is in response to the subpoenas issued by Goodyear from the U.S. District Court of Nebraska to Kearney's representatives/employees seeking their depositions for use in this federal case. Doc. No. 95-7 thorugh 95-10, subpoenas issued by Goodyear to Kearney.

Even the case law cited by Plaintiffs confirms that this Motion for a Protection Order is

properly before this Court. See *Kearney v. Jandernoa*, 172 F.R.D. 381, 383 n.4 (N.D.Ill.1997) ("a protective order under Rule 26(c) can be sought or determined in the court where the underlying action is pending, as well as the court from which the subpoena issued"); see also *Kruse, Inc. v. United States*, No. 1:99–CV–428, 2000 WL 35516935, at *2 (N.D.Ind. Sept. 29, 2000) ("Rule 26…allows either the court in which the action is pending, or the court where a deposition subpoena was issued, to issue a protective order."). See also Fed. R. Civ. P. 45(d)(3)(iv), which provide "the court for the district where compliance is required must quash or modify a subpoena that…(iv) subjects a person to undue burden." The 2013 amendment comments to said rule provide further guidance because they discuss the complexities of issuing subpoenas in other federal districts prior to the 2013 amendments.

Here, Kearney is seeking this protective order from "the court where the underlying action is pending" because Goodyear issued the subpoena for use in this federal case. The subpoena was also issued from the U.S. District of Nebraska and the U.S. District of Nebraska is "the court for the district where compliance is required." Doc. No. 95-7 through 95-10, Subpoenas issued by Goodyear to Kearney. By comparison, if Kearney were located in another state the U.S. District Court for that geographical area would have "issued" the subpoena or would be the Court where compliance was required under the pre-2013 Federal Rules of Civil Procedure. Ultimately, the fact that Plaintiffs choose to file a collateral case against Kearney in state court is not relevant to the procedural requirements that must be satisfied for Kearney to seek a protective order concerning a subpoena issued from this Court, enforced in this Court, and governed by the Federal Rules of Civil Procedure.

### b. The Anti-Injunction Act and All Writs Act have no bearing on this Petition

The Anti-Injunction Act provides "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgements." 28 U.S.C.A. § 1651. The case cited by Plaintiffs, *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281 (1970) involved a federal court issuing an injunction to prevent the enforcement of an injunction issued by the state court. Again, the relief sought through this Petition does not seek to enjoin state court proceedings and nothing in the Petition requests an injunction of any kind. The Petition simply asks that the depositions of Kearney's representatives and employees not be allowed for THIS case until and unless Plaintiffs certify that they are prepared

3

to proceed with the depositions for use in both cases. If anything, this will propel discovery forward for both cases; it will not delay or prevent discovery for either case.

As for the All Writs Act, it provides that "the Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of laws." 28 U.S.CA § 1651 (adopted in 1948, last amended in 1949). The All Writs Act is a residual source of authority…[w]here a statute specifically addresses the particular issue at hand it is that authority, and not the ALL Writs Act, that is controlling. *Baranski v. United States*, 880 F.3d 951, 954 (8th Cir. 2018). There is no need for this Court to utilize the residual authority granted to it under the All Writs Act to rule upon this Petition. This is because the Federal Rules of Civil Procedure are – rules developed and adopted by the Supreme Court in accordance with a specific statute, 28 U.S.C. § 2072, for the purpose of governing "the procedure in all civil actions and proceedings in the United States district courts…[t]hey should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." The Federal Rules of Civil Procedure are, therefore, the primary and controlling source of authority governing this issue.

Again, this Petition does not ask this Court to invade the state court's jurisdiction or blur the line between state and federal courts. This Petition simply asks that this Court exercise its broad discretion to do what is allowed under the Federal Rules of Civil Procedure:

A. Do what it is allowed to do under Fed. R. Civ. P. 45(d)(3)(A) - enter an order quashing or modifying the subpoena issued by Goodyear to protect Kearney from the undue burden of being deposed twice in these cases that are based upon the exact same facts and involve overlapping legal issues; and/or

B. Do what it is required to do under Fed. R. Civ. P. 26(b)(2)(C) – "limit the frequency or extent of discovery otherwise allowed by these rules...[when] the discovery sought is unreasonably cumulative or duplicative."

To that end, this Court's discovery ruling will not be disturbed "absent a gross abuse of discretion resulting in fundamental unfairness." *Vallejo v. Amgen, Inc.* 903 F.3d 733, 746 (2018). There is no fundamental unfairness in requiring Plaintiffs to proceed with the depositions of Kearney's representatives in a timely and orderly manner that minimizes the time and expense needed to complete those depositions for the benefit of all parties to this and the Kearney cases.

### c. Plaintiffs are seeking to duplicate the depositions of Kearney's representatives

There is no question that Plaintiffs are claiming the right to duplicate the depositions of Kearney's representatives and employees concerning the same facts and legal theories at issue in both cases. Plaintiffs literally copied and pasted the factual allegations from the Complaint for the Goodyear case to the Complaint for the Kearney case. Doc. No. 95-1, Goodyear Complaint and Doc. No. 95-3, Kearney Complaint. Goodyear and Kearney are asserting defenses to Plaintiffs' claims that are nearly identical. Doc. No. 95-2 compared to Doc. No. 95-4. Goodyear and Kearney are asserting as affirmative defenses that the other is liable for Plaintiffs' damages; if these cases were consolidated, these affirmative defenses would most likely take the form of crossclaims asserted by Goodyear against Kearney and vice versa. *Id.* Accordingly, even the legal theories being pursued in this case are nearly identical, at times overlapping, and at times co-dependent from one case to the next.

Plaintiffs' argument that their questioning of Kearney's representatives/employees will change based upon whether they are asking questions for the Goodyear case or Kearney case demonstrates the improper purpose behind Plaintiffs' resistance to this Petition – to pursue inconsistent results in the separate actions. This type of pursuit is prohibited by multiple doctrines of Nebraska law, including but not limited to: (1) the election of remedies, (2) collateral estoppel, and (3) judicial estoppel. *Vowers & Sons, Inc. v. Strasheim*, 254 Neb. 506, 513-515, 576 N.W.2d 817, 824 (1998). These doctrines have been adopted to avoid inconsistent results when there are multiple court proceedings. *Id.* While these doctrines are applied with caution to avoid impinging on the truth-seeking function of the court, the doctrines were adopted because there is only one truth that can be adopted by the court.

In a similar vein, there is only one version of the facts that Kearney's representatives are able to provide. Their answers should not change merely because Plaintiffs theory changes. In fact, if Kearney's testimony changed from one deposition to the next so as to be inconsistent, said representatives could be subject to perjury proceedings. Neb. Rev. Stat. § 28-915. Again, this demonstrates the improper motive behind Plaintiffs resistance – to illicit inconsistent statements from Kearney's representatives and harass them over the course of multiple days concerning the same subject matter.

This Petition was spurred by comments from Plaintiffs' counsel who stated: "I just don't think sitting for two depositions that are in separate cases is too much to ask given the gravity of

the injuries." Doc. No. 95-11, p. 8. Plaintiffs reiterate that argument in response to this Petition. It is not a persuasive argument because Kearney can just as easily point to other allegations and evidence to argue that placing reasonable limits on discovery is not "too much to ask." For example, the cost of the services provided by Kearney to Dandee Construction (who is not a party to this litigation), and that forms the basis of Plaintiffs' Complaint was just $76.57. See Ex. 1, Invoice. Kearney earned just $76.57 to install used tires supplied by its customer, Dandee Construction, on a pickup not owned by Plaintiffs. Providing this $76.57 service on a pickup that was utilized by Dandee Construction and its employees (including Plaintiffs) for nearly another year before the incident that is the subject of this suit occurred has now required Kearney to take extensive time responding to written discovery in the Kearney case, responding to subpoenas for the production of documents in the Goodyear case, and presenting themselves for depositions that are yet to be scheduled in both cases. Kearney strongly disputes having any liability for Plaintiffs alleged damages due to these facts, in addition to the facts that Plaintiffs were not wearing seatbelts and methamphetamine use by all occupants of the vehicle, including Plaintiffs, was suspected. Ex. 2, MVA Report (highlights added by counsel). Kearney understands that discovery is necessary and appropriate for all parties to evaluate all of these allegations, which is why it has been very cooperative in discovery for both litigations. But, there is no good reason, not even the alleged extensive damages of Plaintiffs, for the discovery to be cumulative and duplicative.

Importantly, Plaintiffs acknowledge that Fed. R. Civ. P. 26(c) requires that the court limit any discovery that would be cumulative or duplicative. Protective orders entered under this rule pertain to all discovery including depositions covered by Fed. R. Civ. P. 30 and may address both the time and the place of the requested depositions. See Fed. R. Civ. P. 26(c) 1970 Amendment Comments. The 1970 Amendment Comments further discuss the purpose for adding the sequence provision under Fed. R. Civ. P. 26(d)(3) to the rule. It provides:

> The fact that one party is taking a deposition shall not prevent another party from doing so "concurrently." In practice, the depositions are not usually taken simultaneously; rather, the parties work out arrangements for alternation in the taking of depositions. One party may take a complete deposition and then the other, or, if the depositions are extensive, one party deposes for a set time, and then the other.

Fed. R. Civ. P. 26(d)(3) (1970 Amendment Comments). This sequence rule ensures that Plaintiffs "have their full day in both courts" by allowing them to take the depositions of Kearney

6

representatives concurrently for both cases. Accordingly, Plaintiffs suggestion that they will not be permitted to lead the witness would be solely based upon their failure: (1) to notice a concurrent deposition of Kearney's representatives/employees or (2) to agree to other arrangements for alteration in the taking of the depositions. Accordingly, Plaintiffs arguments that these depositions must proceed on separate days so they can lead the witness or proceed under a different set of rules lacks merit and is ignorant of ordinary discovery practices that have been in place for nearly half a century.

As it pertains to Plaintiffs argument that this Court should defer to the judge handling the case on the merits, the argument ignores the fact that this Court will be making a decision on the merits of this case and will presumably be doing so in January 2020. Doc. No. 77, Scheduling Order. It would not serve the interests of this Court to have subsequent deposition testimony from Kearney's representatives surface in the Goodyear case on the eve of trial or at trial. That is why a scheduling order was put in place for this case (see Doc. No. 77); so the parties can prepare their cases and present their arguments. Completing Kearney's depositions separately for each case would only complicate and possibly delay the proceedings in the Goodyear case.

To that end, Plaintiffs have had more than a year to complete discovery for the Goodyear case. See Doc. 56, May 24, 2018 Progression Order. Plaintiffs now have written discovery responses from Kearney, including responses to Interrogatories, Requests for Admissions, and Requests for Production. Plaintiffs have not identified any reason for why they could not be prepared to take the deposition of Kearney's representatives or employees on August 22, 2019 (as noticed by Goodyear) for purposes of using that deposition in both litigations. As such, it seems reasonable to require that Plaintiffs acknowledge their ability complete the depositions of Kearney's representatives and employees for use in both cases prior to August 22, 2019 so as to not further delay these depositions for either case.

### IV. REPLY TO GOODYEAR'S LEGAL ARGUMENTS
#### a. Contents and use of the existing Protective Order

One key consideration in determining whether a Protective Order should be modified is whether the party seeking the protections of the order and resisting modification has actually relied upon the protective order. See *S.E.C. v. TheStreet.Com,* 273 F.3d 222, 234 (2nd Cir. 2001) (the party resisting a modification of the protective order was not entitled to a presumption against modification because there was no evidence that they relied upon the order given that the

confidential testimony was provided at least a month before the order was entered).

In this case, Goodyear correctly quotes the portions of the existing Protective Order calling for designation of discovery materials as being "Confidential" or "Confidential – Heightened Protection." But, Goodyear has ignored the terms of the Protective Order over the course of these proceedings on several occasions. First, paragraph 9 governs the issuance of subpoenas and required Goodyear to "enclose a copy of this Protective Order with a request that, within ten (10) calendar days, the non-party [served with the subpoena] either request the protection of this Protective Order or notify the issuing party that the non-party does not need the protection of this Protective Order or wishes to seek different protection." Doc. No. 66, ¶ 9. The subpoena issued by Goodyear for Kearney's depositions did not include a copy of this Protective Order. See Ex. 6- 9. Goodyear, therefore, violated the terms of the Protective Order in its dealings with Kearney. Goodyear's opposition to this Petition also ignores the fact that paragraph 9 of this Protective Order at least contemplates Kearney's use of this Protective Order.

Paragraph 23 addresses the precise issue now before the Court "Protected Material Subpoenaed or Ordered Produced in Other Actions." Doc. No. 66. It provides that "the burden of opposing the enforcement of the Demand [from another action] shall fall upon the Producing Party." *Id.* Kearney issued written discovery requests to Plaintiffs in the Kearney action seeking the information exchanged in the Goodyear case. Ex. 3, Summers' Responses to Requests for Production, p. 2. Plaintiffs have objected to the production of such information citing this Protective Order. *Id.* It is unclear whether Plaintiffs have advised Goodyear of the production demand; but, it is clear that Goodyear has done nothing in the Kearney action to oppose the enforcement of the demand posed to Plaintiffs for the production of the information in the Kearney case. So, for a second time, it appears one or both of the parties to this action have not actually complied with the terms of the Protective Order set forth in Doc. No. 66.

A third instance of non-compliance with the Protective Order pertains to the subpoena served by Kearney to Goodyear. Doc. No. 101-1. A courtesy copy of the subpoena was provided to counsel for Goodyear in this action on July 22, 2019. Ex. 4, Correspondence to Goodyear's counsel. This subpoena would also be governed by paragraph 23 of the Protective Order, which would place the burden upon Goodyear to oppose the enforcement of the Demands within the subpoena. Goodyear has not yet taken any actions to oppose the enforcement of the subpoena in the Kearney action as required by the Protective Order set forth in Doc. No. 66.

Due to these failures to comply with the terms of the Protective Order Kearney reasonably suspects that other parts of the Protective Order, such as the designation of materials as "Confidential" or Confidential – Heightened Protection" have not been followed by Plaintiffs or Goodyear when producing documentation for this case. Although Goodyear's brief claims such reliance has occurred, they've not presented proof of such reliance through an affidavit or evidence. As explained by the Second Circuit there must be a plausible showing of reliance on the protective order when determining whether to modify the order. *S.E.C. v. TheStreet.Com*, 273 F.3d 222,234 (2nd Cir. 2001). To date, Plaintiffs nor Goodyear have produced any evidence that it has placed such designations on any materials they produced in discovery for this case. Accordingly, this evidence or lack thereof would suggest modification is appropriate.

### b. The burden of proof has been satisfied

When an attempt is made to amend or lift protections afforded by a protection order there must be a showing that intervening circumstances have obviated or eliminated any potential prejudice to the protected party. *Jochims v. Isuzu Motors, LTD*, 151 F.R.D. 338, 343 (S.D. Iowa 1993). In *Jochims II* the District Court implied that intervening circumstances were present due to the commencement of a collateral litigation. It further held that "with certain modifications" to the Protective Order prejudice to the protected party can be eliminated. The District Court proceeded to tailor the existing protective order "to serve the interests of the intervenors in obtaining potentially relevant information for preparing their cases and the interests of Isuzu in preventing dissemination of confidential business information…"

*Jochims II* considers the same two factors used by multiple other courts considering whether to modify a protective order: (1) intervening circumstances and (2) elimination of prejudice to the protected party. It has now been recognized by multiple authorities that "[t]he most forceful case can be made for access to use material as evidence in other litigation so that later litigants do not have to 'reinvent the wheel.'" Modification of Protective Orders, 8A Fed. Prac. & Proc. Civ. § 2044.1 (3d ed.) (citing *Royal Park Investments SA/NV v. Deutsche Bank National Trust Company,* 192 F.Supp. 3d 400 (S.D.N.Y. 2016) and *Jochims v. Isuzu Motors, LTD*, 148 F.R.D. 338, 343 (S.D. Iowa 1993)). This conclusion flows from the key purpose of discovery—to develop information for use in litigation. *Id.* It builds on a long line of cases recognizing the propriety of access to the fruits of one litigation to facilitate the preparation of other cases. *Id.* This court has echoed similar principles acknowledging: "[w]hen determining the level of protection to

afford particular information a court "must be guided by the liberal federal principles favoring disclosure…" *Streck Inc. v. Research & Diagnostic Systems, Inc.*, 250 F.R.D. 426, 428 (D. Neb. 2008). It is for this reason that Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required. *Id.*

Even the case cited by Goodyear in support of its burden argument, *Tama Plastic Indus. V. Pritchett Twine & Net Wrap, LLC,* No. 8:12CV324, WL 4825173 at *1 (D.Neb. 2014), supports holding that new litigation is an intervening circumstance warranting modification of a protective order. *Tama* was a patent infringement case were the defendant sought to modify the protective order they previously agreed to. The term the defendant sought to expand was one that allowed for labelling materials "Attorneys eyes only" and prohibited anyone other than an attorney involved in the case from viewing the materials. The defendant wanted to expand this provision to allow such materials to be disclosed to its own insurance casualty claims consultant who was involved in the case prior to the Protective Order being entered. The Court denied the request largely because the consultant's involvement was not a "new development or unexpected" and, therefore, the consultant's involvement was not an intervening circumstance. *Id.* at *2. The circumstances presented in this case are distinguishable from those in *Tama* because here the Protective Order was entered on June 16, 2018. Ten months later, on April 12, 2019, Plaintiffs filed a separate litigation against Kearney. This separate litigation is a "new development" warranting a finding that it is an intervening circumstance warranting a modification to the protective order.

The *Royal Park* case (cited above) is particularly instructive because, like in this case, it involved a single plaintiff suing two separate defendants in two separate litigations and alleging similar theories of recovery. The District Court for the Southern District of New York confirmed that the purpose of a protective order is "to protect the disclosure of confidential information – not to prevent the discovery of relevant documents." *Royal Park Investments SA/NV,* 192 F.Supp. 3d at 406. It went on to hold that a protective order prohibiting the use of Discovery Materials in other cases is problematic, particularly where two lawsuits have been filed by the same plaintiff on the same legal theories against two similarly situated defendants. The Court took issue with the plaintiff utilizing the protective order to gain a tactical advantage and generating a "litigation sideshow" by seeking sanctions when the defendants sought to use the protected discovery materials from one case to the next. The Court proceeded to order the parties to meet and confer so as to modify the protective order allowing the confidential materials to be utilized by both

defendants in both of cases.

As in *Royal*, both Plaintiffs and Goodyear are using this Protective Order in an attempt to prevent the discovery of relevant documents in the Kearney case. Plaintiffs have cited the Protective Order to evade disclosing to Kearney the expert witness reports they produced in the Goodyear case. Ex. 3, Summers' Response to RFP No. 27. As explained in its brief, Goodyear cites the Protective Order to evade disclosing documents regarding the design or manufacture of the tire, claiming that the information is not relevant to the Kearney litigation.

No one can reasonably argue that the Goodyear and Kearney cases are unrelated given that Plaintiffs copied and pasted the factual allegations from the Goodyear Complaint to the Kearney Complaint. See Doc. No. 95-2, Goodyear Complaint and Doc. No. 95-4, Kearney Complaint. The defenses pled by Goodyear and Kearney in response to these Complaints are also nearly identical. Doc. No. 95-3, Goodyear Answer and Doc. No. 95-5, Kearney Answer. Kearney's defense that Goodyear's negligence reduces its liability to Plaintiffs under Nebraska's comparative negligence statutes demonstrates that the issues in this case are not only similar, they are overlapping and dependent upon one another. As explained in *Royal*, Plaintiff and Goodyear's attempt to gain a tactical advantage to avoid the discovery and use of relevant information for the Kearney case is improper.

As a practical matter, if this Court's refuses to modify this Protective Order, Kearney has to repeat the discovery already completed in this litigation. Kearney already started that process by issuing requests for production to Plaintiffs and a subpoena to Goodyear. The litigation sideshows that will occur going forward are beginning to surface and will likely include a motion to compel Plaintiffs' Response to Kearney's Request No. 27 (i.e. the disclosure of Plaintiff's expert reports in the Goodyear case to Kearney) and potentially a further motion to this Court to determine whether Plaintiffs' expert reports in the Goodyear case are "Confidential Material" subject to the Protective Order. If Goodyear continues to pursue relevance objections to producing the requested information, a motion to compel their compliance with the subpoena will likely follow.

Overall, Kearney has satisfied its burden of proving intervening circumstances warrant modifying the Protective Order because the Kearney case is a subsequent case involving the same facts and overlapping legal theories. Plaintiff and Goodyear's use of the Protective Order to gain a tactical advantage in avoidance of the production of information clearly relevant to Kearney's defenses is improper and further demonstrates good cause for modification.

### c. Goodyear's interests can be protected by tailoring the existing Protective Order.

Goodyear argues that it produced documents in reliance on the existing Protective Order. For the reasons discussed in paragraph IV(a) of this Brief, Kearney questions whether Goodyear has actually utilized and relied upon the Protective Order. Nonetheless, Kearney understands and respects Goodyear's concerns. That is why Kearney is seeking a modification to this Protective Order instead of an invalidation of it. Kearney has also filed a Motion for a Protective Order in the Kearney case seeking the same protections for confidential information as are being utilized in this case. Ex. 5. After said order is entered, Goodyear can utilize the protections of the Kearney Protective Order to protect its confidential materials. Goodyear's concern as to its receipt of pleadings and discovery for the Kearney case can be addressed through modifications to one or both of these Protective Order(s), which could include a requirement that Goodyear be included on the certificates of service for all pleadings and/or discovery in the Kearney case. This Court's Modification of this Order so as to require that Plaintiffs complete the depositions of Kearney's representatives and employees at one time for both cases would further address Goodyear's concerns by allowing Goodyear's counsel to be present during those depositions to address the use of any Confidential Materials during said depositions. In sum, Kearney is willing to take reasonable and appropriate steps to maintain the confidential nature of Goodyear's proprietary information. But, Kearney cannot do so when Goodyear takes a "line in the sand" approach refusing any modifications to the existing Protective Order.

**WHEREFORE** Kearney hereby petitions to intervene for the limited purpose of seeking a modification of the existing Protective Order, Doc. No. 66. Kearney further hereby moves for the following modifications to the Protective Order:

1. The following term be added to the existing Protective Order:

    No deposition of Kearney's Rule 30(b)(6) Representative and Kearney's employees can be held until Plaintiffs certify that they are ready to proceed with the depositions for purposes of using them in both Litigations. Plaintiffs shall prepare for said deposition and make such a certification by the close of discovery in this litigation.

2. Paragraph 1 of the Protective Order be modified as follows (new language is in bold):

    Applicability of Order. This Order will govern the handling of documents, depositions, deposition exhibits, interrogatory responses to requests for admissions, responses to requests for production of documents, and all other discovery obtained pursuant to the Federal Rules of Civil Procedure or which is voluntarily produced without regard to

      the use of the Federal Rules of Civil Procedure by or from any party, person, or entity in connection with the Litigation (this information hereinafter referred to as "Discovery Material"). **"Litigation" or "action" includes the above referenced case, as well as the case titled:** *Susman, et. al. v. Kearney Towing & Repair Center,* **Case No. CI 19-0158.** As used herein "Producing Party" or "Disclosing Party" shall refer to the parties to **the Litigation** that give testimony or produce documents or other information, and "Receiving Party" shall refer to the parties to this action that receive such information...

3. Alternatively, Kearney asks that the Court require the parties to meet and confer to develop modifications to the Protective Order that allow for the disclosure and use of "Confidential Materials" in both the Goodyear and Kearney cases.

Kearney further requests any other relief the Court deems just and/or necessary.

      Respectfully submitted,

      KEARNEY TOWING & REPAIR CENTER, INC.,
      A NEBRASKA CORPORATION

      By: _/s/ Stephen G. Olson, II_
      Stephen G. Olson, II, #18949
      Kristina J. Kamler, #24082
      ENGLES, KETCHAM, OLSON & KEITH, P.C.
      1350 Woodmen Tower
      1700 Farnam Street
      Omaha, Nebraska 68102
      (402) 348-0900 (Telephone)
      (402) 348-0904 (Facsimile)
      solson@ekoklaw.com
      kkamler@ekoklaw.com

## CERTIFICATE OF SERVICE

      I hereby certify that on August 8, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Michael F. Coyle
Fraser Stryker PC LLO
500 Energy Plaza
409 South 17th Street
Omaha, NE 68102
mcoyle@fraserstryker.com
**Attorney for Plaintiff**

Paul E. Godlewski
Schwebel Goetz & Sieben, P.A.
5120 IDS Center
80 S. 8th Street, #5120
Minneapolis, MN 55402
pgodlewski@schwebel.com
**Attorney for Plaintiffs**

Skip Edward Lynch
Kaster Lynch Farrar & Ball LLP
1010 Lamar, Suite 1600
Houston, TX 77002
Skip@thetirelawyers.com
**Attorney for Plaintiffs**

Kyle Farrar
Farrar & Ball LLP
1010 Lamar, Suite 1600
Houston, TX 77002
Kyle@fbtrial.com
**Attorney for Plaintiffs**

William R. Ogden
1117 Herkimer Street
Houston, TX 77008
bill@fbtrial.com
**Attorney for Plaintiffs**

Edward S. Bott, Jr.
Clark Hedger
Juliane M. Rodriguez
10 South Broadway, Suite 2000
St. Louis, MO 63102
esb@greensfelder.com
chl@greensfelder.com
jrodriguez@greensfelder.com
**Attorneys for Defendant**

Jennifer D. Tricker
Woodmen Tower
1700 Farnam Street
Omaha, NE 68102
jtricker@bairdholm.com
**Attorney for Defendant**

                                       /s/ Kristina J. Kamler