**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| RYSTA LEONA SUSMAN, both individually and as Legal Guardian of Shane Allen Loveland, and JACOB SUMMERS, | Case No. 8:18CV127 |
| Plaintiffs, | **BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| THE GOODYEAR TIRE & RUBBER COMPANY, | |
| Defendant. | |

**INTRODUCTION**

This is a product liability action arising from a one-vehicle accident which occurred on May 1, 2015.  Plaintiffs Rysta Leona Susman, individually and as legal guardian of Shane Loveland, a passenger in the truck involved in the accident, and Jacob Summers, another passenger (collectively, "Plaintiffs"), claim the accident was caused by a defective tire mounted on the truck. Plaintiffs have brought negligence, strict liability, and breach of implied warranty of merchantability claims against The Goodyear Tire & Rubber Company ("Goodyear"), the manufacturer of the tire involved in this occurrence (hereinafter "Tire at Issue" or "Tire").

The Court should grant Goodyear partial summary judgment in four respects.  First, summary judgment is warranted on Plaintiffs' negligence, strict liability, and breach of the implied warranty of merchantability claims to the extent Plaintiffs maintain that the Tire was defective or unreasonably dangerous because of: (1) the inner liner compound used in the Tire; (2) the cured gauge of the inner liner on the Tire; and (3) the oxidative agents that were used or should have been used in the skim coat and other compounds in the Tire.  Plaintiffs' purported tire failure expert,

1810482

David Southwell, admits in his deposition that he cannot opine, and has not opined, to a reasonable degree of engineering certainty that any of these conditions of the Tire at Issue made it defective or unreasonably dangerous.  Without expert testimony supporting each of these defect theories, they fail on their face under settled Nebraska law.

Second, the Court should grant Goodyear partial summary judgment on Plaintiffs' breach of the implied warranty of merchantability claim in total.  Under Nebraska law, this claim merges with Plaintiffs' strict liability claim and cannot stand on its own.

Third, the Court should grant Goodyear partial summary judgment on Plaintiffs' strict liability claim to the extent it is based on Goodyear's alleged failure to warn.  In Nebraska, a plaintiff must establish the elements of a strict liability failure to warn claim via admissible expert testimony.  For the reasons set forth in Goodyear's contemporaneously-filed Motion to Exclude Testimony from Plaintiffs' sole warnings expert, Lila F. Laux, Plaintiffs have not proffered admissible expert testimony on their warning claim.

Even if Ms. Laux's testimony survives Goodyear's Motion to Exclude, Plaintiffs' strict liability failure to warn claim fails because Ms. Laux has no criticism of Goodyear for the warnings, product service bulletins, or product labeling on tire aging issues at the time the Tire at Issue was manufactured in 1994.  Under Nebraska law, the manufacturer's duty to warn is determined at the time of manufacture and sale, and there is no post-sale duty to warn.  Thus, Ms. Laux' testimony does not meet Plaintiffs' burden of proof.  For these same reasons, Plaintiffs' warning claim is barred by Nebraska's state of the art statute, Neb. Rev. St. § 25-21, 182.

Fourth, the Court should grant Goodyear summary judgment on Plaintiffs' request and/or claim for punitive damages, as Nebraska prohibits the award of punitive damages in all cases.

2

## STATEMENT OF UNDISPUTED MATERIAL FACTS

For the purposes of Goodyear's Motion for Partial Summary Judgment, the following are the undisputed material facts:

1.      The Plaintiffs in this case are Rysta Leona Susman, individually and as legal guardian of Shane Loveland, and Jacob Summers.  (Notice of Removal, Ex. 1 – Exhibits, Ex. D– Complaint (hereinafter, "Compl.") ¶¶ 2-4, ECF No. 1-1 at 18-19.)

2.      Plaintiffs are residents and citizens of Nebraska.  (Compl. ¶¶ 2-4, ECF No. 1-1 at 18-19.)

3.      Goodyear is the sole defendant in this case.  Goodyear is incorporated under the laws of Ohio and its principal place of business is in Akron, Ohio.  (Goodyear's First Amended Answer, ECF No. 72 at 2.)  Goodyear is thus a citizen of Ohio.

4.      The accident at issue in this case took place in Hall County, Nebraska on May 1, 2015.  (State of Nebraska Investigator's Motor Vehicle Accident Report, attached as Exhibit A, at 1.)

5.      The amount in controversy in this case exceeds $75,000, exclusive of interest and costs.  (ECF No. 1 at 5-6.)

6.      The Tire at Issue in this case is an LT235/85R16 Goodyear Wrangler HT tire bearing DOT # MD0RNJHV244, which identifies a tire manufactured by Goodyear at its Gadsden, Alabama plant during the 24th week of 1994.  (Expert Report of David Southwell ("Southwell Rep."), attached as Exhibit B, at 5, § 3.a.)

7.      Plaintiffs assert a negligence claim against Goodyear.  (Compl. ¶¶ 12-17, ECF No. 1-1 at 21-22.)

8.      Plaintiffs allege that the Tire at Issue was defective and that it "deviated from

industry standards, was marketed without adequate testing and the probability that the tread would separate when used in the manner and for the purpose for which it was intended was known to defendants when the defective tire was manufactured and marketed." (Compl. ¶ 15, 15, ECF No. 1-1 at 22.)

9.      Plaintiffs also assert a strict liability claim in their Complaint. (Compl. ¶¶ 18-27, ECF No. 1-1 at 22-24.)

10.      Plaintiffs allege that the Tire was "defectively designed, manufactured and sold by the defendants pursuant to both a risk-utility standard as well as a consumer expectation standard." (Compl. ¶ 19, ECF No. 1-1 at 22.)

11.      Plaintiffs further allege that safer alternative designs were technically and economically feasible, including: "(a) The use of proper belt edge rubber strips or wedges or insulation or wraps; (b) The proper use of nylon or Kevlar belt reinforcements whether used in strips or caps or belts or full-belt-width plies; (c) Proper rubber antidegredants including a proper antioxidant package; (d) Proper innerliners with sufficient lapped splicing and sufficient rubber gauge and sufficient amounts of halobuytl rubber to guard against permeation of air into the tire; (e) Other tire aging and separation countermeasures." (Compl. ¶ 23, ECF No. 1-1 at 23.)

12.      Plaintiffs also allege that the Tire "was defective and unreasonably dangerous because it lacked adequate warnings to consumers and users about the dangers associated with tire aging irrespective of wear and use, including detreads." (Compl. ¶ 25, ECF No. 1-1 at 24.)

13.      Plaintiffs also assert a breach of the implied warranty of merchantability. (Compl. ¶¶ 28-32, ECF No. 1-1 at 24-25.)

14.      In their breach of warranty claim, Plaintiffs allege "that the defective tire was not fit for its ordinary use." (Compl. ¶ 30, ECF No. 1-1 at 24.)

1810482

15.     In both their negligence cause of action and strict liability cause of action, Plaintiffs allege the actions of Goodyear constitute willful and wanton misconduct in disregard of the rights and safety of Plaintiffs and, thus, "warrant the imposition of punitive damages." (Compl. ¶¶ 17, 27, ECF No. 1-1 at 22, 24.)

16.     Plaintiffs specifically seek punitive damages in their prayers for relief under each cause of action brought within the Complaint, including negligence, strict liability, and breach of warranty.  (Compl., ECF No. 1-1 at 22, 24, 25.)

17.     In its Interrogatories to Plaintiffs, Goodyear sought identification of "all defects in any product which you allege to be a cause of the occurrence or injuries in question."  (Loveland Ans. GY 1st Rog., attached as Exhibit C, Rog. No. 3(f), at 2-3; Summers Ans. GY 1st Rog., attached as Exhibit D, Rog. No. 3(f), at 2-3.)

18.     In their Answers to this Interrogatory, Plaintiffs responded that, "[a]s for defects, see Plaintiffs' complaint and expert reports which will be produced pursuant to the Court's scheduling order."  (Ex. C, Loveland Ans. GY 1st Rog. at 3; Ex. D, Summers Ans. GY 1st Rog at 3.)

19.     Plaintiffs disclosed David Southwell as their expert in Tire Failure Analysis. (ECF No. 83 at 1.)  He is the only tire failure expert Plaintiffs have disclosed.  (*Id.*)

20.     In his expert report, Mr. Southwell opined that three "root causes" caused the failure of the Tire:

    a.     "The design of the tire, which was insufficiently robust to provide durability adequate to ensure its safe operation for the foreseeable duration of its tread life. The inclusion of belt-edge reinforcement would have overcome this defect."

    b.     "Age-related thermo-oxidative degradation of the body ply and belt skim coats,

5

which substantially compromised the structural integrity of the tire, and"

    c.  "The significant inaccuracy in the location of the belts – resulting from poor manufacturing practices—which increased concentration of strain energy density and hence in-service fatigue of the tire structure."

(Ex. B, Southwell Rep., at 20.)

21.    Mr. Southwell identifies in his Report the following design measures tire manufacturers can use to reduce oxidation: "formulation of the inner liner compound," "cured inner liner gauge," and "anti-oxidative additives to skim coat and other compounds."  (Ex. B, Southwell Rep., at 12.)

22.    At his deposition, Mr. Southwell was asked whether it was his opinion that the Tire "was defective in design because of the inner liner compound that was used."  In response, he testified, "I can't be definitive about that because Goodyear have not provided that information."  (Tr. 3.28.19 Deposition of David Southwell (hereinafter, "Southwell Dep."), attached as Exhibit E, at 14:1-6.)  He further stated that he does not hold that opinion "specifically about the compound of the liner."  (Ex. E, Southwell Dep., at 14:7-10.)

23.    Mr. Southwell was also asked whether he was "testifying to a reasonable degree of engineering certainty that the cured inner liner gauge was unreasonably dangerous."  In response, he testified, "Not specifically, no."  (Ex. E, Southwell Dep., at 15:2-8.)

24.    Mr. Southwell was also asked whether he holds "an opinion to a reasonable degree of engineering certainty that this tire was defective and unreasonably dangerous because of the oxidative agents that were used or not used in the skim coat and compounds."  In response, he testified, "Well, again, that information has not been provided by Goodyear so I can't be definitive about that."  He went on to state, "I don't hold an opinion either way on that because I

6

don't have that level of detail."  (Ex. E, Southwell Dep., at 15:24—16:9.)

25.     Plaintiffs' sole expert witness in support of their failure to warn claim is Lila

Laux, PhD.  (Expert Report of Lila Laux (hereinafter, "Laux Rep."), attached as Exhibit F.)

26.     Laux has three opinions regarding how Goodyear could have differently "warned"

of the alleged concerns with tire aging.  (Ex. F, Laux Rep., at 6-7, ¶¶ 5-7.)

### Laux Opinion 1: Product Service Bulletins

27.     Laux's first warning opinion is that Goodyear "should have provided a Product

Service Bulletin to all tire repair shops and to all tire sales facilities recommending that all tires

more than 10 years old be replaced or never driven at highway speeds."  (*Id*. at 6, ¶ 5.)

28.     When asked about her product service bulletin opinion, Laux testified as follows:

> **Q:**     With regard to your opinion 5,[1] do you hold an opinion that in fact
> Goodyear should have issued a public service bulletin as you describe in
> opinion 5 in the year 1990?
>
> [ ]
>
> **A:**     And do I think they could have?  Yes.  Do I think they should have?  I
> don't think so, no.
>
> [ ]
>
> **Q:**     So would you agree then that you're not critical of Goodyear for not
> issuing such a product service bulletin in the year 1994?
>
> **A.**     No, I'm not.

(Tr. 4.15.19 Deposition of Lila Laux (hereinafter, "Laux Dep."), attached as Exhibit G, at 49:9-

12, 16-17 and 25; 50:1-3.)

29.     When asked when, after 1994, Goodyear should have issued product service

bulletins on tire aging, Laux testified as follows:

> **Q:**     So these product service bulletins on aging were first issued evidently in

---

[1] It is referred to as "opinion 5" because that is the paragraph number by which it appears in Laux's report.

7

2006?

**A:**      Correct.

**Q:**      And so then is it your opinion that in the 2006 time frame is when Goodyear should have issued a product service bulletin on the effects of tire aging like these manufacturers did?

**A:**      Well, I think they should have made that information public in – and by 2006 other tire manufacturers had made the decision to make that information public, so it would have been appropriate for Goodyear to make it available at that time as well.

(Ex. G, Laux Dep., at 52:9-21.)

### *Laux Opinion 2: the "Born Date" of the tire*

30.      Laux's second warning opinion is that "Goodyear should have provided the 'born date' on the tire on both sides of the sidewall."  (Ex. F, Laux Rep., at 6, ¶ 6.)

31.      When asked if any manufacturer places a "born on" date on their tires (beyond the DOT number which does state the week and the year in which every tire is manufactured), Laux testified as follows:

**Q:**      Are you aware of any manufacturer that puts the born date on their tires?

**A:**      No, I'm not.

(Ex. G, Laux Dep., at 80:24—81:1.)

32.      When asked about industry standards for including a "born date" on tires, Laux testified as follows:

**Q:**      And do we agree that NHTSA has never recommended that a born date be put on tires, have they?

**A:**      They haven't [ ].

(*Id*. at 81:11-14.)

33.      Further, Laux has identified no industry standard or generally accepted practice

8

under the state of the art that suggests placing a "born on" date on a tire beyond the manufacturing date already included in the DOT number.  (Ex. F, Laux Rep.)

### *Laux Opinion 3: the "Warning"*

34.     Laux's third warning opinion is that "[a]n adequate warning regarding tire aging would include the elements" in a prototype included in her report.[2]  (Ex. F, Laux Rep., at 7, ¶ 7.)

35.     Laux's report states only that this is what an "adequate warning" would look like, not that she holds the opinion that Goodyear should have included her prototype warning when it manufactured the Tire at Issue in 1994.  (*Id.*)

36.     When asked if she was critical of Goodyear for not including a "tire aging" warning on the Tire at Issue when manufactured in 1994, Laux testified as follows:

> **Q:** And clearly, given that this relates to stamping on the tire at the time of manufacture, I assume its your opinion that this prototype warning should have been on this tire at the time it was manufactured in 1994?
>
> **A:** I certainly wish it were, but do I expect that it would have been?  No.
>
> **Q:** Okay.  And why is it that you expect it would not have been?
>
> **A:** Well, I think in June of 1994 there was not a general consensus among all of the tire manufacturers about this issue.
>
> [ ]
>
> **Q:** Yeah, so in terms of – and I want to understand whether – is it your opinion to a reasonable degree of professional certainty that in this case this tire was unsafe as manufactured in June of 1994 by virtue of the fact that it did not have this prototype warning on it?
>
> [ ]
>
> **A.** So am I surprised that it wasn't on there?  No.  Do I wish it had been on there?  Yes.  Am I critical?  Well, I don't know whether I would say I'm critical or not.  I understand why its not on there.

(Ex. G, Laux Dep., at 74:21—75:7; 76:1-6, 16-19.)

---

[2] The content of the prototype warning is not pertinent to this motion given Laux's admissions cited here.

9

37.     When asked about industry standards and other tire manufacturers including tire aging warnings on their tires at any time, Laux testified as follows:

> **Q:**   Are you aware of any manufacturer that puts any type of warning regarding the aging on their tires?
>
> **A:**   No.  They have some warnings on their tires, but not about aging.
>
> **Q:**   And do we agree that NHTSA[3] has never recommended that such a warning about aging be put on the tires, have they?
>
> **A:**   I don't think they have, no.
>
> [ ]
>
> **Q:**   And do we agree that there is no federal regulation that requires placement of an age-related warning on the tires?
>
> **A:**   There's not.

(Ex. G, Laux Dep., at 81:2-10, 19-22.)

38.     Laux admits that NHTSA did not even begin studying tire aging issues until 2002. (*Id*. at 78:7-13.)

## STANDARD

Summary judgment "is appropriate when the evidence viewed in the light most favorable to the nonmoving party, demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law."  *Hanger v. Lake County*, 390 F.3d 579, 582 (8th Cir. 2004) (citing *First Bank of Marietta v. Hogge*, 161 F.3d 506, 510 (8th Cir. 1998)); *see* Fed R. Civ. P. 56(c).  To survive a motion for summary judgment, plaintiffs must substantiate their allegations with "sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy."  *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992).  "A mere scintilla of evidence is insufficient to avoid

---

[3]     NHTSA is the National Highway Traffic Safety Administration.

summary judgment." *Gregory*, 974 F.2d at 1010 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986)).

## ARGUMENT

I.   **THE COURT SHOULD GRANT GOODYEAR SUMMARY JUDGMENT ON PLAINTIFFS' NEGLIGENCE, STRICT LIABILITY, AND BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY CLAIMS TO THE EXTENT PLAINTIFFS MAINTAIN THAT THE TIRE WAS DEFECTIVE OR UNREASONABLY DANGEROUS BECAUSE OF: (1) THE INNER LINER COMPOUND USED IN THE TIRE; (2) THE CURED GAUGE OF THE INNER LINER ON THE TIRE; AND (3) THE OXIDATIVE AGENTS THAT WERE USED OR SHOULD HAVE BEEN USED IN THE SKIM COAT AND OTHER COMPOUNDS IN THE TIRE.**

### A.   Plaintiffs Must Present Expert Testimony To Show The Existence of A Product Defect and To Prove Causation.

Under Nebraska law, a plaintiff must offer expert testimony to demonstrate a product is defective "when standards of performance of the product are not generally known." *Nuzum v. Chlorella*, No. 8:05CV335, 2006 WL 3825111, at *3 (D. Neb. Dec. 27, 2006). The same is true with respect to proving causation. *Sullivan v. Zimmer, Inc.*, No. 806CV319, 2007 WL 1342559, at *2 (D. Neb. May 7, 2007). The absence of expert testimony on the defective nature of the product in issue or on causation "warrant[s] an entry of summary judgment in favor of the defendant." *Id.*

Here, it is beyond reasonable dispute that the standards of performance of a tire are beyond the ordinary understanding of laymen. This is especially the case as regards the specific aspects of the Tire at Issue that are the subject of this Brief; namely, oxidative degradation, the appropriate gauge or thickness of the Tire's inner liner, and the oxidative agents that should be used in the Tire's skim coat and other compounds.

While state and federal courts applying Nebraska law appear not to have decided this precise issue, i.e., whether tires are complex products whose standards of performance are not generally known, other courts around the country have determined that tires are complex products about which expert testimony is necessary to demonstrate the existence of a defect and causation.

11

1810482

*E.g.*, *Timm v. Goodyear Dunlop Tires N. Am. Ltd.*, No. 2:14CV232-PPS, 2018 WL 2979963, at *1 (N.D. Ind. June 14, 2018) ("Whether these issues are defects, whether the tire in fact had these issues, and whether these issues could have caused the tire to become unseated are all questions that are well beyond the understanding of an average person. And so the Timms needed expert testimony to answer these questions."), *aff'd Timm v. Goodyear Dunlop Tires North America, Ltd.*, --- F.3d ---- 2019 WL 3559049 (7th Cir.  Aug. 6, 2019); *Housley v. Orteck Int'l, Inc.*, 488 F. Supp. 2d 819, 829 (S.D. Iowa 2007) ("The Court concludes Housley must present some expert evidence to survive summary judgment. The design, manufacture, use, and installation of any tire, let alone a tractor tire, is a matter largely outside the experiences of the average juror."); *Clark v. Bohn Ford, Inc.*, 213 F. Supp. 2d 957, 961 (S.D. Ind. 2002) (noting that design defect claims relating to tires "almost always requires expert testimony"); *Andrews v. Bridgestone/Firestone, Inc.*, No. CV-07-1591-PHX-DGC, 2008 WL 5142155, at *1 (D. Ariz. Dec. 5, 2008) ("Plaintiff does not dispute that expert testimony is required to show that the Dueler Tire was defective."); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141–42, (1999).

## B.  The Court Should Grant Goodyear Partial Summary Judgment on Plaintiffs' Strict Products Liability Claim.

To succeed on their claim for strict products liability, Plaintiffs must plead and prove the following:

> (1) the defendant placed the product on the market for use and knew, or in the exercise of reasonable care should have known, that the product would be used without inspection for defects; (2) the product was in a defective condition when it was placed on the market and left the defendant's possession; (3) the defect is the proximate or a proximately contributing cause of the plaintiff's injury sustained while the product was being used in a way and for the general purpose for which it was designed and intended; (4) the defect, if existent, rendered the product unreasonably dangerous and unsafe for its intended use; and (5) the plaintiff's damages were a direct and proximate result of the alleged defect.

*Pitts v. Genie Indus., Inc.*, 921 N.W.2d 597, 609 (Neb. 2019).

12

1810482

Here, Plaintiffs' strict liability claim fails to the extent Plaintiffs claim the Tire was unreasonably dangerous or defective because of: (1) the inner liner compound used in the Tire; (2) the cured gauge of the inner liner on the Tire; and (3) the oxidative agents that were used or should have been used in the skim coat and other compounds in the Tire.  As set forth above, Plaintiffs' sole tire failure expert, Mr. Southwell, has stated definitively that he does not have an opinion that the Tire was defective or unreasonably dangerous as a result of any of these three aspects of its design and construction.

Plaintiffs, therefore, cannot meet their prima facie case to the extent their claim for strict product liability is based on any alleged defect in any of these three aspects of the Tire's design and construction, and the Court must accordingly enter partial summary judgment on their claim. *Nuzum*, 2006 WL 3825111, at *3; *Sullivan*, No. 2007 WL 1342559, at *2.  Summary judgment is similarly warranted given that, in the absence of defect/unreasonable dangerousness opinions on these three subjects, Plaintiffs cannot establish that these alleged defects caused the accident and their resulting injuries.  *See Nuzum*, 2006 WL 3825111, at *3; *Sullivan*, No. 2007 WL 1342559, at *2.

## C.    The Court Should Grant Goodyear Partial Summary Judgment on Plaintiffs' Negligence Claim.

To state a products liability claim for negligence, "a plaintiff needs to establish some evidence of duty, breach, causation, and damages."  *Jay v. Moog Auto., Inc.*, 652 N.W.2d 872, 879 (Neb. 2002).  "In a products liability cause of action based on negligence, the manufacturer's conduct is at issue, that is, whether the manufacturer's conduct was reasonable in view of the foreseeable risk of injury."  *Id.*   While the focus is on the manufacturer's conduct, a key component of the duty with which a manufacturer is charged is to exercise reasonable care to ensure the product does not involve or present "an unreasonable risk of causing physical harm to

13

those who use it for a purpose for which the manufacturer should expect it to be used." *Stahlecker v. Ford Motor Co.*, 667 N.W.2d 244, 253 (Neb. 2003).

Here, Mr. Southwell's testimony forecloses any negligence claim based on (1) the inner liner compound used in the Tire; (2) the cured gauge of the inner liner on the Tire; and (3) the oxidative agents that were used or should have been used in the skim coat and other compounds in the Tire.  As Mr. Southwell has no opinions as to whether these facets of the Tire's design and construction made it defective or unreasonably dangerous, Plaintiffs cannot demonstrate that Goodyear should have known these characteristics of the Tire created an unreasonable risk of causing harm to Plaintiffs.  Plaintiffs have not established a duty with respect to these conditions of the Tire, and Goodyear is entitled to summary judgment on so much of Plaintiffs' negligence claim that is based on these allegations.

### D. The Court Should Grant Goodyear Partial Summary Judgment on Plaintiffs' Breach of The Implied Warranty of Merchantability Claim.

Plaintiffs claim Goodyear breached the implied warranty of merchantability because "the defective tire was not fit for its ordinary use."  (Compl. ¶ 30, ECF No. 1-1 at 24.)  Success on a breach of implied warranty claim requires proof of, among other things, a deviation from the standard of merchantability at the time of the sale of the product.  *E.g.*, *In re Saturn L-Series Timing Chain Prod. Liab. Litig.*, No. 8:07CV298, 2008 WL 4866604, at *10 (D. Neb. Nov. 7, 2008).  Plaintiffs have pleaded that that deviation from the standard of merchantability was the "defective tire."  As Mr. Southwell has no opinions as to whether the three facets of the Tire's design and construction identified in this section made it defective or unreasonably dangerous, Plaintiffs cannot base their breach of implied warranty claim on these aspects of the Tire's construction, and Goodyear is entitled to summary judgment on these facets of the breach of warranty claim.

1810482

## II.    THE COURT SHOULD GRANT GOODYEAR SUMMARY JUDGMENT ON THE ENTIRETY OF PLAINTIFFS' CLAIM FOR BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY.

The Court should grant Goodyear summary judgment on Plaintiffs' breach of the implied warranty of merchantability claim because this claim merges with Plaintiffs' strict liability claim. Stated simply, "[u]nder Nebraska law, a breach of implied-warranty claim (under contract law) is merged with a product liability claim for defective product design and failure to warn." *Vondra v. Chevron U.S.A., Inc.*, 652 F. Supp. 2d 999, 1004–05 (D. Neb. 2009) (citing *Freeman v. Hoffman– La Roche, Inc.*, 618 N.W.2d 827, 843 (Neb. 2000)). Courts looking at dual claims for strict liability and breach of the implied warranty of merchantability hold that "allegations regarding breach of implied warranty fall under [plaintiff's] allegations of design and manufacturing defects." *Freeman*, 618 N.W.2d at 844.

Here, Plaintiffs have brought a breach of the implied warranty of merchantability claim together with claims for negligence and strict liability. Accordingly, Plaintiffs' breach of implied warranty claim merges with Plaintiffs' tort claims, and the Court must enter summary judgment in Goodyear's favor on this claim. *Id.*; *Rohrberg v. Zimmer, Inc.*, No. 8:05CV077, 2006 WL 3392178, at *2 (D. Neb. Oct. 24, 2006).

## III.    THE COURT SHOULD GRANT GOODYEAR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' STRICT LIABILITY CLAIM TO THE EXTENT IT IS BASED ON GOODYEAR'S ALLEGED FAILURE TO WARN.

Plaintiffs' sole claim based on an alleged failure to warn is their claim for strict liability:[4]

"Further, the subject tire was defective and unreasonably dangerous because it lacked adequate

---

[4]    Plaintiffs' Count I negligence claim contains no failure to warn claim. Plaintiffs' Count III breach of warranty claim incorporates all prior allegations by reference, theoretically including Paragraph 25 of Count II stating the failure to warn allegation, but Nebraska law in breach of warranty merges with the tort claim in any event, so the analysis, and conclusion, is the same. *Vondra v. Chevron U.S.A., Inc.*, 652 F. Supp. 2d 999, 1004–05 (D. Neb. 2009).

1810482

warnings to consumers and users about the dangers associated with tire aging irrespective of wear and use, including detreads."

Nebraska law requires that a plaintiff establish the elements of a strict liability failure to warn claim via admissible expert testimony. *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 984 (8th Cir. 2010). Plaintiffs proffered one expert on their failure to warn claim, Lila F. Laux, Phd ("Laux"). For the reasons set forth in Goodyear's contemporaneously-filed Rule 702 Motion to Exclude Plaintiffs' Failure to Warn Opinion Testimony, the Court should strike Laux's testimony, from which summary judgment on the failure to warn claim necessarily follows. Laux's report contains three opinions on the purported failure to warn: (a) that Goodyear should have issued product service bulletins regarding tire aging; (b) that Goodyear, at some point in time, should have begun placing warnings on tire aging directly on its tires; and (c) that Goodyear should have placed a "born date" on the tires. In her deposition, however, Laux concedes that she in fact has no criticisms of Goodyear regarding either her proposed product service bulletins or proposed warnings when the Tire at Issue was manufactured in 1994 – the only date of consequence under Nebraska law. She instead suggests that in 2006, fourteen years after the Tire at Issue was manufactured, Goodyear's duty to warn arose. However, as this Court and the Eighth Circuit have repeatedly held, Nebraska does not recognize a post-sale duty to warn. There is no basis on which Plaintiffs can advance their failure to warn claim. This Court should grant partial summary judgment in favor of Goodyear.

Additionally, Laux agrees that in 1994 Goodyear was in complete compliance with the "state of the art" in the industry regarding all three of her opinions, including the "born date." As

1810482

such, there is no material dispute over this issue,[5] and Goodyear is likewise entitled to summary judgment pursuant to Nebraska's "state of the art" defense codified at Neb.Rev.St. § 25-21, 182.

A.   **Partial Summary Judgment Due to FRE 702/*Daubert* Rulings is Appropriate.**

Plaintiffs' failure to warn claim requires expert witness testimony on the elements of defect and causation in order to survive a motion for summary judgment.  *Barrett*, 606 F.3d at 984.  If the Court grants Goodyear's *Daubert* motion directed at Laux's warning opinions, Plaintiffs' failure to warn claim cannot proceed.  As a matter of law, Plaintiffs will be unable to satisfy their evidentiary burdens.

B.   **The Court Should Grant Summary Judgment On Plaintiffs' Failure To Warn Claim Irrespective Of The Court's FRE 702/*Daubert* Ruling.**

Even if the Court does not strike as inadmissible Laux's warning opinions, they nonetheless fail to satisfy Nebraska law as to failure to warn claims. Laux offers three opinions regarding warning consumers of the alleged "tire aging" safety issues: (a) that Goodyear could have generated product service bulletins regarding tire aging; (b) Goodyear could have affixed a prototype "warning" to the sides of the tires regarding tire aging; and (c) Goodyear could have affixed a "born date" to the side of tires.[6]

Under Nebraska law, to sustain a strict product liability claim, a plaintiff must satisfy the following elements:

> (1) the defendant placed the product on the market for use and knew, or in the exercise of reasonable care should have known, that the product would be used without inspection for defects; (2) the product was in a defective condition *when it was placed on the market and left the defendant's possession*; (3) the defect is the proximate or a proximately contributing cause of the plaintiff's

---

[5]      Goodyear also submitted an expert on warnings who, likewise, confirmed that the state of the art at the time the Tire was manufactured did not involve including a warning regarding "tire aging."   See Report of Nathan T. Dorris, Ph.D., attached as Exhibit H.  As such, Plaintiffs' and Goodyear's experts agree on this point.

[6]      It is not in dispute that the Tire, and all tires manufactured for sale in the United States, do actually state the date upon which they were manufactured within the DOT number on the side of the product.

injury sustained while the product was being used in a way and for
the general purpose for which it was designed and intended; (4) the
defect, if existent, rendered the product unreasonably dangerous
and unsafe for its intended use; and (5) the plaintiff's damages
were a direct and proximate result of the alleged defect.

*Haag v. Bongers*, 589 N.W.2d 318, 328 (Neb. 1999). "A product may be defective and

unreasonably dangerous because the product was sold without sufficient warnings or

instructions." *Id*. at 329.  As noted above, Nebraska law requires that expert witness testimony

support a failure to warn claim on the elements of both defect and causation.  *Barrett*, 606 F.3d

at 984.

> **i.**    **Laux is not critical of Goodyear for not including her prototype
> warning label on the Tire at Issue, nor for not generating product
> service bulletins on tire aging prior to the manufacture of the Tire at
> Issue.**

Plaintiffs cannot satisfy the element of a "defect" on their failure to warn claim, because

Laux has no opinion that the lack of a "tire age" warning was improper or defective at the time

the Tire at Issue was manufactured.  Additionally, she is not critical of Goodyear for not

distributing product service bulletins at the time the Tire at Issue was manufactured.

Laux testified that while Goodyear "could have" issued product service bulletins prior to

manufacturing the Tire at Issue, she admitted that "*Do I think they should have?  I don't think so,

no.*"  Further, when asked if she was "critical" for not distributing product service bulletins prior

to manufacturing the Tire at Issue, she conceded that "*No, I'm not.*"  She testified that it would

have been become "appropriate" for Goodyear to issue such bulletins around 2006.

Laux made similar admissions with regard to her "prototype warning" opinion.  While

she provides the language for a prototype warning in her report, she offers no opinion that

Goodyear should have included that warning on the Tire at Issue in 1994.  Further, she testified

that she does not expect that a tire manufacturer should have included it in 1994 because "there

1810482

was not a general consensus" in the industry about the issue. When pressed as to whether or not she was actually critical of Goodyear for not including the warning on the Tire at Issue in 1994, she responded: "*Am I critical? Well, I don't know whether I would say that I'm critical or not.*" This is not a game of cat and mouse. "Maybe I have opinions and maybe I don't" falls far short of establishing the type of expert opinion testimony required to support a defect claim in Nebraska.

Simply put, Nebraska law on product defects in the form of an alleged failure to warn require that the product be defective "when it was placed on the market and left the defendant's possession." *Haag*, 589 N.W.2d at 328. As to the Tire at Issue, that was 1994. Plaintiff has no expert witness opinion testimony to support the existence of a warning-based defect at that time with regard to product service bulletins or warning labels. Partial summary judgment on Count II is warranted.

### ii.  Goodyear is entitled to partial summary judgment on Plaintiffs' failure to warn claim pursuant to Nebraska's "state of the art" statute, Neb.Rev.St. § 25-21, 182.

Likewise, as detailed above Laux agrees and would not expect Goodyear to have provided warnings and information to the general public pertinent to tire aging, i.e., product service bulletins, "born dates" and warnings, because no one anywhere in the tire industry did any of these things in 1994 and, further, there were no federal or NHTSA standards requiring such information. Further, Laux agrees that throughout the industry there was simply no accepted view on the "tire aging" theory asserted by Plaintiff here in 1994 and that studies into the issue were not even commenced by NHTSA until 2002. Not only does Laux concede she has no criticisms of Goodyear's conduct in 1994 regarding notifying consumers of alleged tire aging issues, she concedes throughout her report and testimony that Goodyear was in full compliance

with industry labeling standards at the time.

In Nebraska, this affords Goodyear a complete defense based on its compliance in 1994 with the "state of the art" on tire labeling.  Neb. Rev. St. § 25-21, 182 provides, in full:

> In any product liability action based upon negligent or defective design, testing, *or labeling*, proof establishing that such design, testing, *or labeling was in conformity with the generally recognized and prevailing state of the art in the industry at the time* the specific product involved in the action was first sold to any person not engaged in the business of selling such product shall be a defense. State of the art as used in this section shall be defined as the best technology reasonably available at the time.

By Plaintiffs' only "warnings" expert's admissions and testimony, Goodyear was in compliance with the "generally recognized and prevailing state of the art in the industry at the time" with regard to product service bulletins, "born dates" and warnings.

There is one distinction between Laux's testimony regarding the "born date" and the prototype warning/product service bulletins.  As to the latter, she has conceded that she holds no opinions critical of Goodyear.  As to the "born date" she maintains that Goodyear should have included a "born date" simply so consumers would know the date of manufacture (even though that date is already provided in the DOT number on all tires).  However, without warnings, product service bulletins, or industry studies by anyone in the tire industry regarding whether or not "tire aging" constituted a danger for which a warning was appropriate (and given that the Tire at Issue does state its manufacture date regardless), this opinion has no bearing on causation and is not linked to any safety-related "defect" theory.  Moreover, Laux concedes that such "born date" was not consistent with the industry standard at the time, and therefore Neb. Rev. St. § 25-21, 182 applies.

### iii.      Nebraska does not recognize a post-sale duty to warn.

Though Plaintiffs never pled that Goodyear had a duty to warn the public about "tire

aging" following the sale of the Tire at Issue, to the extent they attempt to skirt Laux's numerous admissions and concessions by claiming that Goodyear should have *subsequently* issued warnings, added "born dates" or incorporated her proposed "prototype warning," Nebraska law does not recognize any such duty or sustainable claim.  Nebraska law establishing Plaintiffs' burden on their failure to warn claim is based on when the product "was placed on the market and left the defendant's possession." *Haag*, 589 N.W.2d at 328.  It is not surprising then that this Court and the Eighth Circuit have repeatedly held that Nebraska does not, and would not, recognize claims based on a post-sale duty to warn. *See Anderson v. Nissan Motor Co., Ltd.*, 139 F.3d 599, 602 (8th Cir. 1998) ("[ ] Nebraska favors limiting the state's products liability law to actions or omissions which occur at the time of the manufacture or sale.  Based on this conclusion, we hold that the district court correctly dismissed [plaintiff's] claims for post-sale duty to warn [ ]."); *Vallejo v. Amgen, Inc.*, No. 8:14CV50, 2014 WL 4922901, at *4 (D. Neb. Sept. 29, 2014).

IV.   **THE COURT SHOULD GRANT GOODYEAR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' REQUEST/CLAIM FOR PUNITIVE DAMAGES AS PUNITIVE DAMAGES ARE NOT RECOGNIZED UNDER NEBRASKA LAW.**

"Nebraska law does not permit a plaintiff to obtain punitive damages over and above full compensation for the plaintiff's injuries." *Golnick v. Callender*, 860 N.W.2d 180, 190 (Neb. 2015); *see also Miller v. Kingsley*, 230 N.W.2d 472, 472 (Neb. 1975); *Qualley v. Chrysler Credit Corp.*, 217 N.W.2d 914, 915 (Neb. 1974); *Univ. of Neb. at Omaha v. Paustian*, 212 N.W.2d 704, 706 (Neb. 1973); *Abel v. Conover*, 104 N.W.2d 684, 688 (Neb. 1960); *Freemont, E. & M.V.R.R. v. French*, 67 N.W. 472, 474 (Neb. 1896); *Boldt v. Budwig*, 28 N.W. 280, 284 (Neb. 1886).  In fact, "[t]his rule is so well settled that [the Nebraska Supreme Court] dispose[s] of it merely by the citation of cases so holding." *Abel*, 104 N.W.2d at 688.

21

1810482

In the Nebraska Practice Series' Nebraska Jury Instructions—Civil, the Nebraska Supreme Court Committee on Practice and Procedure explains that the rule is based upon the Nebraska Supreme Court's interpretation of the Nebraska Constitution.  1 Nebraska Supreme Court Comm. on Practice and Procedure, *Nebraska Practice Series*, NJI2d Civ. 4 (2d ed. 2016). Specifically, the Court has recognized that two sections of the Nebraska Constitution prohibit "penalties in favor of private persons," namely Article 1, section 3, and Article VII, section 5. *Abel*, 104 N.W.2d at 690.

The Court found that this "necessarily requires [courts] to hold that the recovery of a double or treble damages, that is damages which double or treble the actual compensatory damages established, are in contravention of the same sections of the Nebraska Constitution." *Id.* Consequently, the Nebraska Supreme Court has enforced the prohibition against punitive damages, even when the Nebraska legislature attempts to impose liability beyond that for actual damages.  *See*, *e.g.*, *id.* (prohibiting punitive damages despite the legislature's attempt to allow punitive damages when it is proven that an attorney has engaged in deceit or collusion with the intent to deceive a court, judge or party).

Plaintiffs' requests for punitive damages in each of their claims are barred as a matter of law.  Goodyear's mere citation to the foregoing cases holding that punitive damages are not permitted is enough to dispose of Plaintiffs' claims for punitive damages.  *See id.* at 688 (permitting mere citation to cases because the "rule is so well settled . . . .").  Plaintiffs' claims that they are entitled to punitive damages are also barred by the Nebraska Constitution.  *See id.* at 690 (explaining the ways in which claims for punitive damages are barred by the Nebraska Constitution).  Therefore, Goodyear is entitled to judgment as a matter of law with respect to Plaintiffs' punitive damages claims.

22

## CONCLUSION

For reach of the foregoing reasons, Goodyear respectfully requests that the Court grant it partial summary judgment on (1) Plaintiffs' negligence and strict liability claims to the extent these claims are based on the inner liner compound used in the Tire;  the cured gauge of the inner liner on the Tire; and the oxidative agents that were used or should have been used in the skim coat and other compounds in the Tire; (2) Plaintiffs' claim for breach of the implied warranty of merchantability; (3) Plaintiffs' strict liability claim to the extent it is based on Goodyear's alleged failure to warn; and (4) Plaintiffs' request/claim for punitive damages.

GREENSFELDER, HEMKER & GALE, P.C.

By:  ___/s/ Edward S. Bott, Jr._____
Edward S. Bott, Jr.
Clark W. Hedger
Juliane M. Rodriguez
10 South Broadway, Suite 2000
St. Louis, MO  63102
(314) 241-9090
Fax:  (314) 345-5465
esb@greensfelder.com
ch1@greensfelder.com
jrodriguez@greensfelder.com

AND

BAIRD HOLM LLP
Jennifer D. Tricker (NE# 23022)
1700 Farnam Street, Suite 1500
Omaha, NE  68102-2068
(402) 344-0500
jtricker@bairdholm.com

*Attorneys for The Goodyear Tire & Rubber Company*

1810482

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served by electronic mail and U.S. mail, postage prepaid, this 12th day of August, 2019 to:

Kyle W. Farrar
KASTER, LYNCH, FARRAR & BALL, LLP
1010 Lamar, Suite 1600
Houston, TX 77002
kyle@fbtrial.com

Paul E. Godlewski
SCHWEBEL, GOETZ & SIEBEN, P.A.
80 South 8th Center
5120 IDS Center
Minneapolis, MN 54402
pgodlewski@schwebel.com

Michael F. Coyle
FRASER, STRYKER LAW FIRM
409 South 17th Street
Suite 500, Energy Plaza
Omaha, NE 68102
mcoyle@fraserstryker.com

*Attorney for Plaintiffs*

/s/ Edward S. Bott, Jr.

1810482