*EXHIBIT E*

David Roy Southwell - 3/28/2019

## Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

RYSTA LEONA SUSMAN, both
individually and as Legal Guardian of
SHANE ALLEN LOVELAND, et al.,
      Plaintiffs,
                                    Case No. 8:18-cv-00127
v.
THE GOODYEAR TIRE & RUBBER
COMPANY,
      Defendant.
_____

DEPOSITION OF
DAVID ROY SOUTHWELL

March 28, 2019

9:00 a.m.

Colville & Dippel
1309 E. Broadway Boulevard
Tucson, Arizona 85719

EPIQ COURT REPORTING
240 West 35th Street
8th Floor
New York, New York 10001
(212) 557-7400
Prepared by:  Sandra Marruffo, R.P.R., AZ C.R. 50815

## Page 2

    The deposition of DAVID ROY SOUTHWELL, noticed by Edward S. Bott, Jr., was taken on March 28, 2019, from 9:00 a.m. to 2:33 p.m., at the Offices of Colville & Dippel, 1309 E. Broadway Boulevard, Tucson, Arizona, 85719, before Sandra Marruffo, Arizona certified reporter No. 50815.

APPEARANCES OF COUNSEL

Attorneys for The Goodyear Tire & Rubber Company:

    GREENSFELDER, HEMKER & GALE, P.C.
    BY: Edward S. Bott, Jr.
    10 South Broadway
    Suite 2000
    St. Louis, MO 63102
    (314) 241-9090
    esb@greensfelder.com

Attorneys for the Plaintiffs:
    KASTER, LYNCH, FARRAR & BALL, LLP
    BY: Kyle W. Farrar
    1010 Lamar
    Suite 1600
    Houston, TX 77002
    kyle@fbtrial.com

ALSO PRESENT:
    Christian Teare, Videographer

## Page 3

                INDEX OF EXAMINATION

WITNESS:  DAVID ROY SOUTHWELL

EXAMINATION                              PAGE
By Mr. Bott                              5, 184
By Mr. Farrar                            179

                INDEX TO EXHIBITS
NO.      DESCRIPTION                     PAGE
EXHIBIT 1  Handwritten notes by David Southwell   8
           in preparation for deposition

EXHIBIT 2  Images attached to David Southwell's   86
           report, photographs and X-rays

EXHIBIT 3  Diagram of tire drawn by David         122
           Southwell

EXHIBIT 4  Photos                                 128

EXHIBIT 5  Photos of left rear tire               128

EXHIBIT 6  Photos of left front tire              128

EXHIBIT 7  David Southwell's Curriculum Vitae     176

EXHIBIT 8  David Southwell's Case List            176

## Page 4

              TRANSCRIPT OF DEPOSITION
                      * * *
      THE VIDEOGRAPHER:  Good morning.  We are on the record.  This is Disk No. 1 in the deposition of David Southwell taken in the matter of Susman, et al., versus Goodyear Tire & Rubber Company.  It's in the U.S. District Court, District of Nebraska.  It's Case 8:18-cv-00127.  Today's date is Thursday, March 28th, 2019, and the time is 9:00 a.m.
      My name's Christian Teare, a legal video specialist with Epiq Court Reporting.
      This deposition is taking place at 1309 East Broadway Boulevard in Tucson, Arizona.
      The certified shorthand reporter is Sandy Marruffo with Epiq Court Reporting located at 311 South Wacker Drive, Suite 350, in Chicago, Illinois.
      If Counsel would please state their appearances, the reporter will swear in the witness.
      MR. FARRAR:  Kyle Farrar for the plaintiffs.
      MR. BOTT:  Ed Bott for Goodyear.
                      * * *

David Roy Southwell - 3/28/2019

13

1  A.  I will, yeah.
2  Q.  That's fine.  Now, I want to take, first, kind
3 of a high-level broad view of what I glean from your
4 report in terms of your opinions.  Okay?
5  A.  Uh-huh.
6  Q.  Break it down a little bit?
7  A.  Yes.
8  Q.  The first thing I note is that you state that
9 there are -- that "There exists 'extensive areas' of
10 harder and more brittle rubber in the belt skim coat and
11 other compounds that have been affected by thermal
12 oxidative degradation"?
13  A.  Yes.
14  Q.  Did I state that correctly?
15  A.  Yes, I think so.
16  Q.  And you specifically, then, point to design
17 measures which are, in your judgment, successful at
18 reducing thermal oxidative degradation, including the
19 inner liner compound formula?
20  A.  Yes.
21  Q.  Inner liner cured gauge?
22  A.  Yes.
23  Q.  And antioxidative additives to the skim coats
24 and the compounds?
25  A.  Yes.

14

1  Q.  All right.  Is it your opinion to a reasonable
2 degree of engineering certainty that this tire, the tire
3 at issue in this case, was defective in design because of
4 the inner liner compound that was used?
5  A.  I can't be definitive about that because
6 Goodyear have not provided that information.
7  Q.  So the answer to that is, as of today, you are
8 unable to give that -- you do not have that opinion,
9 correct?
10  A.  Not specifically about the compound of the
11 liner.  My opinion is that the design of the tire, which
12 incorporates the inner liner compound, the gauge and the
13 antioxidants, was inadequate and caused the tire to
14 oxidize.  But I can't be specific about the compound
15 element of that because I don't have that information.
16  Q.  Okay.  Same question with regard to the inner
17 liner cured gauge.  Do you hold an opinion that this tire
18 was defective because of the cured gauge of the inner
19 liner that was on this tire?
20  A.  Well, again, the inner liner gauge is -- is
21 a -- an element or design parameter that can be changed
22 to change the rate at which the -- the skim coat
23 compounds will oxidize.  But taking the gauge in
24 isolation is -- is in many ways meaningless.  You have to
25 consider all of the factors that -- that affect

15

1 oxidation.
2  Q.  Well, whether it's meaningless or not, I
3 suppose can be debated.  But my question is, looking at
4 the inner liner gauge alone in this tire, are you
5 testifying to a reasonable degree of engineering
6 certainty that the cured inner liner gauge was
7 unreasonably dangerous?
8  A.  Not specifically, no.
9  Q.  And are you testifying to a reasonable degree
10 of engineering certainty that the inner liner compound
11 that was used was unreasonably dangerous?
12  A.  Well, again, I can't be specific about that
13 because I don't have that information.
14  Q.  I'm -- I need to parcel this out, if you can,
15 whether it's -- I understand where -- where you're coming
16 from, but I need an answer to this question, whether you
17 can state to a reasonable -- reasonable degree of
18 engineering certainty that this liner compound was
19 defective and unreasonably dangerous.
20  A.  Again, I can't be specific about that --
21  Q.  All right.
22  A.  -- because that information has not been
23 provided by Goodyear.
24  Q.  Do you hold an opinion to a reasonable degree
25 of engineering certainty that this tire was defective and

16

1 unreasonably dangerous because of the oxidative agents
2 that were used or not used in the skim coat and
3 compounds?
4  A.  Well, again, that information has not been
5 provided by Goodyear so I can't be definitive about that.
6  Q.  So the answer is, as of today, you do not hold
7 that opinion, correct?
8  A.  Well, I don't hold an opinion either way on
9 that because I don't have that level of detail.
10  Q.  Your report also contains an opinion that the
11 steel belts around the subject tire exhibit significant
12 lateral displacement around the tire, which increase the
13 overall durability load on the tire, making it more
14 susceptible to failure?
15  A.  Yes.
16  Q.  Okay.  This, I assume, would be a manufacturing
17 defect opinion?
18  A.  Yes.
19  Q.  As opposed to the one we just discussed, that
20 would be a design-related issue, correct?
21  A.  Well, it could be both in the sense that if the
22 design allows for excessive lateral variation, then the
23 design is defective.  If the design does not allow for
24 excessive lateral deviation in the location of the belts
25 and the belts exceed the specification, then, in my view,