IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RYSTA LEONA SUSMAN, both individually and as Legal Guardian of Shane Allen Loveland, and JACOB SUMMERS,<br><br>Plaintiffs,<br><br>v.<br><br>THE GOODYEAR TIRE & RUBBER COMPANY,<br><br>Defendant. | Case No. 8:18CV127<br><br>**BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

### INTRODUCTION

The Court should deny Plaintiffs' Motion for Summary Judgment on Goodyear's affirmative defenses of efficient intervening cause and misuse. Goodyear has adduced sufficient evidence in discovery from which a reasonable jury could find in Goodyear's favor on both of these defenses, and disputed questions of material fact exist with respect to these defenses which only the jury can resolve. Accordingly, the Court should deny Plaintiffs' Motion for Summary Judgment as to these two affirmative defenses pursuant to Federal Rule of Civil Procedure 56.

### STATEMENT OF UNDISPUTED MATERIAL FACTS

For purposes of Goodyear's Brief in Opposition to Plaintiffs' Motion for Summary Judgment, the following are the undisputed material facts:

1. The Plaintiffs in this case are Rysta Leona Susman, individually and as legal guardian of Shane Loveland, and Jacob Summers. (Notice of Removal, Ex. 1 – Exhibits, Ex. D– Complaint (hereinafter, "Compl.") ¶¶ 2-4, ECF No. 1-1 at 18-19.)

2. Plaintiffs are residents and citizens of Nebraska. (Compl. ¶¶ 2-4, ECF No. 1-1 at

1

18-19.)

3. Goodyear is the sole defendant in this case. Goodyear is incorporated under the laws of Ohio and its principal place of business is in Akron, Ohio. (Goodyear's 1st Am. Ans., ECF No. 72, at 2.) Goodyear is thus a citizen of Ohio.

4. The accident at issue in this case took place in Hall County, Nebraska on May 1, 2015. (State of Nebraska Investigator's Motor Vehicle Accident Report ("Accident Report"), attached as Exhibit A, at 1.)

5. The amount in controversy in this case exceeds $75,000, exclusive of interest and costs. (ECF No. 1 at 5-6.)

6. On May 1, 2015, Mr. Loveland and Mr. Summers were passengers in a 2003 Chevrolet Silverado SC1 pickup truck, VIN # 1GCEC14X33Z115363 (the "Subject Vehicle") owned by Dandee Concrete Construction when the right rear tire (the "Tire" or "Tire at Issue") suffered a disablement. (Compl. ¶ 10, ECF No. 1-1 at 21; Accident Report, Ex. A, at 1.)

7. Larry Blair, a Dandee Concrete Construction employee, was driving the Subject Vehicle at the time of the accident. (2.7.19 Deposition of Larry Blair ("Blair Dep."), attached as Exhibit B, at 38:7-25; 41:12-14; 67:16-25.)

8. The Subject Vehicle was owned by Dandee Concrete Construction and used for purposes of Dandee's concrete business. (10.23.18 Deposition of Daniel T. Bueser ("Bueser Dep."), attached as Exhibit C, at 14:10-14; 18:1-11; 47:2-6.)

9. During the relevant period of time, Dandee Concrete Construction sent its trucks to Kearney Towing & Repair Center, Inc. ("Kearney Towing") for tire work and other maintenance work. (Bueser Dep., Ex. C, at 16:20—17:2.)

10. Kearney Towing regularly engages in the business of selling, inspecting, and

2

1811639

installing automotive tires. (Complaint, *Susman v. Kearney Towing & Repair Center, Inc.*, Case No. D09CI190000158 (Buffalo County, Neb.) ("Kearney Complaint"), attached as Exhibit D, at 4.)

11. On June 10, 2014, Kearney Towing scrapped four tires that were then on the Subject Vehicle, and replaced the tires with four used tires provided by Dandee. (Kearney Invoice #91571, attached together with its accompanying Affidavit of Records Custodian as Exhibit E.)

12. Kearney Towing inspected, mounted, installed, and balanced these four tires on the Subject Vehicle, and these were the four tires that were on the Subject Vehicle at the time of the accident. (Kearney Complaint, Ex. D, at 2; Ex. E.)

13. After installing the Tire at Issue, Kearney Towing performed additional maintenance work on the Subject Vehicle between July 9, 2014 and July 12, 2014. (Kearney Invoice # 92265, attached together with its accompanying Affidavit of Records Custodian as Exhibit F.)

14. The Tire at Issue in this case is an LT235/85R16 Goodyear Wrangler HT tire bearing DOT # MD0RNJHV244, which identifies a tire manufactured by Goodyear at its Gadsden, Alabama plant during the 24th week of 1994. (5.9.19 Expert Report of Joseph L. Grant ("Grant Rep"), attached as Exhibit G, at 7.) The DOT information as well as the load and inflation pressure limits are on the sidewall of the Tire. (*Id.*)

### EXPERT OPINIONS AND DISPUTED FACTS RELEVANT TO GOODYEAR'S AFFIRMATIVE DEFENSES

For purposes of Goodyear's Brief in Opposition to Plaintiffs' Motion for Summary Judgment, the following are the expert opinions and disputed facts relevant to Goodyear's Affirmative Defenses:

3

1811639

1. Goodyear has identified Joseph L. Grant as an expert in tire design, manufacture, and failure analysis. (GY Am. Id. Exp. W.s, ECF No. 87, at 1.)

2. Mr. Grant received a Bachelor of Science Degree in Mechanical Engineering from Fenn College of Engineering at Cleveland State University in 1971 and was employed as a tire engineer for more than 34 years by Continental Tire North America, Inc. (Grant Rep., Ex. G, at 1.)

3. During his career, Mr. Grant's responsibilities included the design, development, testing and forensic analysis of tires. As part of his development responsibilities, Mr. Grant was involved with testing of tires and analyzing field performance of tires including tires returned and adjustment data. (Grant Rep., Ex. G, at 1.)

4. In his Report, Mr. Grant offered the following opinions:

   a. The subject tire "should not have been in service on the day of the accident. The person responsible for maintaining and inspecting the subject tire should have taken remedial action and removed the subject tire . . . from service before the accident." (Grant Rep., Ex. G, at 21);

   b. "[T]he tread over the localized region where the subject tire failed would have appeared distorted leading up to the crash." (Grant Rep., Ex. G, at 21);

   c. Given that the Tire at Issue was approximately 21 years old at the time of the accident, and that its service life over this period is and remains unknown, the Tire should have been removed from the subject vehicle. (Grant Rep., Ex. G, at 22); and

   d. "The longer a tire is in service, the more opportunity that a tire may experience some type of service condition that with continued use may cause a tire failure."

(Grant Rep., Ex. G, at 22.)

5. During his deposition, Mr. Grant further opined that, given the Tire's age and unknown service life, "any tire professional would err on the side of removing any tires from service that are that old or not installing tires that are that old." (Tr. 5.31.19 Deposition of Joseph L. Grant ("Grant Dep."), attached as Exhibit H, at 170:23—171:9.)

6. He further testified that any reasonable, prudent tire professional would not have put the Tire at Issue into service. (Grant Dep., Ex. H, at 173:15-21.)

7. Because Kearney Towing holds itself as performing tire work, and because it installed the Tire at Issue on and maintained the Subject Vehicle, Kearney Towing is a tire professional. (Grant Dep., Ex. H, at 172:20-25.)

8. During his inspection of the Tire, Mr. Grant observed evidence of overdeflected operation of the Tire. (Grant Rep., Ex. G, at 13, 14.)

9. Overdeflected operation "can be caused by overloading, underinflation or a combination of both. Overdeflected operation increases the operating temperature of the tire . . . [and] can damage the tire, including degrading the physical properties of the rubber compounds and reducing a tire's resistance to separation especially at the belt edges." (Grant Rep., Ex. G, at 14.)

10. The physical evidence of overdeflected operation of the Tire includes rim line polishing to grooving on both sides of the Tire, multi-level radial tear lines on the serial side and opposite serial side belt edges, and the polished worn flanges on the wheel with some black rubber transfer. (Grant Rep., Ex. G, at 14.)

11. According to Mr. Grant, "[t]he tire in this case failed because the tire suffered service conditions and abuses that changed its condition substantially after it left Goodyear."

(Grant Rep., Ex. G, at 12-13.)

12. The "tire experienced detachment of a portion of the tread and top steel belt as a result of a localized road hazard impact and overdeflected operation." (Grant Rep., Ex. G, at 13.)

13. Goodyear has identified Gray Beauchamp as an expert in vehicle handling and controllability. (GY Am. Id. Exp. W.s, ECF No. 87, at 2.)

14. Mr. Beauchamp is a principal engineer at Kineticorp. He holds a B.S. in Mechanical Engineering from the University of Colorado, Boulder and an M.S. in Mechanical Engineering from the University of Colorado, Denver. (5.6.19 Expert Report of Gray Beauchamp ("Beauchamp Rep."), attached as Exhibit I, at 14.)

15. Mr. Beauchamp is a registered Professional Engineer in the State of Colorado and is an accredited Traffic Accident Reconstructionist through Accreditation Commission for Traffic Accident Reconstruction. (Beauchamp Rep., Ex. I, at 14.)

16. Mr. Beauchamp is an expert in traffic accident reconstruction and Vehicle Dynamics and has investigated and reconstructed hundreds of vehicle accidents. (Beauchamp Rep., Ex. I, at 14.)

17. In his Report, Mr. Beauchamp offered the following opinions, among others:

    a. At the time of the tire disablement the tire did not lose its inflation pressure. (Beauchamp Rep., Ex. I, at 2);

    b. "In response to the tire disablement, [the subject vehicle's driver] Mr. Blair steered multiple times. His right steering input caused the vehicle to exit the right side of the #2 lane. Mr. Blair then steered to the left, which caused the Silverado to yaw counter-clockwise and deposit tire marks across both eastbound lanes, before entering the median and rolling over." (Beauchamp Rep., Ex. I, at 2);

    c. "Near the beginning of the tire mark evidence, Mr. Blair improperly applied the throttle." (Beauchamp Rep., Ex. I, at 2);

    d. "This crash was caused by Mr. Blair steering excessively following the tire disablement." (Beauchamp Rep., Ex. I, at 2);

    e. "Mr. Blair could have kept the Silverado within its lane of travel with minor corrective steering." (Beauchamp Rep., Ex. I, at 2); and

    f. "The Silverado was controllable before, during and after the tire disablement." (Beauchamp Rep., Ex. I, at 2.)

18. Mr. Beauchamp also noted in this Report that Tire disablements seldom result in crashes and that the National Highway Transportation and Safety Administrative has concluded that 95% of single vehicle run-off-road crashes were driver related." (Beauchamp Rep., Ex. I, at 10.)

19. Goodyear did not foresee, and could not reasonably have foreseen that an automotive service professional like Kearney Towing would have installed the Tire at Issue on the Subject Vehicle given the Tire's advanced age and unknown service history. (See Declaration of Jay Lawrence, attached as Exhibit J, ¶¶ 3-6; Declaration of Michael Kerns, attached as Exhibit K, ¶¶ 6-9.)

## ARGUMENT

### I. Summary Judgment Standard.

Summary judgment "is appropriate when the evidence viewed in the light most favorable to the nonmoving party, demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Hanger v. Lake County*, 390 F.3d 579, 582 (8th Cir. 2004) (citing *First Bank of Marietta v. Hogge*, 161 F.3d 506, 510 (8th Cir.

1998)); *see* Fed R. Civ. P. 56(c). To survive a motion for summary judgment, the nonmoving party must substantiate their allegations with "sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy." *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992).

II. **The Court Should Deny Plaintiffs' Motion For Summary Judgment On Goodyear's Affirmative Defense Of Efficient Intervening Cause.**

Goodyear has adduced sufficient evidence from which a reasonable jury could conclude that Goodyear's alleged acts and omissions, and the allegedly defective condition of the Tire at Issue, were not the proximate cause of the subject accident. First, Goodyear has adduced evidence that Kearney Towing negligently put the Tire at Issue on the Subject Vehicle, and, after putting it on the Vehicle, negligently failed to remove it from service when it later performed maintenance on the Vehicle. Second, Goodyear has adduced evidence that Larry Blair, the driver of the Subject Vehicle, negligently caused the accident by oversteering in response to the disablement of the Subject Tire. Given this evidence, a reasonable juror could find in Goodyear's favor on the affirmative defense of efficient intervening cause.

A. **Efficient Intervening Cause.[1]**

To succeed on negligence and strict products liability claims, a plaintiff must prove that the defendant's conduct, or the condition of the defendant's product, was the proximate cause of the plaintiff's injuries. *Roskop Dairy, L.L.C. v. GEA Farm Techs., Inc.*, 871 N.W.2d 776, 794 (Neb. 2015); *Stahlecker*, 667 N.W.2d at 248; *see also Pitts v. Genie Indus., Inc.*, 921 N.W.2d 597, 609 (Neb. 2019).

---

[1] The absence of an efficient intervening cause is part of a plaintiff's burden of proof on causation. *Stahlecker v. Ford Motor Co.*, 667 N.W.2d 244, 248 (Neb. 2003). As such, there is support for the proposition that efficient intervening cause is not actually an affirmative defense. *E.g.*, 1 Neb. Prac., NJI2d Civ. 3.43. Nevertheless, because Goodyear pleaded it as an affirmative defense, out of an abundance of caution, Goodyear addresses efficient intervening cause in this Brief as though it were an affirmative defense.

8

To establish proximate cause on a negligence claim, a plaintiff must prove "(1) that without the negligent action, the injury would not have occurred, commonly known as the 'but for' rule; (2) that the injury was a natural and probable result of the negligence; and (3) that there was no efficient intervening cause." *Stahlecker*, 667 N.W.2d at 248. Courts require similar proof for strict products liability claims, but the focus of the first two prongs of the causation test is on the condition of the product. *See Pitts*, 921 N.W.2d at 609; *Roskop Dairy, L.L.C.*, 871 N.W.2d at 794.

For purposes of this test, an efficient intervening cause "is a new, independent force intervening between the defendant's negligent act and the plaintiff's injury." *Stahlecker*, 667 N.W.2d at 254. The force "may be the conduct of a third person who had full control of the situation, whose conduct the defendant could not anticipate or contemplate, and whose conduct resulted directly in the plaintiff's injury. An efficient intervening cause must break the causal connection between the original wrong and the injury." *Id.* An intervening cause cuts off an original tortfeasor's liability only when the cause is not foreseeable. *Sacco v. Carothers*, 567 N.W.2d 299, 304 (Neb. 1997).

Whether a force or action constitutes an efficient intervening cause and whether a plaintiff has met its burden to establish proximate cause are typically fact questions to be resolved by the jury. *E.g.*, *Zeller v. Howard Cty.*, 419 N.W.2d 654, 658 (Neb. 1988). The same is true for the question of whether the actions of a third party are foreseeable to the defendant seeking to demonstrate that the third-party's actions constitute an efficient intervening cause. *Hancock v. Paccar, Inc.*, 283 N.W.2d 25, 36 (Neb. 1979); *Certain Underwriters at Lloyd's v. S. Pride Trucking, Inc.*, 301 F. Supp. 3d 949, 958 (D. Neb.), *on reconsideration in part*, 331 F.

9

Supp. 3d 956 (D. Neb. 2018); *Isla Drinkwalter v. Frontera Produce Ltd*, No. 7:13CV5006, 2014 WL 12577029, at *5–6 (D. Neb. June 24, 2014).

> **B.  A Reasonable Jury Could Conclude Kearney Towing's Decision To Put The Tire At Issue On The Subject Vehicle Was An Efficient Intervening Cause Of The Accident.**

Kearney Towing, like every other entity and individual, has a duty to exercise reasonable care when its conduct creates a risk of physical harm. *E.g.*, *Latzel v. Bartek*, 846 N.W.2d 153, 168 (Neb. 2014). Through the expert report and testimony of Joe Grant, Goodyear has introduced evidence from which a reasonable jury could conclude that Kearney Towing violated this duty by negligently putting the Tire on the Vehicle, and negligently failing to remove the Tire from the Vehicle during a subsequent service appointment, and that these negligent acts and omissions constitute efficient intervening causes that insulate Goodyear from liability in this case.

Specifically, according to Mr. Grant, Kearney Towing should not have mounted the Tire at Issue on the Subject Vehicle. (Expert Opinions and Disputed Facts Relevant To Goodyear's Affirmative Defenses ("DF") 4.) When it performed maintenance on the Subject Vehicle approximately one month after mounting the Tire on the Vehicle, Kearney Towing should have removed it. (*See id.*) From this testimony, a jury could reasonably conclude that Kearney Towing acted negligently by failing to exercise reasonable care to prevent an accident resulting from the placement of the Tire on the Vehicle.

When Kearney Towing mounted the Tire at Issue on the Subject Vehicle, it had full control of the situation. It possessed the Tire; it had the ability to inspect it; it knew or should have known the Tire's age; it was unaware of the Tire's previous service life; and it placed the Tire into service anyway. *See Zeller*, 419 N.W.2d at 658 (finding that a pickup truck driver "had

10

1811639

complete control over the situation because he could have avoided the collision by exercising reasonable care while driving the pickup toward and into the intersection.") In sum, it had complete control of the situation, and, despite its duty not to mount the Tire on the Vehicle, it did so anyway.

The same is true for its decision not to remove the Tire at Issue when the Subject Vehicle was later in the shop for maintenance. Kearney Towing possessed the Tire; it had the ability to inspect it and should have done so; it knew or should have known the Tire's age; it knew it was unaware of the Tire's previous service life; and it failed to remove the Tire from service. *See id.* It had complete control of the situation, and, despite its duty to remove the Tire from the Vehicle, it failed to do so.

Had Kearney Towing acted in accordance with its negligence duties, the Tire at Issue—given its age and unknown service life—would not have been on the Vehicle and there would have been no accident. Thus, but for Kearney Towing's actions and inactions, the accident, and the resulting injuries to the Plaintiffs, would not have occurred.

Moreover, Goodyear could not have reasonably foreseen that an automotive service professional like Kearney Towing would have placed a 20-year-old tire into service, especially without knowing the Tire's service history. Kearney's actions were not reasonably foreseeable and Goodyear did not foresee, and could not have foreseen or anticipated, that Kearney Towing would take this action. (DF ¶ 19.)

Taken together, these facts adduced in discovery are sufficient to create a triable issue on the affirmative defense of efficient intervening cause.

1811639

> C. **A Reasonable Jury Could Conclude That Larry Blair's Response To The Tire at Issue's Disablement Was An Efficient Intervening Cause Of The Accident.**

Goodyear has also adduced evidence from which a jury could conclude that Larry Blair's response to the Tire's disablement was an efficient intervening cause of the accident.

As the driver of the Subject Vehicle, Mr. Blair had a duty to exercise ordinary care for the safety of others and to avoid an accident. *See Chmelka v. Cont'l W. Ins. Co.*, 352 N.W.2d 613, 617 (Neb. 1984); *Burhoop v. Brackhan*, 82 N.W.2d 557, 564 (Neb. 1957). Through the expert report and testimony of Gray Beauchamp, Goodyear has introduced evidence from which a reasonable jury could conclude that Mr. Blair's oversteering and throttle application in response to the Tire's disablement was negligent and constitutes an efficient intervening cause that insulates Goodyear from liability in this case.

Specifically, Mr. Beauchamp concluded, based on his review of the evidence and testimony in this case, that, in response to the Tire's disablement[2], Mr. Blair steered multiple times, improperly applied the throttle, and that the "crash was caused by Mr. Blair steering excessively following the tire disablement." (DF ¶ 17.) This evidence—especially when combined with Mr. Beauchamp's testimony about a NHTSA study concluding 95% of single vehicle run-off-road crashes were driver related—is a sufficient basis for the jury to conclude that Mr. Blair acted negligently in response to the tire disablement.

Moreover, Mr. Blair had control over the situation. He was behind the wheel at the time of the accident, and he could have avoided the accident if he had not oversteered in response to the disablement. Indeed, Mr. Beauchamp has opined that the Subject Vehicle was "controllable

---

[2] It should be noted that the tire did not lose air until well after Mr. Blair had lost control. Plaintiffs' Accident Reconstruction Expert, Micky Gilbert, testified that the Tire at Issue did not lose its inflation pressure until the vehicle rolled over. (Tr. 4.16.19 Deposition of Micky Gilbert, PE, attached as Exhibit L, at 32:7-16.)

12

1811639

before, during, and after the tire disablement." (DF ¶ 17.) Thus, a jury could conclude that, but for Mr. Blair's negligent response to the Tire's disablement, no accident would have resulted.

Finally, given the ability of Mr. Blair to steer the Vehicle after the accident, his conduct in oversteering multiple times and applying throttle at the same time was neither reasonably nor objectively foreseeable to a product manufacturer like Goodyear.

### III. The Court Should Deny Plaintiffs' Motion For Summary Judgment On Goodyear's Affirmative Defense Of Misuse.

Goodyear has adduced sufficient evidence from which a reasonable juror could conclude that the Tire at Issue had been misused before the accident by a third party. Specifically, Goodyear's tire expert, Joe Grant, has opined that the Tire exhibited evidence of, and failed in part due to, overdeflected operation (underinflation, overloading or both). Overdeflected operation constitutes misuse under Nebraska law, and Goodyear has come forward with sufficient evidence to submit this defense to the jury.

#### A. The Affirmative Defense Of Misuse.

Misuse constitutes an affirmative defense to both negligence and strict liability claims for product liability. *Jay v. Moog Auto., Inc.*, 652 N.W.2d 872, 882–83 (Neb. 2002) (strict liability); *Hilt Truck Line, Inc. v. Pullman, Inc.*, 382 N.W.2d 310, 313 (Neb. 1986). To succeed on the affirmative defense of misuse, a defendant must prove "(1) that the plaintiff used the product as claimed by the defendant, (2) that the defendant could not reasonably have foreseen such a use, and (3) that this misuse by the plaintiff was a proximate cause of his own injury." *Wedgewood v. U.S. Filter/Whittier, Inc.*, No. A-09-1280, 2011 WL 2150102, at *10 (Neb. Ct. App. May 31, 2011). To be clear, the misuse need not be "the" proximate cause, so long as it is "a" proximate cause of the plaintiff's damage. *Keaschall v. Altec Indus., Inc.*, No. 4:14CV3070, 2017 WL 3084393, at *7 (D. Neb. July 19, 2017).

13

The rationale for this defense is straightforward: a product's "seller is entitled to expect a normal use of his product, and is not liable when it is put to abnormal use. Thus, the seller is not liable when the product is mishandled, or used in some unusual and unforeseeable way. The seller is entitled to have due warnings and instructions followed; and when they are disregarded, and injury results, he is not liable." *Erickson v. Monarch Indus., Inc.*, 347 N.W.2d 99, 107–08 (Neb. 1984).

The Supreme Court of Nebraska has not yet ruled on whether third-party misuse is a defense to a products liability claim, but several other jurisdictions have recognized third-party misuse as an affirmative defense in products liability cases. *Jameson v. Liquid Controls Corp.*, 618 N.W.2d 637, 646 (Neb. 2000). Other courts applying Nebraska law have suggested that third-party misuse is, in fact, a valid defense to a products liability claim. *Carlson v. Freightliner LLC*, 226 F.R.D. 343, 358 (D. Neb. 2004) ("[B]oth misuse by a plaintiff, the more usual case, and misuse by a third party can defeat a strict liability action.") (citation omitted). The Court should follow the courts which have affirmatively addressed this issue, and conclude that third-party misuse is a valid affirmative defense to negligence and strict liability claims in products liability cases.

### B. A Reasonable Jury Could Conclude That Third-Party Misuse Of The Tire Was An Efficient Intervening Cause Of The Accident.

Here, Goodyear has introduced evidence that the Tire was misused and that this misuse was a proximate cause of the accident. Specifically, Goodyear's tire expert, Joe Grant, has opined that the Tire at Issue demonstrated signs of overdeflected operation, and that this overdeflected operation was a cause of the Tire's failure. (DF ¶¶ 8, 10, 11-12.)

Overdeflected operation can occur when a tire is overloaded, or if it is underinflated, or a combination of both. (DF ¶ 9.) Maximum load limits and inflation pressures are on the sidewall

14

of the Tire. (SOF ¶ 14.) The vehicle placard and owner's manual will contain the weight ratings for each axle and the recommended inflation pressure for the tires originally sold with the vehicle. (See 3.12.19 Expert Report of Micky Gilbert, P.E., attached as Exhibit M, at 10; Selected Portions of the Subject Vehicle's Owner's Manual, attached as Exhibit N, at 4-56, 5-72.) Thus, any user or operator of the Tire, at any point during its service life, was or should have been aware of the weight and pressure requirements of the Tire. By extension, given the evidence of overdeflected operation in the Tire, the Tire's users necessarily failed to abide by these weight and pressure directions.

The evidence before the Court demonstrates that the Tire was misused, given the evidence of overdeflected operation. The evidence also demonstrates that the third-parties who used the Tires did not follow the directions and warnings Goodyear provided with respect to inflating tires and the appropriate load to be put on the tires. Goodyear was entitled to have its warnings and instructions followed and, as such, it was not reasonably foreseeable that the Tire would be misused in this way, and Goodyear cannot be held liable for damages resulting from this misuse. *Erickson*, 347 N.W.2d at 107–08. Finally, Joe Grant, Goodyear's tire expert, has opined that the overdeflected operation of the Tire was a cause of the Tire's disablement.

On these facts, a reasonable jury could find in Goodyear's favor on the affirmative defense of misuse.

## CONCLUSION

For each of the foregoing reasons, Goodyear respectfully requests that the Court deny Plaintiffs' Motion for Summary Judgment on the affirmative defenses of efficient intervening cause and misuse.

1811639

GREENSFELDER, HEMKER & GALE, P.C.

By: ___/s/ Edward S. Bott, Jr._____
Edward S. Bott, Jr.
Clark W. Hedger
Juliane M. Rodriguez
10 South Broadway, Suite 2000
St. Louis, MO 63102
(314) 241-9090
Fax: (314) 345-5465
esb@greensfelder.com
ch1@greensfelder.com
jrodriguez@greensfelder.com

AND

BAIRD HOLM LLP
Jennifer D. Tricker (NE# 23022)
1700 Farnam Street, Suite 1500
Omaha, NE 68102-2068
(402) 344-0500
jtricker@bairdholm.com

*Attorneys for The Goodyear Tire & Rubber Company*

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true and accurate copy of the foregoing was filed with the Clerk of Court and served on all attorneys of record via the CM/ECF system this 3rd day of September, 2019 to:

Kyle W. Farrar
KASTER, LYNCH, FARRAR & BALL, LLP
1010 Lamar, Suite 1600
Houston, TX 77002
kyle@fbtrial.com

Paul E. Godlewski
SCHWEBEL, GOETZ & SIEBEN, P.A.
80 South 8th Center
5120 IDS Center
Minneapolis, MN 54402
pgodlewski@schwebel.com

Michael F. Coyle
FRASER, STRYKER LAW FIRM
409 South 17th Street
Suite 500, Energy Plaza
Omaha, NE 68102
mcoyle@fraserstryker.com

*Attorney for Plaintiffs*

                                                /s/ Edward S. Bott, Jr.

1811639