**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

RYSTA LEONA SUSMAN, both individually
and as Legal Guardian of Shane Allen
Loveland, and JACOB SUMMERS,

        Plaintiffs,

v.

THE GOODYEAR TIRE & RUBBER
COMPANY,

        Defendant.

Case No. 8:18CV127

**THE GOODYEAR TIRE & RUBBER
COMPANY'S BRIEF IN OPPOSITION
TO PLAINTIFFS' MOTION TO APPLY
OHIO LAW REGARDING PUNITIVE
DAMAGES**

The Goodyear Tire & Rubber Company ("Goodyear") hereby submits its Brief in Opposition to Plaintiffs' Motion to Apply Ohio Law Regarding Punitive Damages (ECF No. 106).

## INTRODUCTION

This is a suit in which plaintiffs, residents of Nebraska, seek to recover millions of dollars in damages from Goodyear for personal injuries they sustained in a single vehicle accident occurring in Nebraska, in the course of employment with their Nebraska employer, involving alleged defects in a tire put in service by a Nebraska company on a vehicle titled and licensed in Nebraska and owned by plaintiffs' Nebraska employer. The only witnesses are from Nebraska, initial responders to the accident are from Nebraska, and the plaintiffs were treated for their injuries by health care providers in Nebraska. Plaintiffs are content to have Nebraska law apply to every substantive aspect of this case, except one – punitive damages. Had this case been first filed in Nebraska, where it belongs, plaintiffs would have no right of recovery for punitive damages. *See O'Brien, et. al. v. Cessna Aircraft Company, et. al.,* 298 Neb. 109, 138-142 (2017).

Plaintiffs argue that Ohio's law on punitive damages should apply based on the Pennsylvania choice of law analysis. Plaintiffs' continued efforts to game the system should not be countenanced. First, they filed suit in Pennsylvania – a state that has no connection to the plaintiffs, the incident, the product or the defendant. They could have sued Goodyear in Ohio but chose not to. Now they want to reap the benefits of their fraudulent joinder by asking this court to rely on Pennsylvania's choice of law standard solely as to punitive damages. They want Nebraska law to apply to all other issues. "[D]eciding the choice-of-law issue with regard to punitive damages solely on the basis of which state enables a plaintiff to recover more money has no principled basis in law." *Peoples Bank & Trust Co. v. Piper Aircraft Corp.*, 598 F. Supp. 377, 381 (S.D. Fla. 1984).

Plaintiffs' attempt to use Pennsylvania's choice of law analysis to cherry pick which state's punitive damages law applies should be rejected. This court should follow the *O'Brien* reasoning and apply Nebraska law to the issue of punitive damages. Even if this Court were to apply the Pennsylvania choice of law analysis, Nebraska's contacts with this case and its interest in enforcement of its laws so overwhelmingly dominates the interest of any other state that Nebraska punitive damage law should be applied. Accordingly, Plaintiffs' Motion should be denied.

## PROCEDURAL HISTORY

Plaintiffs originally filed this action on July 18, 2017, in the Court of Common Pleas of Philadelphia County in Pennsylvania.[1]  (Compl., ECF No. 1-1.)  In that filing, Plaintiffs named

---

[1] This is the second of two actions that plaintiffs have filed based on the exact same set of facts. On March 8, 2017, Plaintiffs filed their first complaint against non-existent "Goodyear Tire & Rubber Company" and several other entities, in the Court of Common Pleas of Philadelphia County. Plaintiffs voluntarily dismissed the first action.

1811139

nine defendants, all with names that included some form of "Goodyear" or "Goodwear."[2] Plaintiffs alleged that all of these entities except "[The] Goodyear Tire & Rubber Company" and "Goodwear Tire and Rubber Company" were domestic Pennsylvania entities.  (Compl., ¶¶ 5-6.)

On August 7, 2017, Goodyear removed this case to the United States District Court for the Eastern District of Pennsylvania based on diversity of citizenship jurisdiction, and on August 8, 2017, Goodyear filed a Motion to Transfer to the United States District Court for the District of Nebraska.  (ECF Nos. 1, 2.)  On August 23, 2017, Plaintiffs moved to remand the action to state court.  (ECF No. 8.)  After briefing and oral argument on Plaintiffs' remand motion, the United States District Court for the Eastern District of Pennsylvania denied Plaintiffs' motion, holding that each of the Pennsylvania entities were fraudulently joined in this action and/or do not actually exist.  (ECF No. 28, p. 14.)  The court dismissed the fraudulently joined entities, leaving Goodyear as the sole Defendant in this case.  (ECF No. 29.)  On March 15, 2018, Goodyear renewed its motion to transfer the action to the United States District Court for the District of Nebraska pursuant to 28 U.S.C. § 1404(a), and on March 22, 2018, the parties executed a stipulation to transfer the action to the District of Nebraska, and the stipulation was entered as an Order of the Court.   (ECF No. 31.)

## FACTUAL BACKGROUND

The Plaintiffs in this case are Rysta Leona Susman, individually and as legal guardian of Shane Loveland, and Jacob Summers.  (Compl., ECF No. 1-1 at 18-19.)  Plaintiffs are residents and citizens of Nebraska.  (Compl. ¶¶ 2-4, ECF No. 1-1 at 18-19.)  Goodyear is now the sole

---

[2] The Plaintiffs originally brought suit against: (1) Goodyear Tire & Rubber Company, a Pennsylvania corporation; (2) Pennsylvania Goodyear d/b/a The Goodyear Tire and Rubber Company; (3) Pennsylvania Goodyear d/b/a Goodwear Tire and Rubber Company; (4) Goodwear; (5) Goodwear d/b/a Ohio Goodyear; (6) Goodwear d/b/a Pennsylvania Goodyear; (7) Ohio Goodyear; (8) Ohio Goodyear d/b/a Pennsylvania Goodyear; and (9) Ohio Goodyear d/b/a Goodwear.  (Compl., ¶ 1.)

defendant in this case.  Goodyear is incorporated under the laws of Ohio and its principal place of business is in Akron, Ohio.  (Goodyear's First Am. Answer, ECF No. 72, at ¶ 2.)

The accident at issue in this case took place in Hall County, Nebraska on May 1, 2015. (State of Nebraska Investigator's Motor Vehicle Accident Report ("Accident Report"), attached as Exhibit A, at 1.)  On May 1, 2015, Mr. Loveland and Mr. Summers were passengers in a 2003 Chevrolet Silverado SC1 pickup truck, VIN # 1GCEC14X33Z115363 (the "Subject Vehicle") owned by Dandee Construction when the right rear tire suffered a disablement.  (Compl. ¶ 10, ECF No. 1-1 at 21; Accident Report, Ex. A, at 1.)  Larry Blair, a Dandee Construction employee, was driving the Subject Vehicle at the time of the accident.  (2.7.19 Deposition of Larry Blair ("Blair Dep."), attached as Exhibit B, at 38:7-25; 41:12-14; 67:16-25.)  Mr. Loveland, Mr. Summers, and Mr. Blair were all treated at Good Samaritan Hospital in Kearney, Nebraska following the accident.  (Accident Report, Ex. A, at 2.)

The Subject Vehicle was owned by Dandee Construction and used for purposes of Dandee's concrete business.  (10.23.18 Deposition of Daniel T. Bueser ("Bueser Dep."), attached as Exhibit C, at 14:10-14; 18:1-11; 47:2-6.)  Dandee Construction sent its trucks to Kearney Towing for tire work and other maintenance work.  (Bueser Dep., Ex. C, at 16:20-17:2.)  On June 10, 2014, Kearney Towing scrapped the four tires that were then on the Subject Vehicle, and replaced the tires with used tires provided by Dandee Construction and mounted those tires on the Subject Vehicle.  (Kearney Invoice #91571, attached together with its accompanying Affidavit of Records Custodian as Exhibit E.)  Kearney Towing performed additional maintenance work on the Subject Vehicle between July 9, 2014 and July 12, 2014.  (Kearney Invoice # 92265, attached together with its accompanying Affidavit of Records Custodian as Exhibit F.)

4

1811139

The Tire at Issue in this case is an LT235/85R16 Goodyear Wrangler HT tire bearing DOT # MD0RNJHV244, which identifies a tire manufactured by Goodyear at its Gadsden, Alabama plant during the 24th week of 1994. (5.9.19 Expert Report of Joseph L. Grant ("Grant Rep"), attached as Exhibit G, at 7.)

Plaintiffs have identified David Southwell as an expert in tire failure analysis. (Pltffs' Am. Id. Exp. W.s, ECF No. 84.) Mr. Southwell testified that the LT235/85R16 Goodyear Wrangler HT tire, the model tire of the Tire at Issue, as designed and manufactured by Goodyear, met Federal Motor Vehicle Safety Standards. (3.28.19 Deposition of David Southwell ("Southwell Dep."), attached as Exhibit O, at 54:5-16.) Mr. Southwell acknowledged that had the tire not passed the Federal Motor Vehicle Safety Standard testing, then it would not have been fit for use. *Id.*

Goodyear has identified Joseph L. Grant as an expert in tire design, manufacture, and failure analysis. (GY Am. Id. Exp. W.s, ECF No. 87, at 1.) Mr. Grant stated that "the subject tire's design and construction was state of the art for light truck tires manufactured in 1994." (Grant Rep., Ex. G, at 21.) Mr. Grant also opined that the tire "should not have been in service on the day of the accident. The person responsible for maintaining and inspecting the subject tire should have taken remedial action and removed the subject tire . . . from service before the accident." (Grant Rep., Ex. G, at 21.) During his deposition, Mr. Grant further opined that, given the Tire's age and unknown service life, "any tire professional would err on the side of removing any tires from service that are that old or not installing tires that are that old." (Tr. 5.31.19 Deposition of Joseph L. Grant ("Grant Dep."), attached as Exhibit H, at 170:23—171:9.)

Goodyear has identified Gray Beauchamp as an expert in vehicle handling and controllability. (GY Am. Id. Exp. W.s, ECF No. 87, at 2.) In his Report, Mr. Beauchamp opined

that "this crash was caused by Mr. Blair [the subject vehicle driver] steering excessively following the tire disablement;" "Mr. Blair could have kept the Silverado within its lane of travel with minor corrective steering;" and "The Silverado was controllable before, during and after the tire disablement."  (Beauchamp Rep., Ex. I, at 2.)

## ARGUMENT

### I.     Nebraska Choice of Law Would Not Recognize Ohio Law.

In *O'Brien, et. al. v. Cessna Aircraft Company, et.al.,* 298 Neb. 109, 138-142 (2017), the Nebraska Supreme Court was asked to apply Kansas punitive damage law to a product liability lawsuit pending in Nebraska, involving Nebraska residents, a product owned by a Nebraska company, and an injury incurred in the course of plaintiffs' employment providing services within the state of Nebraska.  Plaintiffs asked the court to apply the punitive damage law of Kansas where Cessna, the manufacturer of the plane at issue, had its corporate headquarters, where product design decisions were made, and where the plane was manufactured.  The lower court found that that Nebraska punitive damage law applied to the case.  Specifically finding:

> 'Although important decisions and product manufacture took place at the Cessna headquarters in Kansas, the overall weight of the contacts in this case point toward Nebraska having the most significant relationship with this issue. … Given the Cessna aircraft's consistent operation on a Nebraska air route by Nebraska pilots and owners, it is Nebraska that has the most interest in application of laws to this accident.  As Nebraska also has a strong constitutional policy against punitive damages, Nebraska law should be applied to punitive damage claims … in this case.' *Id.* at 141 – 142.

In affirming, the Nebraska Supreme Court held, "we agree with the district court that the (Restatement) factors predominate in favor of applying Nebraska law to the issue of punitive damages in this case." *Id* at 142.

*O'Brien* would and should decisively end the inquiry in this case. Plaintiffs' fraudulent joinder should not be used to make an end run around settled Nebraska law.  Pennsylvania has

6

absolutely no connection to the parties or to the accident and therefore its choice of law provision should be ignored.

Even if the court were to conduct a choice of law analysis, Nebraska law should be applied.

## II.    Nebraska Punitive Damage Law Applies Even Under Pennsylvania Choice of Law Analysis.

This case began in Pennsylvania state court and was removed to a Pennsylvania federal court.  After the federal court dismissed all of the fraudulently joined Pennsylvania defendants, the parties stipulated to a transfer pursuant to § 1404(a).

Pennsylvania law historically followed a strict *lex loci delicti* rule, which applied the substantive law of the place where the tort was committed.  *State Auto Prop. & Cas. Ins. Co. v. Moser*, No. 589 MDA 2017, 2018 WL 2093596, at *3 (Pa. Super. Ct. May 7, 2018).  However, in 1964 the Pennsylvania Supreme Court abandoned this approach in favor of a methodology that combined the "government interest" analysis and the "significant relationship" approach of sections 145 and 146 of the Restatement (Second) of Conflicts.  *Id.* (citing *Griffith v. United Air Lines, Inc.,* 203 A.2d 796 (Pa. 1964)).

Pennsylvania's approach involves a three-step analysis.  First, the court must determine whether a real conflict exists.  *Kukoly v. World Factory, Inc.*, No. CIV A 07-01644, 2007 WL 1816476, at *2 (E.D. Pa. June 22, 2007).  Second, the court must look to see whether the conflict is true, false, or an unprovided for situation.  Third, if a true conflict exists, the court examines which state has a greater interest in having its law applied.  *Id.* at *3.

Nebraska punitive damage law should apply because: 1) this is a false conflict; or 2) Nebraska has a greater interest in having its law applied.

1811139

### A. The Conflict is a False Conflict Because Ohio Law Does Not Allow Plaintiffs to Recover Punitive Damages In This Case.

A true conflict exists where both jurisdictions' governmental interests would be impaired by the application of the other jurisdiction's law. *Kukoly v. World Factory, Inc.*, No. CIV A 07-01644, 2007 WL 1816476, at *2 (E.D. Pa. June 22, 2007).  In the event of a true conflict, Pennsylvania's choice of law rules require the application of the law of the state having the most significant contacts or relationships with the particular issue.  *Henderson v. Merck & Co.*, No. 04-CV-05987, 2005 WL 2600220, at *2 (E.D. Pa. Oct. 11, 2005).

A false conflict exists where only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law.  *Id.*  In the event of a false conflict, Pennsylvania choice of law rules require the application of the law of the only interested state. *Id.*

Plaintiff argues there is a true conflict because both Ohio and Nebraska have government interests that would be impaired by the application of the other's law on punitive damages.  (ECF No. 106, p. 5.)  However, Ohio law only allows punitive damages under specific circumstances. Under Ohio law generally, a plaintiff in a tort action who has obtained an award of compensatory damages against a defendant may seek punitive damages if plaintiff proves that the actions or omissions of the defendant demonstrate malice or aggravated or egregious fraud. Ohio Rev. Code § 2315.21(C). Malice exists when the facts demonstrate (1) a state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of others that has a great probability of causing substantial harm.  *Everhart v. TM Claims Serv., Inc.*, No. 2:09-CV-267, 2009 WL 10679479, at *9 (S.D. Ohio Oct. 8, 2009).  Misconduct greater than mere negligence is required.  *Id.*  Moreover, Ohio legislature has made clear its intention to eliminate common law product liability causes of

8

action, and the Ohio Product Liability Act ("OPLA"), Ohio Rev. Code § 2307.71 *et seq.,* governs

product liability claims arising under Ohio law, including claims for punitive damages. *Id.* at *4.

Punitive damages may be awarded for an OPLA claim where the plaintiff establishes by clear

and convincing evidence that the harm for which compensatory damages was awarded "was the

result of misconduct of the manufacturer or supplier in question that manifested a flagrant

disregard of the safety of persons who might be harmed by the product in question. The fact by

itself that a product is defective does not establish a flagrant disregard of the safety of persons

who might be harmed by that product." *Id.* at *9 (quoting Ohio Rev. Code § 2307.80(A)).  Ohio

Rev. Code § 2307.80(D) applies to recovery of punitive damages where the underlying product

is not a drug or device:

> (D)(1) If a claimant alleges in a product liability claim that a product other than a drug or device caused harm to the claimant, the manufacturer or supplier of the product shall not be liable for punitive or exemplary damages in connection with the claim if the manufacturer or supplier fully complied with all applicable government safety and performance standards, whether or not designated as such by the government, relative to the product's manufacture or construction, the product's design or formulation, adequate warnings or instructions, and representations when the product left the control of the manufacturer or supplier, and the claimant's injury results from an alleged defect of a product's manufacture or construction, the product's design or formulation, adequate warnings or instructions, and representations for which there is an applicable government safety or performance standard.
>
> (2) Division (D)(1) of this section does not apply if the claimant establishes, by a preponderance of the evidence, that the manufacturer or supplier of the product other than a drug or device fraudulently and in violation of applicable government safety and performance standards, whether or not designated as such by the government, withheld from an applicable government agency information known to be material and relevant to the harm that the claimant allegedly suffered or misrepresented to an applicable government agency information of that type.

Ohio Rev. Code § 2307.80(D).  Indeed, the general rule under (D)(1) is that the manufacturer

shall not be liable for punitive damages if the manufacturer fully complied with all applicable

government safety and performance standards when the product left the control of the

9

manufacturer.   Pursuant to the exception under (D)(2), Plaintiffs must establish by a preponderance of the evidence that the manufacturer fraudulently and in violation of applicable government safety and performance standards withheld from or misrepresented to an applicable government agency information known to be material and relevant to the harm Plaintiffs allegedly suffered.

Here, there is no evidence to prove Goodyear withheld or misrepresented to a government agency information known to be material and relevant to the harm Plaintiffs suffered; thus, Plaintiffs cannot establish an exception under § 2307.80(D)(2).  In fact, Plaintiffs' sole allegation in their Complaint related to punitive damages is that Goodyear's actions generally "constitute willful and wanton misconduct in disregard of the rights and safety of Plaintiffs, and warrant the imposition of punitive damages."  (Compl., ¶¶ 17, 27.)  Plaintiffs' expert, David Southwell, testified that the Tire at Issue's model line was in compliance with Federal Motor Vehicle Safety Standards.  Goodyear's expert, Joe Grant, agreed that the Tire at Issue was state of the art at the time of its manufacture.  Thus, Plaintiffs have no claim for punitive damages under Ohio law.  *See, e.g., Gillham v. Admiral Corp.,* 523 F.2d 102, 104 (6th Cir. 1975) (the Ohio Supreme Court has required some unlawful conduct to award punitive damages); *see also Drayton v. Jiffee Chem. Corp.,* 591 F.2d 352, 366 (6th Cir. 1978) (affirming denial of punitive damages where trial judge relied on evidence of improving industry practices to support conclusion that punitive damages were not warranted as a deterrent to future misconduct); *Flex Homes, Inc. v. Ritz-Craft Corp of Michigan, Inc.*, 2008 WL 746669, at *12 (N.D. Ohio Mar. 18, 2008), *aff'd,* 491 F. App'x 628 (6th Cir. 2012) (Plaintiffs' claims for punitive damages under the Ohio Products Liability Act are not viable unless they "include facts sufficient to support an inference of actual malice, if such facts appropriately can be

10

alleged.").  Accordingly, because punitive damages are not recoverable under Nebraska or Ohio law, application of either law would arrive at the same result.  Therefore, application of Nebraska law would not impair Ohio's interests, and vice versa.  Thus, this is a false conflict, and no conflict of law analysis is necessary.

Goodyear acknowledges that the *O'Brien* court recognized a conflict between Kansas and Nebraska law on punitive damages.  Assuming arguendo that Plaintiffs can establish a true conflict here, under Pennsylvania's choice of law analysis, Nebraska punitive damage law still applies.

## III.   Even If a True Conflict Exists, Nebraska Law Should Apply Because Nebraska Has the Most Significant Relationship With Plaintiffs' Claims.

If a true conflict exists, a court must apply the law of the state with the greatest interest, based upon an analysis of which state has the most significant contacts with the particular issue. *Henderson v. Merck & Co.*, 2005 WL 2600220, at *3 (E.D. Pa. Oct. 11, 2005).  In making this determination, courts look to the following contacts as outlined in § 145 of the Restatement (Second) of Conflicts for the "significant relationships" inquiry:

> (i)    the place where the injury occurred;
> (ii)   the place where the conduct causing the injury occurred;
> (iii)  the domicile, residence, nationality, place of incorporation, and place of business of the parties; and
> (iv)   the place where the relationship between the parties is centered.

*Id.*  The contacts should be analyzed qualitatively, rather than quantitatively, in light of the "policies and interests underlying the particular issue before the court."  *Id.*  Further, Pennsylvania courts consider the above four factors in light of the overarching choice of law principles enumerated in § 6 of the Restatement (Second):

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

11

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

      (a) the needs of the interstate and international systems,

      (b) the relevant policies of the forum,

      (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

      (d) the protection of justified expectations,

      (e) the basic policies underlying the particular field of law,

      (f) certainty, predictability and uniformity of result, and

      (g) ease in the determination and application of the law to be applied.

*Alley v. MTD Prod., Inc.*, No. 3:17-CV-3, 2017 WL 6547996, at *5 (W.D. Pa. Dec. 20, 2017); Restatement (Second) of Conflict of Laws § 6.

Applying these principles to the facts of our case Nebraska punitive damage law should apply.

## A. Choice of Law Determinations Involving Non-Resident Corporate Defendants

Plaintiffs argue that when dealing with a corporate defendant, the state of incorporation and principal place of business are critical contacts that warrant application of law of the corporate defendant's home state. (ECF No. 106, p. 6.) However, the cases Plaintiffs rely on are readily distinguishable. *See infra at II.A.* When the majority of relevant factors point to the law of one state, the fact that a corporate defendant happens to be headquartered or manufacturing products in a different state does not justify the application of the corporate defendant's home state punitive damages law. *See, e.g., Kukoly v. World Factory, Inc.*, 2007 WL 1816476, at *3 (E.D. Pa. June 22, 2007) ("[T]he allegedly defective product was distributed and sold in Pennsylvania and the injury occurred in Pennsylvania. Plaintiffs are domiciled in Pennsylvania, Wal-Mart conducts business in Pennsylvania, and World Factory places products into the stream of commerce where it is reasonably foreseeable its products will end up in Pennsylvania. Plaintiffs did not travel to World Factory's home state of Texas to purchase the allegedly defective wagon. Instead, the Plaintiffs traveled to a local Wal-Mart store in their domicile, the

Commonwealth of Pennsylvania."); *Henderson v. Merck & Co., Inc.*, 2005 WL 2600220, at *8 (E.D.Pa. Oct. 11, 2005) ("Indeed, because plaintiff is a Michigan resident, because plaintiff purchased, was prescribed, and ingested Bextra within Michigan's borders, and because plaintiff allegedly suffered injuries in Michigan, the interests of Pennsylvania, New York, and New Jersey in applying their product liability laws to such extraterritorial conduct lose vigor."); *Blain v. Smithkline Beecham Corp.*, 240 F.R.D. 179, 195 (E.D.Pa.2007) ("The only factor favoring this forum is that GSK is headquartered here ... The law governing liability and damages will be controlled by the individual [class] member's home state's jurisprudence" where each class member was likely injured, domiciled, and the parties' relationship was centered.); *Knipe v. SmithKline Beecham*, 583 F.Supp.2d 602, 638 (E.D.Pa.2008) (finding New Jersey's contacts, as the place of injury and plaintiff's domicile, outweighed defendant's contacts with its home state on the issue of punitive damages).

    *1.*    *Courts' Application of Choice of Law Factors and Principles Favor Nebraska*

In *Alley v. MTD Products, Inc.,* the court applied Pennsylvania's choice of law analysis to compare Pennsylvania and Ohio's product liability law, specifically the states' respective statutes of repose.  2017 WL 6547996 (W.D. Pa. Dec. 20, 2017).  The *Alley* court found the Ohio defendant's Ohio contacts were not strong enough to overcome Pennsylvania's interests.  There, the plaintiff alleged he was seating the bead of a tire onto a snow thrower rim and/or inflating the tire, and the rim failed and burst, causing the plaintiff to suffer severe injuries.  *Id.* at *1.  The plaintiff was a Pennsylvania resident, purchased the snow thrower in Pennsylvania, and only ever used it in Pennsylvania.  MTD had manufacturing, warehouse, and distribution facilities in four states and several foreign countries.  MTD was incorporated in Delaware and had its principal place of business in Ohio.  The snow thrower at issue was engineered, designed,

13

manufactured, and tested by MTD in its Ohio plant.  The snow thrower at issue was produced and shortly thereafter sold to a national retailer, and shipped to the retailer's distribution center in Pennsylvania.  *Id.*  In light of these facts, the court found that Pennsylvania's relevant contacts were stronger than Ohio's relevant contacts, and Pennsylvania law should apply.  *Id.* at *6.

In *Kabasinskas v. Haskin,* this Court conducted a choice of law analysis to determine the applicable law for punitive damages.[3]  No. 8:10-CV-111-LSC, 2011 WL 1897546, at *2 (D. Neb. May 18, 2011).  The parties agreed that Nebraska law applies to issues regarding liability, but plaintiffs argued Oklahoma and Tennessee laws apply regarding punitive damages based on where the corporate defendants do business, and defendants argued Nebraska law applied to punitive damages.  *Id.*  The Court found the Restatement factors and policy considerations supported the application of Nebraska law due to Nebraska's constitutional prohibition against punitive damages.  *Id.*  Notably, Nebraska was where the conduct leading to the accident occurred; the accident happened; and importantly, where the defendant was registered as a foreign corporation and regularly conducted business.  *Id.* at *6.

Thus, had this case remained in Pennsylvania a Pennsylvania District Court may well have refused to recognize Ohio law, and clearly had it been filed in Nebraska the Nebraska court would find Nebraska law controlling.

2. *The Cases Plaintiffs Rely on Are Inapposite.*

a. **Fanselow v. Rice**

Plaintiffs ask the Court to apply *Fanselow v. Rice,* wherein the United States District Court for the District of Nebraska applied Minnesota law to the issue of punitive damages rather than Nebraska law.  *Fanselow v. Rice*, Case No. 4:02-cv-3019-WKU, 213 F. Supp. 2d 1077 (D.

---

[3] Importantly, although this Court applied Nebraska's "most significant relationship test," it also considered the § 6 more general policy considerations that are taken into account in Pennsylvania's hybrid choice of law test.  *See id.*

Neb. 2002).   However, the District of Nebraska has repeatedly distinguished *Fanselow*.   *See, e.g., Kabasinskas v. Haskin*, No. 8:10-CV-111-LSC, 2011 WL 1897546, at *4 (D. Neb. May 18, 2011); *Bamford, Inc. v. Regent Ins. Co.*, No. 8:13-CV-200-LES, 2014 WL 12539650, at *3 (D. Neb. June 12, 2014); *BNSF Ry. Co. v. L.B. Foster Co.,* No. 4:11-cv-3076-WKU, 917 F. Supp. 2d 959, 970 (D. Neb. 2013); *see also Garrett v. Albright*, No. 06-CV-0785, 2008 WL 795613, at *5 (W.D. Mo. Mar. 21, 2008) (rejecting *Fanselow* and noting "the only relationship Nebraska had with the collision was that it served as the location of the injury").

In *Kabasinskas* (discussed *supra*)*,* this Court declined to follow *Fanselow*.   In *Fanselow*, the only connection to Nebraska was the location of the accident.   In *Kabasinskas,* Nebraska had much more significant contact to the case including it was where the conduct leading to the accident occurred, where the accident happened, and where the corporate defendant conducted business.   "These facts distinguish this case from *Fanselow,* 'where the only connection Nebraska had with the defendants is that it was the location of the accident giving rise to the lawsuit.'"   2011 WL 1897546, at *6.

Similarly, in *Bamford v. Regent Ins. Co.,* the plaintiff argued *Fanselow* should control. *Bamford,* 2014 WL 12539650, at *3.   The Court rejected this argument, determining "the present case is more similar to *Kabasinskas* and distinguishable from *Fanselow*."   *Id.*   There, defendant Regent was a foreign insurance company actively registered and doing business in Nebraska. The court reasoned:

> Nebraska law controls in this case. Nebraska is the place of the injury, partially where the conduct causing the injury occurred, where the plaintiff is a resident, and where the relationship between the parties is centered. Both states have an interest in applying its respective punitive damages policy. However, Wisconsin's interest to punish its business-tortfeasors does not overcome Nebraska's most significant relationship and forum-court presumption.

*Id.*

b. *Kelly v. Ford Motor Co.*

Plaintiffs rely on *Kelly v. Ford Motor Co.* to suggest that "the domicile or residence of the plaintiff and the place where the injury occurred are not relevant contacts when punitive damages are the subject of a conflict of laws."  (ECF No. 106, pp. 6-7., citing 933 F.Supp. 465, 469 (E.D. Pa. 1996)).   However, in conducting choice of law analysis, Pennsylvania courts repeatedly decline to apply *Kelly*.

The Eastern District of Pennsylvania has found that "*Kelly* appears more often distinguished than followed."  *In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prod. Liab. Litig.*, No. 2:12-CV-07263, 2015 WL 2417411, at *6 (E.D. Pa. May 20, 2015) ("Like many other courts in this Circuit, I will decline to follow *Kelly*").  The distinguishing factor is often that in *Kelly,* the corporate conduct which may have caused plaintiff's injury all occurred in one state—Michigan. *See e.g.,Kukoly v. World Factory, Inc.,* 2007 WL 1816476, at *3 (E.D. Pa. June 22, 2007) (Defendants' reliance on *Kelly* is misplaced because here, unlike in *Kelly,* the facts regarding the "place of conduct" contact are in dispute.); *Alley v. MTD Prod.,* 2017 WL 6547996, at *9 (W.D. Pa. Dec. 20, 2017) ("the Court declines to follow *Kelly v. Ford Motor Co.*" because "the location where the punitive conduct occurred 'must not be over-emphasized' in the choice of law analysis"); *Bearden v. Wyeth,* 482 F.Supp.2d 614, 621 n. 6 (E.D.Pa.2006) ("We note plaintiff's reliance on [*Kelly*] for the proposition that we must apply Pennsylvania law, but we find that case distinguishable."); *Knipe v. SmithKline Beecham,* 583 F.Supp.2d 602, 638 n. 36 (E.D.Pa.2008) ("Plaintiffs cite to [*Kelly*] in support of its argument that depecage should apply to allow a conflict of laws analysis with respect to a punitive damages claim. This case, however, is distinguishable ...").   The *In re Tylenol (Acetaminophen)* court distinguished *Kelly* because unlike *Kelly¸* the conduct which may have

16

caused plaintiff's injury occurred in two different states, which diluted the significance of New Jersey as the defendant's principal place of business. *In re Tylenol*, at *6.

Nebraska courts also reject the *Kelly* analysis. *Fanselow v. Rice* "does not stand for the broad proposition that the site of the accident is not a significant contact for the purposes of a choice-of-law analysis." *See BNSF Ry. Co. v. L.B. Foster Co.*, 917 F. Supp. 2d 959, 971 (D. Neb. 2013). In the present case, the conduct which may have caused Plaintiffs' injuries occurred in three different states. The Tire at Issue was designed in Ohio, manufactured in Alabama, and installed by Kearney on the subject vehicle in Nebraska. The accident and Mr. Blair's failure to control the vehicle occurred in Nebraska. Plaintiffs were and still are residents of Nebraska. Accordingly, *Kelly* is distinguishable.

### B. Nebraska's Relationship to This Case is Greater Than That of Ohio Because Nebraska has the Stronger Relationship to the Relevant Issues.

#### 1. Restatement (Second) § 145 Significant Relationships Inquiry

The *Alley* and *Kabasinskas* analyses dictates that Nebraska's punitive damages law should apply. The allegedly defective product was used in Nebraska. It is undisputed that the accident and injury occurred in Nebraska, where Plaintiffs were working for their Nebraska employer. The subject vehicle was owned by Dandee Concrete Construction and used for purposes of its business in Nebraska. Dandee hired Kearney Towing in Nebraska to install the Tire at Issue on the subject vehicle, and Kearney Towing also performed maintenance work on the subject vehicle in Nebraska leading up to the accident. The Tire at Issue was designed in Ohio and manufactured in Alabama.[4]

---

[4] No evidence thus far has revealed when or how the Tire at Issue was first placed into the stream of commerce in Nebraska. The Tire at Issue may have been used by Dandee on another vehicle before installation on the subject vehicle.

1811139

Plaintiffs have strong connections to Nebraska, as they are domiciled in Nebraska and worked for their Nebraska employer at the time of the accident. Plaintiffs were also treated for their injuries in Nebraska. *See Alley,* 2017 WL 6547996, at *6 (where Plaintiff was a Pennsylvania resident, purchased the product at issue in Pennsylvania, only ever used it in Pennsylvania, and sustained his injury in Pennsylvania, "[i]t is hard to imagine how Plaintiff's relationship to Pennsylvania could be stronger.").

Under similar circumstances in *Alley,* the court "conclude[d] that Plaintiff's domestic contacts with Pennsylvania are qualitatively more substantial than MTD's business contacts with Ohio," which weighed in favor of applying Pennsylvania law, not Ohio law. *Id.* Here, these factors similarly weigh in favor of applying Nebraska law as opposed to Ohio or Alabama law— where Goodyear designed and manufactured the Tire at Issue. *See Alley,* 2017 WL 6547996, at *6 ("When considered in the broader context of MTD's contacts with other jurisdictions inside and outside the United States, MTD's contacts with Ohio are diluted.").

The parties' relationship factor also weighs in favor of applying Nebraska law. There is no evidence of a connection between Plaintiffs and Goodyear until the accident. Thus, the parties' relationship is centered in Nebraska. *See Alley v. MTD Products, Inc.,* 2017 WL 6547996, at *6 (where plaintiff sustained injuries while using defendant's product, the parties have a relationship centered in Pennsylvania).

### 2. *Restatement (Second) § 6 Choice of Law Principles Inquiry*

The § 6 choice of law principles strongly favor applying Nebraska law. In weighing the relevant policies of the forum (§ 6(b)) and other interested states (§ 6(c)), and the basic policies underlying the particular field of law (§ 6(e)), there are competing interests. In Nebraska, punitive damages are not recoverable because they contravene Neb. Const. Art. VII, § 5, which

18

provides that fines and penalties should be appropriated exclusively to public schools in the subdivisions in which they arise. *Kabasinskas v. Haskin*, No. 8:10CV111-LSC, 2011 WL 1897546, at *5 (D. Neb. May 18, 2011). In Ohio and in Alabama, the purpose of punitive damages is not to compensate a plaintiff, but to punish and deter certain conduct. *Kelley v. Unico Holdings, Inc.*, No. 1:07-CV-8, 2009 WL 6316398, at *10 (S.D. Ohio July 16, 2009); *Gen. Motors Corp. v. Johnston*, 592 So. 2d 1054, 1063 (Ala. 1992). Nevertheless, Ohio and Alabama believe punitive damages should only be awarded under very limited circumstances, as evidenced by their requirement of clear and convincing evidence of actual malice in order to establish a claim for punitive damages. *See* Ohio Rev. Code § 2315.21; Ala. Code § 6-11-20(a) ("[p]unitive damages may not be awarded in any civil action, [except wrongful death actions], other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff."). Further, in the context of cases brought under the Ohio Product Liability Act, punitive damages are not available in cases where the product is in compliance with applicable government standards. Ohio Rev. Code § 2307.80(D).

In comparison, Nebraska has expressed a strong interest against this form of punishment, and to impose punitive damages is unconstitutional under Nebraska law. Nebraska has an interest in applying its law to accidents occurring in Nebraska. "[T]he alleged harm to [Plaintiffs] occurred in Nebraska, and the State of Nebraska may have an interest in attracting out-of-state entities to conduct business in Nebraska by exempting them from possible punitive damages awards." *Hanzel v. Life Care Centers of Am., Inc.*, No. 8:05CV435, 2005 WL 3143112, at *4 (D. Neb. Nov. 23, 2005). Additionally, under Pennsylvania's choice of law principles, "[t]he court should give a local statute the range of application intended by the

legislature when these intentions can be ascertained and can constitutionally be given effect." *Alley,* 2017 WL 6547996, at *7 (W.D. Pa. Dec. 20, 2017); *see also Peoples Bank & Tr. Co. v. Piper Aircraft Corp.,* 598 F. Supp. 377, 381 (S.D. Fla. 1984) ("deciding the choice-of-law issue with regard to punitive damages solely on the basis of which state enables a plaintiff to recover more money has no principled basis in law."). Accordingly, the relevant policies of interested states overwhelmingly favor application of Nebraska law.

The protection of justified expectations (§ 6(d)) also weighs in favor of Nebraska, as Plaintiffs are Nebraska residents and were injured in their employer's vehicle in Nebraska. Plaintiffs have a justified expectation that Nebraska law would apply to any claims arising from injuries they sustained while working in Nebraska. While Goodyear is at home in Ohio, Goodyear is not arguing that the law of its home state applies. Goodyear recognizes the strong connections to Nebraska in this case. *See Alley,* at *8 (W.D. Pa. Dec. 20, 2017) ("While MTD has its principal place of business in Ohio and designed, engineered, and manufactured the snow thrower in Ohio, MTD could not reasonably expect that the product liability law of Ohio would apply whenever a consumer was injured using one of its snow throwers that the consumer bought from a national retailer such as Lowe's."); *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 606 (S.D.N.Y. 1982) ("Plaintiffs do not persuade me that Ohio [as Firestone's principal place of business] satisfies that requirement in a case involving a tire which was, say, manufactured in Pennsylvania, purchased in Massachusetts, and had its defects manifest themselves in New Jersey.").

The factors of certainty, predictability, and uniformity of result (§ 6(f)), and ease in determination and application of the law to be applied (§ 6(g)) both weigh in favor of applying Nebraska law. "Ideally, choice-of-law rules should be simple and easy to apply." Restatement

1811139

(Second) of Conflict of Laws § 6 cmt. j.   Courts have articulated the issues inherent in a piecemeal application of different states' product liability laws:

> Although this Court could technically apply one state's law with respect to liability and compensatory damages and another state's law with respect to punitive damages, we recognize the inherent problem in doing so. "Indeed, mixing and matching the laws of different states in one case can readily lead to a result 'that neither state would allow ... [since when] a court combines elements of the laws of different states it may upset the delicate balance achieved by legislative compromise.'"

*Knipe v. SmithKline Beecham*, 583 F. Supp. 2d 602, 638 (E.D. Pa. 2008) (declining plaintiffs' request for *depecage* where New Jersey had sought to comprehensively regulate products liability actions in its state through the New Jersey Products Liability Act).   To apply the punitive damages portion of Ohio's Product Liability Act without applying the rest of the comprehensive statutory scheme could cause confusion and inconsistency in results.   Under the Pennsylvania choice of law analysis, "[a] simple rule for determining choice of law questions would be that when a product is purchased and used within a single state, that state's law applies to a products liability claim alleging that the product was defective."   *Alley v. MTD Prod., Inc.*, No. 3:17-CV-3, 2017 WL 6547996, at *8 (W.D. Pa. Dec. 20, 2017).   Thus, the choice of law principles require application of Nebraska punitive damages law in this case. [5]

## CONCLUSION

For each of the foregoing reasons, Goodyear respectfully requests that the Court deny Plaintiffs' Motion to Apply Ohio Law Regarding Punitive Damages.

---

[5] If the Court decides to apply Ohio law to the issue of punitive damages, it should apply Ohio law to all issues, including Ohio's statute of repose.   Ohio Revised Code § 2305.10(C)(1) bars a product liability claim if the product was first sold to its initial purchaser or lessee more than ten years preceding the injury or harm, as was the case here.

1811139

Dated: September 3, 2019    GREENSFELDER, HEMKER & GALE, P.C.


       By: <u>/s/ Edward S. Bott, Jr.</u>
       Edward S. Bott, Jr.
       Clark W. Hedger
       Juliane M. Rodriguez
       10 South Broadway, Suite 2000
       St. Louis, MO  63102
       (314) 241-9090
       Fax:  (314) 345-5465
       <u>esb@greensfelder.com</u>
       <u>ch1@greensfelder.com</u>
       <u>jrodriguez@greensfelder.com</u>

       AND

       BAIRD HOLM LLP
       Jennifer D. Tricker (NE# 23022)
       1700 Farnam Street, Suite 1500
       Omaha, NE  68102-2068
       (402) 344-0500
       <u>jtricker@bairdholm.com</u>

       *Attorneys for The Goodyear Tire & Rubber*
       *Company*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed with the Clerk of the Court and served on all attorneys of record via the CM/ECF system this 3rd day of September, 2019 to:

Kyle W. Farrar
KASTER, LYNCH, FARRAR & BALL, LLP
1010 Lamar, Suite 1600
Houston, TX 77002
kyle@fbtrial.com

Paul E. Godlewski
SCHWEBEL, GOETZ & SIEBEN, P.A.
80 South 8th Center
5120 IDS Center
Minneapolis, MN 54402
pgodlewski@schwebel.com

Michael F. Coyle
FRASER, STRYKER LAW FIRM
409 South 17th Street
Suite 500, Energy Plaza
Omaha, NE 68102
mcoyle@fraserstryker.com

*Attorney for Plaintiffs*

<u>                  /s/ Edward S. Bott, Jr.                  </u>

23

1811139