*EXHIBIT H*

Joseph L. Grant
May 31, 2019

```
  1              IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF NEBRASKA
  2

  3    RYSTA LEONA SUSMAN, BOTH
       INDIVIDUALLY AND AS LEGAL
  4    GUARDIAN OFSHANE ALLEN
       LOVELAND; AND JACOB SUMMERS,
  5
                 Plaintiff,
  6

  7         vs.                         CASE NO. 8:18CV127

  8
       THE GOODYEAR TIRE & RUBBER
  9    COMPANY,

 10              Defendant.

 11

 12    DEPOSITION OF:    JOSEPH L. GRANT

 13    DATE:             May 31, 2019

 14    TIME:             9:00 a.m.

 15    LOCATION:         A. William Roberts Jr. & Associates
                         6135 Park South Drive
 16                      Charlotte, NC

 17    TAKEN BY:         Counsel for the Plaintiff

 18    REPORTED BY:      SOLANGE RUIZ-URIBE, Court Reporter

 19
                A. WILLIAM ROBERTS, JR., & ASSOCIATES
 20                   Fast, Accurate & Friendly

 21
       Charleston, SC     Hilton Head, SC   Myrtle Beach, SC
 22    (843) 722-8414     (843) 785-3263    (843) 839-3376

 23
       Columbia, SC       Greenville, SC    Charlotte, NC
 24    (803) 731-5224     (864) 234-7030    (704) 573-3919

 25                       Asheville, NC
                          (828) 785-5699
```

Page 170
1  selling the vehicle with tires that are that old.
2      Q.   What would these tires show from the
3  outside if I looked at them?
4      A.   Show the DOT date.
5      Q.   But you just told me there's nothing wrong
6  with a 20-year old tire, just in and of itself.
7  Okay, it's 20-years old but Joe Grant said that's
8  not a problem?
9      A.   This is unreasonable.  I think any average
10 person would say this is unreasonably old, and
11 especially a tire professional would think this is
12 unreasonably old from the standpoint of not knowing
13 what the service --
14     Q.   But this age had nothing to do with this
15 separation?
16     A.   No, it didn't.
17     Q.   Okay.  Then so what, so what, I have an
18 old tire on there, it had nothing to do with it.  So
19 what, right?
20     A.   No, no.  I disagree from that standpoint.
21 No, it was an opportunity to get these tires out of
22 service.
23     Q.   You are kind of -- and I don't mean this
24 disrespectful, Joe, but you're kind of talking out
25 of both sides of your mouth, you say you should get

Page 171
1  it off and then you -- on one hand and then you told
2  me earlier today there is nothing wrong with an old
3  21-year old tire being on there just from age?
4      A.   Just from age, right.  But if you don't
5  know the history of the tire, you don't know what
6  kind of latent internal things may be going on, it
7  really is, I think any tire professional would err
8  on the side of removing tires from service that are
9  that old or not installing tires are that old.
10          And these tires obviously came out of
11 service somewhere.  Somebody decided to take them
12 out of service because of how old they were.
13     Q.   You think it's because of how old?  What
14 if it's the car blew up?  What if the engine quit?
15     A.   I know, but I said one of the
16 possibilities is that somebody took them out of
17 service because of how old they were.
18     Q.   Are you speculating on that?  I mean we
19 talked about speculation earlier.  Are you
20 speculating on that one?
21     A.   No, I'm just saying -- no, I didn't say
22 that's what happened, I said that's one of the
23 possibilities.
24     Q.   Okay.
25     A.   But I do think that any reasonable tire

Page 172
1  professional, whether you have a service light
2  recommendation or not, would say this goes way to
3  far on a set of tires that you do not know whether
4  or not they have been perfectly maintained or not.
5      Q.   All right.  For the sake of brevity we're
6  going to move on, Joe.
7      A.   Okay.
8      Q.   Okay.  Thirty-one, we already talked about
9  that?
10     A.   Yes.
11     Q.   Thirty-two.  Only small percentage of the
12 tires remained in service for ten years.  We just
13 talked about that, didn't we?
14     A.   Yeah, if you look at the RMA scrap tire
15 surveys and I have some other surveys that -- this
16 is highly unusual situation.  Most people the light
17 bulb goes off at some point.  Tire professionals
18 looking at a set of tires like this and said, hey,
19 this is way too old, I don't care --
20     Q.   Do you think Kerney Towing is a tire
21 professional?
22     A.   They are holding themselves out -- they
23 are doing the tire work and vehicle work primarily,
24 you know, for Dandy Concrete and that's what was
25 said.  And they installed these tires.

Page 173
1      Q.   But there has been nothing physical you
2  could see on the inside or outside of these tires
3  that says take them out of service but just because
4  they're 21-years old and you don't have a service
5  history, scrap them, true?
6      A.   What would you do?
7      Q.   That's not my question.
8      A.   What would any of us do in this room.
9      Q.   I don't know, Joe, is that true?
10     A.   What would any person on a jury do?
11          MR. LYNCH:  I move to strike as
12 nonresponsive.  True or not?
13          THE WITNESS:  What was the question?
14 BY MR. LYNCH:
15     Q.   Nothing physical inside or outside of the
16 tire that I can see that tells me to take them out
17 but service but because they are 21-years old and I
18 don't know the service history I need to scrap them?
19     A.   True, if you don't know what the service
20 history is, yeah, I think any prudent person would
21 recommend getting them out of service.
22          One thing we didn't address on -- in
23 31 though is then we also have the closer you get to
24 the time of failure with the separations, with the
25 polishing, there is definitely going to be an

Joseph L. Grant
May 31, 2019                                                          189

| | |
|---|---|
| 1 | CERTIFICATE OF REPORTER |
| 2 | |
| 3 | I, Solange Ruiz-Uribe, Notary Public for the State |
| 4 | of North Carolina at Large, do hereby certify that the |
| 5 | foregoing transcript is a true, accurate, and complete |
| 6 | record. |
| 7 | I further certify that I am neither related to nor |
| 8 | counsel for any party to the cause pending or interested |
| 9 | in the events thereof. |
| 10 | Witness my hand, I have hereunto affixed my |
| 11 | official seal this 31st day of May, 2019 at Charlotte, |
| 12 | Mecklenburg County, North Carolina. |

[Notary Seal: Solange Ruiz, Notary Public, North Carolina]

[Signature]
_____

Solange Ruiz-Uribe
My Commission expires
March 7, 2022