## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RYSTA LEONA SUSMAN, both individually and as Legal Guardian of Shane Allen Loveland, and JACOB SUMMERS, | Case No. 8:18CV127 |
| Plaintiffs, | **DECLARATION OF MICHAEL KERNS IN SUPPORT OF GOODYEAR'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO APPLY OHIO LAW REGARDING PUNITIVE DAMAGES** |
| v. | |
| THE GOODYEAR TIRE & RUBBER COMPANY, | |
| Defendant. | |

I, Michael Kerns, being duly sworn, states as follows:

1.      The testimony herein is based on my own personal knowledge, and the facts stated herein are true and correct to the best of my knowledge and belief.  I make this declaration in support of The Goodyear Tire & Rubber Company's Brief in Opposition to Plaintiffs' Motion for Summary Judgment and Brief in Opposition to Plaintiffs' Motion to Apply Ohio Law Regarding Punitive Damages.

2.      I am the Senior Manager for Global Material Science and Compound Development at The Goodyear Tire & Rubber Company ("Goodyear").  In this role, I am responsible for consumer compound development in North America and Latin America and commercial compound development globally.

3.      I have been employed by Goodyear on two separate occasions.  From 1998 to 2004, I worked for Goodyear in various product development roles.  I returned to

Goodyear in 2008 to lead a global team of chemists and engineers developing polymer technology.

4.      During my employment at Goodyear, I gained experience and became familiar with the chemistry, structure property relationships, and formulation technology associated with filled elastomeric composites used in tires.    Before I worked for Goodyear, I received a Bachelor of Arts Degree in Chemistry from Oberlin College, and a Doctor of Philosophy Degree in Organic Chemistry from The Ohio State University.

5.      By virtue of my tenure with Goodyear, I am generally familiar with Goodyear's United States business operations, its relationship with company-owned and authorized retailers that sell Goodyear tires, and the location of Goodyear's businesses, including its manufacturing facilities.

6.      Industry data indicates that the vast majority of tires are out of service within six (6) years of installation and that very few tires remain in service for 10 years or longer.

7.      It would not be typical or expected for a 20-year-old tire to be in service.

8.      It would not be expected or normal for an automotive service professional to place a 20 year old tire into service, particularly if that professional does not know the service life history of the tire.

9.      A reasonable tire manufacturer in Goodyear's position would not expect an automotive service professional to place a 20-year-old tire into service, especially without knowing the tire's service life history.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 30, 2019 in Medina, Ohio.

_____
Michael Kerns