*EXHIBIT O*

**David Roy Southwell - 3/28/2019**

---

### Page 1

```
        IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEBRASKA
RYSTA LEONA SUSMAN, both
individually and as Legal Guardian of
SHANE ALLEN LOVELAND, et al.,
     Plaintiffs,
                              Case No. 8:18-cv-00127
v.
THE GOODYEAR TIRE & RUBBER
COMPANY,
     Defendant.
_____

                  DEPOSITION OF
                DAVID ROY SOUTHWELL

                  March 28, 2019

                    9:00 a.m.

                 Colville & Dippel
             1309 E. Broadway Boulevard
               Tucson, Arizona 85719
```

EPIQ COURT REPORTING
240 West 35th Street
8th Floor
New York, New York 10001
(212) 557-7400
Prepared by: Sandra Marruffo, R.P.R., AZ C.R. 50815

---

### Page 2

The deposition of DAVID ROY SOUTHWELL, noticed by Edward S. Bott, Jr., was taken on March 28, 2019, from 9:00 a.m. to 2:33 p.m., at the Offices of Colville & Dippel, 1309 E. Broadway Boulevard, Tucson, Arizona, 85719, before Sandra Marruffo, Arizona certified reporter No. 50815.

**APPEARANCES OF COUNSEL**

Attorneys for The Goodyear Tire & Rubber Company:

    GREENSFELDER, HEMKER & GALE, P.C.
    BY: Edward S. Bott, Jr.
    10 South Broadway
    Suite 2000
    St. Louis, MO 63102
    (314) 241-9090
    esb@greensfelder.com

Attorneys for the Plaintiffs:

    KASTER, LYNCH, FARRAR & BALL, LLP
    BY: Kyle W. Farrar
    1010 Lamar
    Suite 1600
    Houston, TX 77002
    kyle@fbtrial.com

ALSO PRESENT:
    Christian Teare, Videographer

---

### Page 3

**INDEX OF EXAMINATION**

WITNESS: DAVID ROY SOUTHWELL

| EXAMINATION | PAGE |
|---|---|
| By Mr. Bott | 5, 184 |
| By Mr. Farrar | 179 |

**INDEX TO EXHIBITS**

| NO. | DESCRIPTION | PAGE |
|---|---|---|
| EXHIBIT 1 | Handwritten notes by David Southwell in preparation for deposition | 8 |
| EXHIBIT 2 | Images attached to David Southwell's report, photographs and X-rays | 86 |
| EXHIBIT 3 | Diagram of tire drawn by David Southwell | 122 |
| EXHIBIT 4 | Photos | 128 |
| EXHIBIT 5 | Photos of left rear tire | 128 |
| EXHIBIT 6 | Photos of left front tire | 128 |
| EXHIBIT 7 | David Southwell's Curriculum Vitae | 176 |
| EXHIBIT 8 | David Southwell's Case List | 176 |

---

### Page 4

TRANSCRIPT OF DEPOSITION
* * *

THE VIDEOGRAPHER: Good morning. We are on the record. This is Disk No. 1 in the deposition of David Southwell taken in the matter of Susman, et al., versus Goodyear Tire & Rubber Company. It's in the U.S. District Court, District of Nebraska. It's Case 8:18-cv-00127. Today's date is Thursday, March 28th, 2019, and the time is 9:00 a.m.

My name's Christian Teare, a legal video specialist with Epiq Court Reporting.

This deposition is taking place at 1309 East Broadway Boulevard in Tucson, Arizona.

The certified shorthand reporter is Sandy Marruffo with Epiq Court Reporting located at 311 South Wacker Drive, Suite 350, in Chicago, Illinois.

If Counsel would please state their appearances, the reporter will swear in the witness.

MR. FARRAR: Kyle Farrar for the plaintiffs.

MR. BOTT: Ed Bott for Goodyear.
* * *

---

David Roy Southwell - 3/28/2019

### Page 53

1  would say it did not meet the state of the art?
2    A.  Yes.
3    Q.  And so, then, if -- if there was any tire, Load
4  Range E tire manufactured and sold here in North America
5  in 1994 that was not equipped with a nylon overlay, would
6  that tire, in your judgment, be unreasonably dangerous?
7    A.  No, not necessarily.
8    Q.  Okay.  So you can have a Load Range E tire
9  without a nylon overlay, and that tire can still be
10 reasonably safe, true?
11   A.  Subject to all the other parameters of the
12 tire, yes.
13   Q.  What does that mean, "subject to all the other
14 parameters of the tire"?
15   A.  Well, nylon overlay will, as I've said,
16 dramatically reduce the incidence of belt separations in
17 the population of tires.  That doesn't mean that every
18 population of tires without a nylon overlay is going to
19 have a high incidence of separation, because there are
20 other parameters in the -- in the design of the tire
21 that -- that will affect its susceptibility to -- to belt
22 failures.
23   Q.  Okay.  So we agree, though, that depending upon
24 the other design and manufacturing parameters of the
25 tire, a Load Range E tire, that the absence of a nylon

### Page 54

1  overlay does not, by definition, make that tire
2  unreasonably dangerous?  Will you agree with that?
3    A.  Yeah, I think that's reasonable.
4    Q.  Okay.  Did this tire comply with all industry
5  standards?
6        MR. FARRAR:  Object to form.
7        THE WITNESS:  I need you to define
8  "industry standards."
9    Q.  BY MR. BOTT:  Well, you had a definition for
10 "state of the art."  Do you have a definition for
11 "industry standards"?
12   A.  It's your question.
13   Q.  It is, yeah.  I'm asking, do you have a
14 definition for it?
15   A.  The industry standard is to design and sell a
16 tire that is safe and will maintain integrity until the
17 tread wears out.  That's the industry standard.
18   Q.  All right.
19   A.  That tire did not meet the industry standard.
20   Q.  Now, there are Federal Motor Vehicle Safety
21 Standards, correct?
22   A.  There are.
23   Q.  To your knowledge, did this tire meet those
24 Federal Motor Vehicle Safety Standards?
25   A.  Nobody tested it.

### Page 55

1    Q.  How do you know that?
2    A.  Well, because it's a destructive test, so it
3  would never have made it into the market if it had been
4  tested.
5    Q.  So do you know whether or not the -- the -- the
6  tire overall, this model tire, as designed and
7  manufactured by Goodyear, did it meet Federal Motor
8  Vehicle Safety Standards?
9    A.  Well, the design of one tire would have -- you
10 know, the design -- the performance of one tire of that
11 design would have met it.
12   Q.  Because had it not met -- had it -- had the
13 Goodyear testing of this tire, however many tests they
14 did, not passed the Federal Motor Vehicle Safety Standard
15 testing, then it would not have been fit for use?
16   A.  The design of the tire, yes.
17   Q.  Okay.  I understand you're not talking about
18 this individual tire or -- I get that.
19   A.  Uh-huh.
20   Q.  I'm just talking about the -- the design of the
21 tire, as tested, would have had to have passed FMVSS?
22   A.  FM- -- it would have -- FMVSS is a very
23 short-term, you know, test.  It doesn't -- it doesn't
24 purport to test or represent the long-term durability of
25 tires in the market.

### Page 56

1    Q.  Using that FMVSS standard as an example, are
2  you aware of any written standard by anybody that this
3  tire failed, this model tire?
4    A.  A written standard?
5        MR. FARRAR:  Object to form.
6        THE WITNESS:  There's certainly plenty of
7  published material that reflects the standard to which
8  tire manufacturers hold themselves, which is that a tire
9  should not fall apart before it wears out, and it failed
10 that standard.
11   Q.  BY MR. BOTT:  Okay.  Any other standard?
12   A.  No.
13   Q.  Okay.  With regard to service and maintenance
14 of tires, I assume you agree that the inflation pressure
15 should be checked regularly?
16   A.  Yes.
17   Q.  It's important to keep the tire properly
18 inflated?
19   A.  Yes.
20   Q.  Important to keep the tire so that it's not
21 overloaded?
22   A.  Yes.
23   Q.  And you understand that in a construction
24 setting like the Dandee Concrete Construction Company,
25 where it's on work sites and perhaps more susceptible to

14 (Pages 53 to 56)

```
 1                    CERTIFICATE OF REPORTER

 2    STATE OF ARIZONA    )
                          )    ss:
 3    COUNTY OF PIMA      )

 4
               I, Sandra Marruffo, a Certified Reporter in
 5    the State of Arizona, do certify that the foregoing
      deposition was taken March 28, 2019, before me in the
 6    County of Pima, State of Arizona; that an oath or
      affirmation was duly administered by me to the witness,
 7    DAVID ROY SOUTHWELL, pursuant to A.R.S. 41-324(B); that
      the proceedings were taken down by me in shorthand and
 8    thereafter reduced to typewriting; that the transcript is
      a full, true, and accurate record of the proceedings, all
 9    done to the best of my skill and ability; that the
      preparation, production and distribution of the
10    transcript and copies of the transcript comply with the
      Arizona Revised Statutes and in ACJA 7-206(F)(3); ACJA
11    7-206 J(1)(g)(1) and (2); and ACJA 7-206 J(3)(b).
          The witness herein, DAVID ROY SOUTHWELL, requested
12    transcript review and signature.
               I FURTHER CERTIFY that I am in no way related
13    to any of the parties nor am I in any way interested in
      the outcome hereof.
14             IN WITNESS WHEREOF, I have set my hand in my
      office in the County of Pima, State of Arizona, this 5th
15    day of April 2019.

16

17

                            Sandra Marruffo
18

19
                         _____
20                       SANDRA MARRUFFO Arizona CR No. 50815

21
22

23

24

25
```