IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RYSTA LEONA SUSMAN, Both individually and as Legal Guardian of Shane Allen Loveland; and JACOB SUMMERS<br><br>           Plaintiff(s),<br><br>          v.<br>THE GOODYEAR TIRE & RUBBER COMPANY<br>           Defendant(s).<br>_____ | CASE NO. 8:18CV127<br><br>**PLAINTIFFS' RESPONSE TO GOODYEAR'S MOTION FOR PARTIAL SUMMARY JUDGEMENT** |

Goodyear's Motion for Partial Summary Judgment addresses four issues:

1. One of the defect opinions of Plaintiffs' tire failure expert.
2. Plaintiffs' claim for failure to warn.
3. Plaintiffs' claim for breach of the implied warranty of merchantability.
4. Plaintiffs' claim for punitive damages.

In an effort to narrow the issues for trial, Plaintiffs made an agreement with Goodyear withdrawing their claim for failure to warn, and they will not be presenting any testimony from warnings expert Dr. Lila Laux. Likewise, Plaintiffs further concede that claims relating to the implied warranty of merchantability merge with strict liability claims under Nebraska law. As such, this Court need only consider issue number one, concerning an opinion of Plaintiffs' tire failure expert, and issue number four, concerning Plaintiffs' claim for punitive damages.

With respect to the opinion of Plaintiffs' tire expert David Southwell, Goodyear mischaracterizes his opinion, while also ignoring the physical evidence of oxidation

which enabled Mr. Southwell to conclude the failed tire's anti-oxidant design was insufficient to prevent internal degradation of the tire. With respect to Plaintiffs' claim for punitive damages, Goodyear ignores the fact this Court must apply Ohio's law regarding punitive damages since Ohio is the state with the greatest connection and interest with respect to punitive damages. As shown below, Goodyear's Motion should be denied with respect to these issues.

**FACTS**

1. For the purposes of this Motion, Plaintiffs agree with Goodyear's recitation of relevant facts except as they relate to the opinions of tire expert David Southwell, which were not fully and accurately presented.

2. Mr. Southwell provided opinions regarding defects in the failed tire. Mr. Southwell is "an independent tire industry consultant and failure analyst with extensive international experience in tire design, manufacture, evaluation, application, maintenance, retreading and failure analysis."[1] Goodyear does not challenge Mr. Southwell's qualifications to conduct a forensic tire examination and render opinions about defects in the tire.

3. Mr. Southwell's first defect opinion is that the tire's formulation "was insufficiently robust to provide durability adequate to ensure its safe operation for the foreseeable duration of its tread life."[2] Mr. Southwell noted that the tire had only

---

[1] Exhibit 1, Sworn Report of David Southwell, p. 3.
[2] *Id.* at p. 20.

2

worn down 44% of its tread. The tire, "at less than half worn, was well short of the point at which it could be considered to be worn out."[3] Mr. Southwell explained that "a basic tenet of tire design and manufacture is that the structural integrity of every tire must be sufficient to ensure the tire reaches at least the end of its tread life without design or manufacturing related structural failure – in short, tires must wear out before they fall apart."[4] Mr. Southwell cited numerous studies in support of this standard, as well as the findings of the National Highway Transportation and Safety Administration (NHTSA), who noted "[i]t is a well-accepted principle throughout the tire industry that the fatigue life of a tire should exceed its tread life by some design/safety margin for reasonably foreseeable service conditions."[5] Mr. Southwell opined this defect could have been avoided through "inclusion of belt-edge reinforcement," also known as "nylon cap strips" or "cap plies."[6]

4. Goodyear's Motion for Partial Summary Judgement does not challenge this opinion.

5. Mr. Southwell also found a defect in "the significant inaccuracy in the location of the belts - resulting from poor manufacturing practices – which increased concentration of strain energy density and hence in-service fatigue of the tire structure."[7] Mr. Southwell noted that "[a]chieving accurate placement of each of the

---

[3] *Id.* at p. 8.
[4] *Id.*
[5] *Id.*
[6] *Id.* at p. 17; 20.
[7] *Id.* at p. 20.

3

steel belts when building a tire is essential to its durability when placed into service."[8] During Mr. Southwell's examination, he discovered "the belts in the subject tire exhibit significant lateral displacement around the tire."[9] Mr. Southwell cited numerous studies supporting his opinion that the misplaced belts made the tire "susceptible to catastrophic failure."[10]

6. Goodyear's Motion for Partial Summary Judgement does not challenge this opinion.

7. Mr. Southwell's final defect opinion is that large areas of the tire "have been affected by thermo-oxidative degradation."[11] The oxidation of the tire results in "extensive areas of harder and more brittle rubber."[12] This oxidation will "reduce the overall durability of a tire, making it susceptible to component separation."[13] Mr. Southwell's forensic inspection revealed that "air passe[d] through the inner liner in quantity sufficient to cause oxidation of belt and body ply skim coat."[14] Mr. Southwell also cited a plethora of publicly-available journals, published studies, and government reports describing the effect of oxidation of tire components.[15]

8. Mr. Southwell noted that internal oxidation will occur "[i]n the absence of sufficiently effective mitigating factors in the design of the tire."[16] Mr. Southwell

---

[8] *Id.* at p. 13.
[9] *Id.* at p. 14.
[10] *Id.* at p. 16.
[11] *Id.* at p. 9.
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*

4

identified three design elements which combine to give a tire its anti-oxidant properties:

- Formulation of the inner liner compound,
- Cured inner liner gauge, and
- Anti-oxidative additives to skim coat and other compounds.[17]

9. Due to the presence of extensive oxidation in the tire, Mr. Southwell concluded that the combination of these design elements was inadequate, leading to insufficient anti-oxidant properties to prevent the internal degradation of the tire.

10. Even though Mr. Southwell identified evidence of internal oxidation showing an inadequacy in the tire's anti-oxidant properties, Goodyear has brought a summary judgment motion because Mr. Southwell cannot state to what extent each of the three mitigating design elements were directly responsible for the oxidation. Yet as shown below, it would be both impossible and unnecessary to separate out one of the three specific elements of the anti-oxidant design package as the sole cause of the oxidation in the tire. As Mr. Southwell explained, "those evaluations are unnecessary because the inadequate oxidation resistance of the subject tire is clearly on display."[18] Mr. Southwell has more than sufficient basis from his forensic examination to conclude the anti-oxidant design of the tire was defective.

11. Finally, with respect to facts relating to punitive damages, it is undisputed that Goodyear is incorporated under the laws of Ohio, has its principal

---

[17] *Id.* at p. 12.
[18] *Id.*

5

place of business in Ohio, designed the failed tire in Ohio, and that all acts or omissions made by Goodyear concerning the failed tire's design were made in Ohio.[19]

## ARGUMENT

**I.     Mr. Southwell has a Sufficient Basis to Conclude the Tire's Anti-Oxidant Properties were Deficient.**

Mr. Southwell opines that the anti-oxidant properties of the tire were deficient and unreasonably dangerous. His forensic examination revealed large areas of the tire "have been affected by thermo-oxidative degradation."[20] As Mr. Southwell explained, the only way rubber can be oxidized is by being exposed to oxygen in the air, and the only way that oxygen can reach internal components is through the pressurized air in the tire that leaks through the tire's inner liner. Here, Mr. Southwell's forensic inspection revealed that "air passe[d] through the inner liner in quantity sufficient to cause oxidation of belt and body ply skim coat."[21]

Mr. Southwell noted that internal oxidation will occur "[i]n the absence of sufficiently effective mitigating factors in the design of the tire."[22] A tire's design must incorporate mitigating design elements in order for the tire to have sufficient anti-oxidant properties. Mr. Southwell identified three design elements which combine to give the tire its anti-oxidant properties:

- Formulation of the inner liner compound,
- Cured inner liner gauge, and

---

[19] *See* Doc. 108, Goodyear's Brief in Support of its Motion for Partial Summary Judgment, p. 3; *see also* Doc. 30-2, Affidavit of Jay K. Lawrence, at p. 2, ¶ 6.
[20] Exhibit 1, Sworn Report of David Southwell, p. 9.
[21] *Id.*
[22] *Id.*

6

- Anti-oxidative additives to skim coat and other compounds.[23]

In other words, the only ways to fight oxidation is to either make the tire's inner liner less permeable by changing the rubber compound or thickness, or by using more robust anti-oxidant chemicals in the belts. Due to the presence of extensive oxidation in the failed tire, Mr. Southwell concluded that the combination of these design elements was inadequate to prevent the internal degradation of the tire. The tire was defective due to its insufficient anti-oxidant properties. As Mr. Southwell stated at his deposition, "my opinion is that the design of the tire, which incorporates the inner liner compound, the gauge and the antioxidants, was inadequate and caused the tire to oxidize."[24]

Goodyear complains that Mr. Southwell did not independently analyze each individual element of the anti-oxidant design, but rather concludes that the design as a whole is defective. Yet Mr. Southwell explained that because "the formulations of the inner liner and belt and ply skim coats have not been disclosed in this case, I am not in a position to evaluate those aspects of the tire's design."[25] In addition, measurement of the cured liner gauge would be destructive and "would require alteration of the evidence."[26] Nonetheless, Mr. Southwell explained "those evaluations are unnecessary because the inadequate oxidation resistance of the subject tire is

---

[23] *Id.* at p. 12.
[24] Exhibit 2, Deposition of David Southwell, at 14:11-15.
[25] Exhibit 1, Sworn Report of David Southwell, p. 12.
[26] *Id.*

clearly on display."[27] As Mr. Southwell concluded, "in the case of the subject tire, measures taken to prevent thermo-oxidative degradation were clearly inadequate."[28]

Moreover, as Mr. Southwell explained at deposition, the tire's anti-oxidant design elements function as a group, not individually. Discussing the inner liner gauge, Mr. Southwell testified:

> The inner liner gauge is an element or design parameter that can be changed to change the rate at which the skim coat compounds will oxidize. But taking the gauge in isolation is in many ways meaningless.[29]

As Mr. Southwell explained, the anti-oxidant properties of the tire are not tied to any one design element. According to Mr. Southwell, "you could have a very poor liner but very good resistance within the compounds to oxidation. Or you could have a very, very high quality liner and low antioxidant properties within the skim coats. Both would be ways of ensuring the tire wears out before it falls apart."[30] The ultimate question is whether the entire anti-oxidant design is sufficient to prevent internal oxidation during the service life of the tire. During his deposition, even Goodyear's counsel understood this was the nature of Mr. Southwell's conclusion:

> Q. But the point is that the effect of the thermal oxidative degradation, by making the skim coat and other compounds more brittle or harder, is that it makes it more susceptible to a belt edge separation?
>
> A. That's correct.

---

[27] *Id.*
[28] *Id.* at p. 12.
[29] Exhibit 2, Deposition of David Southwell, at 14:20-15:1.
[30] *Id.* at 71:20-72:5.

8

> Q. All right. And it's your belief that, in fact, this initiating separation, the one that initiated this, as you call it, the catastrophic failure, that was, in part, because of thermal oxidative degradation?
>
> A. Yes.[31]

Here, Mr. Southwell's opinion about the insufficiency of the anti-oxidant design is confirmed by the physical evidence in the tire and supported by numerous industry and government publications. Mr. Southwell's report also noted Goodyear's Load Range E tires were the subject of internal investigations due to excessive failure rates, and these investigations resulted in Goodyear implementing design countermeasures "to reduce the rate of skim coat oxidation."[32] These investigations confirmed what Mr. Southwell discovered in his forensic tire examination: the failed tire's anti-oxidant countermeasures were insufficient to prevent internal degradation. This condition rendered the tire defective.

## II. Ohio Law Should Apply to Punitive Damages.

Plaintiffs concede that Nebraska law does not allow for punitive damages. However, Plaintiffs have moved for a determination that the punitive damages law of Ohio apply to their claim against Goodyear in accordance with the procedure followed in *Fanselow v. Rice, et al,* 213 F. Supp. 2d 1077 (D.Neb. 2002).[33] The court in *Fanselow* made it clear that Nebraska federal courts may apply the substantive law of a corporate defendant's home state regarding punitive damages. *Id.* at 1085. Such a

---

[31] *Id.* at 69:10-20.
[32] Exhibit 1, Sworn Report of David Southwell, p. 12.
[33] *See* Plaintiffs' Motion to Apply Ohio Law Regarding Punitive Damages, filed August 12, 2019.

9

determination is especially appropriate here, where an analysis of various contacts and public policies of the competing forums weigh heavily in favor of Ohio.

As this case was originally pending in Pennsylvania, this Court should apply Pennsylvania choice of law principles,[34] though this makes little difference since both Pennsylvania and Nebraska courts follow the Restatement (Second) of Conflict of Laws. *Fanselow,* 213 F. Supp. 2d at 1080–81; *Carrick v. Zurich-American Ins. Group*, 14 F.3d 907, 909 (3rd Cir. 1994).

In this case, where there is an obvious conflict between Nebraska and Ohio punitive damages law, the court must "determine which state has the 'greater interest in the application of its law.'" *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 231 (3rd Cir. 2007), quoting *Cipolla v. Shaposka,* 439 Pa. 563, 267 A.2d 854, 856 (1970). Under these standards, the domicile or residence of the plaintiff and the place where the injury occurred are not relevant contacts when punitive damages are the subject of a conflict of laws. *See Kelly v. Ford Motor Co.*, 933 F. Supp. 465, 469 (E.D. Pa. 1996); *see also Detroit,* 750 F.Supp. at 805; *Walsh v. Ford,* 106 F.R.D. 378, 408 (D.D.C. 1985). Instead, the most critical contacts are the place where the alleged punitive conduct occurred and, if dealing with a corporate defendant, the state of incorporation and its principal place of business. *Cavalier Clothes, Inc. v. Major Coat Co.*, 1991 WL 125179, at *5 n. 8 (E.D.Pa. 1991). Indeed, the comments following § 145 note that when

---

[34] If a case is transferred pursuant to 28 U.S.C. § 1404(a), "for the convenience of parties [and] in the interest of justice," the transferee court generally applies the law of the transferor court, including the relevant choice-of-law provisions, as if no change of venue had occurred. 28 U.S.C. § 1404(a); *Van Dusen v. Barrack,* 376 U.S. 612, 639 (1964); *Ferens v. John Deere Co.,* 494 U.S. 516, 531 (1990).

analyzing contacts for the purposes of a punitive damages claim, the place where the conduct occurred is especially significant. Comment "c" of § 145 states that "if the primary purpose of the tort rule involved is to deter or punish misconduct ... the state where the conduct took place may be the state of dominant interest and thus that of most significant relationship." Restatement (Second) of Conflict of Laws § 145 cmt. c, at 416.

Here, Goodyear's principal place of business and the place where Goodyear made all of its decisions for the design of the Subject Tire are the critical contacts for purposes of punitive damages. Goodyear's Motion states the company is incorporated in Ohio and maintains its principal place of business in Ohio.[35] According to the affidavit of Goodyear's Manager of Product Analysis, the failed tire was "designed by the Goodyear Tire & Rubber Company in Akron, Ohio."[36] Plaintiffs bring a defective design claim with respect to the failed tire, and they allege reckless refusal to confront the widely acknowledged tread separation crisis in the company's Load Range E light truck tires. All of the alleged conduct took place in Ohio. Ohio therefore maintains the most relevant contacts under Pennsylvania choice of law rules and the factors provided by the § 145 Restatement because any decisions, or indecisions, regarding the Subject Tire's original design or changes to the original design would have been made in Ohio.

---

[35] *See* Doc. 108, Goodyear's Brief in Support of its Motion for Partial Summary Judgment, p. 3.
[36] *See* Doc. 30-2, Affidavit of Jay K. Lawrence, at p. 2, ¶ 6.

As a general rule, "the only jurisdictions concerned with punitive damages are those…with whom the defendants have contacts significant for choice of law purposes." *In re "Agent Orange" Product Liability Litigation*, 580 F. Supp. 690, 705 (E.D.N.Y. 1984). The Eastern District of New York reasoned that States that allow punitive damages have an interest in punishing and deterring future bad behavior of businesses or individuals operating within that State. *Id.* Here, Ohio authorizes the award of punitive damages because of public policy to punish and deter harmful conduct of businesses and individuals with contacts with Ohio. *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 651, 635 N.E.2d 331.

Goodyear's contacts with Ohio demonstrate that Ohio maintains the most significant relationship to Goodyear regarding the issue of punitive damages. Ohio's policies to punish and deter bad behavior of Ohio corporations would be significantly advanced with application of Ohio punitive damages law. Conversely, Nebraska has no interest in applying its punitive damages laws to Goodyear because Nebraska's prohibition on punitive damages was intended to protect and benefit Nebraska businesses, not out-of-state corporations like Goodyear. Further, "[t]he legitimate interests of those states [of the plaintiffs' domicile] are limited to assuring that the plaintiffs are adequately compensated for their injuries." *In re "Agent Orange" Product Liability Litigation*, 580 F. Supp. at 705. As a result, a state with punitive damages prohibitions has no interest in applying its laws to a case in which the only contacts

12

it has with the defendant is that it is the location of the accident and the residence of the plaintiff.

The only contacts to Nebraska are the incident occurred in Nebraska, and the Plaintiffs are domiciled in Nebraska. Based on these contacts, Nebraska has a legitimate interest in ensuring that the Plaintiffs are adequately compensated for their injuries. However, Nebraska does not have an interest in applying its punitive damage prohibition to Goodyear. Goodyear was not incorporated in Nebraska, nor does Goodyear maintain its principal place of business in Nebraska. Further, any punitive conduct giving rise to the incident occurred outside of Nebraska. As such, Nebraska has no interest in protecting Goodyear from punitive damages liability, as such protection would not serve to further policy of providing a business-friendly environment in Nebraska.

## CONCLUSION

Goodyear's attack on Mr. Southwell's oxidation opinion is meritless. Mr. Southwell's forensic examination revealed physical proof that the tire's anti-oxidant design was inadequate to prevent internal oxidation during the tire's service life. Using industry literature and his decades of experiences, Mr. Southwell was able to tie this internal oxidation to the failure of the tire. It matters not that Mr. Southwell was denied access to Goodyear's secret proprietary rubber formula, or that he was unable to destroy the tire to conduct measurements of the inner liner. Mr. Southwell possesses more than sufficient evidence to reliably conclude the tire's anti-oxidant

design was inadequate. Finally, with respect to punitive damages, Ohio has the greatest connection and interest with regards to Goodyear's conduct, while Nebraska has no interest in protecting Goodyear from punitive damages liability. As such, the law of Ohio must apply to Plaintiffs' claim for punitive damages. For these reasons, Plaintiffs pray this Court denies Goodyear's Motion for Partial Summary Judgement on these issues.

        Respectfully submitted,

        **KASTER, LYNCH, FARRAR, & BALL, L.L.P.**

By: _____
        Kyle Wayne Farrar *(Pro Hac Vice)*
        Kaster, Lynch, Farrar & Ball, LLP
        Texas Bar No. 24038754
        1117 Herkimer St.
        Houston, TX 77008
        (713) 221-8300 (Telephone)
        (713) 221-8301 (Facsimile)
        kyle@fbtrial.com

        *and*

        Paul Godlewski *(Pro Hac Vice)*
        SCHEWEBEL, GOETZ & SIEBEN, P.A.
        5120 IDS Center
        80 S. 8th Street, #5120
        Minneapolis, Minnesota 55402
        612.377.7777
        612.333.6311 (Fax)
        pgodlewski@schwebel.com

        and

        Michael F. Coyle
        Fraser Stryker Law Firm

>409 South 17th Street
>Suite 500, Energy Plaza
>Omaha, NE 68102
>mcoyle@fraserstryker.com
>
>***Attorneys for Plaintiffs***

CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on September 3, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

Edward S. Bott, Jr
Clark W. Hedger
Juliane M. Rodriguez
10 South Broadway, Ste 2000
St. Louis, MO 63102
esb@greensfelder.com
ch1@greensfelder.com
jrodriquez@greensfelder.com
Jennifer D. Tricker
1700 Farnam Street, Ste 1500
Omaha, NE 68102
jtricker@bairdholm.com

15