IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| RYSTA LEONA SUSMAN, Both individually and as Legal Guardian of Shane Allen Loveland; and JACOB SUMMERS | ) ) ) ) | **CASE NO.** 8:18CV127 |
| Plaintiff(s), | ) ) ) | |
| v. | ) | **PLAINTIFFS' REPLY BRIEF ON** |
| THE GOODYEAR TIRE & RUBBER COMPANY | ) ) | **CHOICE OF LAW REGARDING PUNITIVE DAMAGES** |
| Defendant(s). | ) | |

This Reply Brief is filed in response to Goodyear's Brief in Opposition. Goodyear's response contends: 1) that Nebraska's choice of law rules, and not Pennsylvania's, should be used to determine this issue; 2) that Nebraska has a greater interest in applying its own laws regarding punitive damages; and 3) that even if the Court applied Ohio's punitive damages law, there is a false conflict because Goodyear believes Plaintiffs' claim for punitive damages would fail due to a potential statutory limitation. Careful examination of each of these arguments demonstrates that they are either based on misinterpretations of case law or without support of relevant law.

**ARGUMENT**

**I.    Other Than Accusing Plaintiffs' of Gamesmanship, Goodyear Fails to Support Its Position That Nebraska Choice of Law Rules Should Apply.**

Goodyear complains of "Plaintiffs' continued efforts to game the system" by seeking to apply Pennsylvania choice of law rules. [ECF No. 126, p. 2]. However, an objective look at the nature of the transfer of this action to the District of Nebraska and the corresponding case law confirms that Pennsylvania choice of law rules should be applied. If a case is transferred pursuant to 28 U.S.C. § 1404(a), "for the convenience of parties [and] in the interest of justice," the transferee court generally applies the law of the transferor court, including the relevant choice-of-

1

law provisions, as if no change of venue had occurred. 28 U.S.C. § 1404(a); *Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Ferens v. John Deere Co.,* 494 U.S. 516, 531, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990).

Goodyear unambiguously filed a § 1404(a) Motion to Transfer. In its § 1404(a) Motion, Goodyear extensively argued that the action should be transferred to Nebraska based on the § 1404(a) factors such as the convenience of the parties, convenience and location of witness, and the location and ease of access to evidence. [ECF No. 30, pp. 7-10]. Further, Goodyear also specifically stipulated to transfer the action to this Court pursuant § 1404(a). [ECF No. 31]. Therefore, this Court, as the transferee court, should apply the relevant choice of law provisions of the transferor court, *i.e.* Pennsylvania.

**II.     Goodyear Misinterprets the Standard for Determining a True or False Conflict Under Pennsylvania Choice of Law Analysis.**

While Goodyear correctly states the standard for Pennsylvania's choice of law analysis, it misinterprets the second part of the analysis for determining if a conflict is a true conflict or false conflict. Goodyear correctly states that a false conflict exists when only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law. *Kelly v. Ford Motor Co.*, 933 F. Supp. 465, 468 (E.D. Pa. 1996). Yet Goodyear argues there is no conflict of law by referencing Ohio statute which allows Goodyear to assert an affirmative defense. Under Ohio statute, a defendant can shield itself from punitive damages if it proves "the claimant's injury results from an alleged defect…for which there is an applicable government safety or performance standard." Ohio Rev. Code § 2307.80(D).

Goodyear improperly concludes Ohio and Nebraska law presents a false conflict because it believes application of either states' law would arrive at the same result, predicting that Goodyear will ultimately prevail under Ohio Rev. Code § 2307.80(D). However, the standard whether a false

2

conflict exists cannot be based on prediction of the outcome of Goodyear's affirmative defense. The appropriate standard for a false conflict simply looks to see if only Nebraska's governmental interests would be impaired by the application of Ohio punitive damages law, or if only Ohio's governmental interests would be impaired by Nebraska's prohibition.

Here, the application of Ohio's law allowing punitive damages would impair Nebraska's governmental interest in encouraging economic activity and incentivizing businesses to set up a principal office within the State because of the potential of increased litigation costs. Likewise, the application of Nebraska's law prohibiting punitive damages would impair Ohio's interest in deterring a corporation's bad conduct because a corporation like Goodyear would have less of an incentive to prevent corporate acts or omissions that could ultimately harm the consumer/public. Both states' interests that would be impaired by the application of the other's law on punitive damages, as opposed to just one state's interests being impaired. Accordingly, there is a true conflict.

### III. Even if a False Conflict Analysis Could be Based on Ohio Rev. Code § 2307.80(D), Plaintiffs' Punitive Damages Claim May Still Prevail at Trial.

As noted above, a defendant can shield itself from punitive damages in Ohio only if it shows that "the claimant's injury results from an alleged defect…for which there is an applicable government safety or performance standard." Ohio Rev. Code § 2307.80(D). Yet as shown in the declaration of David Southwell, "[t]he U.S. Federal Motor Vehicle Safety Standards (FMVSS)…are inapplicable to the defects raised in this case."[1] For example, Mr. Southwell noted that FMVSS standards are not intended to test a tire's resistance to oxidative degradation:

> FMVSS is only conducted on new tires. As such, these tests are not run on tires, like the tire in this case, that have undergone the age-related oxidative degradation process experienced by the subject tire. As such, there is no applicable government safety or

---

[1] Exhibit 1, Declaration of David Southwell, Para. 3.

performance standard which addresses the defect of oxidative degradation.[2]

Mr. Southwell's declaration explains how "FMVSS tire testing is not designed or intended to test whether a steel-belted tire is prone to fail by tread separation late into its service life."[3] Mr. Southwell's declaration discusses how the design and purpose of FMVSS tire testing does not apply to the issues in this case.[4] Mr. Southwell also cited a study conducted by the National Highway Transportation Safety Administration (NHTSA) entitled "Tire Aging Testing Development" which examined tire-related FMVSS standards and their inapplicability to late-life tread separations. Mr. Southwell cited the NHTSA study because it "concluded that FMVSS testing does not adequately address the issue of late-life failures, such as occurred in this case."[5] As Mr. Southwell noted, "for the moment, there are no applicable government standards pertaining to late-life tread separations or the defects that cause those failures."[6] Given there is no applicable government safety or performance standard relevant to the defects in this case, Goodyear will not be able to carry its burden on Ohio Rev. Code § 2307.80(D).

Two Ohio federal courts have construed a parallel provision -- Ohio Rev. Code § 2307.80(C)(1)(a), which insulates drug manufacturers against punitive damages based on compliance with applicable regulations -- to be an affirmative defense. *Burdine v. Stryker Corp.*, 766 F. Supp. 2d 837, 838 (N.D. Ohio 2011); *Williams v. Novartis Pharm. Corp.*, 15 F. Supp. 3d 761, 766 (S.D. Ohio 2014). Thus, the "defendant has the burden of pleading and proving" compliance with applicable regulations, and "[i]f the defendant fails to meet this burden, the plaintiff can, if the evidence supports such award, recover punitive damages." *Burdine*, 766 F.

---

[2] *Id.* at Para. 6.
[3] *Id.* at Para. 9.
[4] *Id.* at Para. 4-5; 8.
[5] *Id.* at Para. 7.
[6] *Id.* at Para. 8.

Supp. 2d at 838; *see also Williams*, 15 F. Supp. 3d at 766 ("If Novartis is unable to satisfy its burden of proof on this issue [the government safety standard] at trial, then punitive damages would be available under Ohio law."). Here, Plaintiffs can recover punitive damages if Goodyear fails to prove its affirmative defense at trial, and thus there is a true conflict between Nebraska and Ohio law.

**IV.     Goodyear Fails to Support its Position that Nebraska Maintains the Most Significant Relationship to Plaintiffs' Claims Because Goodyear's Cited Case Law is Distinguishable and Inapposite to the Instant Action.**

Goodyear cites to several cases purporting to support the position that Nebraska has the most significant relationship based on contacts such as (i) the place where the injury occurred; (ii) the place where the conduct causing the injury occurred; (iii) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (iv) the place where the relationship, if any, between the parties is centered. However, Goodyear failed to include one key step in the choice of law analysis; that the "contacts only become important when they relate to the 'policies and interests underlying the particular issue before the court.'" *Henderson v. Merck & Co., Inc.*, 04-CV-05987-LDD, 2005 WL 2600220, at \*7 (E.D. Pa. Oct. 11, 2005) (citing *Cipolla v. Shaposka,* 439 Pa. 563, 267 A.2d 854, 856 (Pa 1970)).

Plaintiffs cited to *Kelly* for the proposition that when deciding *punitive damages only*, the corporate defendant's principal place of business and place of conduct contact were the critical contacts to consider because of the policies implicated by either the application or prohibition of punitive damages. Further, contacts such as the Plaintiffs' domicile and the location of the accident are not relevant because the contacts do not relate to the policies and interests underlying punitive damages. *See Kelly*, 933 F. Supp. at 469. The application or prohibition of punitive damages do not focus on the plaintiff's entitlement to a recovery, but rather focuses on the defendant. *Fanselow*

5

*v. Rice*, 213 F. Supp. 2d 1077, 1085 (D. Neb. 2002) ("It therefore seems to me that Nebraska has little interest in applying its punitive damages laws to a case such as this, where the only connection it has with the defendants is that it was the location of the accident giving rise to the lawsuit.").

**A. *Henderson*, *Knipe*, and *Alley* Are Inapposite Because the Courts Conducted a Choice of Law Analysis Regarding Liability, Compensatory Damages, and Product Liability Statutes.**

Goodyear attempts to argue that Plaintiffs' reliance on *Kelly* is misplaced because most cases declined to follow *Kelly*. However, the cases that declined to follow *Kelly* are distinguishable and/or inapposite because the choice of law analysis included competing state law for punitive damages as well as liability, compensatory damages, and entire product liability statutory schemes.

1. <u>*Henderson v. Merck & Co., Inc.*</u>

In *Henderson*, the court conducted a choice of law analysis to determine whether or not to apply the Michigan or Pennsylvania product liability statute for claims against drug manufacturers. *Henderson v. Merck & Co., Inc.*, 04-CV-05987-LDD, 2005 WL 2600220, at *7 (E.D. Pa. Oct. 11, 2005). Each state's statute differed in several respects including liability, viable cause of actions, compensatory damages, and application of punitive damages. *Id*. The court considered the plaintiff's domicile and the place of the injury because the policies and issues underlying the liability and compensatory damages issues are relevant to these contacts. *Id*. (citing *Laconis v. Burlington County Bridge Comm'n,* 400 Pa.Super. 483, 583 A.2d 1218, 1223 (Pa.Super.Ct.1990) ("in an action for personal injuries, the law of the state where the injury occurred normally determines the rights and liabilities of the parties, unless another state, applying the contacts test, has a more significant relationship to the occurrence and parties")). The court ultimately held that Michigan law should apply because plaintiff was a resident of Michigan, drugs were purchased in Michigan, and the injury occurred in Michigan. *Henderson*, 2005 WL 2600220, at *7.

Here, however, Plaintiffs do not seek application of another state's product liability statute affecting issues of liability or compensatory damages. Plaintiffs seek only the application of Ohio's punitive damages law. Ohio authorizes the award of punitive damages because of public policy to punish and deter harmful conduct of businesses and individuals with contacts with Ohio. *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 651. If the primary purpose of the application of punitive damages is to deter or punish misconduct then the state where the conduct took place may be the state of dominant interest and thus that of most significant relationship. *Kelly*, 933 F. Supp. at 469. Goodyear designed the Subject Tire in Ohio, and the decisions regarding designs flaws, design changes, or failure to implement design changes would have occurred in Ohio.

Further, "[t]he legitimate interests of those states [of the plaintiffs' domicile] are limited to assuring that the plaintiffs are adequately compensated for their injuries." *In re "Agent Orange" Product Liability Litigation*, 580 F. Supp. 690, 705 (E.D.N.Y. 1984). Nebraska's interest in this litigation is limited to assuring the plaintiffs are adequately compensated. Therefore, Plaintiffs' domicile and the location of the accident should not be afforded significant weight when determining *punitive damages only* because these contacts are not relevant to the policies and issues implicated by the application or prohibition of punitive damages.

2. *Knipe v. SmithKline Beecham*

Goodyear also cites to *Knipe* for the proposition that the place of injury and plaintiff's domicile outweighed defendant's principal place of business and place of conduct contact. *Knipe v. SmithKline Beecham*, 583 F. Supp. 2d 602, 638 (E.D. Pa. 2008). The court in *Knipe* rejected the plaintiff's reliance on *Kelly* and ultimately applied the punitive damages law of the state of the place of injury and plaintiff's domicile. *Id*. However, the court specifically distinguished the circumstances of the case stating that the *Kelly* court "dealt with a motion for partial summary

7

judgment solely on the claim of punitive damages." *Id*. The court in *Knipe* was determining which state law to apply for liability, compensatory damages, and punitive damages based on contacts relevant to the underlying policies and interests of the competing state law. *Id*. When determining choice of law on issues beyond punitive damages, contacts such as the plaintiff's domicile and the place on injury are relevant. *Id*.

In the instant action, the only issue in contention is the choice of law regarding punitive damages. The only contacts relevant to punitive damages are Goodyear's principal place of business and the place of the design decisions, both of which occurred in Ohio. Therefore, Goodyear's reliance on *Knipe* is misplaced because it is distinguishable as the court was determining more than just punitive damages law from the instant action.

    3. *Alley v. MTD Products, Inc.*

Similarly, Goodyear's reliance on *Alley* is inapposite. The court in *Alley* conducted a choice of law analysis regarding the application of Pennsylvania and Ohio's statute of repose and made no determination regarding punitive damages. *Alley v. MTD Products, Inc.*, 3:17-CV-3, 2017 WL 6547996, at *1-2 (W.D. Pa. Dec. 20, 2017). However, the *Alley* court illustrates the importance of relating the contacts to the underlying policies and interests of the competing state law.

The court explained that the Pennsylvania legislature chose to enact statutes of repose in other contexts, but did not enact a statute of repose for products liability claims. *Id*. at *3. The *Alley* court inferred that the Pennsylvania legislature intended for its citizens to have recourse when they suffer injuries caused by defective products manufactured and sold more than ten years before the injury. *Id*. As such, a plaintiff's domicile and the location of the injury are very relevant to the policies and interests promoted by the Pennsylvania legislature.

Here, the only issue in contention is the choice of law regarding punitive damages. The only contacts relevant to punitive damages are Goodyear's principal place of business and the place of the design decisions, both of which occurred in Ohio. Therefore, Goodyear's reliance on *Alley* is misplaced because it is distinguishable as the court was determining more than just punitive damages law from the instant action.

**B.** ***Kukoly*** **is Distinguishable from the Instant Action Because the Court Lacked the Critical "Place of Conduct" Contact to Support Punitive Damages of the Corporate Defendant's State.**

Goodyear argues that *Kukoly* stands for the proposition that "the fact that a corporate defendant happens to be headquartered or manufacturing products in a different state does not justify the application of the corporate defendant's home state punitive damages law." [ECF No. 126, p. 12]. However, Goodyear overlooks the fact that the court's choice of law analysis lacked the "place of conduct" contact, i.e. the place where the conduct causing the injury occurred. *Kukoly v. World Factory, Inc.*, CIV A 07-01644, 2007 WL 1816476, at *3 (E.D. Pa. June 22, 2007).

In *Kukoly*, the issue before the court was whether to apply Pennsylvania or Texas law regarding punitive damages. *Id.* at *1. The court ultimately applied Pennsylvania punitive damages law because the defective product was sold in Pennsylvania, the injury occurred in Pennsylvania, and the plaintiff purchased the product in Pennsylvania. *Id.* at *3. Importantly; however, the court noted that the place where the conduct causing the defect and/or injury occurred was unknown, occurring either in the distribution center in China or at the retail store in Pennsylvania. *Id.* Indeed, the court specifically distinguished the circumstances from *Kelly* stating the following:

> Here, unlike in *Kelly*, the facts regarding the 'place of conduct' contact are in dispute. Texas may have very little, if any, contacts with this alleged incident other than being the state where World Factory has its principal place of business. *Id.*

9

Here, the "place of conduct" contact regarding the alleged designs flaws, design changes, and/or failure to implement design changes occurred in Ohio because that's where the Subject Tire was designed. As stated in *Kelly*, the critical contacts are the principal place of business and the place of conduct, both of which occurred in Ohio in the instant action. Moreover, comments following § 145 suggest that when analyzing contacts for the purposes of a punitive damages claim, the place where the conduct occurred is especially significant. Comment "c" of § 145 states that "if the primary purpose of the tort rule involved is to deter or punish misconduct ... the state where the conduct took place may be the state of dominant interest and thus that of most significant relationship." § 145 cmt. c, at 416.Therefore, *Kukoly* is distinguishable from the instant action because the court did not have the benefit of the critical "place of conduct" contact.

**C. Goodyear Overlooks Cases That Followed the *Kelly* Court's Choice of Law Analysis.**

The court in *Campbell v. Fawber* followed the *Kelly* court's emphasis on critical contacts such as the defendant's principal place of business and the place of conduct contact as it specifically relates to punitive damages. *Campbell v. Fawber*, 975 F. Supp. 2d 485, 508 (M.D. Pa. 2013). In *Campbell*, the plaintiffs alleged a design defect against General Motors. *Id*. General Motors then filed a motion for partial summary judgment related to *punitive damages only* for the application of Michigan's punitive damages law. *Id*. at 503. The court identified the following relevant contacts weighing in favor of Michigan punitive damages law: 1) General Motors maintained its principal place of business in Michigan; and 2) General Motors "designed, engineered, and made all of the significant decisions concerning the design and engineering" of the Jimmy in Michigan, so Michigan was the place of the allegedly outrageous conduct warranting punitive damages. *Id*. at 508. The court did not consider the plaintiff's domicile or the location of

the accident (both occurred in Pennsylvania). *Id*. at 489. Accordingly, the court held that Michigan law governs the issue of punitive damages. *Id*. at 508.

Likewise in the instant action, Plaintiffs alleged a design defect in the failed tire designed by Goodyear. Plaintiff seeks to apply Ohio's punitive damages law. Following the *Kelly* and *Campbell* courts' choice of law analyses, the critical contacts are Goodyear's principal place of business and the place of conduct contact where Goodyear designed, engineered and made all of the significant decisions concerning the design of the Subject Tire. Both of these contacts occurred in Ohio. Therefore, Ohio law should govern the issue of punitive damages.

## V. The Protection of Justified Expectations and Ease of Applying Ohio's Punitive Damages Statutory Scheme is Neutral.

Lastly, Goodyear argues that the factors outlined in § 6 of the Restatement weigh in favor of Nebraska. [ECF No. 126, p. 20]. Specifically, Goodyear argues that "Plaintiffs have a justified expectation that Nebraska law would apply to any claims arising from injuries they sustained while working in Nebraska." However, Goodyear's argument is misplaced and at best, speculation. Goodyear is not in a position to determine the Plaintiffs' justified expectations of the legal consequences after the tire on their vehicle fails resulting in catastrophic injuries. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2)(a), (d) (1971); see also *id*. cmt. g ("There are occasions, particularly in the area of negligence, when the parties act without giving thought to the legal consequences of their conduct or to the law that may be applied. In such situations, the parties have no justified expectations to protect, and this factor can play no part in the decision of a choice-of-law question."). As such, this factor is neutral.

Further, with respect to certainty, predictability, uniformity of result, and ease of application of the Ohio law, Goodyear argues that applying only the punitive damages portion of the Ohio Product Liability Act without applying the rest of the statute could cause confusion and

11

inconsistency of results. The defendant in *Fanselow* made a similar argument stating that the punitive damage schemes of Minnesota and Oregon would be difficult to determine and apply and should weigh in favor of Nebraska law. *Fanselow,* 213 F. Supp. 2d at 1083. The court in *Fanselow* however held that the laws of Minnesota and Oregon are "easily determined" and would not be "particularly difficult to apply." *Id.* at 1081. Likewise, Ohio's punitive damages scheme is likely also "easily determined" and not "particularly difficult to apply." As such, these factors are also neutral.

## CONCLUSION

For each of the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion to Apply Ohio Law Regarding Punitive Damages.

Respectfully submitted,

**KASTER, LYNCH, FARRAR, & BALL, L.L.P.**

By: _____

Kyle Wayne Farrar *(Pro Hac Vice)*
Kaster, Lynch, Farrar & Ball, LLP
Texas Bar No. 24038754
1117 Herkimer Street
Houston, TX 77008
(713) 221-8300 (Telephone)
(713) 221-8301 (Facsimile)
kyle@fbtrial.com

*and*

Paul Godlewski *(Pro Hac Vice)*
SCHEWEBEL, GOETZ & SIEBEN, P.A.
5120 IDS Center
80 S. 8th Street, #5120
Minneapolis, Minnesota 55402

612.377.7777
612.333.6311 (Fax)
pgodlewski@schwebel.com

and

Michael F. Coyle
Fraser Stryker Law Firm
409 South 17th Street
Suite 500, Energy Plaza
Omaha, NE 68102
mcoyle@fraserstryker.com

***Attorneys for Plaintiffs***

CERTIFICATE OF SERVICE (CM/ECF)

  I HEREBY CERTIFY that on September 10, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

Edward S. Bott, Jr
Clark W. Hedger
Juliane M. Rodriguez
10 South Broadway, Ste 2000
St. Louis, MO 63102
esb@greensfelder.com
ch1@greensfelder.com
jrodriquez@greensfelder.com
Jennifer D. Tricker
1700 Farnam Street, Ste 1500
Omaha, NE 68102
jtricker@bairdholm.com

Attorneys for Defendant Goodyear Tire & Rubber Company