## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **RYSTA LEONA SUSMAN, Both Individually and as Legal Guardian of Shane Allen Loveland; and JACOB SUMMERS,**<br><br>    **Plaintiffs,**<br><br> **vs.**<br><br>**THE GOODYEAR TIRE & RUBBER COMPANY,**<br><br>    **Defendant.** | **8:18CV127**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on several motions. For the reasons discussed below, Plaintiffs' Motion for Summary Judgment, ECF No. 105, will be granted in part; Plaintiffs' Motion in Limine to Apply Ohio Law on Punitive Damages, ECF No. 106, will be granted; and the Motion of Defendant The Goodyear Tire & Rubber Company (Goodyear) for Partial Summary Judgment, ECF No. 107, will be granted in part.

## BACKGROUND

Plaintiffs' summary judgment motion does not contain numbered paragraphs setting out disputed or undisputed material facts, and their brief does not respond directly to Goodyear's numbered paragraphs.[1] The following facts appear from the record to be undisputed unless otherwise indicated.

---

[1] Plaintiffs have not followed local rules as they pertain to motion practice in the District of Nebraska. Plaintiffs' motions are not accompanied by separate supporting briefs, NECivR 7.1(a)(1)(A), nor are they accompanied by separate evidentiary indices, NECivR 7.1(a)(2). Plaintiffs' Motion for Summary Judgment does not contain a statement of material facts with short, numbered paragraphs, NECivR 56.1(a), nor does their brief in opposition to Goodyear's Motion for Summary Judgment contain a responsive factual section with pinpoint references to evidence, NECivR 56.1(b). These failures could be grounds to deny Plaintiffs' motions, NECivR 56.1(a)(1), however, the Court will address the motions in this Order.

On May 15, 2015, Shane Allen Loveland and Jacob Summers were passengers in a pickup truck driven by Larry Blair in Hall County, Nebraska, when the right rear tire suffered a disablement.  Plaintiffs allege that as a result of this disablement, the vehicle operator was unable to maintain a straight line of travel and the truck left the roadway, crossed into the median, and rolled over.  Plaintiffs also allege that as a result of this rollover, Loveland sustained significant brain injuries, and Summers suffered significant orthopedic injuries.  Blair was an employee of Dandee Concrete Construction (Dandee), the owner of the vehicle.  The tire at issue was an LT235/85R16 Goodyear Wrangler HT tire with the serial number DOT MD0RNJHV244.  It was manufactured by Goodyear in Gadsden, Alabama, in 1994.  Goodyear is an Ohio corporation, with its principal place of business in Ohio.

On May 31, 2017, Plaintiffs initiated this action against Goodyear and other defendants with similar names in the Philadelphia County Court of Common Pleas, ECF No. 1-1.  On August 7, 2017, Goodyear removed this action to the U.S. District Court for the Eastern District of Pennsylvania, ECF No. 1.  On March 9, 2018, Judge Joel H. Slomsky dismissed all defendants other than Goodyear, ECF No. 28.  On March 22, 2018, Judge Slomsky transferred the case to this Court upon stipulation by the parties, ECF No. 31.  On August 12, 2019, Plaintiffs moved for summary judgment, ECF No. 105, and filed a Motion in Limine to apply Ohio law regarding punitive damages, ECF No. 106.  Goodyear moved for partial summary judgment, ECF No. 107.

## STANDARD OF REVIEW

"Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law.'" *Cottrell v. Am. Family Mut. Ins. Co., S.I.*, 930 F.3d 969, 971 (8th Cir. 2019) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)); *see also* Fed. R. Civ. P. 56(c) ("A party asserting the fact cannot be or is genuinely disputed must support the assertion by: citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[,] . . . admissions, interrogatory answers, or other materials . . . ."). A genuine issue of material fact arises "if each party has supplied some evidence that is sufficient for a reasonable jury to return a verdict for the nonmoving party". *Cottrell*, at 930 F.3d at 971 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"The moving party bears the burden of showing 'that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law.'" *Vandewarker v. Cont'l Res., Inc.*, 917 F.3d 626, 629 (8th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)). The moving party can satisfy its burden in two ways: (1) by producing evidence negating an essential element of the nonparty's case; or (2) "by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

In response to the moving party's showing, the nonmoving party must produce evidentiary materials of "specific facts showing the presence of a genuine issue for trial." *Id.* (quoting *Torgerson*, 643 F.3d at 1042). "The nonmoving party must do more than raise some metaphysical doubt about the material facts and cannot rest on mere denials or allegations." *Id.* (citing *Torgerson*, 643 F.3d at 1042; *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)); *see also Dick v. Dickinson State Univ.*, 826 F.3d 1054,

1061 (8th Cir. 2016) ("[T]here must be more than 'the mere existence of *some* alleged factual dispute' between the parties in order to overcome summary judgment.") (emphasis in original) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

"At summary judgment, the court's function is not to weigh the evidence and determine the truth of the matter itself, but to determine whether there is a genuine issue for trial." *Smith v. Kilgore*, 926 F.3d 479, 483 (8th Cir. 2019) (quoting *Schilf v. Eli Lilly & Co.*, 687 F.3d 947, 948 (8th Cir. 2012)); *see also Bedford*, 880 F.3d at 996 ("A principal purpose of the summary-judgment procedure 'is to isolate and dispose of factually unsupported claims or defenses . . . .'") (quoting *Celotex*, 477 U.S. at 323–24). Accordingly, in reviewing a motion for summary judgment, the Court will "view[] the record in the light most favorable to [the nonmoving party] and draw[] all reasonable inferences in [that party's] favor." *Hanson ex rel. Layton v. Best*, 915 F.3d 543, 547 (8th Cir. 2019) (quoting *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009)). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial,' and summary judgment is appropriate." *Vandewarker*, 917 F.3d at 629 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Plaintiffs' Motion for Summary Judgment seeks dismissal of Goodyear's affirmative defenses. Plaintiffs' Motion in Limine seeks an Order from the Court stating that Ohio law will apply to Plaintiffs' demand for punitive damages. Goodyear's Motion for Partial Summary Judgment seeks dismissal of Plaintiffs' claims to the extent they rely upon the

theory that Goodyear's negligent or defective design of the tire's anti-oxidative measures caused the disablement. Goodyear also seeks dismissal of Plaintiffs' claim for punitive damages.[2]

## I. Goodyear's Affirmative Defenses

In its First Amended Answer, ECF No. 72, Goodyear lists several affirmative defenses. Plaintiffs seek summary judgment dismissing Goodyear's affirmative defenses of (1) comparative fault or contributory negligence, (2) failure to use a seatbelt, (3) efficient intervening cause, (4) misuse, (5) substantial alteration, and (6) assumption of risk. ECF No. 105. Goodyear only argues against dismissal of its defenses of failure to use a seatbelt, efficient intervening cause, and misuse. The affirmative defenses of comparative fault or contributory negligence, substantial alteration, and assumption of risk are deemed abandoned and will be dismissed. *See* NECivR 39.2(c).

### A. Failure to Use a Seatbelt

Under Nebraska law, evidence of seatbelt misuse or nonuse "shall not be admissible in regard to the issue of liability or proximate cause but may be admissible as evidence concerning mitigation of damages, except that it shall not reduce recovery for damages by more than five percent." Neb. Rev. Stat. § 60-6,273. Plaintiffs have stipulated to a 5% reduction in damages, ECF No. 105-1, therefore Goodyear is precluded from offering evidence of seatbelt nonuse or misuse. *See Shipler v. Gen. Motors. Corp.*, 710 N.W.2d 807, 833 (Neb. 2006) (holding that the trial court was correct to determine evidence of seatbelt misuse or nonuse was inadmissible because plaintiff

---

[2] Plaintiffs concede in their brief that under Nebraska law their claim of breach of the implied warranty of merchantability merges with their claim of strict liability. Pls.' Br. 1, ECF No. 128. Thus, this claim will be dismissed.

stipulated to a 5% reduction in damages).  Goodyear may not offer any evidence related to seatbelt misuse or nonuse by Loveland and Summers.

### B. Efficient Intervening Cause

Goodyear claims "[t]he conduct of individuals and/or entities other than Goodyear—over whom/which defendant Goodyear had no control—constitutes a superseding, intervening cause of the incident, injuries, and damages alleged by plaintiffs."  First Am. Answer ¶ 9, ECF No. 72.  The Nebraska Supreme Court has instructed trial courts applying Nebraska law to "discontinue the practice of separately instructing juries on 'efficient intervening cause' in favor of the more direct and clear instructions based on the concept of proximate or concurring cause . . . ."  *Sacco v. Carothers*, 567 N.W.2d 299, 306 (Neb. 1997); *see also* NJI2d Civ. 3.43.  Goodyear is free to argue that its own actions were not a proximate cause of Plaintiffs' injuries, but, as Nebraska law does not recognize efficient intervening cause as an affirmative defense, that affirmative defense is dismissed.

### C. Misuse

Goodyear contends that "Plaintiffs' claims may be barred and/or recovery may be limited by misuse by some or all of the plaintiffs and/or others' failure(s) to properly care for or maintain the Subject Tire." First Am. Answer ¶ 13, ECF No. 72.  To prove the affirmative defense of misuse, a defendant must show "(1) that the plaintiff used the product as claimed by the defendant, (2) that the defendant could not reasonably have foreseen such a use, and (3) that this misuse by the plaintiff was a proximate cause of his own injury."  *Wedgewood v. U.S. Filter/Whittier, Inc.*, No. A-09-1280, 2011 WL 2150102, *10 (Neb. Ct. App. May 31, 2011) (citing *Jay v. Moog Auto., Inc.*, 652 N.W.2d

872 (Neb. 2002); NJI2d Civ. 11.25). The defense of misuse only requires that the defendant show the misuse was "'a' proximate cause of [the plaintiff's] injury (as opposed to being 'the' proximate cause of the injury-causing accident)."" *Keaschall v. Altec Indus. Inc.*, No. 4:14CV3070, 2017 WL 3084393, *7 (D. Neb. July 19, 2017). Misuse is a defense to strict liability and negligence. *Erickson v. Monarch Indus., Inc.*, 347 N.W.2d 99, 108 (Neb. 1984). Although the Nebraska Supreme Court has not specifically decided that third-party misuse is a defense to strict liability, it is the majority rule among courts that have decided the issue. *See* Randy R. Koenders, Annotation, *Products Liability: Product Misuse Defense*, 65 A.L.R. 4th 263, §§ 9–10 (1988). Misuse by a third party can defeat a strict liability action. *Carlson v. Freightliner LLC*, 226 F.R.D. 343, 358 (D. Neb. 2004). Therefore, if there are admissible facts from which a reasonably jury could find that plaintiffs' or a third-party's misuse of the tire was a proximate cause of plaintiffs' injuries, then the plaintiffs are not entitled to summary judgment on the issue of misuse.

Goodyear's defense of misuse can be summarized as follows: (1) the tire was underinflated or overloaded, causing overdeflection; (2) the warnings and instructions provided by Goodyear made such use was unforeseeable; and (3) the overdeflection was a proximate cause of the tire's malfunction. Goodyear's expert witness, Joseph Grant, stated in his report that there is the following evidence of overdeflection: "a) the rim line polishing to grooving on both sides of the tire 360 degrees, b) the multi-level radial tear lines on the serial side and opposite serial side belt edges, and c) the polished worn flanges on the wheel with some black rubber transfer." Grant Rep. 14, ECF No. 127-7. Grant also indicated that overdeflection can occur by "overloading, underinflation or a combination of both." *Id.* It is undisputed that the tire at issue included the load and

inflation pressure on the sidewall of the tire. The Nebraska Supreme Court has stated that a "seller is entitled to have his due warnings and instructions followed . . . ." *Erickson*, 347 N.W.2d at 108 (citations omitted). While Grant stated that this overdeflection alone did not cause the tire to fail, he indicated that it made the tire more susceptible to failure. Pls.' Br. 2, ECF No. 132. Misuse need not be *the* proximate cause of the plaintiffs' injury, but only *a* proximate cause. *See Keaschall*, 2017 WL 3084393, at *7. There is sufficient evidence in the record to support Goodyear's affirmative defense of misuse.

Plaintiffs also argue that any claim of misuse on the part of Summers and Loveland's employer or its agents is prohibited by *Downey v. Western Community College Area*, 808 N.W.2d 839 (Neb. 2012). In *Downey*, the court examined whether an injured employee's employer was considered a "released person" for purposes of Nebraska's comparative negligence statute.[3] *Id.* at 851–54. The *Downey* court determined that "an employer covered by workers' compensation does not have a common liability with the third party" and thus is not a "person liable" or a "released person" under the statute. *Id.* at 851, 852 (holding that an employer is immune from tort liability due to workers' compensation). As a result, a third-party tortfeasor may not "reduce his or her own liability by apportioning some of the fault to the employer," but "a defendant can point to the negligence of the employer and claim that the employer was the sole cause of the accident." *Id.* at 853.

---

[3] Neb. Rev. Stat. § 25-21,185.11(a) ("A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable shall discharge that person from all liability to the claimant but shall not discharge any other persons liable upon the same claim unless it so provides. The claim of the claimant against other persons shall be reduced by the amount of the *released person*'s share of the obligation as determined by the trier of fact.") (emphasis added).

Plaintiffs imply, but have not alleged, that Loveland and Summers were employed by Dandee and operating in the course of their employment. Neither have they alleged that this incident was covered by the Nebraska Workers' Compensation Act. At this time, Goodyear's affirmative of misuse will not be dismissed.

## II. Negligence and Strict Liability Claims Based on Insufficient Anti-Oxidative Measures

Plaintiffs' expert witness, David R. Southwell, claims that one of the three root causes of the tire's failure was "[a]ge-related thermo-oxidative degradation of the body ply and belt skim coats, which substantially compromised the structural integrity of the tire . . . ." Southwell Rep. 20, ECF No. 110. Southwell states that there are three main design measures which may reduce such oxidation: "[f]ormulation of the inner liner compound, [c]ured inner liner gauge, and [a]nti-oxidative additives to skim coat and other compounds." *Id.* at 12. Plaintiffs allege, in part, that Goodyear was negligent and strictly liable for designing a tire without sufficient anti-oxidative measures to prevent or reduce the oxidation of the tire.

Goodyear moves for summary judgment dismissing the negligence and strict liability claims that arise from any defect related to anti-oxidative design measures. Goodyear bases its motion on the following excerpts from Southwell's deposition:

> Q: All right. Is it your opinion to a reasonable degree of engineering certainty that this tire, the tire at issue in this case, was defective in design because of the inner liner compound that was used?
> A: I can't be definitive about that because Goodyear ha[s] not provided that information.
> Q: So the answer to that is, as of today, you are unable to give that -- you do not have that opinion, correct?
> A: Not specifically about the compound of the inner liner.
> ***

Q: Looking at the inner liner gauge alone in this tire, are you testifying to a reasonable degree of engineering certainty that the cured inner liner gauge was unreasonably dangerous?

A: Not specifically, no.

\*\*\*

Q: Do you hold an opinion to a reasonable degree of engineering certainty that this tire was defective and unreasonably dangerous because of the oxidative agents that were used or not used in the skim coat and compounds?

A: Well again, that information has not been provided by Goodyear so I can't be definitive about that.

Q: So the answer is, as of today, you do not hold that opinion, correct?

A: Well, I don't hold an opinion either way on that because I don't have that level of detail.

Southwell Dep. 14:1–11; 15:3–8; 15:24–16:9, ECF No. 109-5.

### A. Negligence

To state a products liability cause of action for negligent design, "a plaintiff needs to establish some evidence of duty, breach, causation, and damages." *Jay*, 652 N.W.2d at 879. Goodyear argues that because "Plaintiffs cannot demonstrate that Goodyear should have known these characteristics of the Tire created an unreasonable risk of harm . . . Plaintiffs have not established a duty with respect to [the anti-oxidative] conditions of the tire . . . ." Def.'s Br. 14, ECF No. 108.

The Nebraska Supreme Court has adopted the Third Restatement's definition of duty; therefore, foreseeability is not a consideration in establishing a duty. *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 784 N.W.2d 907, 918 (Neb. 2010) ("We expressly hold that foreseeability is not a factor to be considered by courts when making determinations of duty."). According to the Third Restatement, "[a]n actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm." Restatement (Third) of Torts: Liab. for Physical and Emotional Harm § 7; *see also* § 6 cmt. f ("The rule stated in § 7 . . . is equivalent to saying that an actor is subject to liability for negligent

conduct that causes physical harm. Thus, in cases involving physical harm, courts ordinarily need not concern themselves with the existence or content of this ordinary duty."). Instead, "foreseeability arguments are properly framed as disputing whether, considering the foreseeable likelihood of harm, [the defendant] exercised reasonable care under all the circumstances." *Id.* at 919.

While duty is a question of law, breach is a question of fact. *A.W.*, 784 N.W.2d at 913 ("The question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation. But it is for the fact finder to determine, on the facts of each individual case, whether or not the evidence establishes a breach of that duty.") (citing *Doe v. Gunny's Ltd. P'ship*, 593 N.W.2d 284 (Neb. 1999); *Heins v. Webster Cty.*, 552 N.W.2d 51 (Neb. 1996)). However, if there is no evidence upon which a jury could properly find a verdict for Plaintiffs, Goodyear is entitled to summary judgment.

At issue in a products liability cause of action based on negligence is whether the manufacturer's conduct created an "unreasonable risk of causing physical harm to those who use [the product] for a purpose for which the manufacturer should expect it to be used." *Stahlecker v. Ford Motor Co.*, 667 N.W.2d 244, 253 (Neb. 2003) (quoting Restatement (Second) of Torts § 395). Where "standards of performance of a product are not generally known, other evidence, usually expert testimony, is necessary to prove proper or acceptable standards of performance." *Laird v. Scribner Coop, Inc.*, 466 N.W.2d 798, 804 (Neb. 1991) (citing *Durrett v. Baxter Chrysler-Plymouth, Inc.*, 253 N.W.2d 37, 39–40 (Neb. 1977)). The standards of performance of a tire are beyond the understanding of a layperson. *See Timm v. Goodyear Dunlop Tires N. Am., Ltd.*, 932

F.3d 986, 995 (7th Cir. 2019) (affirming district court's dismissal of plaintiff's claim due to lack of qualified expert testimony on tire failure); *Housley v. Orteck Int'l, Inc.*, 488 F. Supp. 2d 819, 829 (S.D. Iowa 2007) ("The design, manufacture, use, and installation of any tire . . . is a matter largely outside the experiences of the average juror."); *Clark v. Bohn Ford, Inc.*, 213 F. Supp. 2d 957, 961 n.4 (S.D. Ind. 2002) ("The Fifth Circuit leaves open the possibility that a design feature may be sufficiently uncomplicated that a lay person could understand it without the aid of expert testimony. This hypothetical possibility is not applicable here. The design features of tires are not 'uncomplicated.'") (citations omitted). Therefore, expert testimony is necessary to establish that Goodyear negligently designed the tire.

Southwell stated that extensive areas of the tire had "been affected by thermo-oxidative degradation" and as a result those areas were "harder and more brittle." Southwell Rep. 9, ECF No. 110. Southwell also listed several design measures that tire manufacturers typically use to reduce oxidation of a tire: "formulation of the inner liner compound, cured inner liner gauge, and anti-oxidative additives to [the] skim coat and other compounds." *Id.* at 12. However, Southwell's report and deposition show he could not form an opinion regarding these measures, upon which a jury could rely.

"Conjecture, speculation, or mere choice of quantitative possibilities are not proof." *Durrett*, 253 N.W.2d at 39. A defendant is entitled to judgment as a matter of law if there is not sufficient evidence upon which a jury could properly find a verdict for the plaintiff. *Id.* ("[T]here is a preliminary question for the court to decide, when properly raised, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the plaintiff, upon whom the burden of proof is

imposed.") (citing *Bohling v. Farm Bureau Ins. Co.*, 214 N.W.2d 381 (Neb. 1974)).  There is not expert testimony in the record upon which a jury could properly find that Goodyear was negligent in designing the anti-oxidative properties of the tire.  Goodyear will be granted summary judgment on this issue, and Plaintiffs' negligence claim will be dismissed to the extent it relies on Goodyear's negligent design of the anti-oxidative measures of the tire.

*B. Strict Liability*

For Plaintiffs to state a claim against Goodyear for strict liability, they must show:

> (1) the defendant placed the product on the market for use and knew, or in the exercise of reasonable care should have known, that the product would be used without inspection for defects; (2) the product was in a defective condition when it was placed on the market and left the defendant's possession; (3) the defect is the proximate or a proximately contributing cause of the plaintiff's injury sustained while the product was being used in a way and for the general purpose for which it was designed and intended; (4) the defect, if existent, rendered the product unreasonably dangerous and unsafe for its intended use; and (5) the plaintiff's damages were a direct and proximate result of the alleged defect.

*Pitts v. Genie Indus., Inc.*, 921 N.W.2d 597, 609 (Neb. 2019) (citing *Jay*, 652 N.W.2d 872). To show that a product is defective, a plaintiff must present expert testimony "when standards of performance of the product are not generally known . . . ."  *Nuzum v. Chlorella*, No. 8:05CV335, 2006 WL 3825111, *3 (D. Neb. Dec. 27, 2006) (quoting *Laird*, 466 N.W.2d at 804).  Expert testimony is also necessary to show causation in a products liability case.  *Sullivan v. Zimmer, Inc.*, No. 8:06CV319, 2007 WL 1342559, *2 (D. Neb. May 7, 2007) ("Under Nebraska law, expert evidence is necessary to establish the elements of product defect and causation in a products liability case.") (citing *Schafersman v. Agland Coop.*, 681 N.W.2d 47, 56 (Neb. 2004); *Laird*, 466 N.W.2d at 804; *Hanzlik v. Paustian*, 344 N.W.2d 649, 651 (Neb. 1984); *Durrett*, 253 N.W.2d at 39).  As

discussed above, the standards of performance of a tire are beyond the understanding of a layperson. Expert testimony is needed to prove causation and defect.

There is not expert testimony in the record upon which a jury could properly find that the tire was unreasonably dangerous due to its anti-oxidative design measures. Plaintiffs' strict liability claim is dismissed to the extent it relies on the anti-oxidative measures of the tire.

## III. Punitive Damages

All parties agree that Nebraska law controls the liability of the parties.[4]  However, the parties disagree on whether to apply Nebraska law or Ohio law regarding punitive damages.  Plaintiffs argue Ohio law applies.  ECF No. 106.  Goodyear moves for summary judgment dismissing Plaintiffs' request for punitive damages, arguing that Nebraska law should apply.  ECF No. 107.  For the following reasons, the Court will apply Ohio law to the issue of punitive damages.

### A. Choice-of-Law Analysis

As a threshold matter, the Court must determine which state's choice-of-law rules to apply.  Ordinarily, a federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits.  *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 65 (2013) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 489, 494–96 (1941)).  The Supreme Court has recognized an exception to this rule for transfers pursuant to 28 U.S.C. § 1404(a) "requiring that the state law applicable in the original court also apply in the transferee court."  *Id.* (citing *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964)); *see also Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) ("[T]ransferor

---

[4] *See, generally*, Pls.' Mot. Summ. J., ECF No. 105; Def.'s Br., ECF No. 108.

law should apply regardless of who makes the § 1404(a) motion.").[5]  Therefore, the Court

will apply the choice-of-law rules of Pennsylvania.

### B. Pennsylvania Choice-of-Law Application

Pennsylvania courts have adopted "a flexible rule which permits analysis of the

policies and interests underlying the particular issue before the court."  *Griffith v. United*

*Air Lines, Inc.*, 203 A.2d 796, 805 (Pa. 1964).  This rule consists of two steps.  The first

step is to determine whether there is a true or false conflict between the "competing

policies and interests of the relevant states."  *Coram Healthcare Corp. v. Aetna U.S.*

*Healthcare, Inc.*, 94 F. Supp. 2d 589, 594 (E.D. Pa. 1999) (quoting *LeJeune v. Bliss-*

*Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996)).  "A false conflict exists when 'only one

jurisdiction's governmental interests would be impaired by the application of the other

jurisdiction's law.'"  *Id.* (quoting *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir.

1991)).  If a false conflict exists, courts need not move to the second step and simply

must "apply the law of the state whose interests are truly implicated by the particular

cause of action."  *Id.* (citing *Lacey*, 932 F.2d at 187).  A true conflict exists when "the

interests of each state would be impaired if the law of the other is given effect."  *Id.* (citing

*Lacey*, 932 F.2d at 187 n.15).  If a true conflict exists, courts must move to the second

---

[5] Goodyear argues that Pennsylvania has no connection to the case and the only reason Pennsylvania courts had jurisdiction was due to "fraudulent joinder," therefore the Court should apply Nebraska choice-of-law rules.  However, it is generally understood that "plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous (consistent with jurisdictional and venue limitations) . . . ."  *Atl. Marine*, 571 U.S. at 63.  Goodyear waived any argument of personal jurisdiction or venue and stipulated to a transfer under § 1404(a).  Had Goodyear wished to present these arguments in the Eastern District of Pennsylvania, it could have sought a transfer under § 1406(a).  *See Steen v. Murray*, 770 F.3d 698, 701 (8th Cir. 2014) ("[W]hen a diversity case is transferred under § 1406(a) because venue in the transferor court was improper, '§ 1406(a) transfer calls for application of the law of the transferee court,' beginning with its choice-of-law rules.") (quoting *Wisland v. Admiral Beverage Co.*, 119 F.3d 733, 736 (8th Cir. 1997)).

step of the analysis and decide "which state has the greater interest in the application of its law." *Id.* (quoting *LeJeune*, 85 F.3d at 1072).

Nebraska law categorically prohibits punitive damages. *See Abel v. Conover*, 104 N.W.2d 684, 688 (Neb. 1960) ("It has been a fundamental rule of law in this state that punitive, vindictive, or exemplary damages will not be allowed, and that the measure of recovery in all civil cases is compensation for the injury sustained. This rule is so well settled that we dispose of it merely by the citation of cases so holding.") (citing *Boyer v. Barr*, 8 Neb. 68 (1878); *Atkins v. Gladwish*, 41 N.W. 347 (Neb. 1889); *Bee Pub. Co. v. World Pub. Co.*, 82 N.W. 28 (Neb. 1900); *Wilfong v. Omaha & Council Bluffs St. Ry. Co.*, 262 N.W. 537 (Neb. 1935)); *see also* Neb. Const. art. VII, § 5. Ohio, on the other hand, permits punitive damages "to punish and deter certain conduct." *Moskovitz v. Mt. Sinai Med. Ctr.*, 635 N.E.2d 331, 343 (Ohio 1994). There is a false conflict as Nebraska's interests are not impaired by application of Ohio punitive damages law against an Ohio corporation with its principal place of business in Ohio. Thus, the Court will apply Ohio law.

However, even if the conflict were true, the second step of Pennsylvania choice-of-law analysis produces the same result. To determine which state has the greater interest in the application of its law, Pennsylvania courts apply the most significant contacts analysis outlined in the Restatement (Second) of Conflict of Laws. *Henderson v. Merck & Co., Inc.*, No. 04-CV-05987-LDD, 2005 WL 2600220, *3 (E.D. Pa. Oct. 11, 2005). Section 6 of the Restatement sets out the following general principles for the most significant contacts analysis:

    (a) the needs of the interstate and international systems
    (b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6. The Restatement lists the following contacts to be taken into account in torts cases: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145. Pennsylvania courts weigh the contacts on a qualitative rather than quantitative scale. *See Cipolla v. Shaposka*, 267 A.2d 854, 856 (Pa. 1970) ("In determining which state has the greater interest in the application of its law . . . it must be remembered that a mere counting of contacts is not what is involved. The weight of a particular state's contacts must be measured on a qualitative rather than quantitative scale.") (citations omitted).

The most significant relationship to consider when evaluating contacts for purposes of determining which state's law to apply regarding punitive damage is typically the state where the conduct that is to be punished occurred. *Kelly v. Ford Motor Co.*, 933 F. Supp. 465, 469 (E.D. Pa. 1996) ("If the primary purpose of the tort rule involved is to deter or punish misconduct . . . the state where the conduct took place may be the state of dominant interest and thus that of most significant relationship.") (quoting Restatement (Second) of Conflict of Laws § 145 cmt. c). The Eastern District of Pennsylvania in *Kelly* and in *Serbin Development Corp. v. North River Insurance Co.*, Civ. A. No. 85-4273, 1986 WL 4315 (E.D. Pa. Apr. 8, 1986), predicted that the Pennsylvania Supreme Court would

look to the defendant's contacts to determine the most significant relationship for purposes of punitive damages. *Kelly*, 933 F. Supp. at 469 (citing *Serbin*, 1986 WL 4315). The Superior Court of Pennsylvania has since adopted this reasoning. *Daniel v. Wyeth Pharm., Inc.*, 15 A.3d 909, 935 n.17 (Pa. Super. Ct. 2011) ("[I]n a choice of law analysis on the availability of punitive damages, 'the most critical contacts include the place where the alleged punitive conduct occurred and, if dealing with a corporate defendant, the state of incorporation and its principal place of business . . . .'") (quoting *Kelly*, 933 F. Supp. at 469–71).

Here, the relevant contacts are Goodyear's state of incorporation, principal place of business, and the place where the alleged punitive conduct took place. *See Kelly*, 933 F. Supp. at 469. The scope of Goodyear's alleged punitive conduct includes the design and engineering of the tire, as well as the decision-making involved in the development and design of the tire. The *Kelly* court did not consider the place where the allegedly defective good was manufactured because the plaintiffs did not bring a manufacture defect claim. Because Plaintiffs allege that the tire was defectively designed and manufactured, the Court will also consider the state where the tire was manufactured as within the scope of Goodyear's alleged punitive conduct. The injured parties' state of domicile is of no consequence to this analysis. *See In re Agent Orange Prod. Liab. Litig.*, 580 F. Supp. 690 (E.D.N.Y. 1984) (The state of an injured party's domicile "do[es] not have an interest in whether or not punitive damages are imposed on the defendants. The legitimate interest of those states are limited to assuring that the plaintiffs are adequately compensated for their injuries . . . .") (citing *In re Air Crash Disaster Near Chi. on May 25,*

*1979*, 644 F.2d 594, 612–13 (7th Cir. 1981); *Roginsky v. Richardson-Merrell, Inc.*, 378 F.2d 832 (2d Cir. 1967); *Hurtado v. Superior Court*, 522 P.2d 666, 672 (Cal. 1974)).

Goodyear is an Ohio corporation and maintains its principal place of business in Ohio. The alleged punitive conduct occurred in multiple states. The design and engineering of the tire occurred in Akron, Ohio. Aff. Jay Lawrence ¶ 6, ECF No. 30-2. The tire was manufactured in Goodyear's factory located in Gadsden, Alabama. *Id.* Ohio has the most significant relationship under the Second Restatement analysis. Ohio's policy of permitting punitive damages is to punish and deter conduct by corporations that may harm consumers. *See Moskovitz*, 635 N.E.2d 331. The conduct which would be punished in this case is the design and manufacture of a dangerous tire. Ohio has an interest in regulating the conduct of corporations established under its laws with their principal places of business within its borders. While Alabama may have some interest as well, the most significant relationship and interest lies with Ohio.

It is often stated that "the purpose underlying the disallowance [of punitive damages] is protection of defendants from excessive financial liability." *Agent Orange*, 580 F. Supp. at 706 (citing *Air Crash Disaster*, 644 F.2d at 613; *Forty-Eight Insulations, Inc. v. Johns-Manville Prods.*, 472 F. Supp. 385 (N.D. Ill. 1979); *Pancotto v. Sociedade de Safaris de Mocambique, S.A.R.L.* ,422 F. Supp. 405 (N.D. Ill. 1976)). Nebraska is also "the only state which finds [punitive] damages to be unconstitutional" as a violation of due process under the state and federal constitutions. Lisa M. Broman, Comment, *Punitive Damages: An Appeal for Deterrence*, 61 Neb. L. Rev. 651 (1982) (citing *Abel*, 104 N.W.2d at 689). Whether intended to encourage business, or protect due process, Nebraska's policy interests are only affected if the defendant is a Nebraska corporation. Nebraska

has no interest in protecting a foreign corporation from excessive liability or protecting its due process rights. Therefore, even if the conflict were true, Ohio law will apply to the issue of punitive damages. Plaintiffs' demand for punitive damages will not be dismissed. Accordingly,

IT IS ORDERED:

I. Plaintiffs' Motion for Summary Judgment, ECF 105, is granted in part as follows:

A. Goodyear's affirmative defenses of comparative fault or contributory negligence, substantial alteration, assumption of risk, and efficient intervening cause, are dismissed; and

B. Goodyear may not introduce evidence of seatbelt misuse or nonuse; and

The Plaintiffs' Motion for Summary Judgment is otherwise denied;

II. Plaintiffs' Motion in Limine to Apply Ohio Law to Punitive Damages. ECF No. 106, is granted;

III. Defendant's Partial Motion for Summary Judgment, ECF No. 107, is granted in part as follows:

A. Count I of Plaintiffs' Complaint for negligence is dismissed as it relates to the tire's anti-oxidation measures;

B. Count II of Plaintiffs' Complaint for strict liability is dismissed as it relates to the tire's anti-oxidation measures; and

C. Count III of Plaintiff's Complaint for breach of warranty is dismissed in its entirety; and

Defendant's Partial Motion for Summary Judgment is otherwise denied.

Dated this 10th day of October 2019.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge