IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RYSTA LEONA SUSMAN, both individually and as Legal Guardian of SHANE ALLEN LOVELAND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE GOODYEAR TIRE & RUBBER COMPANY, <br><br> Defendant. | Case No. 8:18-cv-00127 |

**GOODYEAR'S MEMORANDUM IN SUPPORT OF ITS MOTION IN LIMINE SEEKING EXCLUSION OF EVIDENCE OF POST-MANUFACTURE DESIGN CHANGES TO THE SUBJECT TIRE[1]**

The Goodyear Tire & Rubber Company ("Goodyear"), by its attorneys, submits its Memorandum in Support of its Motion in Limine Seeking Exclusion of Evidence of Post-Manufacture Design Changes to the Subject Tire:

### INTRODUCTION

Goodyear manufactured the Tire at Issue in June 1994. In early 1996, following an investigation into "tread throws" involving Goodyear Load Range E Light Truck tires—i.e., tread detachments along 360° of a tire's circumference without accompanying signs of damage—Goodyear changed the design of certain Load Range E Tires, including subsequent iterations of the Subject Tire. Specifically, Goodyear changed the design of the Subject Tire in the following three ways: Goodyear (1) added nylon overlays to the tires' construction; (2) introduced a new belt compound in the tires' design; and (3) increased the gauge of the tires' inner liner. Goodyear has

---

[1] In this Memorandum, the term "Subject Tire" refers to LT235/85R16 Goodyear Wrangler HT Tires generally. The term "Tire at Issue" refers specifically to the Tire that was mounted on the truck involved in the accident, and which suffered the tread detachment which gave rise to this lawsuit.

1

stipulated and admits that all three changes to the Subject Tire's design were feasible at the time the Tire at Issue was manufactured in 1994.

At trial, Goodyear anticipates that Plaintiffs will seek to offer these design changes into evidence to demonstrate that the Tire at Issue was defective, or that Goodyear was otherwise negligent in its design of the Tire. The Court should preclude introduction of this evidence—and any other evidence, comment, reference, argument, or innuendo related to design changes Goodyear made to the Subject Tire in response to its Load Range E investigation—under Federal Rule of Evidence 407, which precludes introduction of evidence of subsequent remedial measures to prove the negligence, culpable conduct, or a defect in the product at issue or its design.

Alternatively, the Court should exclude evidence of, comments on, references to, argument about, or innuendo regarding these design changes under Federal Rule of Evidence 403, as this evidence's probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury, in that the design changes at issue were not related to, or taken in response to, the failure mode at issue in this litigation.

## RELEVANT FACTUAL BACKGROUND

**I.      The Subject Accident And The Tire at Issue.**

On May 1, 2015, Shane Loveland and Jacob Summers were passengers in a 2003 Chevrolet Silverado SC1 pickup truck owned by their employer, Dandee Concrete Construction, when the right rear tire (the "Tire" or "Tire at Issue") mounted on the truck suffered a disablement. (Compl. ¶ 10, ECF No. 1-1 at 21). Mr. Loveland and Mr. Summers were injured in the ensuing accident. (*Id.*) Rysta Leona Susman, individually and as legal guardian of Shane Loveland, and Jacob Summers subsequently filed this lawsuit, pleading claims for negligence, strict liability, and breach of warranty. (*Id.* at 21-25.)

The Tire at Issue is an LT235/85R16 Goodyear Wrangler HT tire bearing DOT # MD0RNJHV244, which identifies a tire manufactured by Goodyear at its Gadsden, Alabama plant during the 24th week of 1994.  (Expert Report of David Southwell ("Southwell Rep."), ECF No. 109, Ex. B, at 5, § 3.a.)  The Tire is classified as a Load Range E tire, which reflects the fact that it was designed to bear loads within the Load Range E classification.  Load Range E tires include Goodyear Wrangler HT tires, and several other lines of Goodyear tires, and other manufacturers' tires.  (*See* NHTSA ODI Resume, attached as Exhibit I, at 2.)

According to Plaintiffs' purported tire failure expert, the Tire at Issue experienced a partial tread separation immediately before the accident.  (Southwell Rep., ECF No. 109, Ex. B, at 5-6.)  The tread and the Tire's second belt became detached between the 180-degree mark and the 350-degree mark on the Tire, as measured on the opposite-serial side shoulder of the Tire.  (*Id.*)  In other words, the tread did not detach from the Tire's carcass across 360° of its circumference, but rather only detached, according to Plaintiffs' purported expert, across approximately 170° of the Tire's circumference.  Plaintiffs' expert maintains that this tread detachment caused the accident. (*Id. passim.*)

## II.   Plaintiffs' Defect Theories.

Plaintiffs maintain that the Tire at Issue was defective in design because, among other things, the Tire's design did not include nylon overlays to reinforce the Tire's belt edge.  (Southwell Rep., ECF No. 109, Ex. B, at 17-18.)  Goodyear has stipulated and admits that it could have included nylon overlays into the design of the Tire at Issue at the time of its manufacture, but denies that the Tire was defective in design due to the absence of a nylon overlay, or nylon overlays, in the Tire.  Specifically, as Goodyear's experts have testified, and as Goodyear will demonstrate at trial, nylon overlays do not eliminate or prevent tread separations.  (*E.g.*, 11.5.19

3

Tr. J. Lawrence Deposition ("Lawrence Dep."), attached as Exhibit C, at 136:9-14; 5.9.19 Expert Report of Joe Grant, attached as Exhibit N, at 20-21, ¶¶ 27-28.)

Notably, Plaintiffs have not pleaded, and their purported damages expert, Mr. Southwell, has not opined, that the belt compound in the in the Tire at Issue, or the gauge of the Tire's inner liner, made the Tire defective, or that these post-manufacture changes in the Tire's design are evidence of the defective nature of the Tire, or Goodyear's negligence. (*See* Southwell Rep., ECF No. 109, Ex. B.)

### III. Goodyear's Investigation Into Tread Throws Involving Load Range E Tires And Goodyear's Subsequent Modifications To The Design Of The Subject Tire.

In 1995, Goodyear undertook an investigation into "tread throws" in Load Range E tires. (Lawrence Dep., Ex. C, at 55:11-15; 2.12.02 Tr. Deposition of Beale Robinson in *Boerm* ("Robinson Dep."), attached as Exhibit E, at 27:12-28:14.) This investigation sprang from Goodyear's discovery, in late 1994 or early 1995, that two tires returned to Akron, Ohio for adjustment—i.e., tires that had been taken out of service, replaced under warranty, and then sent to Akron for analysis—experienced a "complete tread and top belt separation, without any other sign of injury or damage or misuse to the tire." (Lawrence Dep., Ex. C., at 65:9-66:10; Robinson Dep., Ex. E, at 27:12-28:14; 7.17.02 Tr. Deposition of Richard J. Olsen in *Arredondo* ("Olsen Dep."), attached as Exhibit D, at 104:20-105:14.) This discovery of tread throws, which is to say separations along 360° of the tires' circumference without apparent damage, was a unique failure mode and gave rise to Goodyear's investigation into the tread throw issue in Load Range E tires. (Lawrence Dep., Ex. C., at 65:9-66:10; Olsen Dep., Ex. D, at 105:3-7, 111:13-113:20.)

As part of its investigation into the "tread throw" problem, Goodyear experimented with several changes to the manufacture and design of Load Range E Tires. As a result of its investigation, in early 1996, Goodyear modified the design of LT235/85R16 Wrangler HT tires to

4

include nylon overlays in the tires' construction. (Lawrence Dep., Ex. C, at 45:20-46:8.) Goodyear also incorporated a new belt compound in the design of LT235/85R16 Wrangler HT tires, and increased the liner gauge on these tires. (Lawrence Dep., Ex. C., at 57:21-58:16.)

Goodyear's investigation into tread separations involving Load Range E revealed that the addition of nylon overlays to Wrangler HT tires, and other Load Range E tires, "appears to have solved the problem" that gave rise to Goodyear's Load Range E investigation – i.e., tread throws. (*See* Lawrence Dep., Ex. C, at 49:9-21.)

### IV. NHTSA Preliminary Evaluation Of Goodyear's Load Range E Tires.

On November 21, 2000, the National Highway Traffic Safety Administration ("NHTSA") opened a Preliminary Evaluation relating to tread separations of Load Range E Light Truck tires Goodyear manufactured. (Lawrence Dep., Ex. C., at 72:19-23; ODI Resume, Exhibit I, at 1.) NHTSA closed its evaluation into these tires on March 1, 2002. (ODI Resume, Ex. I, at 1.)

As a result of this evaluation, Goodyear instituted a Voluntary Replacement Program to replace certain Load Range E tires installed on 15 passenger vans and ambulances. (ODI Resume, Ex. I, at 1.) NHTSA concluded that this tire Replacement Program "is sufficient to resolve the issues raised by [its] investigation" and thus closed its evaluation into tread separations of Goodyear's Load Range E tires. (*Id.* at 3.)

### ARGUMENT

**I. The Court Should Exclude Evidence Of Post-Manufacture Design Changes To The Subject Tire Under Federal Rule of Evidence 407 And The Policies Underlying The Rule.**

   **A.  Federal Rule Of Evidence 407.**

Federal Rule of Evidence 407 provides as follows:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:

5

- negligence;
- culpable conduct;
- a defect in a product or its design; or
- a need for a warning or instruction.

But the court may admit this evidence for another purpose, such as impeachment or — if disputed — proving ownership, control, or the feasibility of precautionary measures.

Fed. R. Evid. 407.

Rule 407 is supported by two primary justifications: "(1) subsequent remedial measures are of limited probative value as an admission of fault; and (2) exclusion of remedial measures favors a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." *Williams v. Sec. Nat. Bank of Sioux City, Iowa*, 358 F. Supp. 2d 782, 794 (N.D. Iowa 2005) (internal quotation marks omitted). Regardless of the theory of the case, "[e]xclusion of subsequent remedial evidence . . . advances the policy behind Rule 407 of promoting safety." *Kelly v. Crown Equip. Co.*, 970 F.2d 1273, 1276 (3d Cir. 1992).

### B. Evidence Of Post-Manufacture Design Changes Should Be Excluded Under Rule 407 And The Policies Underlying The Rule.

Here, exclusion of evidence of Goodyear's post-manufacture design changes to the Subject Tire is appropriate under Rule 407, and this exclusion will advance the policies underlying the Rule. Goodyear took affirmative action to address a tire failure mode that was causing a small portion of Load Range E tires to fail. Its investigation led to design changes in the Subject Tire, one of which was found to dramatically decrease, the incidence of this failure mode.[2] This is precisely the kind of conduct the policies animating Rule 407 are designed to further. *Kelly*, 970 F.2d at 1276. Moreover, Goodyear has stipulated to the feasibility of all the design changes at

---

[2] The only design change found to have any effect on reducing "tread throws" was the addition of the nylon overlay.

6

issue, such that the feasibility exception—the only exception to Rule 407 that could apply under the circumstances—doesn't apply. *E.g.*, *J.B. Hunt Transp., Inc. v. Gen. Motors Corp.*, 243 F.3d 441, 445 (8th Cir. 2001).

Plaintiffs will likely maintain that Goodyear's design changes cannot constitute subsequent remedial measures under Rule 407 because the design changes occurred after the Tire at Issue's manufacture, but before the accident giving rise to Plaintiffs' claims. *E.g.*, *Kendall v. Bausch & Lomb, Inc.*, No. CIV. 05-5066-KES, 2009 WL 1740008, at *7 (D.S.D. June 17, 2009). While this interpretation has been accepted by some courts, the better interpretation of the Rule is that adopted by the Third Circuit. Taking a broader view, that Circuit has determined that the policy supporting the Rule "is equally supportive of exclusion of evidence of safety measures taken before someone is injured by a newly manufactured product, even if those measures are taken in response to experience with an older product of the same or similar design." *Petree v. Victor Fluid Power, Inc.*, 831 F.2d 1191, 1198 (3d Cir. 1987). Under this authority, evidence of Goodyear's post-manufacture design changes to the Tire is inadmissible under Rule 407. *See Kelly*, 970 F.2d at 1276-77.

Finally, it bears noting that Rule 407 and the policies underlying it apply equally to Plaintiffs' strict liability claim and negligence claim. While the Eighth Circuit had held, prior to the 1997 amendment to Rule 407, that Rule 407 did not apply to strict liability claims, *e.g., Buchanna v. Diehl Mach., Inc.*, 98 F.3d 366, 370 (8th Cir. 1996), the 1997 Amendment to the Rule, which added language providing that evidence of subsequent remedial measures may not be used to prove "a defect in a product or its design," adopted "the view of the majority of the circuits that have interpreted Rule 407 to apply to products liability actions." Fed. R. Evid. 407 advisory committee notes to the 1997 amendment.

7

In light of this change to the Rule, and the pre-1997 weight of authority on this issue, courts in the Eighth Circuit have come in line with the majority rule, and concluded that Rule 407 applies to strict liability claims. *E.g.*, *Norman v. Textron Inc.*, No. 15-4108-CV-C-WJE, 2018 WL 3199496, at *2 (W.D. Mo. May 17, 2018); *Cowden v. BNSF Ry. Co.*, 980 F. Supp. 2d 1106, 1111 (E.D. Mo. 2013); *see also Lopez v. Tyson Foods, Inc.,* 690 F.3d 869, 882 (8th Cir.2012) ("It is unclear whether this court's "strict liability" exception to Rule 407 survived the 1997 amendment."). *But see Richardson Int'l (US) Ltd. v. Buhler Inc.*, No. 8:14CV148, 2017 WL 1277814, at *3 (D. Neb. Mar. 31, 2017). Thus, evidence of post-manufacture design changes is inadmissible on Plaintiffs' negligence claim and on Plaintiffs' strict liability claim.

II. **The Court Should Exclude Evidence Of Post-Manufacture Design Changes To The Tire At Issue Under Federal Rules of Evidence 402 and 403.**

    A. **Federal Rules of Evidence 402 and 403.**

In federal courts, only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if it has any tendency to show that the existence of a fact of consequence to the determination of the action is more likely or less likely. Fed. R. Evid. 401.

Even if it is relevant, evidence is not per se admissible. Rather, courts have the power to exclude relevant evidence from the jury's consideration if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. For purposes of Rule 403, unfair prejudice "means any tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Villalba v. Consol. Freightways Corp. of Delaware*, No. 98 C 5347, 2000 WL 1154073, at *6 (N.D. Ill. Aug. 14, 2000).

8

Under Rule 403, a court "is required to weigh the probative value of the evidence against the prejudicial or other negative effect if it is admitted, to determine if the former is substantially outweighed by the latter." *Gannon Int'l, Ltd. v. Lexington Ins. Co.*, No. 4:07-CV-31 CAS, 2008 WL 3244025, at *1 (E.D. Mo. Aug. 6, 2008).

### B. Evidence Of Post-Manufacture Design Changes Should Be Excluded Under Rules 402.

The Court should exclude evidence of Goodyear's post-manufacture design changes to the Subject Tire because this evidence is irrelevant to the issues in this case. At bottom, the design changes Plaintiffs intend to use to show negligence or the existence of a defect in the Tire at Issue were changes Goodyear made to confront a failure mode that is not at issue in this case. The Tire at Issue did not suffer a "tread throw"; the Tire's tread, in other words, did not detach from the Tire's carcass across 360°'s of the Tire's circumference, as did the tires that were the subject of the investigation that prompted the design changes at issue. Rather, the tread on the Tire at Issue only partially detached, which is a separate and distinct failure mode from the tread throws at issue in Goodyear's investigation. As the changes at issue were not taken to address the specific mode of failure at issue in this case, evidence of these design changes is not probative of any material fact in this case.

This conclusion is consistent with the case law on this subject. In determining the relevance of post-manufacture activity by product manufacturers, courts often look to whether the alleged defect sought to be remedied by the design change or other post-manufacture activity at issue, such as a recall, was prompted by the purported defect at issue in the litigation before the court, or another purported defect altogether. When the post-manufacture activity relates to a different defect than that at issue in litigation, courts typically exclude evidence of that activity as irrelevant. *E.g. Olson v. Ford Motor Co.,* 410 F. Supp. 2d 869, 872 (D.N.D. 2006) (excluding

9

1832681

evidence of a recall as irrelevant when the recall related to a different alleged defect than that at issue in the litigation); *see also Hessen for Use & Benefit of Allstate Ins. Co. v. Jaguar Cars, Inc.*, 915 F.2d 641, 649 (11th Cir. 1990) (concluding that for recall evidence to be relevant the recall must relate to the conditions at issue in the lawsuit).

Courts have similarly concluded that post-sale information reflecting a defendant's knowledge of an alleged defect is generally irrelevant in the absence of a post-sale duty to warn claim. *E.g.*, *Ramstad v. Lear Siegler Diversified Holdings Corp.*, 836 F. Supp. 1511, 1517 (D. Minn. 1993). Here, of course, Plaintiffs have not pleaded any claim based on a purported post-sale duty to warn. Thus, under this authority, the design changes to the Subject Tire are irrelevant, and the Court should preclude Plaintiffs from introducing evidence at trial of post-manufacture design changes to the Subject Tire, or otherwise making any comment, reference, argument, or innuendo regarding these changes.

Notably, the design changes to the belt compound and liner gauge are especially irrelevant, as these facets of the Tire—the belt compound and liner gauge—are not part of Plaintiffs' defect theories. Thus, evidence regarding these changes will not be probative of any fact at issue in this case.

### C. Evidence Of Post-Manufacture Design Changes Should Be Excluded Under Rule 403.

The Court should also exclude this evidence under Rule 403 as unfairly prejudicial, confusing, and misleading. To begin with, the probative value of evidence of post-manufacture design changes to prove a defect in a product is slight. *Williams*, 358 F. Supp. 2d at 794. Here, the probative value of the design changes at issue is slighter still, as Goodyear incorporated these changes in the Subject Tire in response to a failure mode that is not at issue in this case. As the design changes at issue were motivated by a different issue with Load Range E tires, any inference

10

that the design changes evidence or support the existence of the defect about which Plaintiffs complain here has no probative value. Again, this is especially true with respect to the change to the belt compound and the liner gauge, as these elements of the Tire's design are not part of Plaintiffs' defect theories in this case.

On the other hand, introduction of this evidence will unfairly prejudice Goodyear. The jury may improperly conclude from the evidence that design changes at issue were, in fact, prompted by the failure mode at issue in this litigation, which is demonstrably false. More broadly, the jury may improperly conclude that these design changes effectively amount to an acknowledgement by Goodyear that these design changes evidence the defect of which Plaintiffs complain here. Again, this is an improper inference to draw, and unfair to Goodyear, given the undisputed genesis of Goodyear's Load Range E investigation.

Perhaps more problematically, introduction of this evidence will necessarily result in a series of min-trials on the nature, scope, length, purpose, findings, and actions taken as a result of the Load Range E investigation, which took place over several years and generated thousands of pages of documents. The same will be true of NHTSA's Preliminary Evaluation into Load Range E tires, which was conducted, in part, based on documents generated during Goodyear's Load Range E investigation. Goodyear turned over documents related to its Load Range E investigation to NHTSA in the early 2000s. NHTSA concluded its Evaluation without finding any defect in Goodyear's Load Range E tires, but based on a vehicle safety issue with certain vans and ambulances, Goodyear introduced a Voluntary Replacement Program for certain Load Range E tires that were placed on 15-person vans and ambulances. This program, in other words, was vehicle-specific, rather than tire-specific, and NHTSA made no finding that the Subject Tire, or any other Goodyear tire, was defective. Thus, introduction of evidence relating to the Load Range

11

E investigation, through the lens of NHTSA's investigation, will spawn mini-trials on the NHTSA investigation as well.

These are all very serious concerns that commonly provoke exclusion of evidence under Rule 403. Given that the design changes at issue have little, if any probative value, the probative value of this evidence can easily be outweighed by the dangers of unfair prejudice, confusion of the issues, and misleading the jury. *See Bizzle v. McKesson Corp.*, 961 F.2d 719, 721 (8th Cir. 1992). This is especially true given that Goodyear has stipulated to the feasibility of the design changes at issue. In the face of such stipulations, this kind of evidence creates a strong potential for unfair prejudice, as well as confusing or misleading the jury. *See Anderson v. Nissan Motor Co.*, 139 F.3d 599, 602 (8th Cir. 1998). For all these reasons, the Court should exclude evidence of post-manufacture design changes to the Subject Tire under Rule 403.

## CONCLUSION

For each of the foregoing reasons, Goodyear respectfully requests that the Court enter an Order precluding Plaintiffs from introducing evidence of, and from making any comment, reference, argument or innuendo regarding the post-manufacture design changes at issue under Federal Rules of Evidence 402, 403, and 407.

GREENSFELDER, HEMKER & GALE, P.C.

By: /s/ Edward S. Bott, Jr.
Edward S. Bott, Jr.
Clark W. Hedger
Juliane M. Rodriguez
10 South Broadway, Suite 2000
St. Louis, MO 63102
(314) 241-9090
Fax: (314) 345-5465
esb@greensfelder.com
ch1@greensfelder.com
jrodriguez@greensfelder.com

AND

BAIRD HOLM LLP
Jennifer D. Tricker (NE# 23022)
1700 Farnam Street, Suite 1500
Omaha, NE 68102-2068
(402) 344-0500
jtricker@bairdholm.com

*Attorneys for The Goodyear Tire & Rubber Company*

13

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with NECivR 7.1(d)(3) and further certify that the word count function was applied to include all text, including the caption, headings, footnotes, and quotations. This document was prepared using Microsoft Word 2010 and contains 3,827 words.

                                                                         /s/ Edward S. Bott, Jr.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed with the Clerk of the Court and served upon all attorneys of record using the CM/ECF system this 4th day of February, 2020.

Kyle W. Farrar
KASTER, LYNCH, FARRAR & BALL, LLP
1010 Lamar, Suite 1600
Houston, TX 77002
kyle@fbtrial.com

Paul E. Godlewski
SCHWEBEL, GOETZ & SIEBEN, P.A.
80 South 8th Center
5120 IDS Center
Minneapolis, MN 54402
pgodlewski@schwebel.com

Michael F. Coyle
FRASER, STRYKER LAW FIRM
409 South 17th Street
Suite 500, Energy Plaza
Omaha, NE 68102
mcoyle@fraserstryker.com

*Attorneys for Plaintiffs*

                                                                         /s/ Edward S. Bott, Jr.

1832681