IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RYSTA LEONA SUSMAN, both individually and as Legal Guardian of SHANE ALLEN LOVELAND, et al., <br><br>Plaintiffs, <br><br>v. <br><br>THE GOODYEAR TIRE & RUBBER COMPANY, <br><br>Defendant. | Case No. 8:18-cv-00127 |

**GOODYEAR'S MEMORANDUM IN SUPPORT OF ITS MOTION IN LIMINE SEEKING TO EXCLUDE OPINIONS FROM PLAINTIFFS' REHABILITATION EXPERT, CRAIG LICHTBLAU, MD, RELATING TO MEDICAL TREATMENT MR. LOVELAND WILL LIKELY NOT NEED IN THE FUTURE AND RELATED DOCUMENTS**

The Goodyear Tire & Rubber Company ("Goodyear"), by its attorneys, submits its Memorandum in Support of its Motion in Limine Seeking to Exclude Opinions from Plaintiffs' Rehabilitations Expert, Craig Lichtblau, Relating to Medical Treatment Mr. Loveland Will Likely Not Need in the Future and Related Documents. In support of its Motion, Goodyear states as follows:

**INTRODUCTION**

Plaintiffs retained Craig Lichtblau, M.D., to offer opinions about the medical care Plaintiff Shane Loveland will likely need over the rest of his life, and the costs of that care. In his expert report, Dr. Lichtblau identified several medical complications and conditions that Mr. Loveland may, but more likely than not, won't suffer in the future. Dr. Lichtblau testified that if Mr. Loveland ultimately suffers from these conditions and/or complications, his future medical expenses will increase between $1M and $4M—over and above the $16M Dr. Lichtblau identifies as the costs for Mr. Loveland's future care. In his report, Dr. Lichtblau also identified care and

1

testing Mr. Loveland may, but more likely than not, won't need in the future. Dr. Lichtblau assigned costs to this care and testing in his report, but testified at his deposition that these costs should not be included in any monetary award to Mr. Loveland because any award for these costs and expenses would be speculative.

The Court should preclude Dr. Lichtblau from testifying as to any condition or complication, or the cost of any such condition or complication, that Mr. Loveland will likely not suffer in the future. Similarly, the Court should preclude Dr. Lichtblau from testifying as to any medical care Mr. Loveland will more likely than not, not receive in the future. By Dr. Lichtblau's own admission, this testimony—and any related documentary evidence—is speculative, and thus irrelevant to any claim for damages Mr. Loveland or his representatives are making. Moreover, if this testimony and related documents are admitted into evidence, Goodyear will be unfairly prejudiced, and the jury will be confused and misled as to the permissible scope of Mr. Loveland's recoverable damages.

## RELEVANT BACKGROUND FACTS

### I. Dr. Lichtblau's Expert Report and Opinions.

Plaintiffs designated Dr. Lichtblau as their expert on rehabilitative medicine and the nature and extent of the treatment that Mr. Loveland will likely require over the remainder of his life, and the costs of that treatment. (ECF No. 83 at 2.) In the preface to the "Continuation of Care" section of his expert report, Dr. Lichtblau noted that he did not account for, or expressly assign monetary value to, a series of complications or conditions that Mr. Loveland might suffer in the future, including deep vein thrombosis, pulmonary embolus, pneumonia, renal failure, liver failure, and the need for a liver transplant, among others. (C. Lichtblau Continuation of Care Report, attached as Exhibit F, at 1.)

2

On page 4 of the Continuation of Care Report, Dr. Lichtblau identified these and other potential complications anyway (including renal complications, seizure activity, and hydrocephalus, among others), but went on to state that "costs [associated with these complications] cannot be determined with medical certainty." (*Id.* at 4.) At his deposition, Dr. Lichtblau confirmed that he cannot say it is more probable than not that Mr. Loveland will suffer these complications in the future. (Tr. April 8, 2019 Deposition of Craig Lichtblau ("Lichtblau Dep."), attached as Exhibit G, at 46:17-47:3.) Some of these complications, in Dr. Lichtblau's words, do not "meet anywhere near legal threshold" for admissibility at trial. (*Id.* at 58:3-7.) Nevertheless, Dr. Lichtblau testified that if Mr. Loveland suffers one or more of these complications, "then the cost for future medical care would be substantially greater." (*Id.*) At his deposition, Dr. Lichtblau estimated that the cost of these complications would be between $1M and $4M, in addition to the costs Dr. Lichtblau has already attributed to Mr. Loveland's future medical needs. (Lichtblau Dep., Ex. G, at 52:15-25; 57:15-58:7.)

Later, in the Continuation of Care section of his report, Dr. Lichtblau provided tables identifying the types of medical care Mr. Loveland may need in the future, the period over which he may need the care, the frequency of the care, and the cost of the care. (Lichtblau Continuation of Care Report, Ex. F, at 2.) For certain categories of care, Dr. Lichtblau indicated that Mr. Loveland will need care over the course of his life and that he will need this care "Prn," an abbreviation for the Latin term "pro re nata," which loosely translates to "as needed." (*Id.* at 2.) For example, Dr. Lichtblau indicated that Mr. Loveland might need the services of a cardiologist, orthopedic surgeon, gastroenterologist, pulmonologist, ENT, and urologist on an as-needed basis for the remainder of his life. (*Id.* at 2-3.) Dr. Lichtblau assigned a per-visit or per-item charge to these services in his tables. (*Id.*) Dr. Lichtblau also identified a series of diagnostic tests Mr.

3

Loveland might need over the course of his life on an as-needed basis, including electroencephalograms, EKGs, echocardiograms, MRIs, x-rays, and renal scans, and identified costs for these tests. (*Id.* at 3-4.)

At his deposition, Dr. Lichtblau testified that there was no economic significance to any indication on his tables that care will be needed "Prn." (Lichtblau Dep., Ex. G, at 28:17-23; 58:9-20; 63:12-20.) In other words, for any species of care or treatment for which Dr. Lichtblau identified the frequency of needed care as "Prn," Dr. Lichtblau cannot testify that it is more probable than not that the care or service will be necessary in the future. (*Id.* at 64:10-21.)

## II. Dr. Pettingill's Expert Report and Opinions.

Plaintiffs designated Bernard Pettingill, Ph.D, as their forensic economist charged with testifying regarding Mr. Loveland's loss of income and costs associated with Mr. Loveland's present and future medical care. (ECF No. 84 at 2.) In crafting his report and forming his opinions, Dr. Pettingill took the information in the "Continuation of Care" section of Dr. Lichtblau's expert report and extrapolated the costs of medical care and other expenses Mr. Loveland could expect to incur in the future. (Tr. April 9, 2019 Deposition of Bernard Pettingill ("Pettingill Dep."), attached as Exhibit H, at 7:20-23; 18:21-19:5.) At his deposition, Dr. Pettingill confirmed that "[t]he as-needed items, PRN items are not calculated." (*Id.* at 21:1-8.) Dr. Pettingill, in other words, did not attribute any costs in his calculations for care or services Dr. Lichtblau identifies as "Prn." (*Id.*)

## ARGUMENT

I. **The Court Should Preclude Dr. Lichtblau From Testifying About Medical Care Mr. Loveland May Need, But That Dr. Lichtblau Cannot Testify He Is More Likely Than Not To Need, Because This Testimony Is Irrelevant.**

   A. **Federal Rules of Evidence 402.**

In federal courts, only relevant evidence is admissible; irrelevant evidence is, of course, inadmissible. Fed. R. Evid. 402. Evidence is relevant if it has any tendency to show that the existence of a fact of consequence to the determination of the action is more likely or less likely. Fed. R. Evid. 401.

   B. **Admissibility Of Evidence To Establish The Need For Future Medical Care.**

In Nebraska, damages for future medical care may be recovered under certain circumstances. *E.g.*, *Renne v. Moser*, 490 N.W.2d 193, 200 (Neb. 1992). In order for these damages to be awarded, a plaintiff must establish that the care at issue is "reasonably certain to be needed and provided in the future." 1 Neb. Prac. NJI2d 4.00; *Renne*, 490 N.W.2d at 200 (concluding that a plaintiff is entitled to recover the reasonable value of future medical expenses "that are reasonably certain to be incurred as a result of the injury").

A plaintiff need not establish the value or amount of future medical care with "mathematical certainty," but "conjecture or possibility regarding future medical expenses is insufficient to submit to a fact finder the issue of future medical expenses." *Renne*, 490 N.W.2d at 200. For evidence of future medical care to be admissible, an expert must, at least, establish a "reasonable probability" that the care will be needed in the future. *Id.* "When an expert's opinion [on future medical care needs] is mere speculation or conjecture, it is irrelevant" and inadmissible. *Gourley v. Neb. Methodist Health Sys., Inc.*, 663 N.W.2d 43, 61 (Neb. Ct. App. 2003).

### C. The Court Should Exclude The Opinions And Documents At Issue As Irrelevant.

Here, by dint of Dr. Lichtblau's own admissions, his testimony about complications and conditions that Mr. Loveland probably will not suffer, and the costs of that care, is speculation. The same is true for future care Mr. Loveland may, but probably will not, need in the future. As such, this evidence is irrelevant to Mr. Loveland's claimed damages, and is inadmissible at trial. *Gourley*, 663 N.W.2d at 61.

The Court of Appeals addressed an almost identical set of facts in *Gourley*. In that case, the plaintiff's life care planning expert—i.e., the expert offering the same type of testimony as Dr. Lichtblau plans to give at trial in this case—admitted that he included information in his life care plan about medical care for which he was not reasonably certain that the plaintiff would need in the future. *Gourley*, 663 N.W.2d at 61. Given these admissions by the expert, the expert's testimony on these categories of care was irrelevant, and the trial court erred in admitting it. *Id.*

*Gourley* compels exclusion of the evidence at issue here. Dr. Lichtblau stated in his report and testified during his deposition that he cannot say that Mr. Loveland will more probably than not suffer the complications identified on page 4 in the Continuation of Care section of his report. He offered the same testimony about care, treatment, and services that Dr. Lichtblau identified as being needed "Prn" over Mr. Loveland's lifetime. Dr. Pettingill, who made the total calculations of the cost of Mr. Loveland's future medical care, confirmed Dr. Lichtblau's testimony in this regard, and confirmed that the cost of the care and treatment at issue in this Memorandum were not included in his damages totals. The Court, therefore, should exclude testimony on these subjects, forbid Plaintiffs from presenting demonstrative exhibits or other documents referencing or containing these items of care, or complications at trial, and otherwise prohibit Plaintiffs from

making any comment, reference, argument, or innuendo regarding to the conditions, complications, care, and costs of care that are at issue in this Memorandum.

**II.     The Court Should Preclude Dr. Lichtblau From Testifying About Medical Care Mr. Loveland May Need, But That Dr. Lichtblau Cannot Testify He Is More Likely Than Not To Need, Because This Testimony Is Unfairly Prejudicial And Will Confuse And Mislead The Jury.**

**A.     Federal Rules of Evidence 403.**

Even if it is relevant, evidence is not per se admissible. Rather, courts have the power to exclude relevant evidence from the jury's consideration if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. For purposes of Rule 403, unfair prejudice "means any tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Villalba v. Consol. Freightways Corp. of Delaware*, No. 98 C 5347, 2000 WL 1154073, at *6 (N.D. Ill. Aug. 14, 2000).

Under Rule 403, a court "is required to weigh the probative value of the evidence against the prejudicial or other negative effect if it is admitted, to determine if the former is substantially outweighed by the latter." *Gannon Int'l, Ltd. v. Lexington Ins. Co.*, No. 4:07-CV-31 CAS, 2008 WL 3244025, at *1 (E.D. Mo. Aug. 6, 2008).

**B.     The Court Should Exclude The Evidence At Issue Under Rule 403.**

The jury should not hear testimony, argument, comment, or innuendo in this case about Mr. Loveland's future care that does not meet the threshold for admissibility. If this information comes before the jury, Goodyear will be unfairly prejudiced and the jury will be confused and misled.

1835112

For example, if the jury hears Dr. Lichtblau testify that Mr. Loveland may need $1M to $4M in additional care over his lifetime, they may be inclined to adjust a damages award in Mr. Loveland's favor accordingly. This presents a very real danger of unfair prejudice to Goodyear, which substantially outweighs the slight, if not non-existent, probative value of this evidence. This is especially true because Dr. Lichtblau himself testified that the amounts he referenced—$1M to $4M in additional care—are speculative.

The same is true for specific categories of care, treatment, tests, or services that Dr. Lichtblau does not think that Mr. Loveland will need in the future. If, given his concessions in this regard, Dr. Lichtblau testifies about the costs and potential necessity of this care, treatment, tests, or services, the jury again may be confused or misled into awarding damages Nebraska law does not permit. Again, the danger of confusing or misleading the jury substantially outweighs the slight or non-existent probative value of this evidence.

## CONCLUSION

For each of the foregoing reasons, Goodyear respectfully requests that the Court grant its Motion in Limine, and preclude Plaintiffs from offering any testimony from Dr. Lichtblau or any other witness, or making any other comment, reference, argument, or innuendo about, any condition or complication, or the cost of any such condition or complication, that Mr. Loveland will likely not suffer in the future. Similarly, the Court should preclude Plaintiffs from offering any testimony from Dr. Lichtblau or any other witness, or making any other comment, reference, argument, or innuendo about, any medical care Mr. Loveland will more likely than not, not receive in the future.

GREENSFELDER, HEMKER & GALE, P.C.

By:   /s/ Edward S. Bott, Jr.
Edward S. Bott, Jr.
Clark W. Hedger
Juliane M. Rodriguez
10 South Broadway, Suite 2000
St. Louis, MO  63102
(314) 241-9090
Fax:  (314) 345-5465
esb@greensfelder.com
ch1@greensfelder.com
jrodriguez@greensfelder.com

AND

BAIRD HOLM LLP
Jennifer D. Tricker (NE# 23022)
1700 Farnam Street, Suite 1500
Omaha, NE  68102-2068
(402) 344-0500
jtricker@bairdholm.com

*Attorneys for The Goodyear Tire & Rubber Company*

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with NECivR 7.1(d)(3) and further certify that the word count function was applied to include all text, including the caption, headings, footnotes, and quotations. This document was prepared using Microsoft Word 2010 and contains 2,565 words.

/s/ Edward S. Bott, Jr.

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed with the Clerk of the Court and served upon all attorneys of record using the CM/ECF system this 4th day of February, 2020.

Kyle W. Farrar
KASTER, LYNCH, FARRAR & BALL, LLP
1010 Lamar, Suite 1600
Houston, TX 77002
kyle@fbtrial.com

Paul E. Godlewski
SCHWEBEL, GOETZ & SIEBEN, P.A.
80 South 8th Center
5120 IDS Center
Minneapolis, MN 54402
pgodlewski@schwebel.com

Michael F. Coyle
FRASER, STRYKER LAW FIRM
409 South 17th Street
Suite 500, Energy Plaza
Omaha, NE 68102
mcoyle@fraserstryker.com

*Attorneys for Plaintiffs*

/s/ Edward S. Bott, Jr.

1835112