IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RYSTA LEONA SUSMAN, both individually and as Legal Guardian of SHANE ALLEN LOVELAND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE GOODYEAR TIRE & RUBBER COMPANY, <br><br> Defendant. | Case No. 8:18-cv-00127 |

**GOODYEAR'S MEMORANDUM IN SUPPORT OF ITS MOTION IN LIMINE SEEKING EXCLUSION OF EVIDENCE RELATING TO NHTSA'S PRELIMINARY EVALUATION INTO GOODYEAR'S LOAD RANGE E TIRES AND GOODYEAR'S RESULTING VOLUNTARY REPLACMENT PROGRAM[1]**

The Goodyear Tire & Rubber Company ("Goodyear"), by its attorneys, submits its Memorandum in Support of its Motion in Limine Seeking Exclusion of Evidence Relating to NHTSA's Preliminary Evaluation Into Goodyear's Load Range E Tires and Goodyear's resulting Voluntary Replacement Program:

**INTRODUCTION**

The National Highway Transportation Safety Administration ("NHTSA") opened a Preliminary Evaluation into Goodyear's Load Range E tires in late 2000. It closed its Evaluation in March, 2002. No recall was issued, and NHTSA made no finding that any Goodyear Load Range E tires—including the Subject Tire—was defective.

As part of its Evaluation, NHTSA did suggest, and Goodyear agreed, that Goodyear sponsor a short-term limited Voluntary Replacement Program for Goodyear's size LT245/75R 16,

---

[1] In this Memorandum, the term "Subject Tire" refers to LT235/85R16 Goodyear Wrangler HT Tires generally. The terms "Tire at Issue" and "Tire" refers specifically to the Tire that was mounted on the truck involved in the accident, and which suffered the tread detachment which has given rise to this lawsuit.

1

Load Range E tires installed on 15-passenger vans and ambulances, based on NHTSA's concern and Consumer Advisory regarding the propensity of those vans to roll over in an accident. This Voluntary Replacement Program was prompted by NHTSA's concern over vehicle safety, not on a finding that any Goodyear tire was defective.

Goodyear anticipates that Plaintiffs will seek to introduce evidence about NHTSA's Evaluation and Goodyear's Voluntary Replacement Program to demonstrate that the Tire at Issue was defective, that Goodyear was otherwise negligent in its design of the Tire, or that Goodyear otherwise had a post-sale duty to recall the Tire at Issue or to inform Plaintiffs of the Voluntary Replacement Program. The Court should preclude introduction of this evidence at trial because it is not probative on the issue of whether the Tire at Issue was defective, whether Goodyear was negligent, or any other fact in dispute in this case, as NHTSA did not order a recall, and made no finding that any Load Range E Tire was defective. Alternatively, the Court should preclude introduction of this evidence because it is hearsay and its introduction would unfairly prejudice Goodyear, and confuse and mislead the jury.

**RELEVANT FACTUAL BACKGROUND**

**I.      The Subject Accident And The Tire at Issue.**

On May 1, 2015, Shane Loveland and Jacob Summers were passengers in a 2003 Chevrolet Silverado SC1 pickup truck owned by their employer, Dandee Concrete Construction, when the right rear tire (the "Tire" or "Tire at Issue") mounted on the truck suffered a disablement. (Compl. ¶ 10, ECF No. 1-1 at 21). Mr. Loveland and Mr. Summers were injured in the ensuing accident. (*Id.*) Rysta Leona Susman, individually and as legal guardian of Shane Loveland, and Jacob Summers subsequently filed this lawsuit, pleading claims for negligence, strict liability, and breach of warranty. (*Id.* at 21-25.)

The Tire at Issue is an LT235/85R16 Goodyear Wrangler HT tire bearing DOT # MD0RNJHV244, which identifies a tire manufactured by Goodyear at its Gadsden, Alabama plant during the 24th week of 1994. (Expert Report of David Southwell ("Southwell Rep."), attached as Exhibit A, at 5, § 3.a.) The Tire is classified as a Load Range E tire, which reflects the fact that it was designed to bear loads within the Load Range E classification. Load Range E tires include Goodyear Wrangler HT tires, and several other lines of Goodyear tires, and other manufacturers' tires. (*See* NHTSA ODI Resume, attached as Exhibit B, at 2.)

## II. NHTSA's Authority And Preliminary Evaluation Into Goodyear's Load Range E Tires.

### A. NHTSA's Authority.

NHTSA has the authority to investigate and, where warranted, declare that a product is "defective," determine that a manufacturer should recall a product, and direct a manufacturer to recall a product. *E.g.*, 49 U.S.C. § 30101 *et seq.*; *see also Kent v. DaimlerChrysler Corp.*, 200 F. Supp. 2d 1208, 1217 (N.D. Cal. 2002) (recognizing that Congress intended to vest in NHTSA the exclusive authority to investigate vehicle defects and conduct recalls). By statute and regulation, such investigations can involve at least four steps:

- a preliminary evaluation;

- after a preliminary evaluation, and where warranted, expanding the preliminary evaluation into an engineering analysis;

- after an engineering analysis, and where warranted, making an initial determination of a safety-related defect; and

- after a determination of a safety-related defect, reaching a final determination of the defect after a public hearing.

9 C.F.R. § 554.1 *et seq*.

1837661

Even a final determination of a defect by NHTSA can be challenged in court. *E.g.*, 49 U.S.C. § 30121. A preliminary evaluation, therefore, is merely the first step in what can be a lengthy and involved investigation. At the conclusion of a preliminary evaluation, NHTSA may find no defect or reason to proceed further or, alternatively, may pursue further investigation.

**B.      NHTSA's Preliminary Evaluation Into Goodyear's Load Range E Tires.**

On November 21, 2000, NHTSA opened a "Preliminary Evaluation" (PE00-046) into Goodyear's Load Range E light truck tires. The Preliminary Evaluation looked at all Load Range E tires, including 144 different models in 14 different sizes with at least 4 construction types for tires manufactured by Goodyear in a variety of different locations. (*See* March 1, 2002 ODI Resume, attached as Exhibit A.) Goodyear voluntarily cooperated with the NHTSA inquiry and has disclosed to Plaintiffs materials that Goodyear submitted to NHTSA in connection with PE00-046.

NHTSA closed its preliminary evaluation in March 2002. (*Id*.) No tire recall was issued, and NHTSA made no finding regarding whether the tires were defective. NHTSA did suggest, and Goodyear agreed, that Goodyear sponsor a short-term limited Voluntary Replacement Program for Goodyear's size LT245/75R 16, Load Range E tires installed on 15-passenger vans and ambulances, based on NHTSA's concern and Consumer Advisory regarding the propensity of those vans to roll over in an accident. (See January 28, 2002 letter from Goodyear to NHTSA, attached as Exhibit B.) That Program, however, was not based on any NHTSA finding that Goodyear's Load Range E tires were defective. In a recall, all products of a particular model or models are replaced or repaired. Here, only Load Range E tires that were original equipment on certain types of vehicles were affected and the action was based upon NHTSA's perception of a safety issue with the vehicles, not the tires.

4

Goodyear's Voluntary Replacement Program dealt with the LT245/75R16 tire which was the original equipment tire on post-1992 Ford 15-passenger vans, the focus of NHTSA's advisory campaign. (*See* Ex. B.) Pursuant to the Program, Goodyear directly notified registered owners of the 15-passenger vans for model years 1992 through 2000 based on information provided by Ford. Pre-1992 model year Ford 15-passenger vans were equipped with LT235/85R16 tires as original equipment. (*Id.*) For owners of pre-1992 15-passenger vans, Goodyear provided free replacement of the specific tire. No evidence adduced in discovery suggests that the Tire at Issue was part of the Voluntary Replacement Program. Indeed, the Tire at Issue is a different size from the tire which was the focus of the Replacement Program and the Tire at Issue was not installed on a 15-passenger van or ambulance, but rather a 12-year-old Chevy pickup truck

## ARGUMENT

### I. The Court Should Exclude Evidence Of The NHTSA Preliminary Evaluation As Irrelevant Under Federal Rule of Evidence 402.

In federal courts, only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if it has any tendency to show that the existence of a fact of consequence to the determination of the action is more likely or less likely. Fed. R. Evid. 401.

Here, evidence of NHTSA's preliminary evaluation into Goodyear's Load Range E Tires is not probative of any disputed issue in this case, and is therefore irrelevant. NHTSA closed its inquiry without making any finding with regard to whether the Tire at Issue (or any other Goodyear tire) was defective. There was no recall and no recommendation that Goodyear change the design of its Load Range E tires. Accordingly, evidence of the NHTSA inquiry is irrelevant to any issue in dispute in this case.

Moreover, as set forth in more detail in Goodyear's Motion in Limine regarding evidence of "similar" accidents, claims, or lawsuits, any attempt by Plaintiffs here to introduce evidence of

specific incidents considered by NHTSA in its Evaluation "would require Plaintiffs to prove not just that the incident was produced" by a defect theory similar to plaintiffs' theory, but that the "same" theory was at issue. *E.g.*, *Blacker v. Oldsmobile Div., Gen. Motors Corp.*, No. CIV. A. 93-3851, 1995 WL 143123, at *4 (E.D. Pa. Mar. 31, 1995). To date, Plaintiffs have neither made this showing with respect to any tire failure, lawsuit, or complaint subject to the NHTSA evaluation, nor attempted to make this showing. This is yet another threshold consideration of relevance that Plaintiffs have not met, which is still further evidence of the irrelevance of the evidence at issue.

**II. The Court Should Exclude Evidence Of The NHTSA Evaluation As Inadmissible Hearsay And As Unfairly Prejudicial, Confusing, and Misleading under Federal Rule of Evidence 403.**

Even if it is relevant, evidence is not per se admissible. Rather, courts have the power to exclude relevant evidence from the jury's consideration if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. For purposes of Rule 403, unfair prejudice "means any tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Villalba v. Consol. Freightways Corp. of Delaware*, No. 98 C 5347, 2000 WL 1154073, at *6 (N.D. Ill. Aug. 14, 2000).

Under Rule 403, a court "is required to weigh the probative value of the evidence against the prejudicial or other negative effect if it is admitted, to determine if the former is substantially outweighed by the latter." *Gannon Int'l, Ltd. v. Lexington Ins. Co.*, No. 4:07-CV-31 CAS, 2008 WL 3244025, at *1 (E.D. Mo. Aug. 6, 2008).

Here, Goodyear understands that Plaintiffs may attempt to offer testimony or otherwise refer to the NHTSA Evaluation in front of the jury by using the preliminary evaluation to suggest

6

that there must have been something wrong with the Tire at Issue. When faced with similar attempts to improperly taint the jury, other courts have excluded all such references to NHTSA investigations and/or evaluations as inadmissible hearsay and, because the fact of such investigations might incorrectly suggest an official governmental imprimatur on a plaintiff's defect theories, as unfairly prejudicial and misleading.

For example, in *Fowler v. Firestone Tire & Rubber Co.*, 92 F.R.D. 1, 2 (N.D. Miss. 1980) the court correctly observed that a NHTSA report and a congressional committee report: (a) were not "the product of an adversary proceeding"; (b) were "based, at least in part, on evidence which would clearly be inadmissible if independently offered at the trial of this cause"; and, perhaps most importantly, (c) "do not specifically relate to the facts and circumstances which are the subject matter of this litigation." These findings—which apply with equal force here—caused the *Fowler* court to conclude that the NHTSA and congressional reports were not relevant (and therefore inadmissible) "for two related reasons":

> First, . . . the two reports . . . are not trustworthy and, therefore, do not qualify as hearsay exceptions under Rule 803(8)(C).
>
> Second, . . . [the] apparent 'official' nature [of the evidence] is likely to cause a jury to give the evidence inordinate weight . . . .

*Id*. at 2.

As such, "any probative value the evidence might have would be far outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Id*.

When faced with similar facts, other courts have come to the same conclusion. *See Johnson v. Ford Motor Co.*, 988 F.2d 573, 580-81 (5th Cir. 1993) (following *Fowler* and affirming exclusion of NHTSA correspondence "regarding a preliminary inquiry which did not result in any action by the NHTSA," because, among other things, "the 'official' nature of the inquiries could

have misled the jury into believing that 'something' was wrong" with the product subject to evaluation); *Bright v. Firestone Tire & Rubber Co.*, 756 F.2d 19, 23 (6th Cir. 1984) (affirming exclusion of congressional report given, inter alia, the "substantial danger of unfair prejudice because the jury may have been influenced by the official character of the report to afford it greater weight than it was worth" and the problems with the product referenced in the report did not prove that the particular tire involved in the accident was defective or whether the tire defect caused the accident and injuries at issue); *Hardy v. Gen. Motors Corp.*, 710 N.E.2d 764, 769 (Ohio Ct. App. 1998) (affirming exclusion of NHTSA report that did "not contain evidence that any design defect existed in" the product at issue and that could have prejudiced defendant at trial); *Graham v. Firestone Tire & Rubber Co.*, 357 N.W.2d 666, 668 (Mich. Ct. App. 1984) (after affirming exclusion of NHTSA report in prior opinion and remanding, on appeal after remand affirming grant of that portion of motion in limine seeking "to exclude any references to the [NHTSA] investigation"; "Reference to the investigation alone, if permitted, would have posed the danger of unfair innuendo and jury speculation as to the results of the investigation.").

Here, the potential for unfair prejudice is far greater than in *Fowler* and its progeny because the NHTSA Evaluation at issue here did not result in any finding that the Tire at Issue was defective. Moreover, upon hearing about a "governmental investigation" of Goodyear's Load Range E light truck tires, the jury may erroneously conclude that the investigation somehow confirms or at least suggests that the Tire at Issue was defective. Because any reference to the NHTSA investigation poses the threat of "unfair innuendo and jury speculation as to the results of the investigation," evidence of or reference to the NHTSA Evaluation should be excluded.

### III. The Court Should Exclude Evidence Of The Voluntary Replacement Program As Irrelevant Under Rule 402.

8

Evidence of the Voluntary Replacement Program should be excluded because it is irrelevant to whether the Tire at Issue was defective, or whether Goodyear was otherwise negligent as alleged by Plaintiffs. The facts adduced in discovery establish that the Tire at Issue was not part of the Voluntary Replacement Program. Moreover, the Program did not involve defective tires, but a perceived safety issue with 15-passenger vans. And even if the Tire was a part of the program, it would be irrelevant post-sale evidence. There is no claim in this case alleging a breach of any post-sale duty, or failure to recall or replace the Tire at Issue. As such, evidence referencing the Voluntary Replacement Program is not relevant and should be excluded.

Moreover, Plaintiffs have not alleged and Nebraska does not recognize a post-sale duty to recall. *See e.g.*, *Anderson v. Nissan Motor Co.*, 139 F.3d 599, 602 (8th Cir. 1998) ("While the Nebraska Supreme Court has not ruled directly on either of these issues, general Nebraska products liability law leads us to conclude that the court would not impose either of the post-sale duties on product manufacturers."); *Vallejo v. Amgen, Inc.,* No. 8:14-CV-50-LSC, 2014 WL 4922901 (D. Neb. Sept. 29, 2014) (strict liability and negligent failure to warn claims are barred to the extent they allege post-sale duties to warn); *see also Horstmyer v. Black & Decker, (U.S.), Inc.*, 151 F.3d 765, 773 (8th Cir. 1998) (applying Missouri law) ("in light of the fact that there is no recognized duty to recall [by statute, case law, or the mandate of an appropriate regulatory agency], we hold such a duty cannot arise as a result of Black & Decker's voluntary undertaking to recall certain of its miter saws"). This evidence, in sum, has no relevance to any issue in this case.

**IV.    The Court Should Exclude Evidence Of The Voluntary Replacement Program As Unfairly Prejudicial, Confusing, and Misleading under Rule 403.**

In *Ahlberg v. Chrysler Corporation,* the Eighth Circuit addressed the Rule 403 concerns at issue here. *See* 481 F.3d 630 (8th Cir. 2007). In that case involving a manufacturer's failure to

9

equip a truck with a brake-shift interlock (BSI) device, the plaintiffs alleged that Chrysler's failure to equip the Ram with a BSI device, either originally or through a retrofit program, was negligent or unreasonably dangerous, and Chrysler breached its post-sale duty to warn users after receiving notice of similar accidents. *Id.* at 632. In response to reports of unintended acceleration in Jeep Cherokees, Chrysler voluntarily retrofitted Jeeps with BSI devices. *Id.* Plaintiffs appealed the trial court's exclusion of the voluntary retrofit program, arguing the Jeep-retrofit evidence was relevant to prove that Chrysler "(1) was negligent in failing to retrofit the Ram, (2) had notice of the Ram's defect, (3) concealed this defect, (4) could have feasibly installed a BSI device on the Ram, (5) was negligent in designing the Ram, (6) sold the Ram in an unreasonably dangerous condition, (7) failed to warn users of the dangerous condition before sales of the Ram, and (8) failed to warn users of the dangerous condition after sales of the Ram." *Id.* at 633.

The Eighth Circuit rejected these arguments, finding there was no independent duty to retrofit under Iowa law, and accordingly, that the evidence was irrelevant to prove Chrysler's decision not to retrofit the Ram was negligent. *Id.* Additionally, Chrysler conceded it was feasible to install a BSI device on the Ram, and so, feasibility was not an issue at trial. *Id.* The court determined that even if the retrofit evidence was potentially relevant to show notice of a defect or to support a defective design claim, "the probative value of the Jeep-retrofit evidence was substantially outweighed by the dangers of unfair prejudice, confusion of the issues, and misleading the jury." *Id.*

Much like in *Ahlberg* where plaintiffs offered Jeep-retrofit evidence when the vehicle at issue was a Dodge Ram, here the Voluntary Replacement Program involved tires on 15-passenger vans, whereas the Tire at Issue was installed on Dandee's Chevy pickup truck. Because the program has no bearing on the Tire at Issue, any evidence or comment regarding the program

10

would be highly prejudicial as it would tend to invite the inference that Goodyear's participation in this Voluntary Program was tantamount to an admission that its Load Range E tires are defective.

Moreover, if evidence of this Voluntary Replacement Program is allowed, its admission will necessitate a detailed discussion of NHTSA's actions with respect to the 15-passenger vans, including testing on those vans and the substantial safety concerns NHTSA identified for those vans. If that occurs, the trial will turn into a trial about the safety testing of 15-passenger vans, rather than about the cause of the accident at issue, whether the Tire was defective, and whether Goodyear was negligent. This evidence should be excluded not only because it is not relevant, completely lacking in probative value, and confusing, but also because its introduction would unduly prejudice Goodyear by having the effect of "tainting" the jury, which is exactly what Rule 403 was designed to prevent.

Accordingly, because any minimal probative value of Voluntary Replacement Program evidence is far outweighed by the dangers of unfair prejudice, confusion of the issues, and misleading the jury, this evidence should be excluded.

## CONCLUSION

For each of the foregoing reasons, Goodyear respectfully requests that the Court enter an Order barring Plaintiffs from introducing evidence of, and from making any comment, reference, argument or innuendo regarding, NHTSA's Preliminary Evaluation into Goodyear Load Range E tires and Goodyear's Voluntary Replacement Program as irrelevant, inadmissible hearsay, and as unduly prejudicial and likely to confuse or mislead the jury.

GREENSFELDER, HEMKER & GALE, P.C.

By: /s/ Edward S. Bott, Jr.
Edward S. Bott, Jr.
Clark W. Hedger
Juliane M. Rodriguez
10 South Broadway, Suite 2000
St. Louis, MO 63102
(314) 241-9090
Fax: (314) 345-5465
esb@greensfelder.com
ch1@greensfelder.com
jrodriguez@greensfelder.com

AND

BAIRD HOLM LLP
Jennifer D. Tricker (NE# 23022)
1700 Farnam Street, Suite 1500
Omaha, NE 68102-2068
(402) 344-0500
jtricker@bairdholm.com

*Attorneys for The Goodyear Tire & Rubber Company*

12

1837661

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with NECivR 7.1(d)(3) and further certify that the word count function was applied to include all text, including the caption, headings, footnotes, and quotations. This document was prepared using Microsoft Word 2010 and contains 3,534 words.

/s/ Edward S. Bott, Jr.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed with the Clerk of the Court and served upon all attorneys of record using the CM/ECF system this 4th day of February, 2020.

Kyle W. Farrar
KASTER, LYNCH, FARRAR & BALL, LLP
1010 Lamar, Suite 1600
Houston, TX 77002
kyle@fbtrial.com

Paul E. Godlewski
SCHWEBEL, GOETZ & SIEBEN, P.A.
80 South 8th Center
5120 IDS Center
Minneapolis, MN 54402
pgodlewski@schwebel.com

Michael F. Coyle
FRASER, STRYKER LAW FIRM
409 South 17th Street
Suite 500, Energy Plaza
Omaha, NE 68102
mcoyle@fraserstryker.com

*Attorneys for Plaintiffs*

/s/ Edward S. Bott, Jr.

1837661