IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RYSTA LEONA SUSMAN, both individually and as Legal Guardian of SHANE ALLEN LOVELAND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE GOODYEAR TIRE & RUBBER COMPANY, <br><br> Defendant. | Case No. 8:18-cv-00127 |

**GOODYEAR'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION IN LIMINE TO EXCLUDE ALL EVIDENCE
AND REFERENCE TO ADJUSTMENT DATA**

The Goodyear Tire & Rubber Company ("Goodyear"), by its attorneys, submits its Memorandum of Law in Support of Goodyear's Motion in Limine to Exclude All Evidence and Reference to Adjustment Data.

### INTRODUCTION

Goodyear anticipates that Plaintiffs will seek to admit "adjustment data" – described more below – in support of their defect claims. Because this adjustment data does not correlate to the allegedly "defective" condition at issue in this case, the data should be excluded because it is irrelevant, its admission would confuse and mislead the jury while unfairly prejudicing Goodyear, and because Plaintiffs cannot establish substantial similarity.

### RELEVANT FACTUAL BACKGROUND

**I.  The Subject Accident And The Tire at Issue.**

On May 1, 2015, plaintiffs were passengers in a 2003 Chevrolet Silverado SC1 pickup truck, when the right rear tire (the "Tire" or "Tire at Issue") mounted on the truck suffered a disablement. (Compl. ¶ 10, ECF No. 1-1 at 21.)

1

The Tire at Issue is an LT235/85R16 Goodyear Wrangler HT tire bearing DOT # MD0RNJHV244, which identifies a tire manufactured by Goodyear at its Gadsden, Alabama plant during the 24th week of 1994. (Expert Report of David Southwell ("Southwell Rep."), ECF No. 109, Ex. B, at 5, § 3.a.) The Tire is classified as a Load Range E tire, which reflects the fact that it was designed to bear loads within the Load Range E classification. Load Range E tires include Goodyear Wrangler HT tires, and several other lines of Goodyear tires.

According to Plaintiffs' tire failure expert, the Tire at Issue experienced a partial tread separation immediately before the accident. (Southwell Rep., ECF No. 109, Ex. B, at 5-6.) The tread and the Tire's second belt became detached between the 180-degree mark and the 350-degree mark on the Tire, as measured on the opposite-serial side shoulder of the Tire. (*Id.*) Plaintiffs' expert maintains that this tread detachment caused the accident. (*Id. passim.*)

## II. Adjustment Data.

An "adjustment" is a credit to a purchaser toward the price of a new tire that a dealer (or Goodyear) makes in response to a customer's complaint about a tire he or she purchased. (Tr. 11.5.19 Deposition of Jay Lawrence ("Lawrence Dep."), attached as Exhibit C, at 115:1-16; Tr. 12.3.01 Deposition of Daniel Hammontree in *Garcia* ("Hammontree Dep."), attached as Exhibit K, at 259:11–260:15.) Once an adjustment is made, the dealer advises the manufacturer that it has "adjusted" a tire and requests credit. (Hammontree Dep., Ex. K, at 263:10-19.) Goodyear—like other tire manufacturers—maintains statistical records of these adjustments, but this data does not reveal the precise nature of the customer's complaint, the precise nature of the tire condition that prompted the adjustment, the cause of that condition, the effect of that condition on the tire's past performance, or the anticipated effect of that condition on the tire's future performance. (*Id.* at 259-267; 2.3.20 Declaration of Joe Aull, attached as Exhibit L, at ¶¶ 21-25.) As part of the process,

Goodyear assigns a code which very generally categorizes the adjustment within a category which includes a wide variety of types of conditions undergirding an adjustment. (*Id.*) For example, a "CA" or "crown area" adjustment can include a tread throw, a partial tread separation in a wide variety of presentations, and/or various other issues that can develop in the crown area. (Hammontree Dep., Ex. K, at 266: 9-20; Tr. 2.12.02 Deposition of Beale Robinson in *Boerm* ("Robinson Dep."), attached as Exhibit E, at 26:8-19.) And that is just one general category of adjustment. In short, the existence and broad categorization of an adjustment does not evidence the existence of a "defect" at all, let alone any specific determination of causation, design, manufacturing, or incident dynamics.

Put another way, adjustment data is merely internal data kept to determine how many tires are being serviced, repaired, or replaced under warranty conditions. Goodyear adjusts its tires for numerous reasons to promote customer satisfaction and unrelated to alleged defects. Consequently, the data is irrelevant to the issues in this case, more specifically whether the Tire at Issue was defective.

## ARGUMENT

**I.   Adjustment Data is Irrelevant Under Rules 401 and 402, and/or Fails the FRE 403 Balancing Test.**

Pursuant to Federal Rule of Evidence 402, "[i]rrelevant evidence is not admissible." Relevancy is not an inherent characteristic of evidence but exists as a relation between an item of evidence and a proposition sought to be proved. *See McCormick on Evidence*, 3rd, § 185. Rule 401 memorializes this concept by providing that evidence is only relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

Further, if the Court were to determine that adjustment data had any relevance at all to

3

Plaintiffs' claims, the inquiry does not end there. Adjustment data would nonetheless be inadmissible here by virtue of the balancing test required by Federal Rule of Evidence 403. Rule 403 provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403. The rule applies here to preclude the use of adjustment data.

As described above, adjustment data is not evidence of a defect. As such, it is irrelevant to Plaintiffs' claims which are based on the alleged existence of a very particular type of defect, materializing in a very specific type of partial tread separation unique to the multitude of product characteristics and incident specifics particular to this case. The data has no statistical relevance for defects because it is not collected to reflect defects. Instead, the data is related to warranties and customer satisfaction. Therefore, Plaintiffs cannot use the adjustment data to demonstrate that the Tire at Issue was defective. And for the sake of argument, even if there were some shred of probative value it would be severely outweighed by the risk of jury confusion, the misleading nature of the evidence, and the prejudicial impact it would have on Goodyear.

The issue in this case is whether the specific tire that experienced a specific type of partial tread separation was defective. Tread and upper belt separations can and do occur in tires for a variety of reasons that have nothing to do with a tire's design and manufacture. Tread and belt separations can result from nail punctures and other road hazards, from impact to the tire (which causes substantial damage to the internal components of the tire), and from improper use. This underscores one reason why adjustment data evidence has minimal probative value and would create undue prejudice coupled with jury confusion: the collected adjustment data does not indicate

4

the cause for the adjustment. Thus, there is no way to determine whether a customer complaint was due to a tread and belt separation, a particular type of such separation, a puncture, an impact, a manufacturing defect, improper usage, or was simply a dealer's attempt to please a disgruntled customer.

Courts to consider the question have routinely disallowed adjustment data evidence as irrelevant, unreliable, and falling far short of satisfying the Rule 403 balancing test. In *Bright v. Firestone Tire & Rubber Co.*, 756 F.2d 19 (6th Cir. 1984), plaintiffs attempted to introduce portions of a governmental committee's report on Firestone 500 tires, the same tires that were on the car at issue in that case. A portion of that committee report was premised upon adjustment data for the Firestone 500 tire. *See id.* On appeal, the Sixth Circuit held that, by its nature, tire adjustment data was inadmissible hearsay which did not delve into the grounds for the customer complaints which made up the data. *Id.* at 22-23 (emphasis added). Most importantly, the court noted that even if the report (which was hearsay) met a hearsay exception, the trial court still properly excluded it under Rule 403 because:

> The probative value of the report in this case is minimal. Showing that the public generally had more problems with the Firestone 500 than with other tires does not prove that the particular tire involved in this case was defective, and has nothing to do with whether a tire defect caused this particular accident.

*Id.* at 23.

Numerous decisions from jurisdictions around the country reach the same well-reasoned conclusions. One such case is *Petersen v. Daimler Chrysler Corp.*, No. 06-108, 2011 WL 1706469, at *1-2 (D. Utah, May 4, 2011). In *Peterson* the court discussed the "adjustment" process for Cooper tires in detail, in terms that are virtually identical to Goodyear's adjustment process

1836159v3

described here, determining that the data was inadmissible to support the plaintiffs' defect claim. In rejecting the data, the court explained and held:

> Plaintiffs further contend that Cooper Tire had knowledge of the dangerous condition but ignored it. To support their argument, Plaintiffs present adjustment data revealing, among other things, the rate of tread separations for tires. Plaintiffs maintain that Cooper Tire reviewed the data and had knowledge of a defect that it consciously chose to ignore.
>
> The adjustment data to which Plaintiffs cite is unreliable. Many factors could have contributed to the tread separations, many with no connection to a design defect, much less to a dangerous condition.

*Id.* at *2; *see also Staab v. Uniroyal Tire Co.*, No. 91-4096, 1994 WL 230634, at *1 (W.D. Mo., May 3, 1994) (excluding adjustment data because "adjustment data are not relevant, or, to the extent such data are relevant, any relevance is outweighed by the potential for unfair prejudice and confusion of the jury"); *Fowler v. Firestone Tire & Rubber Co.*, 92 F.R.D. 1, 2 (W.D.N.Y. 1999) (excluding government reports on tire safety that relied on adjustment data as having "very limited probative value."). Consistent with these rulings, and for these same reasons, evidence of adjustment data should be excluded from the instant case.

## II. Adjustment Data Evidence Should Be Excluded Because Plaintiffs Cannot Prove Substantially Similar Circumstances.

Even if adjustment data was relevant, plaintiffs would still be required to prove that each incident reflected in the adjustment data was substantially similar to the subject accident. It is well-settled that the admissibility of evidence pertaining to other incidents requires a showing of substantial similarity between the incident under consideration and the other incidents. *See Adams v. Toyota Motor Corp.,* 867 F.3d 903, 911 (8th Cir. 2017), *as corrected* (Aug. 14, 2017); *Lovett ex rel. Lovett v. Union Pac. R. Co.,* 201 F.3d 1074, 1081 (8th Cir. 2000); *Hale v. Firestone Tire & Rubber Co.,* 756 F.2d 1322 (8th Cir. 1985); *Katzenmeier v. Blackpowder Prod., Inc.*, 628 F.3d 948, 950-51 (8th Cir. 2010); *Novak v. Navistar Int'l Transp. Corp.*, 46 F.3d 844, 851 (8th Cir.

1995).[1] Plaintiffs cannot satisfy this showing.

In order for adjustment data evidence to be introduced, Plaintiffs would be required to prove, *inter alia,* that each adjustment involved the same tire as the Subject Tire with substantially similar mileage on the same type of vehicle; that the adjusted tire was operated in substantially similar driving conditions as the Tire at Issue; and that the adjusted tire failed due to a tread/belt condition resulting from similar defects as those identified by Plaintiffs' experts. If the individual record of the accident or claim from the adjustment data would not be admissible, a summary should be inadmissible for the same reason.

This further implicates Rule 403 with regard to "undue delay" and "wasting time." This type of inquiry would inevitably descend into the type of "mini-trial" situation discouraged in this Circuit, greatly distracting the jurors and court's resources towards collateral and time wasteful issues having no substantive bearing on the questions presented. *See Olson v. Ford Motor Co.*, 481 F.3d 619, 624 (8th Cir. 2007); *BoDeans Cone Co., L.L.C. v. Norse Dairy Systems, L.L.C.*, 678 F. Supp. 2d 883, 885 (N.D. Iowa 2009); *Zenergy, Inc. v. Statoil Oil & Gas LP*, No. 14-002, 2015 WL 11143141, at *2 (D.N.D. Oct. 23, 2015).

It is unsurprising then that numerous courts have considered the admissibility of tire adjustment data and have excluded it because it failed to meet the substantial similarity requirement. For example, in *Uniroyal Goodrich Tire Co. v. Ford*, 461 S.E.2d 877 (Ga. Ct. App. 1995), the plaintiff used adjustment data based on a survey of over 2000 tires to bolster his claim of a defect by showing the manufacturing plant produced more separations per volume than other plants. The court of appeals reversed the plaintiff's verdict on this issue holding that the plaintiff had not shown

---

[1] Goodyear separately and concurrently files its Motion in Limine Seeking Exclusion of "Similar" Accidents, Claims, or Lawsuits, which contains a more robust discussion of the applicable "substantial similarity" requirements. In the interest of brevity and to avoid redundancy in multiple briefs, Goodyear incorporates by reference into the present motion the authority and argument contained there.

that each of the 2000 or more tires included in the data were substantially similar to the allegedly defective tire. *See also Cooper Tire & Rubber Co. v. Crosby*, 543 S.E.2d 21, 23-24 (Ga. 2001) ("The Court of Appeals erred by disregarding the trial court's correct conclusion that the tire adjustment data was inadmissible because Crosby failed to show a substantial similarity between the belt separation alleged to have caused the car wreck in this matter, and the reasons why the tires reflected in the adjustment data were returned by other consumers.").[2] For all of these reasons, the adjustment data is not substantially similar to the subject accident and should be excluded.

## CONCLUSION

Because adjustment data is irrelevant, confusing and prejudicial, for each of the foregoing reasons, Goodyear requests that this Court enter an order precluding Plaintiffs from introducing evidence of, and from making any comment, reference, argument or innuendo regarding, adjustment data.

---

[2] Furthermore, plaintiffs cannot interpret the data to "find" evidence of a defect in the adjustment rates. There is no base line or industry norm for adjustment rates. Without this baseline norm, there is no acceptable risk figure to compare the adjustment data against. *See, e.g., Commissioner of Internal Revenue v. Indiana Broad. Corp.*, 350 F.2d 580, 584 (7th Cir. 1965) (excluding statistical evidence of life expectancy of network affiliation contracts where there was "grave doubt that any reliable norm of contract expectation could be found"). This further underscores the substantial prejudice to Goodyear relative to the lack of probative value attributable to adjustment data evidence.

GREENSFELDER, HEMKER & GALE, P.C.

By: /s/ Edward S. Bott, Jr.
Edward S. Bott, Jr.
Clark W. Hedger
Juliane M. Rodriguez
10 South Broadway, Suite 2000
St. Louis, MO 63102
(314) 241-9090
Fax: (314) 345-5465
esb@greensfelder.com
ch1@greensfelder.com
jrodriguez@greensfelder.com

AND

BAIRD HOLM LLP
Jennifer D. Tricker (NE# 23022)
1700 Farnam Street, Suite 1500
Omaha, NE 68102-2068
(402) 344-0500
jtricker@bairdholm.com

*Attorneys for The Goodyear Tire & Rubber Company*

9

1836159v3

## CERTIFICATE OF COMPLIANCE

      I hereby certify that this brief complies with NECivR 7.1(d)(3) and further certify that the word count function was applied to include all text, including the caption, headings, footnotes, and quotations. This document was prepared using Microsoft Word 2010 and contains 2,540 words.

                                          /s/ Edward S. Bott, Jr.

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true and accurate copy of the foregoing was filed with the Clerk of the Court and served upon all attorneys of record using the CM/ECF system this 4th day of February, 2020.

Kyle W. Farrar
KASTER, LYNCH, FARRAR & BALL, LLP
1010 Lamar, Suite 1600
Houston, TX 77002
kyle@fbtrial.com

Paul E. Godlewski
SCHWEBEL, GOETZ & SIEBEN, P.A.
80 South 8th Center
5120 IDS Center
Minneapolis, MN 54402
pgodlewski@schwebel.com

Michael F. Coyle
FRASER, STRYKER LAW FIRM
409 South 17th Street
Suite 500, Energy Plaza
Omaha, NE 68102
mcoyle@fraserstryker.com

*Attorneys for Plaintiffs*

                                          /s/ Edward S. Bott, Jr.

1836159v3