IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RYSTA LEONA SUSMAN, both individually and as Legal Guardian of SHANE ALLEN LOVELAND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE GOODYEAR TIRE & RUBBER COMPANY, <br><br> Defendant. | Case No. 8:18-cv-00127 |

**GOODYEAR'S MEMORANDUM IN SUPPORT OF ITS MOTION IN LIMINE REGARDING THE USE OF TRADE SECRETS AND OTHER CONFIDENTIAL, PROPRIETARY INFORMATION AT TRIAL**

The Goodyear Tire & Rubber Company Inc. ("Goodyear"), by its attorneys, submits its Memorandum in Support of its Motion in Limine Regarding the use of Trade Secrets and Other Confidential Information at Trial:

**INTRODUCTION**

Goodyear understands that Plaintiffs intend to introduce documents and testimony at trial that reference or constitute Goodyear's closely-guarded trade secrets and other competitively sensitive information. Goodyear's manufacturing and design specifications—the group of trade secrets Plaintiffs appear most likely to introduce into evidence at trial—identify the components and dimensions of the Goodyear Tire at Issue in this case, the tolerances applicable to the placement of tire components (and the relationships among these components) before and after the curing process, and details and instructions regarding the manufacturing process. Tire specifications are the embodiment of millions of dollars and years spent on research, testing, and development. Goodyear takes great care to keep this information confidential, and if it is disclosed to competitors in the course of the trial, Goodyear will lose its property rights unfairly, and in contravention of applicable Nebraska, Ohio, and federal law.

1835742

Recognizing these concerns, the parties negotiated and submitted, and the Court entered, the Protective Order in this case. (ECF No. 66.) When trade secret or proprietary documents were produced, Goodyear designated the information as confidential pursuant to the terms of this Order. It similarly designated testimony revealing the contents of these documents confidential as provided in the Order. Goodyear's confidentiality designations have not been challenged to date.

Goodyear asks the Court to continue this protection by exercising its supervisory power to keep any trade secrets and other commercially sensitive information introduced at trial under seal, to close the courtroom when trade secret material or other commercially sensitive information is discussed or published to the jury, and to restrict non-parties from access to trade secret or commercially sensitive documents during and after trial. In the event of any disagreement as to whether Goodyear has established the trade secret or protectable nature of the documents at issue, Goodyear will move to seal trade secret or proprietary information admitted in the course of the trial. Goodyear is prepared to show that the confidential documents produced in this case are, in fact, trade secrets or other commercially sensitive information and deserving of protection under the standards established by the Supreme Court of the United States and the Eighth Circuit Court of Appeals.[1]

## RELEVANT BACKGROUND

**I. Goodyear's Document Production.**

Goodyear has produced numerous documents in this case that constitute or reference trade secrets, including Goodyear's tire specification for the Tire at Issue, product testing information, and adjustment data. Because Plaintiffs are proceeding on a claim that the Tire at Issue had design defects and manufacturing defects, Goodyear assumes that Plaintiffs will introduce confidential

---

[1] Should the Court feel that Goodyear needs to make a prima facie case before trial of the trade-secret nature of every document for which it will claim trade secret protection at trial if it is introduced, Goodyear respectfully requests that it be given the opportunity to submit a supplemental motion in limine.

documents disclosing Goodyear's specifications and manufacturing processes into evidence at trial. Although this Memorandum focuses on the manufacturing and design specifications, testing data, and adjustment data produced in this case, the Memorandum applies to any documents or information designated confidential by Goodyear that Plaintiffs intend to use at trial.[2]

## II. Goodyear's Efforts to Keep Its Confidential Business Information Secret and Secure.

Goodyear invests substantial sums of money to ensure that its design specifications, manufacturing processes and controls, and other trade secret information is maintained in confidence, not publicly available, or otherwise obtainable by its competitors. (See 2.3.20 Declaration of Joseph Aull ("Aull Decl."), attached as Exhibit L, ¶¶ 7-11.) Even with respect to its own employees, Goodyear makes confidential information available only on a need-to-know basis. (*Id*.)

Goodyear has adopted numerous internal controls to ensure that its trade secrets are protected. Goodyear's policies prohibit, among other things, disseminating information as to design, materials, formulations, tire construction, manufacturing equipment and processes, suppliers, warranty policies, and terms or conditions of sale. (Aull Decl. ¶¶ 7-11.) Goodyear employees sign non-disclosure agreements as a condition of employment, which provide that the employee will not disclose to anyone outside the company any trade secret or other confidential or proprietary company information without Goodyear's express permission. (*Id* ¶ 8.)

Goodyear assigns employees who have access to computer systems user identification numbers and passwords; employees must agree not to disclose their passwords to others. (*Id* ¶ 9.) These employees must agree not to attempt to access computer programs or data files that they have not been authorized to access. Secrecy levels govern information to which a particular employee is given access. (*Id.*) Employees must return all company documents containing any confidential and

---

[2] Notably, Goodyear has separately and contemporaneously moved in limine to preclude Plaintiffs from offering into evidence adjustment data and certain product testing information under Federal Rules of Evidence 402 and 403.

1835742

proprietary or trade secret information when they terminate their employment with Goodyear. (*Id.*)

Access to plants where tires are manufactured is restricted and controlled by security. Visitors must obtain advance permission to come into any plant. This requirement applies even to management-level Goodyear employees who do not work inside a particular plant. Vendors who require access to the plant are not permitted to go outside of designated areas. (*Id.* ¶ 10.)

Goodyear implements numerous additional security measures and internal controls to ensure that its confidential and trade secret information remains confidential, and is not disclosed to its competitors.

### III. Goodyear's Design Specifications, Manufacturing Process and Controls, and the Global Tire Business.

#### A. Tire Specifications.

Goodyear's method for making a tire is called a "tire specification." Tire specifications reflect a tire's design, formulation, and testing. (*Id.* ¶ 13.) Goodyear's tire specifications, design drawings, mold drawings and compounds are extremely valuable trade secrets and are maintained in confidence. (*Id* ¶ 16.) Goodyear's tire designs are unique to Goodyear and offer the company a competitive advantage over other tire companies that do not possess this knowledge. A competitor could only gain access to this information if it were provided through a vehicle such as this lawsuit. (*Id.*)

Goodyear's tire design process is evolutionary, with each new tire design drawing on Goodyear's vast experience and millions of dollars invested in prior designs and tests. (*Id.* ¶ 18.) Tires in production are constantly reviewed and incremental improvements are implemented. Even designs for discontinued tires are useful as part of that evolutionary process, both to Goodyear and Goodyear's competitors. (*Id.*) Learning what designs are not optimal can be as valuable as learning optimal design features. Goodyear's design experience is a unique asset that gives it a competitive

advantage. Disclosing tire specifications developed over many years to a competitor would give that competitor's design programs an unwarranted advantage. (*Id.*)

      B.      **Goodyear's Tire Testing.**

The same is true for Goodyear's testing, research and development, and quality system information. Goodyear's testing protocols are supplementary to published standards, define the parameters of Goodyear's design targets, and are not known to competitors. (*Id* ¶ 19.) The information about Goodyear's testing and developmental process and quality system is highly proprietary and constitute trade secrets. (*Id.*)

A large part of Goodyear's investment in a particular tire design consists of tire testing. (*Id.* ¶ 20.) Goodyear maintains its test records, and memoranda discussing test results, in strict confidence. Test results are significant assets of Goodyear, as they represent millions of dollars and many hours of investment. (*Id.*) The testing that Goodyear performs gives Goodyear a competitive advantage over the tire companies which do not possess this knowledge. Absent inside information, it would be very expensive and time consuming for another tire company to duplicate Goodyear's test methods. A competitor with access to such information could use it to avoid the expense and time of developing its own testing standards. (*Id.*) A competitor could learn how its tires compared with Goodyear in company tests; eliminate or reduce its own testing; or even use the information for promotional purposes, thereby giving that competitor an unfair advantage. (*Id.*)

      C.      **Warranty Policies And Adjustment Data.**

Information about adjustments and property damages claims is also confidential in nature. (*Id.* ¶ 21.) Another important part of the investment reflected in Goodyear's designs is the result of consumer use of Goodyear tires. (*Id.*) Some indication of the actual demands being placed upon a tire in the market is reflected in the number of tires returned for customer dissatisfaction. In an

"adjustment," a customer is given partial credit toward a replacement tire or a replacement tire at no charge. (*Id.*) The granting of such credit is driven primarily by a commitment to customer satisfaction and can result even when it is clear that there was nothing wrong with the tire involved. (*Id.*) Adjustments do not represent determinations that a product on which an adjustment is offered is defective, but they do represent an indication of customer satisfaction. (*Id.*) Accordingly, adjustment data can offer valuable consumer feedback, positive or negative, to assist Goodyear in offering consumers what they want. Goodyear preserves the confidentiality of this adjustment data very carefully. (*Id.*)

The adjustment data that Goodyear collects gives Goodyear a competitive advantage over the tire companies which do not possess this knowledge. (*Id.* ¶ 22.) It is impossible for another tire company to obtain Goodyear's adjustment data by that competitor's own efforts. (*Id.*) Knowing Goodyear's adjustment data would allow a competitor to compare its tires' performance against Goodyear's in a way that would not otherwise be possible. In this matter, a competitor could identify which of its tires must be improved and in what areas of performance that improvement is needed, and would give that competitor an unfair competitive advantage. (*Id.*)

Even learning the details of Goodyear's adjustment system offers a competitive advantage to another manufacturer, which could change its adjustment policies to meet those of Goodyear, thereby neutralizing one of Goodyear's competitive advantages. (*Id.* ¶ 23.) For these reasons, the data on tires returned under warranty is held to be confidential and is not released outside the company on any basis without confidentiality protections. (*Id.* ¶ 24.) If a competitor were to have access to Goodyear's warranty practices and tire return data, it could discern or infer certain qualities about Goodyear's product and warranty policies and thereby adjust its product or warranty practices to the same quality level to better compete. (*Id.*) A competitor could accomplish this by a change in

materials or a change in warranty practices, either of which would reduce Goodyear's competitive advantage. (*Id.*) Receipt of Goodyear's tire return and other adjustment data, which typically includes tire production information and the product condition codes utilized, would provide sufficient information for any competitor to interpret these data and use it to its competitive advantage. (*Id.*)

In sum, Goodyear has invested millions of dollars to acquire and develop the design specifications, manufacturing processes and controls, and the other information it has produced and designated as confidential in this case.[3] Tire manufacturing is an extremely competitive global business where information concerning the design of products, tire specifications, design drawings, testing information, warranty and adjustment data, and other confidential information are closely-guarded trade secrets. (Aull Decl. ¶¶ 4-7.)

If a competitor obtained this confidential and proprietary information, the competitor's development time and cost for the concept, design, or component would be greatly reduced, putting Goodyear at a competitive disadvantage. The disclosure of this information to Goodyear's competitors would unfairly give them the benefit of Goodyear's development without any of the associated costs.

### III.  Argument.

####    A.  The Court Has The Supervisory Power To Seal Documents Introduced At Trial Containing Or Constituting Goodyear's Trade Secrets And Competitively Sensitive information.

Every federal court has supervisory power over its records and files. *Webster Groves Sch. Dist. v. Pulitzer Pub. Co.*, 898 F.2d 1371, 1376 (8th Cir. 1990) (citing *Nixon v. Warner Commc'ns*, 435 U.S. 589, 598 (1978)). This includes the power, in a court's discretion, to forbid public access to

---

[3] Notably, Goodyear produced highly-confidential and trade-secret-protected information and documents subject to the protections of the Confidentiality Agreement and Protective Order entered in this case. (ECF No. 29.)

documents entered into evidence at trial. *Nixon*, 435 U.S. at 610-11; *Jochims v. Isuzu Motors, Ltd.*, 151 F.R.D. 338, 341 (S.D. Iowa 1993) (entering order keeping confidential information regarding advertising expenditures and test reports relating to the design and development of the Isuzu Trooper under seal following their admission into evidence at trial).

While the public has a right to inspect and copy judicial documents and files, that right is not absolute. *Nixon*, 435 U.S. at 598; *Seidl v. Am. Century Cos., Inc.*, 799 F.3d 983, 994 (8th Cir. 2015). In determining whether to seal judicial records, a court must consider "the degree to which sealing a judicial record would interfere with the interests served by the common-law right of access and balance that interference against the salutary interests served by maintaining confidentiality of the information sought to be sealed." *Seidl*, 799 F.3d at 994.

Courts have carved out an exception to the public's right to access judicial records for trade secrets and other commercially sensitive information when the moving party demonstrates that public disclosure of the document or trade secret at issue will hurt its competitive position in the marketplace. *In re Iowa Freedom of Info. Council*, 724 F.2d 658, 664 (8th Cir. 1983) (upholding a district court's decision to seal exhibits containing trade secrets); *Sec. Nat'l Bank of Sioux City, Iowa v. Abbott Labs.*, No. C 11-4017, 2014 WL 12603512, at *1 (N.D. Iowa Mar. 3, 2014) (recognizing that courts in the Eighth Circuit have approved sealing information detailing a company's marketing and distribution plans, minimum purchase requirements, royalty terms, internal engineering standards, and test reports); *Jochims*, 151 F.R.D. at 341.

When a party demonstrates that evidence introduced at trial is, in fact, a trade secret, the trial court may issue an order forbidding public disclosure of those documents. *Abbott Labs.*, 2014 WL 12603512, at *1. Sound policies justify the departure from the presumption in favor of public disclosure of judicial records for trade secrets and other commercially sensitive information. First,

"[t]rade secrets are a peculiar kind of property. Their only value consists in their being kept private. If they are disclosed or revealed, they are destroyed." *In re Iowa Freedom of Info. Council*, 724 F.2d at 662; *see also Cardiac Pacemakers, Inc. v. Aspen II Holding Co.*, No. 04-4048 DWFFLN, 2006 WL 3043180, at *5 (D. Minn. Oct. 24, 2006) (finding no reasonable alternative to sealing documents supporting summary judgment briefing which contain trade secrets and other proprietary information). Second, if trade secrets and other proprietary information lost their protection through production in litigation, discovery, which is already contentious and difficult in complex cases, "would become even more contentious and expensive . . . if there was no assurance of continued protection for confidential business information." *Jochims*, 151 F.R.D. at 342.

Limiting the public's access to confidential documents and testimony, up to and including sealing the courtroom when testimony about trade secrets is anticipated, comports with the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 26(c)(1), for example, provides that a trial court may enter an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or to be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G); *In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, 245 F.R.D. 632, 636 (D. Minn. 2007).

Similarly, limiting the public's right to access judicial records comports with applicable state law. Namely, like nearly every other state, Nebraska and Ohio[4] substantive and procedural law protect litigants from forced public disclosure of their trade secrets in litigation. *See, e.g.,* Neb. Rev. Stat. § 87-505 (in actions under the Trade Secrets Act a "court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include, but not be limited to, granting

---

[4] Goodyear cites Ohio and Nebraska law on this point, as this case is pending in Nebraska, but Goodyear's headquarters and tire design operations for the Tire at Issue were centered in Akron, Ohio. Goodyear's research suggests that Ohio and Nebraska treat trade secret information at issue in litigation similarly, and afford very similar protections to parties who must produce trade secret information in discovery.

protective orders…"); Ohio Rev. Code Ann. § 1333.65 (in action under the Uniform Trade Secrets Act, "a court shall preserve the secrecy of an alleged trade secret by reasonable means that may include granting protective orders in connection with discovery proceedings, holding in-camera hearings, sealing the records of the action…").

In sum, the sealing of trade secrets and other proprietary information introduced into evidence at trial is appropriate and consistent with state and federal law and the protections afforded those who are forced to produce trade secrets and other proprietary information in discovery.

> **B.** **The Documents And Information At Issue Constitute Trade Secrets And Other Commercially Sensitive Information That Should Be Sealed.**

Here, there is no question that Goodyear's design specifications and manufacturing processes and controls constitute trade secrets under Nebraska and Ohio law. In Nebraska, a trade secret is defined as "information, including, but not limited to, a drawing, formula, pattern, compilation, program, device, method, technique, code or process that" both "(a) Derives independent economic value, actual or potential, from not being known to, and not being ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use;" and "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Neb. Rev. Stat. §§ 87–502(4); *Softchoice Corp. v. MacKenzie*, 636 F. Supp. 2d 927, 936 (D. Neb. 2009). Ohio defines trade secrets very similarly. Ohio Rev. Code Ann. § 1333.61(D); *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 649 F. Supp. 2d 702, 712 (N.D. Ohio 2009).

Here, Goodyear's tire specifications meet these standards. Goodyear derives independent economic value from this information not being known to its competitors, this information cannot be ascertained by its competitors through proper means, and Goodyear has undertaken reasonable measures to ensure their secrecy. Not surprisingly, courts in the Eighth Circuit have recognized design documents to be trade secrets worthy of protection. *E.g.*, *BP Chemicals Ltd. v. Jiangsu Sopo*

10

*Corp.*, 285 F.3d 677, 680 (8th Cir. 2002). More specifically, courts across the country have concluded that tire specifications constitute trade secrets worthy of protection in litigation. *E.g.*, *In re Michelin N. Am., Inc.*, No. 05-15-01480-CV, 2016 WL 890970, at *5 (Tex. App. Mar. 9, 2016); *see also In re Goodyear Tire & Rubber Co.*, 392 S.W.3d 687, 693 (Tex. App. 2010) (concluding that information relating to the design, testing, curing, and cost of the various components involved in the tire manufacturing process constitute trade secrets); *Uniroyal Goodrich Tire Co. v. Hudson*, 873 F. Supp. 1037, 1044–45 (E.D. Mich. 1994).

Goodyear's testing documents and information meet these standards as well. Goodyear derives independent economic value from this information not being known to its competitors, this information cannot be ascertained by its competitors through proper means, and Goodyear has undertaken reasonable measures to ensure their secrecy. Just like design documents, courts recognize that testing data and testing information are trade secrets deserving of protection. *E.g.*, *In re Goodyear Tire & Rubber Co.*, 392 S.W.3d at 693; *Hudson*, 873 F. Supp. at 1044–45; *Schmidt v. Goodyear Tire & Rubber Co.*, No. 2:01CV272-DF, 2002 WL 35633850, at *3 (E.D. Tex. Aug. 2, 2002) (finding Goodyear's testing techniques, protocols, and results are trade secrets).

Goodyear's adjustment data and warranty information meet these standards too. Goodyear derives independent economic value from this information not being known to its competitors, this information cannot be ascertained by its competitors through proper means, and Goodyear has undertaken reasonable measures to ensure their secrecy. Like the design and testing documents, courts across the country have determined that adjustment and warranty data constitute trade secrets. *E.g. In re Goodyear Tire & Rubber Co.*, 392 S.W.3d at 693; *In re Goodyear Tire & Rubber Co.*, Case No. 05-10-00485, 2010 WL 2510371, at *6 (Tex. Ct. App. June 23, 2010) (Goodyear's plant specifications, adjustment and claims data and testing information satisfied "six of the six" factors for

trade secret information).

Finally, other documents disclosing manufacturing processes and controls and production data constitute trade secrets or proprietary information deserving of protection and secrecy at trial. Goodyear has invested significant sums in creating this information, would be harmed in the marketplace if it were disclosed, and Goodyear has taken reasonable efforts to protect the secrecy of this information. These documents and information constitute trade secrets as well. *E.g.*, *In re Cooper Tire & Rubber Co.*, 313 S.W.3d 910, 918-19 (Tex. Ct. App. 2010) (issuing writ of mandamus to vacate a trial court order compelling production of a tire manufacturer's specification histories, product change notifications and adjustment reports as trade secrets); *Hajek v. Kumho Tire Co.*, Case No. 08-CV-3157, 2010 WL 503044, at *9-10 (D. Neb. Feb. 8, 2010) (denying motion to compel production of tire design and manufacturing process information on trade secret grounds).

To protect Goodyear's property rights, and in light of the risk that it will lose these rights if its trade secrets and other propriety information enter the public domain, Goodyear respectfully requests that the Court enter an order protecting its valuable trade secret information and proprietary information at trial. Such an order would fulfill the purpose of the Protective Order already in place in this case, and further the public policies of Nebraska, Ohio, and the federal system favoring protection of trade secrets produced in litigation.

## IV. Conclusion.

For the foregoing reasons, Goodyear respectfully requests that the Court enter an order in limine protecting the confidentiality of trade secrets and other proprietary business information to be introduced as evidence at trial. Documents designated confidential under the Protective Order should not be admitted as a group exhibit, or otherwise entered into the court record unnecessarily. If admitted into evidence, such documents or transcripts should be maintained under seal. If trade

1835742

secrets are the subject of trial testimony, Goodyear respectfully requests that the Court take appropriate action to restrict access to such testimony by persons not involved in the proceedings. In the event the trade secret nature of the documents or testimony is questioned Goodyear asks the Court to maintain their confidentiality until such time as the objections can be ruled upon.

GREENSFELDER, HEMKER & GALE, P.C.

By:    /s/ Edward S. Bott, Jr.
Edward S. Bott, Jr.
Clark W. Hedger
Juliane M. Rodriguez
10 South Broadway, Suite 2000
St. Louis, MO 63102
(314) 241-9090
Fax: (314) 345-5465
esb@greensfelder.com
ch1@greensfelder.com
jrodriguez@greensfelder.com

AND

BAIRD HOLM LLP
Jennifer D. Tricker (NE# 23022)
1700 Farnam Street, Suite 1500
Omaha, NE 68102-2068
(402) 344-0500
jtricker@bairdholm.com

*Attorneys for The Goodyear Tire & Rubber Company*

1835742

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with NECivR 7.1(d)(3) and further certify that the word count function was applied to include all text, including the caption, headings, footnotes, and quotations. This document was prepared using Microsoft Word 2010 and contains 4,035 words.

/s/ Edward S. Bott, Jr.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed with the Clerk of the Court and served upon all attorneys of record using the CM/ECF system this 4th day of February, 2020.

Kyle W. Farrar
KASTER, LYNCH, FARRAR & BALL, LLP
1010 Lamar, Suite 1600
Houston, TX 77002
kyle@fbtrial.com

Paul E. Godlewski
SCHWEBEL, GOETZ & SIEBEN, P.A.
80 South 8th Center
5120 IDS Center
Minneapolis, MN 54402
pgodlewski@schwebel.com

Michael F. Coyle
FRASER, STRYKER LAW FIRM
409 South 17th Street
Suite 500, Energy Plaza
Omaha, NE 68102
mcoyle@fraserstryker.com

*Attorneys for Plaintiffs*

/s/ Edward S. Bott, Jr.

1835742