IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RYSTA LEONA SUSMAN, both individually and as Legal Guardian of SHANE ALLEN LOVELAND, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>THE GOODYEAR TIRE & RUBBER COMPANY,<br><br>  Defendant. | Case No. 8:18-cv-00127 |

**GOODYEAR'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE SEEKING EXCLUSION OF EVIDENCE OF "SIMILAR" ACCIDENTS, CLAIMS, OR LAWSUITS**

The Goodyear Tire & Rubber Company ("Goodyear"), by its attorneys, submits its Reply in Support of its Motion in Limine Seeking Exclusion of "Similar" Accidents, Claims, or Lawsuits:

Plaintiffs' Opposition to Goodyear's Motion in Limine Seeking Exclusion of "Similar" Accidents, Claims, or Lawsuits ignores the facts and law at issue in this case. First, as illustrated below, Plaintiffs attempt to rewrite history regarding the claims files produced by Goodyear. Goodyear has complied with the Court's Order, and Plaintiffs' transparent attempt to use Goodyear's production as a basis for their inability to meet the substantial similarity threshold is without merit. Second, Plaintiffs ignore their burden in establishing substantial similarity of the claims they seek to introduce, instead incorrectly suggesting that courts are reversed when they analyze the circumstances of the accident. It is well-established that a substantial similarity determination requires an assessment of the circumstances surrounding the accident *and* the cause of the same or similar alleged defect. Under the applicable law, Plaintiffs cannot meet the

1

substantial similarity threshold required to establish relevance[1], and accordingly, the Court should exclude all evidence of other accidents and any claims or lawsuits arising therefrom.

I.  **Goodyear's Claims Files Production Has Been Available to Plaintiffs Since November 2019.**

On October 7, 2019, following briefing on Plaintiffs' motion to compel production of claims files, the Court ordered Goodyear to produce claims files involving Load Range E RLT tires manufactured between 1992 and 1998 by November 7, 2019. (ECF No. 135.) Over the course of the next four weeks, Goodyear worked tirelessly to make its production, retrieving approximately 475 boxes of claims files from offsite storage and reviewing the files in each box, one by one, to identify and collect claims that were responsive to the Court's Order.

Plaintiffs incorrectly state that Goodyear did not start their "eleventh-hour production" of claims files until November 14 and that the production is less than half complete. (ECF No. 213, p. 3.) This is blatantly false on both counts. As Plaintiffs know, on November 4, 2019, Goodyear made more than 70 boxes of claims files available for Plaintiffs' review to determine which portions of the files they wanted copied. (10.29.2019 Letter from E. Bott to K. Farrar, attached as Exhibit A.) As Goodyear explained to Plaintiffs, the sheer volume of physical files coupled with the fact that the files contained former claimants and/or plaintiffs' confidential personal and/or health information made a blanket production impracticable. (10.25.2019 Letter from E. Bott to K. Farrar, attached as Exhibit B.) On November 4 and 5, 2019, Plaintiffs performed a partial review of approximately six to eight boxes over the course of a few hours both days. (11.7.2019 Letter from E. Bott to K. Farrar, attached as Exhibit C.) Shortly after this review, Plaintiffs decided they wanted the files copied in their entirety, and Plaintiffs and Goodyear agreed the files would be

---

[1] Plaintiffs completely fail to address Goodyear's argument regarding exclusion of the evidence under Rule 403 because any alleged probative value is far outweighed by the dangers of unfair prejudice, confusion of the issues, and undue delay.

made available to a copy service selected by Plaintiffs on a rolling basis. The parties arranged for Plaintiffs' copy service to pick up the first ten boxes as a test case to confirm the copy service could do an adequate job and return the files in their current condition. (11.12.19 to 11.14.19 Emails between E. Bott, K. Farrar, A. Groppe, and D. Muscato, attached as Exhibit D.) The copying of the first ten boxes began on November 19, 2019, as scheduled by Plaintiffs. (*Id.*)

Since November 2019, Plaintiffs have copied 75 boxes[2] containing approximately 4,600 claims files, (GY_Claims_0000001-GY_Claims_0147605), including all of the claims files involving a LT235/85R16 Load Range E tire.[3] After the first ten boxes were copied and returned in adequate condition, Goodyear agreed to increase the volume of boxes copied at once. Plaintiffs elected to pick up twenty boxes at a time from that point forward. (12.2.19 to 12.4.19, 12.13.19, and 1.6.20 Emails between A. Groppe and D. Muscato, attached as Exhibits E-G.) Over the past four months, Goodyear has made the claims files available for Plaintiffs, and the volume of boxes and pace at which the boxes were collected and copied were within the control of Plaintiffs, not Goodyear.

**II.  A Substantial Similarity Determination Requires an Analysis of All of the Circumstances Surrounding the Other Accident.**

Plaintiffs contend that the substantial similarity inquiry focuses on products "sharing a common defect" and that "courts are frequently reversed when they get bogged down in the specific details of the other incidents." (ECF No. 213, p. 2.) Plaintiffs' interpretation of the law significantly diminishes Plaintiffs' burden in this case. In the very case upon which Plaintiffs rely, the Eighth Circuit explained that "the appropriate focus is on *all of the circumstances* surrounding

---

[2] This number does not include the 21 boxes that are currently out for copying and scheduled to be returned to Goodyear on February 18, 2020.

[3] The remaining 140 boxes that have been and continue to be available to Plaintiffs contain claims files involving Load Range E tires that are not size LT235/85R16.

the OSI evidence, not any specific similarity." *Adams v. Toyota Motor Corp.,* 867 F.3d 903, 911 (8th Cir. 2017) (emphasis added).

Plaintiffs' misunderstanding of the law is further belied by its reliance on *Yang v. Cooper Tire*—the only case Plaintiffs rely on to demonstrate the "frequent reversal" that allegedly occurs when Courts analyze the other accident evidence presented. Plaintiffs suggest the *Yang* trial court was reversed because it did not consider the similarity of the defects alleged and failed to determine whether they share a common design. Plaintiffs severely overstate the court's ruling. The Minnesota Court of Appeals remanded for a new trial based on the trial court's granting Cooper Tire's motion for judgment as a matter of law. *Yang v. Cooper Tire & Rubber Co.*, 2014 WL 502959, at *4 (Minn. App. Feb. 10, 2014). In so doing, the appellate court noted that the trial court "applied the wrong legal standard when determining the admissibility of appellants' similar-incident evidence." *Id.* at *4 ("When advised by counsel that the appropriate test was whether the other incidents were 'substantially similar,' the district court responded: 'well I don't agree. So if you want to… see if you've got some that meet *my test, as opposed to your test,* I'm willing to do that.'") (emphasis in original). Plaintiffs here suggest that the Yang court's reversal was because the trial court failed to determine whether the products "share a common design." (ECF No. 213, p. 3.) In fact, the appellate court held:

> Substantial similarity means that the incidents occurred under substantially similar circumstances and involved substantially similar products. In order to ensure that the substantial similarity test has been satisfied, the district court must conduct a factual inquiry into each of the proffered incidents to determine whether they share a common design, common defect, and common causation with the alleged design defect at issue.

*Yang*, 2014 WL 502959, at *4. Thus, for substantial similarity, courts require not only a common design, but a common defect, and common causation—none of which Plaintiffs can establish here.

4

Plaintiffs purport to rely on the Supreme Court of Nebraska in *Shipler v. General Motors Corp.* for the proposition that Plaintiffs can submit any accidents they want if the accidents were "caused by the same or similar defects and dangers." (ECF No. 213, p. 7.) However, when read in its entirety, the *Shipler* opinion explains that to be substantially similar, it is necessary to show "the prior accidents or occurrences happened under substantially the same circumstances *and* were caused by the same or similar defects and dangers." 710 N.W.2d 807, 834 (Neb. 2006) (emphasis added). Indeed, *Shipler* requires "the plaintiff must first establish that there is a substantial similarity of conditions between the other accidents and the accident that injured the plaintiff." *Id.* There, the trial court admitted accidents where plaintiff established substantial similarity related to "the nature of the accident, the number of revolutions of the vehicle, the head or neck injury sustained as a result of contact with the roof, the victim's position in the vehicle, and the type of vehicle." *Id.* at 835.

In contrast, Plaintiffs here argue that "[T]he only relevant factor is whether tires of the same size and construction failed from the common defect." (ECF No. 213, p. 8.) This proposition is incorrect for several reasons. First and foremost, Plaintiffs are asking the Court to look at only two factors—tire size and tire construction—and ignore the conditions of the accident and the guidance provided by the Eighth Circuit and the Supreme Court of Nebraska. *See Adams v. Toyota Motor Corp.,* 867 F.3d 903, 911 (8th Cir. 2017) ("the appropriate focus is on all of the circumstances surrounding OSI evidence, not necessarily any specific similarity"); *Shipler v. General Motors Corp.,* 710 N.W.2d 807, 834 (Neb. 2006) (to be substantially similar, "the prior accidents or occurrences happened under substantially the same circumstances *and* were caused by the same or similar defects and dangers").

Second, even if the Court were to abandon the "substantial similarity" standard and adopt Plaintiffs' new "whether tires of the same size and construction failed from the common defect" test, Plaintiffs have not and cannot meet this unprecedented burden. The Tire at Issue bears DOT # MD0RNJHV244. The only tire of the same size and of the same construction as the Tire at Issue is LT235/85R16 Wrangler HT tires with the specific Tire Identification Code ("TIC") of 0RNJH. (Declaration of Joseph Aull in Support of Goodyear's Opposition to Plaintiffs' Motion to Compel Claims File Information, ECF No. 97, Ex. 2, ¶¶ 12, 16.) Other LT235/85R16 Wrangler HT tires may be the same size as the Tire at Issue, but unless the TIC code within the tire's DOT number is 0RNJH, the tire is not the same construction as the Tire at Issue. Moreover, tires of the same size are not automatically substantially similar to the Tire at Issue. Plaintiffs attempt to group all size LT 235/85R16 Load Range E tires together, but this is not simply one type of tire. Tires of the same size can include many different models with many different applications. (Aull Decl., ECF No. 97, Ex. 2, ¶ 20.) For example, in 1994, the year the Tire at Issue was manufactured, there were active tires specifications for nine different Goodyear brand LT235/85R16 Load Range E tires. (*Id.*) Some of the nine Goodyear brand tires were designed for multi-purpose, commercial heavy-duty, or mixed service applications. The Tire at Issue was a rib tread pattern designed for highway service. In 1994, in addition to the nine Goodyear brand tires of the same size, this size tire had active specifications for sixteen tires produced for private brands. (*Id.*) These tires, although the same size, have different specifications and were designed for different uses and in anticipation of exposure to different elements. (*Id.*) Thus, further inquiry as to the surrounding circumstances is required to determine whether a substantial similarity to the Tire at Issue truly exists.

6

Additionally, a cursory review of Plaintiffs' purported chart of similar incidents illustrates that Plaintiffs cannot meet their own new standard. (*See* ECF No. 213-1, Plaintiffs' Exhibit 1.) For example, on the first page of Plaintiffs' summary chart, only nine of the twenty-seven claims listed appear to involve a tire of the same size and the same construction as the Tire at Issue.[4] (*See id.* at column titled "Tire DOT".)

Further, Plaintiffs cannot establish that the claims involving tires of the same size and construction failed from a "common defect." Plaintiffs seek to admit incidents of tread separation[5] on other tires that did not have a nylon overlay. (ECF No. 213, p. 3.) However, the absence of an overlay does not mean a tire is defective. Plaintiffs' expert, David Southwell, admits that overlays do not prevent tread separations and admits that many factors can cause a tread separation. (Tr. 3.28.19 Deposition of David Southwell, attached as Exhibit H, at 29:23-30:5; 53:3-22; *see also* Aull Decl., ECF No. 97, Ex. 2, ¶ 7.) This is precisely why the cause of each tread separation must be examined in order for Plaintiffs to meet their burden.[6] This requires inquiry into more than just a tire's size and construction. *See, e.g., Shipler v. General Motors Corp.,* 710 N.W.2d at 834 (requiring plaintiff's expert witness to explain the similarities in the accidents cited in his exhibits, including that all of the accidents were rollover accidents that demonstrated roof crush that caused severe head or neck injury).

Importantly, Plaintiffs' expert's theory is inconsistent with Plaintiffs' generalization that the tread separation is a defect in and of itself rather than the result of a defect. Southwell's theory

---

[4] Of the nine claims involving a tire of the same size and construction as the Tire at Issue, seven of the claims involve a trailer RV. The other two claims involve Ford trucks of different models and years. (*See* ECF No. 213-1.)

[5] Although Plaintiffs suggest a tread separation is the "defect" which makes these incidents similar, Plaintiffs' Exhibit 1 includes claims that even Plaintiffs admit did not involve tread separations. (*See* ECF No. 213-1, column "Tread Separation?".)

[6] Plaintiffs suggest (with no citation to or support in the record) that Goodyear falsely told the Court the failure mode addressed by the Tread Throw team only involved complete 360-degree tread separations. (ECF No. 213, p. 5.) As Goodyear explained, the 360-degree detachment is what *lead to* the Load Range E investigation. (ECF No. 172, p. 4.) The full 360-degree detachment is not the only failure mode that was observed in the investigation.

7

is that the absence of the overlay, combined with the belt alignment, and thermal oxidative degradation, is the defect in the Tire at Issue. (ECF No. 172, p. 4.) Plaintiffs' summary chart does not illustrate whether this "common defect" exists in the claims listed. (*See* ECF No. 213-1.) Accordingly, Plaintiffs cannot establish a common defect between the tires involved in other incidents and the Tire at Issue, let alone the substantial similarity of the incidents that the law requires.

## CONCLUSION

For each of the foregoing reasons, Goodyear respectfully requests that the Court enter an Order precluding Plaintiffs from introducing evidence of, and from making any comment, reference, argument or innuendo regarding other accidents, claims, and lawsuits without first establishing substantial similarity to the accident at issue.

        GREENSFELDER, HEMKER & GALE, P.C.

        By:    /s/ Edward S. Bott, Jr.
        Edward S. Bott, Jr.
        Clark W. Hedger
        Juliane M. Rodriguez
        10 South Broadway, Suite 2000
        St. Louis, MO 63102
        (314) 241-9090
        Fax: (314) 345-5465
        esb@greensfelder.com
        ch1@greensfelder.com
        jrodriguez@greensfelder.com

        AND

        BAIRD HOLM LLP
        Jennifer D. Tricker (NE# 23022)
        1700 Farnam Street, Suite 1500
        Omaha, NE 68102-2068
        (402) 344-0500
        jtricker@bairdholm.com

        *Attorneys for The Goodyear Tire & Rubber Company*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with NECivR 7.1(d)(3) and further certify that the word count function was applied to include all text, including the caption, headings, footnotes, and quotations. This document was prepared using Microsoft Word 2010 and contains 2,461 words.

/s/ Edward S. Bott, Jr.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed with the Clerk of the Court and served upon all attorneys of record using the CM/ECF system this 18th day of February, 2020.

Kyle W. Farrar
KASTER, LYNCH, FARRAR & BALL, LLP
1117 Herkimer St.
Houston, TX 77008
kyle@fbtrial.com

Paul E. Godlewski
SCHWEBEL, GOETZ & SIEBEN, P.A.
80 South 8th Center
5120 IDS Center
Minneapolis, MN 54402
pgodlewski@schwebel.com

Michael F. Coyle
FRASER, STRYKER LAW FIRM
409 South 17th Street
Suite 500, Energy Plaza
Omaha, NE 68102
mcoyle@fraserstryker.com

*Attorneys for Plaintiffs*

/s/ Edward S. Bott, Jr.

9

1839572