IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RYSTA LEONA SUSMAN, both individually and as Legal Guardian of SHANE ALLEN LOVELAND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE GOODYEAR TIRE & RUBBER COMPANY, <br><br> Defendant. | Case No. 8:18-cv-00127 |

**REPLY BRIEF IN SUPPORT OF GOODYEAR'S MOTION IN LIMINE TO EXCLUDE ALL EVIDENCE AND REFERENCE TO ADJUSTMENT DATA**

The Goodyear Tire & Rubber Company ("Goodyear"), by and through undersigned counsel, hereby submits its Reply Brief in Support of Goodyear's Motion in Limine to Exclude All Evidence and Reference to Adjustment Data.

**INTRODUCTION**

Plaintiffs' opposition can be divided into two sections for reply. The first regards the law on the admissibility of adjustment data. The second regards the facts representing what adjustment data does and does not mean, and does and does not show. As to the first, the overwhelming weight of authority of the many cases to have considered the question have determined that adjustment data is of such generic value relative to the risk of confusion and prejudice that it is not admissible to support claims of this type – i.e., that a tire was defective. As to the second, Plaintiffs' "facts" are largely uncited conclusions or not supported where a citation is provided, intended to distract this Court from what is a straightforward evidentiary question. The Court should grant Goodyear's motion.

1

1840110

**ARGUMENT**

I.     **The Weight of Authority Rejects Admissibility of Adjustment Data in Tire Litigation.**

Because Goodyear thoroughly briefed the issue in its moving papers, it will not offer detailed legal arguments again to illustrate that the vast weight of authority does not permit use of adjustment data in cases of this type. It is worth noting, however, that one of the pertinent precepts is that a showing of substantial similarity is required, which Plaintiffs still have not provided as to the type of wide-ranging generalized adjustment data evidence a denial of Goodyear's motion would permit them to introduce. If Plaintiffs wish to use specific data points within the adjustment data, they must establish substantial similarity. They cannot. And the reason is because it is significant point of the inadmissibility of adjustment data that it is not sufficiently detailed so as to facilitate a substantial similarity analysis, which underscores its lack of probative value and the high risk that it will operate to confuse the jury.

Indeed, Plaintiffs' own brief vividly illustrates this risk when they state that adjustment data "is the single best tool" for "identifying defects" and that it proves "a serious problem existed" in the Tire at Issue ("the Tire"). No witness in this case has ever stated any of those things, and the actual record is that the adjustment procedure and the data itself is too general to be used to identify product defects. This is exactly the type of falsehood Plaintiffs hope a jury will accept in confusion when presented with generalized "adjustment data" that has never satisfied, and inherently can never satisfy, the foundational substantial similarity requirement.

Regardless, Goodyear turns to the limited authority Plaintiffs did cite. The first authority on which Plaintiffs rely is an unreported order out of the Middle District of Florida in *Garcia v. Kelly-Springfield Tire Co.*, et al, Case No. 8:99-CV-1611-T-17TGW. (ECF No. 201 at Ex. 4.) The court in *Garcia* did, ultimately, rule that adjustment data could be used in that case, though it did not

2

specify how.  As a threshold matter, this is a singular outlier decision in direct conflict with the near universal weight of authority holding to the contrary.  Further, it is significant that the *Garcia* court concluded that the "failure mode identified by the Goodyear investigation which was precipitated by the adjustment data is ***identical to the failure of the tire in this case***."  *Id*.  (emphasis added.)  If true in that case, it may have been pertinent to the requisite substantial similarity analysis.  But it is certainly not true in the present case.

Goodyear's previously filed Memorandum of Law in Support of its Motion in Limine to Exclude Evidence Pursuant to the Self Critical Analysis Privilege sets out the facts and testimony detailing what has been referred in the briefing as the "Tread Throw Investigation."  (ECF No. 171 at 3-5.)  This is the same "investigation" to which both Plaintiffs' opposition brief here and the *Garcia* order refers.  Via that cited testimony, which Plaintiffs do not dispute, the "failure mode" which lead to Goodyear's internal investigation was a "tread throw" – i.e., a complete 360 degree tread separation.  (*Id*. at 3 citing the undisputed testimony at Exhibits C, D and E.)  In this case, unlike in *Garcia*, the failure mode is notably distinct from the 360 degree "tread throw" events which led to the investigation.  Here, Plaintiffs' expert concedes that the failure mode is a "partial tread separation" occurring between the 180-degree mark and the 350-degree mark on the Tire, as measured on the opposite-serial side shoulder of the Tire.  (ECF No. 176 at 2.)  This is a significant distinction between *Garcia* and the present case which may have been pertinent to determining substantial similarity there, but firmly establishes that it is not present here.  *Garcia* is an outlier decision and, even on the face of the cited order, is easily and critically distinguishable from this case.

The next case Plaintiffs cite is *Ctr. For Auto Safety v. Goodyear Tire & Rubber Co.*, 454 P.3d 183, 186 (Ct. App. 2019).  Plaintiffs cite it for a "fact," which is odd and telling given we have

3

an actual factual record in this case on these exact issues. Regardless, the line taken from *Auto Safety* is the court's description that "Goodyear categorizes information by the specific reason an adjustment is made." *Id*. It is accurate that Goodyear categorizes adjustment data. But it most certainly is not "specific" and Plaintiffs know it. As previously briefed, with citations to testimony, Goodyear merely assigns a general "code" to an adjustment and within each code – and notably not specified within the adjustment data – there are many variations. (ECF No. 176 at 2-3.) For example, the testimony in this case establishes that a "CA" code for "crown separations" can stand for a "tread throw," a wide variety of different partial tread separations, or numerous other crown area conditions unrelated to tread separations. (*Id*.) This underscores the nebulous unreliability of adjustment data, which is precisely why courts exclude it in cases of this type. *Auto Safety* serves no purpose other than to spur a factual discussion to help illustrate the inadmissibility of adjustment data. Otherwise the decision merely regards the scope of protective orders.

The last case Plaintiffs cite is *Cruz v. Kumho Tire Co., Inc.*, 2015 WL 2193796 (N.D.N.Y. May 11, 2015) for the proposition that "the analysis of adjustment data is [ ] fundamental to tire failure opinions." This is a patent misstatement of the law, given that virtually no reported cases considering the question permit the use of adjustment data as set forth in Goodyear's motion. Regardless, the *Cruz* court never considered the question of the admissibility of adjustment data and the case involves a different tire manufacturer whose adjustment data may be compiled differently and contain different types of information. It is unknown because it is not described anywhere in the decision nor is the question raised. It has no bearing on the question before this Court.

In short, the cases on which Plaintiffs rely do not stand for any legal proposition at issue here or, in the case of *Garcia*, the unpublished order is an extreme outlier from the current state of the law and is based on a critical factual predicate of "identical" failure modes indisputably not

4

present here.

## II. Plaintiffs' Misstate and Mischaracterize the Facts.

Plaintiffs' "factual" narrative is a transparent attempt to obfuscate the clear cut and well-settled legal issues at play in determining the admissibility of adjustment data in a tire product liability case. As such, Goodyear is loath to chase Plaintiffs down the rabbit hole at the risk of validating their approach. Nonetheless, Goodyear will briefly address it to the extent the Court finds it pertinent to resolution of the issue.

Initially, Goodyear notes that it has already briefed in great detail, with citations to testimony not in dispute, the history of the Tread Throw Investigation. Plaintiffs' opposition brief grossly misstates the history of this investigation in order to inflate "adjustment data" with degrees of particularity and significance it absolutely does not possess. Goodyear again refers the Court to its Memorandum of Law in Support of its Motion in Limine to Exclude Evidence Pursuant to the Self Critical Analysis Privilege, which details the origins and processes of the Tread Throw Investigation. (ECF No. 171 at 3-5.) Briefly, the record cited there and even by Plaintiffs here reveals as false the following "facts" Plaintiffs assert: (a) that Goodyear formed committees to evaluate adjustment data due to "a rise in adjustment data" (this is not just false, but boldly false, given that the testimony from Richard Olson cited by Plaintiffs states the exact opposite and that, contrary to the assertion, the adjustment data committees "had been in existence for quite some time on an ongoing basis" prior to the investigation (ECF No. 201-1)); (b) based on adjustment data, Goodyear initiated the Tread Throw Investigation (the investigation was based not on adjustment data, but on the inspection of 4 specific tires which had experienced the unusual 360 degree "tread throw" which is not even at issue in this case (ECF No. 171 at 3)); (c) that adjustment data is used by Goodyear engineers to determine "defects" in tires (adjustment data does not even reveal a

5

specific condition in a tire within a general code, let alone specific product defects (ECF No. 176 at 2-3)); and (d) that the Declaration of Joseph Aull, Goodyear's Manager of Global Product Analysis confirms adjustment data "identifies particular problems in design" (this is another bold falsehood as the quoted portion on which Plaintiffs rely states no such thing and instead provides that adjustment data could inform *a competitor* of where "it" (the competitor) may want to improve tire performance (ECF No. 199 at 4)).

Plaintiffs so-called facts are directly at odds with the record in this case and even, in many instances, with their own exhibits. Moreover, misleading factual inaccuracies notwithstanding, Plaintiffs have submitted it an attempt to muddy the waters in the hope that this Court will ignore the clear-cut evidentiary standards applicable to adjustment data which Plaintiffs have made no attempt to satisfy.

## **CONCLUSION**

Because adjustment data is irrelevant, confusing and prejudicial, and for each of the foregoing reasons and those previously briefed, Goodyear requests that this Court enter an order instructing Plaintiffs and their witnesses and attorneys, not to mention, refer to, ask about, or convey in any manner, either directly or indirectly, during opening statements/closing arguments or any other stage of trial, or solicit in any other manner, argument or statements regarding the adjustment data.

6

1840110

GREENSFELDER, HEMKER & GALE, P.C.

By: /s/ Edward S. Bott, Jr.
Edward S. Bott, Jr.
Clark W. Hedger
Juliane M. Rodriguez
10 South Broadway, Suite 2000
St. Louis, MO 63102
(314) 241-9090
Fax: (314) 345-5465
esb@greensfelder.com
ch1@greensfelder.com
jrodriguez@greensfelder.com

AND

BAIRD HOLM LLP
Jennifer D. Tricker (NE# 23022)
1700 Farnam Street, Suite 1500
Omaha, NE 68102-2068
(402) 344-0500
jtricker@bairdholm.com

*Attorneys for The Goodyear Tire & Rubber Company*

7

1840110

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with NECivR 7.1(d)(3) and further certify that the word count function was applied to include all text, including the caption, headings, footnotes, and quotations. This document was prepared using Microsoft Word 2010 and contains 2,047 words.

/s/ Edward S. Bott, Jr.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed with the Clerk of the Court and served upon all attorneys of record using the CM/ECF system this 18th day of February, 2020.

Kyle W. Farrar
KASTER, LYNCH, FARRAR & BALL, LLP
1117 Herkimer St.
Houston, TX 77008
kyle@fbtrial.com

Paul E. Godlewski
SCHWEBEL, GOETZ & SIEBEN, P.A.
80 South 8th Center
5120 IDS Center
Minneapolis, MN 54402
pgodlewski@schwebel.com

Michael F. Coyle
FRASER, STRYKER LAW FIRM
409 South 17th Street
Suite 500, Energy Plaza
Omaha, NE 68102
mcoyle@fraserstryker.com

*Attorneys for Plaintiffs*

/s/ Edward S. Bott, Jr.

8

1840110