## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| RYSTA LEONA SUSMAN, both individually and as Legal Guardian of SHANE ALLEN LOVELAND, et al., | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 8:18-cv-00127 |
| v. | ) | |
| | ) | |
| THE GOODYEAR TIRE & RUBBER COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |

## REPLY BRIEF IN SUPPORT OF GOODYEAR'S MOTION IN LIMINE FOR MANDATORY BIFURCATION OF TRIAL INTO LIABILITY AND PUNITIVE DAMAGES PHASES AND TO PROHIBIT PLAINTIFFS FROM OFFERING PUNITIVE DAMAGES EVIDENCE DURING THE LIABILITY PHASE OF TRIAL

The Goodyear Tire & Rubber Company ("Goodyear"), by and through undersigned counsel, hereby submits its Reply Brief in Support of Goodyear's Motion in Limine for Mandatory Bifurcation of Trial into Liability and Punitive Damages Phases and to Prohibit Plaintiffs from Offering Punitive Damages Evidence During the Liability Phase of Trial.

## INTRODUCTION

Plaintiffs successfully argued, over Goodyear's objections, that Ohio's law of punitive damages should govern in this dispute.  Now that Goodyear asks this Court to apply the safeguards guaranteed by Ohio's legislature and its Supreme Court, Plaintiffs ask this Court to only permit an award of punitive damages and reject the remainder of the complex statutory scheme inextricably linked to the issue.   This is unjust and it is not the law.

Plaintiffs' arguments can be divided into two basic groups: (a) that this Court sitting in diversity is not bound by the mandatory bifurcation language of Ohio Revised Code Section 2315.21 because it is "procedural" rather than "substantive"; and (b) that Federal Rule 42(b)

1840111

controls the inquiry instead, and that this Court should not exercise its discretion to bifurcate under that Rule.  As will be shown, the Court can and should bifurcate this action under either standard, as many federal district courts have done before both with regard to the Ohio statue and comparable statutes of other states.

Before turning to that, however, it must be noted that Plaintiffs' opposition brief largely disregards Goodyear's argument with regard to Ohio Revised Code Section 2307.80, which sets forth what a court is to consider as an evidentiary matter in connection with the punitive damages phase of a trial.  This issue is pertinent to the "substantive" vs. "procedural" analysis because it is well settled that state law evidentiary provisions can be so "bound up" in that state's damages law as to become substantive when they might otherwise be deemed merely evidentiary and, therefore, procedural.

## ARGUMENT

### I.  Many Decisions Have Rightly Held That Section 2315.21 Is Binding On Federal Courts.

Plaintiffs cite to *Patel Family Trust v. AMCO Ins. Co.*, 2012 WL 2883726 (S.D. Ohio July 13, 2012) for the proposition that Section 2315.21's mandatory language on bifurcation is not binding in federal court and that the Ohio Supreme Court's determination that the statute is "substantive" in nature can simply be disregarded.  It is accurate that this is the holding in *Patel*.  But it is not correctly decided, and its holding is not controlling as evidenced by the many decisions to the contrary.

As a threshold matter, the *Patel* court's conclusory determination that it is not bound to the Ohio Supreme Court's determination as to what constitutes substantive law in Ohio is flatly incorrect.  *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 751 (1980) (finding a "procedural" service rule to in fact be "substantive" by relying on Oklahoma Supreme Court decisional law for

the proposition that "the Oklahoma statute *is a statement of a substantive decision* by that State that actual service on, and accordingly actual notice by, the defendant is an integral part of the several policies served by the statute of limitations.") (emphasis added); *Conway v. Chemical Leaman Tank Lines, Inc.*, 540 F.2d 837, 839 (5th Cir. 1976) *([T]he Texas Supreme Court has interpreted the statute as mandatory. These determinations, though in a sense matters of evidence-law, are embedded in Texas substantive law and policy*, and we adopt them as part of the Texas wrongful death act for application in federal trials of actions brought thereunder.") (emphasis added); *Rotello v. Clayton Homes of Del., Inc.*, 2006 WL 842931, at *1 (E.D. Tenn. March 28, 2006) (holding and applying the rule that bifurcation of punitive damages phase of trial constituted Tennessee substantive damages law as announced by the Tennessee Supreme Court).  No court is in a better position to interpret and declare the substantive law of the State of Ohio than the Ohio Supreme Court.  As considered by the United States Supreme Court and other federal appellate and district courts to consider the same question, that decision is binding.  This alone negates *Patel* and limited holdings similar to it and the inquiry can end here.

Further and regardless, Plaintiffs do not cite to the many other cases in the Ohio-based federal district courts holding that Section 2315.21 is mandatory and/or substantive and is binding on federal courts in diversity actions.  Indeed, "[t]he federal courts in Ohio favor bifurcation under Ohio Rev. Code 2315.21(B)."  *Moore v. Abbott Laboratories*, 2011 WL 13202959, at *6 (S.D. Ohio October 13, 2011); *see also Retail Ventures v. National Union Fire Insurance Company of Pittsburgh, PA*, 2010 WL 11538538, at *2 (S.D. Ohio April 8, 2010) (likewise stating that federal courts in Ohio "favor" bifurcation under the statute).  Further, in *Wagner v. Mastiffs*, 2012 WL 12985691, at *2 (S.D. Ohio May 1, 2012), the court engaged in the same *Erie/Hanna*[1] analysis as

---

[1] Referring to the Supreme Court's decisions in *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) and *Hanna v. Plumer*, 380 U.S. 460 (1965).

did the *Patel* court, but concluded that "Section 2315.21(B) is a law that creates a substantive right to bifurcation of trial for determining compensatory and punitive damages claims. Because state law defines the substantive rights of parties in diversity actions, this Court is bound to follow the holding of the Ohio Supreme Court in *Havel*."[2]

Importantly, the *Wagner* court took the analysis one critical step further and held that because bifurcation under Rule 42(b) is discretionary, it is not in direct conflict with Section 2315.21 and, therefore, application of the Ohio statute is not prohibited by *Hanna*. The *Patel* court's omission of this consideration renders its *Erie/Hanna* analysis incomplete and unsound. Had the *Patel* court employed the proper analysis set forth by Supreme Court, it could not have concluded that Rule 42(b) necessarily controlled because that Rule is not mandatory and therefore need not conflict with Section 2315.21. This is confirmed by the Supreme Court's decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 421 (2010), which the *Patel* court failed to cite or consider: "In some instances, the 'plain meaning' of a federal rule will not come into 'direct collision' with the state law, and both can operate. In other instances, the rule 'when fairly construed' with 'sensitivity to important state interests and regulatory policies' will not collide with the state law." (internal citations omitted) The "conflict" issue will be discussed further in Section II as well.

These holdings are consistent with and supported by a large body of case law determining that Section 2315.21 is to be applied in federal court. *See e.g. Tunnell Hill Reclamation, LLC v. Endurance American, Specialty Insurance Co.*, 2016 WL 3689100, at *6-7 (S.D. Ohio July 12, 2016); *Maxey v. State Farm Fire & Cas. Co.*, 569 F. Supp. 2d 720, 724 (S.D. Ohio 2008); *Keyser v. UNUM Life Ins. Co. of Am.*, 2005 WL 2230203, at *10 (S.D. Ohio Sept. 12, 2005); *Luca v.*

---

[2] "*Havel*" is the Ohio Supreme Court's decision in *Havel v. Villa St. Joseph*, 963 N.E.2d 1270 (Ohio 2012) which is discussed in detail below.

*Selective Ins. Co. of South Carolina*, 2010 WL 850242, at *1 (S.D. Ohio Mar. 9, 2010); *Geiger v. Pfizer, Inc.*, 2009 WL 1026479, at *1 (S.D. Ohio April 15, 2009); and *Smith v. Glaxo Wellcome, Inc.*, 1998 WL 34024762, at *1 (S.D. Ohio June 11, 1998).  This Court should reject the incomplete and unsound rationale of *Patel* and apply the mandatory provisions of Section 2315.21 as in the many decisions cited here.

## II.     Section 2315.21 Is Substantive and Does Not Create A Direct Conflict With Federal Rule of Civil Procedure 42(b).

Cases like *Patel* and *Wolkosky v. 21st Century Centennial Ins. Co.*, 2010 WL 2788676 (S.D. Ohio July 14, 2010, which is cited in *Patel*, purport to consider the question fully.  But the holdings when juxtaposed with the larger universe of case law on the subject reveal that their analysis is lacking.  In *Patel*, the court issued its ruling absent any arguments from the parties on the issue of bifurcation, as such the court did not address the full scope of arguments pertinent to the issue discussed here.  It was a consent motion by the parties for bifurcation which the court denied noting that no arguments had been presented beyond citations to Ohio state court cases.  *Patel*, 2012 WL 2883726, at *2 ("While the Court is cognizant of the fact that the Joint Motion is agreed upon (at least as to Patel and AMCO) and that the parties have contemplated (and perhaps assumed) there would be bifurcation . . .).

Likewise in *Wolkosky* the court decided the issue without benefit of argument on these issues.  Unlike here, the court noted that "[d]efendant does not contend that the statute is substantive." *Wolkosky*, 2010 WL 2788676, at *2.  This perhaps explains the sentence immediately prior which illustrates the court's flawed analysis of Section 2315.21:  "On its face, the bifurcation mandate in Ohio Revised Code § 2315.21(B) appears to prescribe a judicial process for enforcing a substantive right to punitive damages in a tort action, making it a procedural law." *Id.*  This sentence is illuminating, because it concludes that the Ohio legislature enacted the statutory scheme

5

to protect *the claimants'* substantive right to punitive damages.  However, that is not so as punitive damages were already permissible in Ohio prior to the enactment, and the comprehensive statutory framework was passed in order to grant *a defendant* substantive rights with regard to the state's damages law.  *Havel v. Villa St. Joseph*, 963 N.E.2d 1270 (Ohio 2012) (the act "does more than set forth the procedure for the bifurcation of tort actions: it makes bifurcation mandatory. Indeed, mandatory bifurcation in tort actions did not exist prior to the amendment of R.C. 2315.21(B) by S.B. 80.").

The ruling in *Wolkosky*, though incorrect, is somewhat understandable.  Not only was the issue not briefed, the decision was issued nearly two years prior to the Ohio Supreme Court's decision in *Havel*.  In *Havel,* the court engaged a deep dive analysis of Section 2315.21 and the tort reform legislation of which it was a part, and ruled that the comprehensive scheme was substantive in nature, and not merely procedural.

In reaching this holding, the court considered the legislative history which explained the purpose for the change in Ohio law: "the statements made by the General Assembly in the uncodified language of S.B. 80 compel the conclusion that although R.C. 2315.21(B) may be 'packaged in procedural wrapping,' it is a substantive law because it creates a right to 'address potential injustice.'"  *Havel*, 963 N.E.2d at 1278.  The legislature's "Statement of Findings and Intent" further confirms the substantive goals of the law with regard to damages: "Reform to the punitive damages law in Ohio [was] urgently needed to restore balance, fairness, and predictability to the civil justice system."  *Id*.  The General Assembly went on to explain the substantial public policy of the state advanced by the statutory amendments, and explicitly stated its intent to create *within defendants* certain rights with regard to damages under Ohio law:

> (e) Inflated damage awards create an improper resolution of civil justice claims. The increased and improper cost of litigation and

6

1840111

resulting rise in insurance premiums is passed on to the general public through higher prices for products and services.

(f) In cases in which punitive damages are requested, defendants should have the right to request bifurcation of a trial *to ensure that evidence of misconduct is not inappropriately considered by the jury in its determination of liability and compensatory damages.* As additional protection, trial and appellate courts should rigorously review pain and suffering awards to ensure that they properly serve compensatory purposes and are not excessive.

*Id.* Following this detailed analysis, the Ohio Supreme Court held that: "These findings and statements by the General Assembly demonstrate its intent to create *a substantive right to ensure that evidence of misconduct is not inappropriately considered by the jury* in its assessment of liability and its award of compensatory damages." *Id.* As such, the court confirmed that the statute is not merely a procedural mechanism, but creates a comprehensive scheme with regard to punitive damages, including evidentiary restrictions mandatorily applicable to Ohio damages law. This is an outcome-determinative distinction overlooked by *Patel* and *Wolkowsky*.

As noted in 19 *Wright, Miller & Cooper*, Federal Practice and Procedure: Jurisdiction 2d § 4512:

[T]here is a varied collection of state law rules that, because their application results in the exclusion of evidence, sometimes are considered rules of evidence, *but in fact serve substantive state policies and are characterized more properly as rules of substantive law within the meaning of the Erie doctrine. Among these rules are ... rules regarding the admissibility of prejudicial evidence.* Properly construed, the Federal Rules of Evidence do not affect or alter these "substantive rules of evidence," which are enforced in federal court.

(emphasis added). Put another way, "[a]lthough the Federal Rules of Evidence ordinarily govern in diversity cases, they do not always. '[W]here a state evidence rule is 'intimately bound up' with the rights and obligations being asserted, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938) mandates the application of a state rule in a diversity suit." *Wray v. Gregory*,

561 F.3d 141 (9th Cir. 1995) (requiring compliance with Nevada state law limitations on evidence in medical malpractice cases because "Nevada has established an integrated scheme for handling medical malpractice claims."). Federal courts consistently adhere to this recognized rule, which applies here. *See Conway v. Chemical Leaman Tank Lines, Inc.*, 540 F.2d 837, 839 (5th Cir. 1976) ("These determinations, though in a sense matters of evidence-law, are embedded in Texas substantive law and policy, and we adopt them as part of the Texas wrongful death act for application in federal trials of actions brought thereunder."); *DiAntonio v. Northampton-Accomack Memorial Hospital*, 628 F.2d 287, 291 (4th Cir. 1980) ("there are circumstances in which a question of admissibility of evidence is so intertwined with a state substantive rule that the state rule . . . will be followed in order to give full effect to the state's substantive policy" and "a state procedural rule must be followed in a diversity case if it is 'intimately bound up with the state right or obligation.'") (internal citations omitted); and *D'Orio v. West Jersey Health Systems*, 797 F. Supp. 371, 376 (D.N.J. 1992) ("the federal courts have also held that where a state evidence rule is 'intimately bound up' with the rights and obligations being asserted, *Erie* mandates the application of the state rule in a federal diversity suit.").

Further, when the issues pertain to the award of damages under state law as they do here, it is settled law that the question is substantive and not merely procedural. As the Supreme Court held in *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 428 (1996):

> [T]he state as a matter of its substantive law may, among other things, eliminate the availability of damages for a particular claim entirely, ***limit the factors a jury may consider in determining damages***, or place an absolute cap on the amount of damages available, and such substantive law would be applicable in a federal court sitting in diversity.

(emphasis added); s*ee also Johnson v. Serra,* 521 F.2d 1289, 1294 (8th Cir. 1975) ("The measure of damages and consequently the limits of relevancy in this diversity case are set by the substantive

law of Minnesota."); *D'Orio*, 797 F. Supp. at 376 ("A state's view of the measure of damages 'is inseparable from the substantive right of action.'") (internal citation omitted).

In addition to the numerous federal court decisions applying Section 2315.21 noted above, other federal courts have correctly applied these general principles to require state-mandated bifurcation in federal court.  Perhaps the most detailed analysis arises out of a court within the 8th Circuit in *In re Levaquin Products Liability Litigation*, 2010 WL 4867588 (D. Minn. Nov. 23, 2010).  The court determined that Minnesota's law on punitive damages, including that the issue be bifurcated from the liability phase of trial, constituted substantive law binding upon it under *Erie*. As part of its rationale the court held that the Minnesota statutory scheme did not actually conflict with Rule 42(b) and that failure to apply state law would promote forum shopping contrary to the goals of *Erie*:

> As a result of a finding of no direct conflict, the next step for the Court is to determine if the federal law would promote forum shopping or offend equal protection principles. As in *Kuehn*, "[w]hen faced with the choice between a forum which applies the [punitive damages statute] and one which does not, a party might well choose the latter because it provides a tactical, though non-dispositive, advantage." *Id*. at 235. Specifically, ***if presented a choice to file where bifurcation is not mandatory, a plaintiff might chose to file suit in a Minnesota federal court in order to strengthen the case for compensatory damages with evidence regarding a punitive damages claim—evidence which would be initially excluded in a bifurcated proceeding in state court.*** "In the court's view, this variation is substantial enough to influence forum choice and, under *Erie*, must be eliminated by applying [the punitive damages statute] in this federal diversity action." *Id*. Thus, for the reasons aptly explained in *Kuehn*, the Court declines to apply the federal law. Moreover, since this Court has already determined that the punitive damages statute applies in this case, it would be discordant to not apply the statute in its entirety given the manner in which the two statutes complement each other. Therefore, the Court holds that Minnesota Statute § 549.20 controls and the punitive damages portion of the case must be determined in a separate proceeding.

*Id*. at *2 (citing *Kuehn v. Shelcore, Inc.*, 686 F. Supp. 233 (D. Minn. 1988)).  *See also In re USA*

9

*Commerical Mortg. Co.*, 2010 WL 4702341, at *2 (D. Nev. Nov. 12, 2010) ("Plaintiffs respond that Nevada's bifurcated punitive-damages procedure should not be used because it is procedural, not substantive, under *Erie*. The Court finds that the bifurcation statute protects defendants' substantive rights to have liability determined untainted by the prejudice that evidence of wealth can produce. There does not appear to be any federal rule in conflict with the bifurcation statute. Federal Rule of Civil Procedure 42(b) permits the Court to bifurcate trials generally for convenience, to avoid prejudice, or to economize, but the rule does not specifically touch on punitive damages. It certainly does not require that the amount of punitive damages be determined in the same phase of a trial as liability."); *Rotello v. Clayton Homes of Del., Inc.*, 2006 WL 842931, at *1 (E.D. Tenn. March 28, 2006) ("Although the question of bifurcation is a matter of federal law, *see* Fed.R.Civ.P. 42(b), the substantive law of the punitive damages at issue in this case is a matter of state law. [ ] [T]he Court finds that a single trial including both liability for and amount of punitive damages would be unduly prejudicial to incorporated defendants and potentially confusing to the jury."); *Werner v. Bell Family Medical Center, Inc.*, 2012 WL 1514872, at *4 (M.D. Tenn. May 1, 2012) ("Although the question of bifurcation is a matter of federal law ... the substantive law of the punitive damages at issue in this case is a matter of state law.").

The substantive and evidentiary nature of Ohio law is further underscored by Section 2307.80, which on its face is to be read in conjunction with Section 2315.21 in product liability cases. *See* Ohio Revised Code Section 2307.80(E) ("The bifurcated trial provisions of division (B) of section 2315.21 of the Revised Code . . . apply to awards of punitive or exemplary damages under this section."). Section 2307.80 requires that following the punitive damages phase of the trial, if the jury determined punitive damages should be awarded, the court weighs specific types of evidence introduced during that phase to determine the amount of any punitive damages award. As

1840111

discussed above, the fact that the statute directly controls evidence permitted with regard to damages renders it substantive and not merely procedural.  Because it is substantive and does not directly conflict with Rule 42(b), controlling authority compels that Sections 2315.21 and 2307.80 be applied here.

### III.    Alternatively, Bifurcation Is Appropriate Under Federal Rule of Civil Procedure 42(b).

Even if this Court were to conclude that Rule 42(b) controls, as noted above the Rule is discretionary and does not inherently conflict with Section 2315.21.  As such, this Court can apply Rule 42(b) in harmony with Ohio state law concerns regarding prejudice to a defendant.  Both applying Section 2315.21 and the bifurcation statutes of other states, numerous federal courts have ruled that the aims of those laws and Rule 42(b) are concurrently satisfied by bifurcation.  *See e.g. Retail Ventures*, 2010 WL 11538538, at *2 (after applying Section 2315.21, holding further that "under Fed. R. Civ. P. 42, the Court also finds in its discretion that bifurcation is warranted. The factors balance in favor of bifurcation. In particular, the prejudice prong weighs heavily in favor of bifurcation as Defendant would be prejudiced if it is required to defend Plaintiffs' claim for bad faith at the same time it defends Plaintiffs' claim for punitive damages."); *Moore*, 2011 WL 13202959 at *6 (also holding that the considerations underlying Section 2315.21 also satisfy Rule 42(b); *In re Levaquin Products Liability Litigation*, 2010 WL 4867588, at *2 ("In the alternative [to the Minnesota bifurcation statute], if federal procedural law controls, the Court exercises its discretion to bifurcate the punitive damages claims since bifurcation is appropriate to avoid any potential prejudice.").

Strictly looking to Rule 42(b) leads to the same conclusion.  "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues...." Fed.R.Civ.P. 42(b). Because the Rule is in the disjunctive, any or all of these

considerations warrant bifurcation.  In considering the issue, courts should consider the interests of judicial economy and of avoiding confusion.  *Koch Fuels v. Cargo of 13,000 Barrels of No. 2 Oil*, 704 F.2d 1038, 1042 (8th Cir.1983).  The decision to bifurcate the punitive damages phase of a trial is within the sound discretion of the trial court. *Thorne v. Welk, Inc.*, 197 F.3d 1205, 1213–14 (8th Cir.1999).

Numerous federal courts within the 8th Circuit have held that bifurcating the punitive damages portion of a trial, even without regard to underlying state law, is appropriate and advances these principles.  That includes this Court's holding in *Bliss v. BNSF Ry. Co.*, 2013 WL 5570231, at *18 (D. Neb. Oct. 9, 2013) ("the court concludes that in this case, the punitive damages issue will be tried if, and after, the jury finds the Railroad liable under the FRSA.").  *See also Parsons v. First Investors Corp.*, 122 F.3d 525, 529 (8th Cir. 1997) ("because the trial was bifurcated, there is no risk that the liability and compensatory damages determination was affected by counsel's remark"); *Lin v. Darren Beavers, Hi-Tech Testing Service, Inc.*, 2009 WL 361247, at *1 (W.D. Ark. Jan. 30, 2009) (introduction of punitive damages evidence during liability stage of trial would be "prejudicial" to the defendant and "confusing" to jurors); *Chism v. CNH America LLC*, 2009 WL 890523 (E.D. Ark. March 30, 2009) ("a bifurcation of the issues would prevent any prejudice on the liability and compensatory damages phase from evidence admitted during the punitive damage phase.  In this case, bifurcation of liability and compensatory damages issues from the punitive damages issue would prevent prejudice and comport with Arkansas law."); *North Dakota Fair Housing Council, Inc. v. Allen*, 298 F. Supp. 2d 897, 899 (D.N.D. 2004) (punitive damages evidence "can have an adverse effect on jury deliberations concerning liability and compensatory damages. Therefore, the request for bifurcation of the punitive damage claim is GRANTED."); *C.C. through Ginnever v. Suzuki Manufacturing of America Corporation*, 2018 WL 4504687, at *3 (E.D.

12

1840111

Mo. Sept. 20, 2018) ("This motion will be granted. The trial will be conducted in two phases. In the first phase, evidence of liability of Defendants for Plaintiff's claims and compensatory damages as well will be introduced. Punitive damages must not be mentioned in the first phase of the trial except for one question in voir dire, which has already been given to counsel. The second phase will address evidence on the issue of whether punitive damages should be granted and the amount of damages, if any."); *Jones v. Cargill, Inc.*, 490 F. Supp. 2d 978, 988 (N.D. Iowa 2007); *Marchionda v. John Q. Hammons Hotels Management, LLC*, 2018 WL 8458879, at *2 (S.D. Iowa Dec. 31, 2018); and *Gardner v. Continental Casualty Company*, 2015 WL 11216699, at *1-2 (E.D. Ark. March 18, 2015).

The Court should exercise its discretion consistent with these decisions if it determines it is not bound by Ohio's comprehensive punitive damages scheme.  First, the risk for prejudice to Goodyear is manifest with, in turn, no potential risk of prejudice to Plaintiffs.  As noted above, whether applied directly to control, or merely considered analytically under Ohio law, Sections 2315.21 and 2307.80 and the Ohio Supreme Court's decision in *Havel* illustrate that Ohio determined that the risk and realization of prejudice to a defendant under Ohio's punitive damages law is manifest.  Additionally, as noted above, many courts within the 8th Circuit, including this Court and the 8th Circuit itself, have determined that bifurcation of punitive damages evidence removes the obvious risk of prejudice to a defendant.  Because the Rule 42(b) bifurcation analysis is disjunctive, this alone warrants bifurcation.

Second, the efficiencies of bifurcation here are many, as are the practical risks of jury confusion in an already complex case.  The jury instructions would be complex and unnecessarily confusing absent bifurcation as all manner of instructions setting forth disparate burdens applicable

to punitive damages relative to standard liability would need to be included,[3] as well as comprehensive limiting instructions to assure that the jury does not apply evidence relevant to punitive damages under Section 2307.80 to a determination on liability and compensatory damages. Further, Plaintiffs' argument that the trial process would be delayed and cannot be concluded in ten (10) trial days is self-serving speculation.  As numerous cases have held, a bifurcated trial can easily, and immediately proceed with the same jury assuming the jury returns a liability finding to begin with.  *See Werner v. Bell Family Medical Center, Inc.*, 2012 WL 1514872, at *4 ("To avoid delaying the resolution of this case, the parties should be prepared to proceed with the punitive damages phase, if necessary, immediately following the jury verdict."); *Lin*, 2009 WL 361247, at *1 ("the case will immediately move into the second phase of the trial to address the punitive damages claim"); *Marchionda*, 2018 WL 8458879, at *2 ("the punitive damages stage of the bifurcated proceeding will commence before the same jury");  *North Dakota Fair Housing Council, Inc.*, 298 F. Supp. 2d at 899 ("the case will move into the second phase of the trial to address the punitive damage claim utilizing the same jury panel."); and *Cline v. 7-Eleven, Inc.*, 2012 WL 5471761, at *5 (N.D. West Va. Nov. 9, 2012) ("Only if the third inquiry is answered in the affirmative will the trial enter a second phase, in which the same jury will hear evidence regarding the quantum of punitive damages to be awarded.").  This raises another obvious point of efficiency that if the jury does not return a liability verdict for Plaintiffs, greater efficiency is achieved by virtue of the punitive damages aspect of the case being extracted in its entirety.

Lastly, Plaintiffs' concern that evidence going to prejudice may be wrongly excluded from the liability phase of trial is unfounded.  Section 2315.21(B)(1)(a) provides that the evidence to be excluded is that which "relates solely to the issue of whether the plaintiff is entitled to recover

---

[3] Under 2315.21(D(4) the burden on the punitive damages phase of the case is "clear and convincing evidence."

punitive or exemplary damages."  If there is legitimate "cross-over" evidence, rather than Trojan Horse inflammatory evidence not pertinent to the Plaintiffs' burden of proof on its prima facie case, the Court will make those decisions at trial with the guidance of Section 2307.80.   Further, if such cross-over evidence is admitted, the parties can stipulate to that evidence as part of the second phase of trial thereby ensuring a streamlined efficient process.

## CONCLUSION

Plaintiffs previously advocated that Ohio law govern punitive damages in this case.  But what Plaintiffs really want is just "punitive damages."  They object to the rest of Ohio's substantive law that accompanies the right to seek punitive.  Put another way, it is a qualified right.  Plaintiffs desire the right, but reject the qualifications.  Plaintiffs' selective approach is unjust in application and inconsistent with properly decided decisional law.  This Court should reject Plaintiffs' argument and adhere to the integrated statutory damages scheme set forth in Sections 2315.21 and 2307.80.  Alternatively, or in addition, the Court should order bifurcation under Rule 42(b), which so many other courts have done in the 8th Circuit in similar circumstances.

1840111

GREENSFELDER, HEMKER & GALE, P.C.

By:   /s/ Edward S. Bott, Jr.
Edward S. Bott, Jr.
Clark W. Hedger
Juliane M. Rodriguez
10 South Broadway, Suite 2000
St. Louis, MO  63102
(314) 241-9090
Fax:  (314) 345-5465
esb@greensfelder.com
ch1@greensfelder.com
jrodriguez@greensfelder.com

AND

BAIRD HOLM LLP
Jennifer D. Tricker (NE# 23022)
1700 Farnam Street, Suite 1500
Omaha, NE  68102-2068
(402) 344-0500
jtricker@bairdholm.com

*Attorneys for The Goodyear Tire & Rubber Company*

1840111

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with NECivR 7.1(d)(3) and further certify that the word count function was applied to include all text, including the caption, headings, footnotes, and quotations.  This document was prepared using Microsoft Word 2010 and contains 5,094 words.

<u>       /s/ Edward S. Bott, Jr.              </u>

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed with the Clerk of the Court and served upon all attorneys of record using the CM/ECF system this 18th day of February, 2020.

Kyle W. Farrar
KASTER, LYNCH, FARRAR & BALL, LLP
1117 Herkimer St.
Houston, TX 77008
kyle@fbtrial.com

Paul E. Godlewski
SCHWEBEL, GOETZ & SIEBEN, P.A.
80 South 8th Center
5120 IDS Center
Minneapolis, MN 54402
pgodlewski@schwebel.com

Michael F. Coyle
FRASER, STRYKER LAW FIRM
409 South 17th Street
Suite 500, Energy Plaza
Omaha, NE 68102
mcoyle@fraserstryker.com

*Attorneys for Plaintiffs*

<u>       /s/ Edward S. Bott, Jr.              </u>

17