*EXHIBIT H*

# In the Matter of:

*Rysta Leona Susman, et al.*
*vs.*
*The Goodyear Tire & Rubber Company*

_____

*David Roy Southwell*
*March 28, 2019*

_____



**epiq**
Court Reporting Solutions

Chicago, IL • 312.386.2000 • 800.868.0061

David Roy Southwell - 3/28/2019

29

1              Do you have any opinion as to how long, in
2     terms of -- of days or weeks or whatever it would have
3     been from the time the initiation in this location began
4     to the date of the accident?
5          A.   No.  Again, I can't be definitive about that.
6          Q.   So you have no opinion --
7          A.   No.
8          Q.   -- correct?
9          A.   Yes.
10         Q.   I did that kind of double negative thing you
11    know that we all do periodically, so ...
12              Okay.  With regard to nylon overall, do
13    you agree that nylon overlays do not prevent tread
14    detachments?
15         A.   That's a pretty big question.
16         Q.   Seemed pretty simple to me.
17         A.   That's because you don't know a lot about tires
18    just quite honestly, and I didn't mean that in any -- any
19    derogatory way.
20              You can make a tire separate regardless of
21    its design and its manufacture.
22         Q.   Uh-huh.
23         A.   If you're talking about a population of tires,
24    if you take two populations of tires of identical design
25    with the exception of nylon overlay, the incidence of

David Roy Southwell - 3/28/2019

30

1  separations in the market in the population of tires with
2  known overlay will be dramatically less than the
3  incidence of separations in the population of tires
4  without nylon overlay.  That's the best way I can answer
5  your question.
6       Q.   Well, I thought you told me earlier, in
7  response to some of my questions regarding the
8  contributing factors that you had, is that they all
9  combined together to cause this separation on this day?
10      A.   That's correct.
11      Q.   One of those factors was the use of a nylon
12 component to -- to restrict the -- the tire, right?
13 The -- the growth of the tire?
14      A.   Well --
15      Q.   It's a bad question.  Let me clean it up.
16           One of those components in your theory on
17 causation is a nylon overlay, true?
18      A.   The absence of a nylon overlay.
19      Q.   Correct.  Correct.  Yes?
20      A.   Yes.
21      Q.   And so you answered to me earlier, as I
22 understood it, that if you took one of those components
23 out of the question, that the failure would still have
24 happened as it did, just later on down the road?
25      A.   And quite possibly after the tread had worn

David Roy Southwell - 3/28/2019

53

1  would say it did not meet the state of the art?
2       A.   Yes.
3       Q.   And so, then, if -- if there was any tire, Load
4  Range E tire manufactured and sold here in North America
5  in 1994 that was not equipped with a nylon overlay, would
6  that tire, in your judgment, be unreasonably dangerous?
7       A.   No, not necessarily.
8       Q.   Okay.  So you can have a Load Range E tire
9  without a nylon overlay, and that tire can still be
10 reasonably safe, true?
11      A.   Subject to all the other parameters of the
12 tire, yes.
13      Q.   What does that mean, "subject to all the other
14 parameters of the tire"?
15      A.   Well, nylon overlay will, as I've said,
16 dramatically reduce the incidence of belt separations in
17 the population of tires.  That doesn't mean that every
18 population of tires without a nylon overlay is going to
19 have a high incidence of separation, because there are
20 other parameters in the -- in the design of the tire
21 that -- that will affect its susceptibility to -- to belt
22 failures.
23      Q.   Okay.  So we agree, though, that depending upon
24 the other design and manufacturing parameters of the
25 tire, a Load Range E tire, that the absence of a nylon

```
 1                    CERTIFICATE OF REPORTER

 2    STATE OF ARIZONA   )
                         )   ss:
 3    COUNTY OF PIMA     )

 4
              I, Sandra Marruffo, a Certified Reporter in
 5    the State of Arizona, do certify that the foregoing
      deposition was taken March 28, 2019, before me in the
 6    County of Pima, State of Arizona; that an oath or
      affirmation was duly administered by me to the witness,
 7    DAVID ROY SOUTHWELL, pursuant to A.R.S. 41-324(B); that
      the proceedings were taken down by me in shorthand and
 8    thereafter reduced to typewriting; that the transcript is
      a full, true, and accurate record of the proceedings, all
 9    done to the best of my skill and ability; that the
      preparation, production and distribution of the
10    transcript and copies of the transcript comply with the
      Arizona Revised Statutes and in ACJA 7-206(F)(3); ACJA
11    7-206 J(1)(g)(1) and (2); and ACJA 7-206 J(3)(b).
              The witness herein, DAVID ROY SOUTHWELL, requested
12    transcript review and signature.
              I FURTHER CERTIFY that I am in no way related
13    to any of the parties nor am I in any way interested in
      the outcome hereof.
14            IN WITNESS WHEREOF, I have set my hand in my
      office in the County of Pima, State of Arizona, this 5th
15    day of April 2019.
```

*Sandra Marruffo*

SANDRA MARRUFFO Arizona CR No. 50815