# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RYSTA LEONA SUSMAN, both individually and as Legal Guardian of SHANE ALLEN LOVELAND, et al., <br><br>Plaintiffs, <br><br>v. <br><br>THE GOODYEAR TIRE & RUBBER COMPANY, <br><br>Defendant. | Case No. 8:18-cv-00127 |

## GOODYEAR'S MEMORANDUM IN SUPPORT OF ITS MOTION TO PRECLUDE PLAINTIFFS' PURPORTED TIRE FAILURE EXPERT, DAVID SOUTHWELL, FROM OFFERING OPINIONS FIRST DISCLOSED IN HIS MARCH 4, 2020 SECOND SUPPLEMENTAL EXPERT REPORT AT TRIAL

The Goodyear Tire & Rubber Company ("Goodyear"), by its attorneys, hereby submits this Memorandum in Support of its Motion to Preclude Plaintiffs' Purported Tire Failure Expert, David Southwell, from Offering Opinions First Disclosed in his March 4, 2020 Second Supplemental Expert Report at Trial:

### INTRODUCTION[1]

On March 4, 2020, Plaintiffs served the Second Supplemental Expert Report of their purported tire failure expert, David Southwell. In this Report—filed nearly 12 months after Plaintiffs' March 14, 2019 deadline to serve their expert reports—Mr. Southwell opines that 3,300 separate tire failures identified in claims files Goodyear produced in discovery are substantially similar to the accident and tire failure at issue here, and thus demonstrate the existence of a defect in the Subject Tire.

---

[1] In this Memorandum, the term "Subject Tire" refers to LT235/85R16 Goodyear Wrangler HT Tires generally. The term "Tire at Issue" refers specifically to the Tire that was mounted on the truck involved in the accident, and which suffered the tread detachment which has given rise to this lawsuit.

The Court should bar Mr. Southwell from offering these opinions at trial for two reasons. First, Mr. Southwell's opinions on substantial similarity do not meet the threshold for admissibility established in this Court's March 5, 2020 Memorandum and Order disposing of the parties' Motions in Limine. Namely, Mr. Southwell's substantial similarity opinions do not relate only to LT235/85R16 Wrangler HT tires and do not account for the speed of the vehicle at issue in each of the 3,300 incidents, and are thereby inadmissible per the Court's Order.

Second, the Court should preclude introduction of Mr. Southwell's belatedly-disclosed opinions pursuant to Federal Rule of Civil Procedure 37 as a sanction for Plaintiffs' failure to comply with their disclosure obligations under Federal Rule of Civil Procedure 26 and this Court's Final Progression Order. Plaintiffs did not seek leave to serve Mr. Southwell's Second Supplemental Report out of time, and have offered no justification for their belated disclosure. Lest there be any doubt, Plaintiffs' belated disclosure is wholly unjustified. Goodyear produced information from which Mr. Southwell drew his opinions on June 27, 2019—more than 250 days before Plaintiffs served Mr. Southwell's Second Supplemental Report, and had produced some of this information as far back as August 2018. Plaintiffs had plenty of time to procure and serve Mr. Southwell's opinions at issue more than 13 days before trial but opted not to do so, opted not to seek relief from the Court for their extremely belated disclosures, and instead sprung these opinions on Goodyear 13 days before trial.

If Plaintiffs are allowed to offer Mr. Southwell's belatedly-disclosed opinions at trial (assuming he comes forward with additional evidence of the speed of the vehicles at issue, and narrows his opinions accordingly, or his opinions otherwise come in at trial), Goodyear will be substantially and irredeemably prejudiced. Allowing Mr. Southwell's opinions to be introduced at trial will not, therefore, be "harmless" to Goodyear. Again, trial starts in 11 days. This will not

1844090

give Goodyear enough time to have its own expert conduct a review of the information collected and submit his own supplemental expert report on the inferences properly drawn, if any, from any OSI evidence that Plaintiffs are allowed to introduce at trial.

## RELEVANT FACTUAL BACKGROUND

**I.     The Court's Progression Orders and Plaintiffs' Service Of Mr. Southwell's Expert Reports.**

Judge Bazis entered her Order Setting Final Schedule for Progression of Case on October 10, 2018. (ECF No. 77.) In this Order, Judge Bazis set March 14, 2019 as Plaintiffs' deadline to serve their expert reports. (ECF No. 77 at 2.) Per the express terms of this Order, "[a]ll requests for changes of deadlines or settings . . . shall be directed to the assigned magistrate judge by appropriate motion." (*Id.* at 4.) No such motion "shall . . . be considered in the absence of a showing by counsel of due diligence in the timely development of the case for trial and the recent development of circumstances, unanticipated prior to the filing of the motion, which require that additional time be allowed." (*Id.*)

Here, Plaintiffs produced Mr. Southwell's Expert Report on March 14, 2019; they produced Mr. Southwell's First Supplemental Expert Report on June 24, 2019; and they produced Mr. Southwell's Second Supplemental Expert Report on March 4, 2020. (Mr. Southwell's Second Supplemental Report, along with the two exhibits to that Report, are attached as Exhibit A.)

Plaintiffs did not move for leave to file either of Mr. Southwell's belated Supplemental Reports. Plaintiffs have not otherwise attempted to demonstrate their due diligence to justify their gross departures from the Final Progression Order, an absolute prerequisite to any modification of the Order per its express terms.

1844090

**II.     Plaintiffs' Discovery Requests And Goodyear's Production Of Claims Reports, Claim Files, and Related Documents.**

    **A.     Plaintiffs' First Request For Production And Goodyear's Document Production.**

Goodyear served its Objections and Responses to Plaintiffs' First Request for Production of Documents on August 27, 2018. (GY's Obj. Resp. P's 1st RFP, attached as Exhibit B.) In response to Request No. 2, Goodyear produced a 751-page spreadsheet that identified more than 20 categories of information about Goodyear Load Range E tires that were the subject of crash/incident reports, subrogation claims, property damages claims, and personal injury claims between 1990 and late 2000. (An exemplar page of this spreadsheet is attached as Exhibit C.)

Among the categories of information included on this spreadsheet were (1) each tire's Department of Transportation ("DOT") number; (2) each tire's size; (3) the type of failure at issue; and (4) the tire's load range. (*See* Ex. C.) As explained in more detail below, these are the only four categories of information upon which Mr. Southwell relied in coming to his conclusions on the purported substantial similarity among tires involved in the 3,300 other claims, and the Subject Tire and accident; he did not actually review the 180,000 pages of claims file documents Goodyear has produced to Plaintiffs. (Southwell Sec. Supp. Rep., Ex. A., at 2.)

A comparison of the claims identified on the spreadsheet Goodyear produced on August 27, 2018, and the claims files identified in the Exhibits to Mr. Southwell's Second Supplemental Report reveals that many claims identified in Mr. Southwell's new Report were identified on the August 27, 2018 spreadsheet. Thus, Plaintiffs had information from which Mr. Southwell could have offered substantial similarity opinions nearly two years before Plaintiffs' belated disclosure of Mr. Southwell's Second Supplemental Expert Report.

**B.     Plaintiffs' Second Request For Production, Plaintiffs' Motion to Compel, The Court's Rulings, and Goodyear's Document Productions.**

In Request No. 3 in Plaintiffs' Second Request for Production, served on February 8, 2019, Plaintiffs sought production of "all claims files for Goodyear LRE Light Truck Tires from 1985-2000." Goodyear objected to this Request in its Response, served on March 11, 2019. (GY's Obj. Resp. P's 2nd RFP, attached as Exhibit D.)

Plaintiffs brought the parties' dispute over Goodyear's objections to Request No. 3 to Judge Bazis's attention, and she held a telephonic hearing to discuss the issue on June 18, 2019. Following this hearing, and per Judge Bazis's order, Goodyear provided a 175-page spreadsheet which contained claims data on LT235/85R16 load range E tires built between 1992 and 1998. (A copy of Mr. Bott's June 27, 2019 cover letter together with an exemplar page from the spreadsheet attached to this letter are attached as Exhibit E.) Like the spreadsheet Goodyear produced almost a year earlier, this spreadsheet provided more than 20 categories of information about the claims/incidents at issue, including each of the four pieces of information Mr. Southwell relied upon in his Second Supplemental Expert Report to reach his conclusions about substantial similarity: (1) each tire's Department of Transportation ("DOT") number; (2) each tire's size; (3) the type of failure at issue; and (4) the tire's load range. (*See id.* at 3.) Thus, by June 27, 2019, Mr. Southwell had the information he needed to offer his substantial similarity opinions.

Nevertheless, the new spreadsheets Goodyear produced on June 27, 2019 did not satisfy Plaintiffs' concerns, and the parties formally briefed their dispute on Plaintiffs' Motion to Compel, which was filed on July 12, 2019. (ECF Nos. 94, 96, 99.) Judge Bazis's granted Plaintiffs' Motion to Compel on October 7, 2019, and ordered Goodyear to produce claims files concerning tread separation failures in Load Range E tires from 1992 to 1998. (ECF No. 135.)

Over the next four weeks, Goodyear worked tirelessly to make its production, retrieving

5

1844090

approximately 475 boxes of claims files from offsite storage and reviewing the files in each box, one by one, to identify and collect claims that were responsive to the Judge Bazis's Order. Contrary to Mr. Southwell's editorializing in his Second Supplementary Report, Goodyear did not engage in, or make a late production. Rather, as Plaintiffs well know, on November 4, 2019, Goodyear made more than 70 boxes of claims files available for Plaintiffs' review to determine which portions of the files they wanted copied. (ECF No. 253-1, 10.29.2019 Letter from E. Bott to K. Farrar.) As Goodyear explained to Plaintiffs, the sheer volume of physical files coupled with the fact that the files contained former claimants and/or plaintiffs' confidential personal and/or health information made a blanket production impracticable. (ECF No. 253-2, 10.25.2019 Letter from E. Bott to K. Farrar.)

On November 4 and 5, 2019, Plaintiffs' counsel performed a partial review of approximately six to eight boxes over the course of a few hours both days. (ECF No. 253-3, 11.7.2019 Letter from E. Bott to K. Farrar.) Shortly after this review, Plaintiffs decided they wanted the files copied in their entirety, and Plaintiffs and Goodyear agreed the files would be made available to a copy service selected by Plaintiffs on a rolling basis. The parties arranged for Plaintiffs' copy service to pick up the first ten boxes as a test case to confirm the copy service could do an adequate job and return the files in their current condition. (ECF No. 253-4, 11.12.19 to 11.14.19 Emails between E. Bott, K. Farrar, A. Groppe, and D. Muscato.) The copying of the first ten boxes began on November 19, 2019, as scheduled by Plaintiffs. (*Id.*)

Since November 2019, Plaintiffs have copied 96 boxes containing approximately 4,600 claims files (GY_Claims_0000001-GY_Claims_0181840), including all of the claims files involving a LT235/85R16 Load Range E tire that Goodyear located. After the first ten boxes were copied and returned in adequate condition, Goodyear agreed to increase the volume of boxes

6

copied at once. Plaintiffs elected to pick up twenty boxes at a time from that point forward. (ECF No. 253-5–253-7, 12.2.19 to 12.4.19, 12.13.19, and 1.6.20 Emails between A. Groppe and D. Muscato.) Over the past four months, Goodyear has made the claims files available for Plaintiffs, and the volume of boxes and pace at which the boxes were collected and copied were within the Plaintiffs' control, not Goodyear's.

### III. Mr. Southwell's Second Supplemental Expert Report

In his Second Supplemental Report, Mr. Southwell explains that he reviewed a summary of Goodyear's claims files—presumably prepared by Plaintiffs' counsel's office, but it's not clear—which contained "the information that was necessary for [his] analysis of whether the other failures are substantially similar to the failed tire in [this] matter." (Southwell Sec. Supp. Rep., Ex. A., at 2.) Mr. Southwell contends he needed only four pieces of information to render opinions on substantial similarity between the Tire at Issue and subject accident on the one hand, and the other claims on the other hand: for each tire at issue (1) the DOT number; (2) tire size; (3) type of failure; and (4) load range. (*Id.* at 2.) By his own admission, Mr. Southwell did not actually review any of the claims files Goodyear produced. Thus, Southwell had the information necessary to reach his conclusions by June 27, 2019 at the latest, if not on August 27, 2018.

## ARGUMENT

### I. The Court Should Preclude Mr. Southwell From Offering Any Opinion Regarding Other Similar Incidents At Trial Because He Has Not Established Substantial Similarity Of Any Other Incident Consistent With This Court's March 5, 2020 Rulings On The Parties' Motion In Limine.

On March 5, 2020, in the Court's Order ruling on the parties' Motions in Limine, the Court ruled that, for any incident to be considered substantially similar—and thus for evidence of the incident to be admissible at trial—the incident must involve (1) a LT235/85R16 Goodyear Wrangler HT tire manufactured between 1992 and 1998 that (2) experienced a partial or complete

7

1844090

tread separation on (3) a vehicle that was traveling between 70 and 80 miles per hour. (ECF No. 263 at 4- 5.) "All other evidence of similar incidents will be excluded." (*Id.* at 5.)

Here, Mr. Southwell's substantial similarity opinions in his Second Supplemental Expert Report do not reference the speed of the vehicle at issue with respect to any of the 3,300 purportedly substantially similar incidents. Moreover, many of the claims do not involve the LT235/85R16 Wrangler HT tire. Thus, by virtue of this Court's March 5, 2020 Order, and the fact that Plaintiffs bear the burden of demonstrating substantial similarity, *e.g.*, *Hale v. Firestone Tire & Rubber Co.,* 756 F.2d 1322, 1332 (8th Cir. 1985), Mr. Southwell's opinions are per se irrelevant, and must be excluded from evidence at trial.

**II.     The Court Should Preclude Mr. Southwell From Offering Any Opinion From His Second Supplemental Expert Report Under Federal Rule of Civil Procedure 37 As A Sanction For Plaintiffs' Failure To Comply With Rule 26(a) and The Court's Final Progression Order.**

Rule 26(a)(2) governs the mandatory disclosure of expert testimony. Under this Rule, each party must disclose the identity of any expert witness that it may use at trial, along with a detailed written report prepared and signed by the witness, by the date ordered by the court. Fed. R. Civ. P. 26(a)(2)(D). Each written report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i).

If a party does not satisfy Rule 26(a)(2)'s disclosure requirements, or, more specifically, the disclosure requirements set forth in a progression or scheduling order, the undisclosed expert or information is excluded under Rule 37(a) unless the failure was substantially justified or harmless. *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 703 (8th Cir. 2018). This is a "self-executing sanction for failure to make a disclosure as required by Rule 26(a), without need for a motion" for sanctions. *Id*. (quoting Rule 37 Advisory Committee Notes, 1993 Amendments). If a party fails to supplement an expert report, a court may order appropriate

8

sanctions, including the exclusion of the testimony, a continuance of the trial to allow depositions to be taken, or the grant of a new trial. *Tenbarge v. Ames Taping Tool Sys., Inc.*, 190 F.3d 862, 865 (8th Cir. 1999).

In determining what remedy to impose for a party's failure to comply with Rule 26, a court should consider "the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Meyer v. Currie Tech Corp.*, 329 F.R.D. 228, 232 (D. Neb. 2018) (quoting *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008)).

Here, every factor for the Court's consideration counsels in favor of barring Mr. Southwell's recently-disclosed opinions at trial. First, despite references to a "late production," Mr. Southwell had the information he needed to reach his opinions in August 2018 or, at the latest, June 27, 2019. While Plaintiffs put Goodyear to the extraordinary expense of identifying, collecting, and reviewing hundreds of boxes of information, their expert didn't actually use any of this information in reaching his conclusions. Moreover, Plaintiffs' failure to seek leave for their belated disclosures militates in favor of exclusion. *See Beckon Int'l, Inc. v. Amco Ins. Co.*, No. 4:07CV2074 JCH, 2012 WL 12520866, at *2 (E.D. Mo. Apr. 2, 2012) (excluding belatedly-disclosed report while noting, among other things, that the defendant could have sought an extension of the deadlines, but opted not to do so).

Second, Goodyear will be severely prejudiced if the Court permits Mr. Southwell to offer these opinions at trial. Trial starts in 11 days. To rebut Mr. Southwell's opinions (or whatever subsequent iteration of his opinions may ultimately deemed to be admissible), Goodyear's outside tire failure expert, Joe Grant, will need to review the claims files for the additional details that bear on the issue of substantial similarity. Even if a subsequent iteration of Mr. Southwell's opinions is

9

deemed to meet the threshold for admissibility set in the Court's March 5, 2020 Order, Goodyear would still need to develop factual information and expert opinions to rebut the notion that a jury could infer a defect from incidents deemed substantially similar.

Here's why: Mr. Southwell's substantial similarity opinions rest on the premise that a tire failure, in and of itself, is sufficient to demonstrate the existence of a defect. This position is irreconcilable, however, with admissions Mr. Southwell made in his deposition: that nylon overlays (the absence of which serves as the basis for Plaintiffs' claim of a defect in the Tire at Issue) do not prevent tread separations. (Tr. 3.28.19 Deposition of David Southwell, attached as Exhibit F, at 29:12-30:5; 53:3-22). Mr. Southwell similarly admitted that tires sometimes fail for reasons other than a defect—e.g., improper use (e.g., overdeflected operation resulting from too little air in the tire, or too much weight), cuts in the tire, and road hazard impacts, among others. (*Id.* at 111:21-115:19) If the jury takes Mr. Southwell at his word, then by his own admission, more information is necessary for a jury to conclude that another incident is indicative of a defect in the Tire at Issue. This information must come from Goodyear's outside expert, and 11 days is not sufficient time for him to create and submit a supplemental expert report of his own, and thus Goodyear will be unfairly prejudiced if Mr. Southwell's new opinions come in at trial. *See Emerson Elec. Co. v. Suzhou Cleva Elec. Appliance Co.*, No. 4:13-CV-01043 SPM, 2015 WL 2176964, at *2 (E.D. Mo. May 8, 2015) (recognizing that late disclosures prejudice the opposing party by limiting opportunities for effective cross examination of the late-disclosed expert opinions and limiting the ability of the non-disclosing party's experts to review and rebut these opinions through further work.)

Third, allowing Mr. Southwell's opinions into evidence will severely disrupt the flow, and meaningfully extend the length, of the trial. Goodyear will be forced to rebut the similarity of over

10

3,000 claims (or whatever subset of these claims ultimately meets the Court's admissibility criteria) through cross examination of Mr. Southwell, and through the direct examination of other witnesses. While some of this information can be presented through summaries contemplated by Federal Rule of Evidence 1006 or other demonstrative exhibits, the process of presenting this information to the jury will be cumbersome, confuse the issues, and unfairly prejudice Goodyear. *See Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 706 (8th Cir. 2018) (recognizing that the "the burdens on parties who are not adequately appraised [sic] of an opposing party's expert's . . . expected testimony are also real and costly").

Last, the opinions Mr. Southwell intends to offer are not critical to Plaintiffs' case, which is about whether one particular tire, the Tire at Issue, is defective. Plaintiffs have an expert to testify about the existence of this defect, and the additional information they wish to offer, is, on their very best day, marginal circumstantial evidence of a defect. Plaintiffs' case stands or falls on the purported defect of the Tire at Issue, not whether 3,300 other tires were defective. This is yet another consideration that weighs strongly in favor of the exclusion of his Second Supplemental Expert Report. *Meyer*, 329 F.R.D. at 233 (excluding belatedly-disclosed expert report because, among other reasons, the testimony would be offered to prove a point which other evidence may or would be presented to the jury).

Taken together, these considerations demand the exclusion of Mr. Southwell's belatedly-disclosed opinions at trial.

## **CONCLUSION**

For each of the foregoing reasons, the Court should bar Mr. Southwell from introducing any opinions contained in his Second Supplemental Expert Report.

11

GREENSFELDER, HEMKER & GALE, P.C.

By:    /s/ Edward S. Bott, Jr.
Edward S. Bott, Jr.
Clark W. Hedger
Robert L. Duckels
10 South Broadway, Suite 2000
St. Louis, MO 63102
(314) 241-9090
Fax: (314) 345-5465
esb@greensfelder.com
ch1@greensfelder.com
rld@greensfelder.com

AND

BAIRD HOLM LLP
Jennifer D. Tricker (NE# 23022)
1700 Farnam Street, Suite 1500
Omaha, NE 68102-2068
(402) 344-0500
jtricker@bairdholm.com

*Attorneys for The Goodyear Tire & Rubber Company*

12

1844090

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with NECivR 7.1(d)(3) and further certify that the word count function was applied to include all text, including the caption, headings, footnotes, and quotations. This document was prepared using Microsoft Word 2010 and contains 3,645 words.

/s/ Edward S. Bott, Jr.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed with the Clerk of the Court and served upon all attorneys of record using the CM/ECF system this 6th day of March, 2020.

Kyle W. Farrar
KASTER, LYNCH, FARRAR & BALL, LLP
1117 Herkimer St.
Houston, TX 77008
kyle@fbtrial.com

Paul E. Godlewski
SCHWEBEL, GOETZ & SIEBEN, P.A.
80 South 8th Center
5120 IDS Center
Minneapolis, MN 54402
pgodlewski@schwebel.com

Michael F. Coyle
FRASER, STRYKER LAW FIRM
409 South 17th Street
Suite 500, Energy Plaza
Omaha, NE 68102
mcoyle@fraserstryker.com

*Attorneys for Plaintiffs*

/s/ Edward S. Bott, Jr.