*EXHIBIT B*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| RYSTA LEONA SUSMAN, both individually and as Legal Guardian of SHANE ALLEN LOVELAND, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 8:18-cv-00127 |
| v. | ) ) | |
| THE GOODYEAR TIRE & RUBBER COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

**THE GOODYEAR TIRE & RUBBER COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS**

The Goodyear Tire & Rubber Company ("Goodyear"), by and through its counsel, for its Objections and Responses to Plaintiffs' Requests for Production of Documents, states as follows:

**PRELIMINARY STATEMENT**

This matter allegedly involves a particular tire LT235/85R16 Goodyear Wrangler HT bearing DOT # MD0RNJHV244 ("Tire at Issue") which designation indicates a tire manufactured by Goodyear at its Gadsden, Alabama plant during the 24th week of 1994. "Subject Tire" herein refers to tires built at the same plant, using the same material and construction specification, and which have the same tread pattern and markings as the "Tire at Issue."

Goodyear objects to Plaintiffs' Definitions and Requests for Production to the extent they attempt to impose upon Goodyear any duties beyond those specifically set forth in the Federal Rules of Civil Procedure.   Goodyear specifically objects to Plaintiffs' definitions of "identify," "documents," and "person(s)" as they enlarge the scope of the persons and information beyond that which are relevant and proportional to any claim or defense asserted.  Goodyear further objects to

the definition of "accident tire," as Plaintiffs' definition references a DOT number inconsistent with the DOT number on the Tire at Issue.

Goodyear further objects to the definitions of "tire in question," "tire at issue," "subject tire," "similar tire(s)," and "subject tire line" because they enlarge the scope of products and information beyond the Tire at Issue or tires that are substantially similar to the Tire at Issue, rendering the definitions overbroad and not relevant and proportional to any claim or defense asserted. Unless otherwise noted, Goodyear's responses to these Requests will be limited to the Tire at Issue or tires built at the same plant and using the same materials and construction specifications and which have the same cured tread pattern and markings as the Tire at Issue ("Subject Tire") and which were manufactured between the 24th week of 1993 and the 24th week of 1995 (the "Subject Tire Scope").

Goodyear objects to Plaintiffs' definitions of "age," "aging," "belts," "catalyst," "tread," "tread separation," "cord(s)," "nylon overlays," "ply," "safer alternative design," "similar tire(s)," "NHTSA investigation," "NHTSA defect investigation," "NHTSA formal defect investigation," "recall," "loss adjustment data," "in specification," and "out of specification" as vague, ambiguous, and overly broad, as the respective definitions seek to include and assign technical characteristics, properties, criteria or elements to tires, processes or procedures that are not used or understood within the operations of The Goodyear Tire & Rubber Company. Thus, the definitions impose a burden or expense related to proposed discovery that outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery to resolving these issues.

Goodyear may, while conducting its discovery efforts and investigation and preparing its defense, determine that existing information and documents pertain to subjects covered by these

2

Requests and will seasonably supplement its discovery responses in accordance with the Federal Rules of Civil Procedure.

Subject to and without waiving the foregoing, Goodyear provides the following responses and objections to Plaintiffs' First Requests for Production as follows:

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**   Produce a copy of the Master Specifications for the accident tire.

**RESPONSE:** Goodyear objects to this Request to the extent it seeks information that contains confidential information, proprietary information, and/or trade secrets.  Goodyear further objects to this Request because the term "Master Specifications" is not defined, vague and ambiguous, such that Goodyear is incapable of forming a meaningful response to the Request as phrased. Goodyear further objects to this Request because it is overly broad, unduly burdensome, and imposes a burden or expense that outweighs its likely benefit to the extent it seeks documents and information outside of the time frame, issues, and alleged defect theories relevant to this case.

**REQUEST FOR PRODUCTION NO. 2:**   All statements, letters, communications or comments with NHTSA concerning failures in Load Range E Tires.

**RESPONSE:** Goodyear objects to this Request because it is overly broad, unduly burdensome, and imposes a burden or expense that outweighs its likely benefit to the extent it seeks documents and information unrelated to the Subject Tire. The Subject Tire was manufactured pursuant to a unique specification. This Request seeks information pertaining to different and dissimilar tires which were made to different design and manufacturing specifications, were built at different plants, built at different times, or designed for different applications; and therefore

3

seeks documents and/or information concerning tires that are not substantially similar to the Tire at Issue. Goodyear further objects to this Request on the grounds that Plaintiffs have not limited the scope of this Request to the time frame, issues, and alleged defect theories relevant to this case. Goodyear further objects to this Request because the phrase "concerning failures in Load Range E Tires" is not defined, vague, argumentative and/or misleading. Goodyear further objects to this Request because it calls for information that is publicly available, or calls for information that is otherwise as easily obtained by the requesting party.

Subject to and without waiving the foregoing objections, Goodyear produces documents from the non-confidential submission to NHTSA with respect to Investigation PE00-046, GY_Susman_00001-GY_Susman_001374, and documents from Goodyear's confidential submission to NHTSA with respect to Investigation PE00-046, GY_Susman_001375-GY_Susman_06325.

**REQUEST FOR PRODUCTION NO. 3:** Produce copies of the deposition or trial transcripts of all workers, employees, former employees, and/or representatives/agents of the defendant tire manufacturer which are in the actual or constructive possession of the defendant and in which the underlying claim included allegations that a defective tire failed by tread/belt separation thereby causing personal injuries. This request is limited to your employees, former employees and corporate designees.

**RESPONSE:** Goodyear objects to this Request to the extent it seeks information that contains confidential information, proprietary information, trade secrets, and/or information subject to a duly entered Protective Order. Goodyear further objects to this Request because it is overly broad and unduly burdensome in that it is not reasonably limited in scope, either as to subject matter or time. Goodyear further objects to this Request to the extent it seeks documents and

4

information unrelated to the Subject Tire. The Subject Tire was manufactured pursuant to a unique specification. This Request seeks information pertaining to different and dissimilar tires which were made to different design and manufacturing specifications, were built at different plants, built at different times, or designed for different applications; and therefore seeks documents and/or information concerning tires that are not substantially similar to the Tire at Issue. Goodyear further objects to this Request on the grounds that Plaintiffs have not limited the scope of this Request to the time frame, issues, and alleged defect theories relevant to this case. Goodyear further objects to this Request on the grounds that it seeks information regarding prior lawsuits without regard to whether there was any similarity whatsoever between other occurrences and the occurrence in this case much less the "substantial similarity" the law requires. Goodyear further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or the consulting expert privilege.

Subject to and without waiving the foregoing objections, Goodyear produces pursuant to the Protective Order entered in this case, the following transcripts:

- 12.8.98 Deposition of Joseph Zekoski in *Mathews v. The Goodyear Tire and Rubber Co., Inc.* et al., No. PCO-018776W (Los Angeles, California) ("*Mathews*"), GY_Susman_10349- GY_Susman_10539 and GY_Susman_20054- GY_Susman_20272;

- 12.9.98 Deposition of Richard Olsen in *Mathews*, GY_Susman_07957- GY_Susman_08211 and GY_Susman_17191- GY_Susman_17467;

- 7.20.99 Deposition of Chester Stewart Patterson in *Han v. Ford Motor Company et al.*, Case No. VC-026056 (Los Angeles, California) ("*Han*"), GY_Susman_08635- GY_Susman_08725 and GY_Susman_18041- GY_Susman_18149;

5

- 7.20.99 Deposition of Ernest C. Kessell in *Han*, GY_Susman_07043-GY_Susman_07098;

- 8.3.00 Deposition of Beale Robinson (V1) in *Estate of Frankl v. Goodyear Tire and Rubber* et al., Case No.MER-1-003052-99 (Sup. Ct. N.J.) ("*Frankl*"), GY_Susman_08726- GY_Susman_08853 and GY_Susman_18399- GY_Susman_18545;

- 8.3.00 Deposition of Madelon Kominic in *Frankl*, GY_Susman_07696-GY_Susman_07802 and GY_Susman_16811- GY_Susman_16933;

- 8.4.00 Deposition of Beale Robinson (V2) in *Frankl*, GY_Susman_08854-GY_Susman_09029 and GY_Susman_18546-18747;

- 9.19.00 Deposition of James Nespo in *Frankl*, GY_Susman_07803- GY_Susman_07956 and GY_Susman_16934- GY_Susman_17110;

- 9.19.00 Deposition of Edward Terrill in *Frankl*, GY_Susman_09904-GY_Susman_09986 and GY_Susman_18858- GY_Susman_18953;

- 9.20.00 Deposition of Jon P. Dupont in *Frankl*, GY_Susman_06424-GY_Susman_06466 and GY_Susman_16121- GY_Susman_16170;

- 5.30.01 Deposition of Daniel E. Hammontree in *Ebanks v. The Kelly-Springfield Tire Company* et al, Case No. 2000-2151 (Mobile County, Alabama) ("*Ebanks*"), GY_Susman_06752-GY_Susman_06819 and GY_Susman_16691- GY_Susman_16768.

- 5.30.01 Deposition of Ernest C. Kessell in *Ebanks*, GY_Susman_07489-GY_Susman_07594;

- 8.17.01 Deposition of Ernest C. Kessell in *Garcia v. Kelly-Springfield Tire Company* et al, Case No. 99-1611-CIV-T-17B (M.D. Fla.) ("*Garcia*"), GY_Susman_07099 - GY_Susman_07488;

6

- 10.17.01 Deposition of Joseph Zekoski in *Ebanks*, GY_Susman_10540-GY_Susman_10738 and GY_Susman_20273- GY_Susman_20501;

- 10.18.01 Deposition of Richard Olsen in *Ebanks*, GY_Susman_08212-GY_Susman_08364 and GY_Susman_17468- GY_Susman_17642;

- 12.3.01 Deposition of Daniel E. Hammontree in *Garcia v. Kelly-Springfield Tire Company* et al, Case No. 99-1611-CIV-T-17B (M.D. Fla.) ("*Garcia*"), GY_Susman_06467-GY_Susman_06751 and GY_Susman_15209- GY_Susman_15535;

- 12.4.01 Deposition of Dane E. Taylor in *Garcia*, GY_Susman_09829-GY_Susman_09903 and GY_Susman_18772- GY_Susman_18857;

- 12.4.01 Deposition of Beale Robinson (V1) in *Garcia*, GY_Susman_09030-GY_Susman_09248 and GY_Susman_11536- GY_Susman_15791;

- 12.5.01 Deposition of Beale Robinson (V2) in *Garcia*, GY_Susman_09249-GY_Susman_09415 and GY_Susman_15017- GY_Susman_15208;

- 1.4.02 Deposition of Richard Olson in *Boerm v. The Goodyear Tire and Rubber Co. et al*, Case No. 2000-CI-15024 (Bexar County, Texas) ("*Boerm*"), GY_Susman_14524-GY_Susman_14615;

- 1.4.02 Deposition of Joseph Zekoski in *Boerm*, GY_Susman_10730- GY_Susman_10863 and GY_Susman_14616- GY_Susman_14683;

- 1.23.02 Deposition of Ernest C. Kessell in *Garcia*, GY_Susman_07595-GY_Susman_07695;

- 2.8.02 Deposition of Chester Steward Patterson in *Ebanks*, GY_Susman_08534-GY_Susman_08634 and GY_Susman_15792- GY_Susman_15902 and GY_Susman_16065- GY_Susman_16120;

7

- 2.11.02 Deposition of Daniel E. Hammontree in *Boerm*, GY_Susman_06820-GY_Susman_07042 and GY_Susman_18150- GY_Susman_18275;

- 2.8.02 Deposition of Beale Robinson in *Ebanks*, GY_Susman_09416-GY_Susman_09622;

- 2.12.02 Deposition of Beale Robinson in *Boerm*, GY_Susman_09623-GY_Susman_09828 and GY_Susman_15903- GY_Susman_16013;

- 6.11.02 Deposition of Beale Robinson in *Arredondo v. The Goodyear Tire & Rubber Co.* et al, Case No. 325,677-401 (Harris County, Texas Probate Court) ("*Arredondo*"), GY_Susman_11945- GY_Susman_12278 and GY_Susman_14141- GY_Susman_14523;

- 6.12.02 Deposition of Daniel Hammontree in *Arredondo,* GY_Susman_11197-GY_Susman_11321 and GY_Susman_16547- GY_Susman_16690;

- 7.11.02 Deposition of Mark Grund in *Arredondo*, GY_Susman_11013-GY_Susman_11196 and GY_Susman_16336- GY_Susman_16546;

- 7.11.02 Deposition of Dennis O'Connor in *Arredondo*, GY_Susman_11360-GY_Susman_11428 and GY_Susman_17111- GY_Susman_17190;

- 9.13.02 Deposition of Joseph Zekoski in *Corwin and all others similarly situated v. The Goodyear Tire & Rubber Company*, Case No 00-L-1154 (Madison County, Illinois) ("*Corwin*"), GY_Susman_13916-  GY_Susman_14140  and  GY_Susman_20502-GY_Susman_20771;

- 9.19.02 Deposition of George Edwards in *Arredondo* and *Boerm*, 10864-GY_Susman_11012 and GY_Susman_16171- GY_Susman_16335;

- 9.19.02 Deposition of Iwao Uenoyama in *Arredondo* and *Boerm*, GY_Susman_11322-GY_Susman_11359 and GY_Susman_16769- GY_Susman_16810;

8

- 9.19.02 Deposition of Ray Young (V1) in *Arredondo* and *Boerm*, GY_Susman_13270-GY_Susman_13421 and GY_Susman_19616- GY_Susman_19709;

- 9.20.02 Deposition of Ray Young (V2) in *Arredondo* and *Boerm*, GY_Susman_19710-GY_Susman_19748;

- 9.20.02 Deposition of Ray Young (V3) in *Arredondo* and *Boerm*, GY_Susman_19749-GY_Susman_19784;

- 7.17.02 Deposition of Richard Olsen in *Arredondo*, GY_Susman_11429-GY_Susman_11751 and GY_Susman_17643- GY_Susman_17806;

- 9.20.02 Deposition of Richard Olsen (V2) in *Arredondo*, GY_Susman_15004-GY_Susman_15016;

- 10.18.02 Deposition of Bertram Bell in *Arredondo*, GY_Susman_06332-GY_Susman_06423 and GY_Susman_16014- GY_Susman_16064.

- 10.18.02 Deposition of Charles Sinclair in *Arredondo*, GY_Susman_12505-GY_Susman_12547 and GY_Susman_18748- GY_Susman_18771;

- 2.6.02 Deposition of Charles Winebrenner in *Garcia* and *Ebanks,* GY_Susman_09987-GY_Susman_10348 and GY_Susman_19442- GY_Susman_19615;

- 10.30.02 Deposition of Chester Patterson in *Deboarh Hansen Linzer v. The Goodyear Tire & Rubber Company*, Case No. CV 2000-0178418 (Maricopa County, Arizona) ("*Linzer*") and *Ramona Dow, et al. v. Goodyear Tire and Rubber Company*, Case No. C2001-2295 (Pima County, Arizona) ("*Dow*"), GY_Susman_11752- GY_Susman_11944 and GY_Susman_17807- GY_Susman_18049;

- 7.18.02 Deposition of Beale Robinson in *Arredondo, Dow, James Aufiero v. The Goodyear Tire & Rubber Co.* et al, Case No. CV 20000-008173 (Maricopa County,

9

Arizona) ("*Aufiero*"), GY_Susman_12279- GY_Susman_12504 and GY_Susman_18276- GY_Susman_18398;

- 11.1.02 Deposition of Keith Trares in *Linzer, Dow,* GY_Susman_12548- GY_Susman_12747 and GY_Susman_18954- GY_Susman_19195;

- 10.31.02 Deposition of Michael Trout in *Linzer, Dow,* GY_Susman_12548- GY_Susman_12747 and GY_Susman_19196- GY_Susman_19441;

- 6.7.02 Deposition of Charles Winebrenner in *Arredondo* and *Boerm,* GY_Susman_12951- GY_Susman_13269 and GY_Susman_14684- GY_Susman_15003;

- 7.16.02 Deposition of Joseph Zekoski in *Aufiero*, *Linzer*, *Dow*, and *Arredondo,* GY_Susman_13422- GY_Susman_13915 and GY_Susman_19839- GY_Susman_20053; and

- 7.17.02 Deposition of Joseph Zekoski (V2) in *Aufiero*, *Linzer*, *Dow*, and *Arredondo,* GY_Susman_19785- GY_Susman_19838.

By responding to this Request, Goodyear makes no admissions or representations regarding the similarity between the matters at issue in the above transcripts and the occurrence giving rise to this litigation.

**REQUEST FOR PRODUCTION NO. 4:** Produce copies of the deposition or trial transcripts of all workers, employees, former employees, and/or representatives/agents of the defendant tire manufacturer which are in the actual or constructive possession of the defendant and in which the underlying claim included allegations that a defective load range E tire failed by tread/belt separation thereby causing personal injuries. This request is limited to your employees, former employees and corporate designees.

10

**RESPONSE:** See Goodyear's Objections and Responses to Request No. 3, which are incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 5:** Produce the green tire specification change/modification history for the subject tire at issue from inception to the present.

**RESPONSE:** Goodyear objects to this Request to the extent it seeks information that contains confidential information, proprietary information, and/or trade secrets. Goodyear further objects to this Request because it is overly broad, unduly burdensome, and imposes a burden or expense that outweighs its likely benefit. Goodyear further objects to this Request to the extent it seeks documents and information unrelated to Subject Tire. The Subject Tire was manufactured pursuant to a unique specification. This Request seeks information pertaining to different and dissimilar tires which were made to different design and manufacturing specifications, were built at different plants, built at different times, or designed for different applications; and therefore seeks documents and/or information concerning tires that are not substantially similar to the Tire at Issue. Goodyear further objects to this Request on the grounds that Plaintiffs have not limited the scope of this Request to the time frame, issues, and alleged defect theories relevant to this case. Goodyear further objects to this Request because the phrase "the green tire specification change/modification history for the subject tire at issue" is not defined, vague and ambiguous and renders this Request overly broad, is not limited to the products and defect theories allegedly involved in this occurrence, and thus Goodyear is not able to form a meaningful response to the Request as phrased. Goodyear further objects to the request for documents "from inception to the present" on the grounds that it seeks disclosure of information that relates to time periods outside the time period relevant to the claims and defenses asserted herein.

11

Subject to and without waiving the foregoing objections, Goodyear will produce the engineering specifications and change authorizations for the Subject Tire during the Subject Tire Scope.

**REQUEST FOR PRODUCTION NO. 6:**  Produce all documents which support or justify any changes in the green tire specifications, including but not limited to product change notifications.

**RESPONSE:** Goodyear objects to this Request to the extent it seeks information that contains confidential information, proprietary information, and/or trade secrets.  Goodyear further objects to this Request because it is overly broad, unduly burdensome, and imposes a burden or expense that outweighs its likely benefit. Goodyear further objects to this Request to the extent it seeks documents and information unrelated to the Subject Tire. The Subject Tire was manufactured pursuant to a unique specification. This Request seeks information pertaining to different and dissimilar tires which were made to different design and manufacturing specifications, were built at different plants, built at different times, or designed for different applications; and therefore seeks documents and/or information concerning tires that are not substantially similar to the Tire at Issue.  Goodyear further objects to this Request on the grounds that Plaintiffs have not limited the scope of this Request to the time frame, issues, and alleged defect theories relevant to this case.  Goodyear further objects to this Request because the phrases "changes in the green tire specifications" and "product change notifications" are not defined, vague and ambiguous and renders this Request overly broad, is not limited to the products and defect theories allegedly involved in this occurrence, and thus Goodyear is not able to form a meaningful response to the Request as phrased.

Subject to and without waiving the foregoing objections, Goodyear will produce the change authorizations for the Subject Tire during the Subject Tire Scope.

1741597

**REQUEST FOR PRODUCTION NO. 7:** Produce all communications between you and any and all vehicle manufacturers that supplied the subject tire as OEM which regard design, manufacture, and/or warnings meant to make the tire safer, prevent belt/tread separation and/or other tire failure.

**RESPONSE:** Goodyear objects to this Request because the phrase "meant to make the tire safer, prevent belt/tread separation and/or other tire failure" is vague, ambiguous, argumentative and/or misleading. The phrase renders this Request overly broad, and thus Goodyear is not able to form a meaningful response to the Request as phrased. Goodyear further objects to this Request on the grounds that the phrase "all communications...which regard design, manufacture and/or warnings" is overly broad, unduly burdensome, and is unlimited in time or scope.

**REQUEST FOR PRODUCTION NO. 8:** Produce color copies of any photographs or videos taken by anyone of the scene of the subject incident, the vehicle involved and/or the subject tire.

**RESPONSE:** Goodyear objects to this Request to the extent it seeks material protected by the attorney-client privilege, the attorney work product doctrine, or the consulting expert privilege. Goodyear further objects to the Request for photographs or videos of the "subject tire" as overly broad, unduly burdensome, and imposes a burden or expense that outweighs its likely benefit to the extent it seeks photographs or videos of any LT235/85R16 Goodyear Wrangler HT tire, or any tire other than the Tire at Issue.

Subject to and without waiving the foregoing objections, Goodyear previously produced photographs obtained from the Nebraska State Patrol, IMG_4289-IMG_4350.

**REQUEST FOR PRODUCTION NO. 9:** Produce copies of all product catalogs, sales brochures or any other sales literature relating in any way to the subject tire and/or subject tire line involved in the incident made the basis of this suit.

13

**RESPONSE:** Goodyear objects to this Request because it is overly broad, unduly burdensome, and imposes a burden or expense that outweighs its likely benefit. Goodyear further objects to this Request to the extent it seeks documents and information unrelated to the Subject Tire. The Subject Tire was manufactured pursuant to a unique specification. This Request seeks information pertaining to different and dissimilar tires which were made to different design and manufacturing specifications, were built at different plants, built at different times, or designed for different applications; and therefore seeks documents and/or information concerning tires that are not substantially similar to the Tire at Issue.

Subject to and without waiving the foregoing objections, after a diligent search, Goodyear has been unable to locate responsive documents.

**REQUEST FOR PRODUCTION NO. 10:**   Produce all written warranties relating in any way to the accident tire.

**RESPONSE:** See the Limited Warranty Auto and Light Truck (Excludes Unisteel Radial Light Truck) Highway Tire Adjustment Policy, GY_Susman_20772-GY_Susman_20777.

**REQUEST FOR PRODUCTION NO. 11:**   Produce any document, including but not limited to, manuals, training materials, reports, divisional specifications and/or plant specifications created by Q-Tech, Goodyear corporate, or any other Goodyear entity related to quality control and/or quality assurance at the subject plant.

**RESPONSE:** Goodyear objects to this Request to the extent it seeks information that contains confidential information, proprietary information, and/or trade secrets. Goodyear further objects to this Request because the terms "manuals, training materials, reports, divisional specifications and/or plant specifications" and "subject plant" are not defined, vague and ambiguous. Goodyear further objects to the request for "any document. . . related to quality control and/or

quality assurance at the subject plant" because it is overly broad and unduly burdensome in that it is not reasonably limited in scope, either as to subject matter or time. Goodyear further objects to this Request because it is overly broad, unduly burdensome to the extent it seeks documents and information unrelated to the Subject Tire. The Subject Tire was manufactured pursuant to a unique specification. This Request seeks information pertaining to different and dissimilar tires which were made to different design and manufacturing specifications, were built at different plants, built at different times, or designed for different applications; and therefore seeks documents and/or information concerning tires that are not substantially similar to the Tire at Issue. Goodyear further objects to this Request on the grounds that Plaintiffs have not limited the scope of this Request to the time frame, issues, and alleged defect theories relevant to this case.

**REQUEST FOR PRODUCTION NO. 12:** Produce all documents, including but not limited to specification changes, reports, studies, e-mails, memos and/or letters related to any changes made in the belt skim stock formula used in the design of the subject tire and all Load Range E tires.

**RESPONSE:** Goodyear objects to this Request to the extent it seeks information that contains confidential information, proprietary information, and/or trade secrets. Plaintiffs have failed to make any showing that the foregoing information is either relevant or necessary to the prosecution of this case, the existence of any product defect, or the failure mode of the Tire at Issue. Goodyear further objects to this Request because it is overly broad, unduly burdensome, and imposes a burden or expense that outweighs its likely benefit. Goodyear further objects to this Request to the extent it seeks documents and information unrelated to the Subject Tire. The Subject Tire was manufactured pursuant to a unique specification. This Request seeks

15

information pertaining to different and dissimilar tires which were made to different design and manufacturing specifications, were built at different plants, built at different times, or designed for different applications; and therefore seeks documents and/or information concerning tires that are not substantially similar to the Tire at Issue. Goodyear further objects to this Request on the grounds that Plaintiffs have not limited the scope of this Request to the time frame, issues, and alleged defect theories relevant to this case. Goodyear further objects to this Request because the phrase "changes in the belt skim stock formula used in the design of the subject tire and all Load Range E tires" is not defined, vague and ambiguous and renders this Request overly broad, is not limited to the products and defect theories allegedly involved in this occurrence, and thus Goodyear is not able to form a meaningful response to the Request as phrased.

Subject to and without waiving the foregoing objections, Goodyear will produce the change authorizations for the Subject Tire during the Subject Tire Scope.

**REQUEST FOR PRODUCTION NO. 13:**   Produce all documents, including but not limited to specification changes, reports, studies, e-mails, memos and/or letters related to the addition of nylon overlays to the subject tire line and all Load Range E tires.

**RESPONSE:** Goodyear objects to this Request to the extent it seeks information that contains confidential information, proprietary information, and/or trade secrets. Goodyear further objects to this Request because it is overly broad, unduly burdensome, and imposes a burden or expense that outweighs its likely benefit to the extent it seeks documents and information unrelated to the Subject Tire. The Subject Tire was manufactured pursuant to a unique specification. This Request seeks information pertaining to different and dissimilar tires which were made to different design and manufacturing specifications, were built at different plants, built at different times, or designed for different applications; and therefore seeks documents and/or information

16

1741597

concerning tires that are not substantially similar to the Tire at Issue.  Goodyear further objects to this Request on the grounds that Plaintiffs have not limited the scope of this Request to the time frame, issues, and alleged defect theories relevant to this case.  Goodyear further objects to this Request because the phrase "addition of nylon overlays to the subject tire line and all Load Range E tires" is not defined, vague and ambiguous and renders this Request overly broad, is not limited to the products and defect theories allegedly involved in this occurrence, and thus Goodyear is not able to form a meaningful response to the Request as phrased.

Subject to and without waiving the foregoing objections, Goodyear will produce change authorizations for the Subject Tire during the Subject Tire Scope.  By way of further answer, Goodyear refers Plaintiffs to the documents produced in response to Request No. 2.

**REQUEST FOR PRODUCTION NO. 14:** Produce all documents, including but not limited to, specification changes, reports, studies, e-mail, memos and/or letters related to any changes made to the liner gauge of Load Range E Goodyear, Dunlop or Kelly-Springfield light truck tires from 1990 to the present.

**RESPONSE:** Goodyear objects to this Request to the extent it seeks information that contains confidential information, proprietary information, and/or trade secrets.  Goodyear further objects to this Request because it is overly broad, unduly burdensome, and imposes a burden or expense that outweighs its likely benefit to the extent it seeks documents and information unrelated to the Subject Tire.  The Subject Tire was manufactured pursuant to a unique specification.  This Request seeks information pertaining to different and dissimilar tires which were made to different design and manufacturing specifications, were built at different plants, built at different times, or designed for different applications; and therefore seeks documents and/or information concerning tires that are not substantially similar to the Tire at Issue.  Goodyear further objects to

17

this Request on the grounds that Plaintiffs have not limited the scope of this Request to the time frame, issues, and alleged defect theories relevant to this case.  Goodyear further objects to this Request because the phrase "changes made to the liner gauge of Load Range E Goodyear, Dunlop or Kelly-Springfield light truck tires" is not defined, vague and ambiguous and renders this Request overly broad, is not limited to the products and defect theories allegedly involved in this occurrence, and thus Goodyear is not able to form a meaningful response to the Request as phrased.

Subject to and without waiving the foregoing objections, Goodyear will produce the change authorizations for the Subject Tire during the Subject Tire Scope.  By way of further answer, Goodyear refers Plaintiffs to the documents produced in response to Request No. 2.

**REQUEST FOR PRODUCTION NO. 15:**   Produce all Goodyear documents, including but not limited to reports, studies, tests and/or correspondence regarding air permeability in light truck tires and Load Range E tires.

**RESPONSE:** Goodyear objects to this Request to the extent it seeks information that contains confidential information, proprietary information, and/or trade secrets.  Goodyear further objects to this Request because it is overly broad, unduly burdensome, and imposes a burden or expense that outweighs its likely benefit to the extent it seeks documents and information unrelated to the Subject Tire.  The Subject Tire was manufactured pursuant to a unique specification.  This Request seeks information pertaining to different and dissimilar tires which were made to different design and manufacturing specifications, were built at different plants, built at different times, or designed for different applications; and therefore seeks documents and/or information concerning tires that are not substantially similar to the Tire at Issue.  Goodyear further objects to this Request on the grounds that Plaintiffs have not limited the scope of this Request to the time

18

frame, issues, and alleged defect theories relevant to this case.  Goodyear further objects to this Request because the term "air permeability" is not defined, vague and ambiguous, and thus Goodyear is not able to form a meaningful response to the Request as phrased.

Subject to and without waiving the foregoing objections, Goodyear states that, after a reasonable search, it has been unable to locate responsive documents.

**REQUEST FOR PRODUCTION NO. 16:**   Produce all prior depositions and/or trial testimony of Joseph Zekoski, Richard Olsen and Beale Robinson in any tread separation or tread throw litigation.

**RESPONSE:** Goodyear objects to this Request to the extent it seeks information that contains confidential information, proprietary information, trade secrets, and/or information subject to a duly entered Protective Order.  Goodyear further objects because the phrase "tread separation or tread throw litigation" is vague and ambiguous and renders this Request overly broad, and thus Goodyear is not able to form a meaningful response to the Request as phrased.  Goodyear further objects to the extent the Request calls for speculation as to what constitutes "any tread separation or tread throw litigation."  Goodyear further objects to this Request because it is overly broad and unduly burdensome in that it is not reasonably limited in scope, either as to subject matter or time.  Goodyear further objects to this Request because it is overly broad, unduly burdensome, and imposes a burden or expense that outweighs its likely benefit to the extent it seeks documents and information unrelated to the Subject Tire.  The Subject Tire was manufactured pursuant to a unique specification.  This Request seeks information pertaining to different and dissimilar tires which were made to different design and manufacturing specifications, were built at different plants, built at different times, or designed for different applications; and therefore seeks documents and/or information concerning tires that are not substantially similar to the Tire

19

at Issue.  Goodyear further objects to this Request on the grounds that Plaintiffs have not limited the scope of this Request to the time frame, issues, and alleged defect theories relevant to this case.  Goodyear further objects to this Request on the grounds that it seeks information regarding prior lawsuits without regard to whether there was any similarity whatsoever between other occurrences and the occurrence in this case much less the "substantial similarity" the law requires.  Goodyear further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or the consulting expert privilege.

See Goodyear's Objections and Responses to Request No. 3, which are incorporated herein by reference.

By responding to this Request, Goodyear makes no admissions or representations regarding the similarity between the matters at issue in the above transcripts and the occurrence giving rise to this litigation.

**REQUEST FOR PRODUCTION NO. 17:**   Produce a complete list of all tires manufactured by Goodyear, including but not limited to Dunlop and Kelly-Springfield, that share a common green specification, without regard to sidewall design/lettering, with the subject tire.

**RESPONSE:** Goodyear objects to this Request because the term "common green" is not defined, vague and ambiguous and renders this Request overly broad, and thus Goodyear is not able to form a meaningful response to the Request as phrased.  The term "Common Green" can be subject to more than one interpretation,  and Goodyear will treat requests seeking information about "Common Green" tires as asking for information about tires built at the same plant using the same material and construction specifications as the Subject Tire, including those bearing different external markings, tread configurations, brand and/or tire line names.  Goodyear further

objects to this Request because it is overly broad, unduly burdensome, and imposes a burden or expense that outweighs its likely benefit to the extent it seeks documents and information unrelated to the Subject Tire.   The Subject Tire was manufactured pursuant to a unique specification.   This Request seeks information pertaining to different and dissimilar tires which were made to different design and manufacturing specifications, were built at different plants, built at different times, or designed for different applications; and therefore seeks documents and/or information concerning tires that are not substantially similar to the Tire at Issue. Goodyear further objects to this Request on the grounds that Plaintiffs have not limited the scope of this Request to the time frame, issues, and alleged defect theories relevant to this case.

Subject to and without waiving the foregoing objections, Goodyear has been unable to identify tires that share a common green specification with the Subject Tire.   Goodyear reserves the right to supplement this Response in the event additional information is located.

**REQUEST FOR PRODUCTION NO. 18:**   Produce the names and employment files for the first and second stage tire builders who built the accident tire.

**RESPONSE:** Goodyear objects to this Request because it is overly broad in that it is not reasonably limited in scope, either as to subject matter or time.   Goodyear further objects as this Request seeks the discovery of personal, confidential, private and proprietary information.

Subject to and without waiving the foregoing objections, Goodyear states that following an examination of the Tire at Issue, it will, if able, identify the first and second stage tire builders for the Tire at Issue.

**REQUEST FOR PRODUCTION NO. 19:**   Produce a current copy of the Tire Adjustment Manual used by Goodyear's dealers.

21

1741597

**RESPONSE:** Goodyear objects to this Request as it seeks a document that is not relevant to any issue in the case. Goodyear further objects to this Request because it calls for information that is publically available, or calls for information that is otherwise as easily obtained by the requesting party.

**REQUEST FOR PRODUCTION NO. 20:**   Produce the copy of the Tire Adjustment Manual used by Goodyear at the time the accident tire was manufactured.

**RESPONSE:** Goodyear has been unable to locate the Tire Adjustment Manual in use in 1994. Goodyear reserves the right to supplement this Response in the event additional information is located.

**REQUEST FOR PRODUCTION NO. 21:**   Produce all Quarterly Adjustment Reports from 1990 to 2004.

**RESPONSE:** Goodyear objects to this Request to the extent it seeks information that contains confidential information, proprietary information, and/or trade secrets. Goodyear objects to this Request because it is overly broad in that it is not reasonably limited in scope, either as to subject matter or time. The Request is unlimited as it concerns tires other than the type of tire alleged to have suffered a disablement in this case. The Request seeks fifteen (15) years of information pertaining to different and dissimilar tires which were made to different design and manufacturing specifications, were built at different plants, built at different times, or designed for different applications; and therefore seeks documents and/or information concerning tires that are not substantially similar to the Tire at Issue.

Subject to and without waiving the foregoing objections, Goodyear produces adjustment data for the Subject Tire during the Subject Tire Scope, GY_Susman_20838- GY_Susman_20844. By responding to this Request, Goodyear makes no admissions or

representations regarding the similarity between incidents disclosed and the occurrence giving rise to this litigation.

**REQUEST FOR PRODUCTION NO. 22:**   Produce any and all reports of data, totals and trends generated from the Property Damage Claim database and Personal Injury database from 1990 to 2000.

**RESPONSE:** Goodyear objects to the request for "any and all reports of data, totals, and trends" because it is overly broad and unduly burdensome in that it is not reasonably limited in scope, either as to subject matter or time.   Goodyear further objects because the terms "Property Damage Claim database" and "Personal Injury database" are vague and ambiguous and render this Request overly broad, and thus Goodyear is not able to form a meaningful response to the Request as phrased.   Goodyear further objects to this Request because it is overly broad, unduly burdensome, and imposes a burden or expense that outweighs its likely benefit to the extent it seeks documents and information unrelated to the Subject Tire.   The Subject Tire was manufactured pursuant to a unique specification.   This Request seeks information pertaining to different and dissimilar tires which were made to different design and manufacturing specifications, were built at different plants, built at different times, or designed for different applications; and therefore seeks documents and/or information concerning tires that are not substantially similar to the Tire at Issue.   Goodyear further objects to this Request on the grounds that Plaintiffs have not limited the scope of this Request to the time frame, issues, and alleged defect theories relevant to this case.   Goodyear further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or the consulting expert privilege.

Subject to and without waiving the foregoing objections, Goodyear produces adjustment data for all conditions for the Subject Tire during the Subject Tire Scope, GY_Susman_20838-GY_Susman_20844.   By responding to this Request, Goodyear makes no admissions or representations regarding the similarity between incidents disclosed and the occurrence giving rise to this litigation.

**REQUEST FOR PRODUCTION NO. 23:**   Produce all documents contained in the file of Beale Robinson that was turned over to the Legal Department of Goodyear at the time of his retirement in 2001.

**RESPONSE:** Goodyear objects to this Request to the extent it seeks information that contains confidential information, proprietary information, trade secrets, and/or information subject to a duly entered Protective Order.  Goodyear further objects because the phrase "the file of Beale Robinson that was turned over. . . at the time of his retirement" is vague and ambiguous. Goodyear further objects to this Request because it is overly broad and unduly burdensome in that it is not reasonably limited in scope, either as to subject matter or time.  Goodyear further objects to this Request because it is overly broad, unduly burdensome, and imposes a burden or expense that outweighs its likely benefit to the extent it seeks documents and information unrelated to the Subject Tire.   The Subject Tire was manufactured pursuant to a unique specification.  This Request seeks information pertaining to different and dissimilar tires which were made to different design and manufacturing specifications, were built at different plants, built at different times, or designed for different applications; and therefore seeks documents and/or information concerning tires that are not substantially similar to the Tire at Issue. Goodyear further objects to this Request on the grounds that Plaintiffs have not limited the scope of this Request to the time frame, issues, and alleged defect theories relevant to this case.

Goodyear further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or the consulting expert privilege.

**REQUEST FOR PRODUCTION NO. 24:**   Produce all documents and/or writings pertaining or relating to the work of the Goodyear and/or Kelly-Springfield Crown Integrity Team and/or any RLT A1 Team and/or any other task force designated to study, evaluate and/or investigate the "tread throw" phenomenon from 1990 to the present.  This request includes but is not limited to minutes of meetings, reports, notes, test data, presentation materials and correspondence from the date of the formation of the team to the present time.

**RESPONSE:** Goodyear objects to this Request to the extent it seeks information that contains confidential information, proprietary information, and/or trade secrets.  Goodyear further objects because the phrase "tread throw phenomenon" is vague and ambiguous.  Goodyear further objects because the request for "all documents and/or writings pertaining or relating to the work of the Goodyear and/or Kelly-Springfield Crown Integrity Team and/or any RLT A1 Team and/or any other task force" is overly broad, vague and ambiguous, and thus Goodyear is not able to form a meaningful response to the Request as phrased.   Goodyear further objects to the extent the Request calls for legal conclusions or expert opinions as to what constitutes "tread throw phenomenon."  Goodyear further objects to this Request because it is overly broad and unduly burdensome in that it is not reasonably limited in scope, either as to subject matter or time.   The Request seeks twenty-nine years of documents and information unrelated to the Subject Tire.   The Subject Tire was manufactured pursuant to a unique specification.   This Request seeks information pertaining to different and dissimilar tires which were made to different design and manufacturing specifications, were built at different plants, built at different times, or designed for different applications; and therefore seeks documents and/or information

concerning tires that are not substantially similar to the Tire at Issue.  Goodyear further objects to this Request on the grounds that Plaintiffs have not limited the scope of this Request to the time frame, issues, and alleged defect theories relevant to this case.  This Request is not proportional to the needs of the case.  Goodyear further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or the consulting expert privilege.

Subject to and without waiving the foregoing objections, Goodyear refers Plaintiffs to the documents produced in response to Request No. 2.

**REQUEST FOR PRODUCTION NO. 25:**   Produce copies of all technical bulletins and other documents notifying dealers and/or distributors to replace light truck tires which experienced tread separation at no charge to consumers.

**RESPONSE:** Goodyear objects to this Request as vague, overly broad, and unduly burdensome in that it is not limited to bulletins or notifications regarding the Subject Tire, and is not limited in time.  Goodyear further objects on the grounds that this Request seeks documents that are publically available.

Subject to and without waiving the foregoing objections, Goodyear produces a Product Service Bulletin sent February 1, 2002, GY-Susman_06326-GY_Susman_06331.

**REQUEST FOR PRODUCTION NO. 26:**   Produce copies of all dealer adjustment claim forms for the subject tire and all Load Range E tires from 1990 to 2000.

**RESPONSE:** Goodyear objects to this Request because it is overly broad in that it is not reasonably limited in scope, either as to subject matter or time.  The Request is unlimited as it concerns tires other than the type of tire alleged to have suffered a disablement in this case.  The Request seeks "all" dealer adjustment claim forms for a ten-year time period, including forms

26

pertaining to different and dissimilar tires which were made to different design and manufacturing specifications, were built at different plants, built at different times, or designed for different applications; and therefore seeks documents and/or information concerning tires that are not substantially similar to the Subject Tire. Thus, the Request imposes a burden or expense that far outweighs its likely benefit to the extent it seeks documents and information outside of the time frame, issues, and alleged defect theories relevant to this case.

Subject to and without waiving the foregoing objections, Goodyear refers Plaintiffs to the documents produced in response to Request No. 21. By responding to this Request, Goodyear makes no admissions or representations regarding the similarity between incidents disclosed and the occurrence giving rise to this litigation.

**REQUEST FOR PRODUCTION NO. 27:**   Produce all documents and/or writings reflecting any analysis by any Goodyear and/or Kelly-Springfield task force or group, however designated, reflecting any opinion or conclusion that Defendants' manufacturing process was not a contributing factor in causing the tread/belt separation problem.

**RESPONSE:** Goodyear objects to this Request to the extent it seeks information that contains confidential information, proprietary information, and/or trade secrets. Goodyear further objects because the request for "all documents and/or writings reflecting any analysis. . . reflecting any opinion or conclusion. . ." is overly broad, vague and ambiguous, and thus Goodyear is not able to form a meaningful response to the Request as phrased. Goodyear further objects to the extent the Request calls for legal conclusions or expert opinions as to what constitutes "a contributing factor in causing the tread/belt separation problem." Goodyear further objects to this Request because the phrase "a contributing factor in causing the tread/belt separation problem" is argumentative and misleading. Goodyear further objects to this Request because it is overly

broad and unduly burdensome in that it is not reasonably limited in scope, either as to subject matter or time.  Goodyear further objects to this Request because it is overly broad, unduly burdensome, and imposes a burden or expense that outweighs its likely benefit to the extent it seeks documents and information unrelated to the Subject Tire. The Subject Tire was manufactured pursuant to a unique specification.  This Request seeks information pertaining to different and dissimilar tires which were made to different design and manufacturing specifications, were built at different plants, built at different times, or designed for different applications; and therefore seeks documents and/or information concerning tires that are not substantially similar to the Tire at Issue.  Goodyear further objects to this Request on the grounds that Plaintiffs have not limited the scope of this Request to the time frame, issues, and alleged defect theories relevant to this case.  This Request is not proportional to the needs of the case. Goodyear further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or the consulting expert privilege.

**REQUEST FOR PRODUCTION NO. 28:**   Produce all documents and/or writings, including, but not limited to, reports, memos, presentations or minutes, of or related in any way to the Light Truck Adjustment Improvement Team (however designated), from the time of its inception to the present time.

**RESPONSE:** Goodyear objects to this Request to the extent it seeks information that contains confidential information, proprietary information, and/or trade secrets.  Goodyear further objects because the request for "all documents and/or writings. . . from the time of its inception to the present" is not reasonably limited in scope, either as to subject matter or time and imposes a burden or expense related to the proposed discovery that outweighs its likely benefit.  Goodyear further objects to this Request because it is overly broad, unduly burdensome, and imposes a

burden or expense that outweighs its likely benefit to the extent it seeks documents and information unrelated to the Subject Tire. The Subject Tire was manufactured pursuant to a unique specification. This Request seeks information pertaining to different and dissimilar tires which were made to different design and manufacturing specifications, were built at different plants, built at different times, or designed for different applications; and therefore seeks documents and/or information concerning tires that are not substantially similar to the Tire at Issue. Goodyear further objects to this Request on the grounds that Plaintiffs have not limited the scope of this Request to the time frame, issues, and alleged defect theories relevant to this case.

Subject to and without waiving the foregoing objections, Goodyear refers Plaintiffs to the documents produced in response to Request No. 2.

**REQUEST FOR PRODUCTION NO. 29:**   Produce all documents and/or writings, including, but not limited to, reports, memos, presentations or minutes, of or related in any way to the RLT Crown Integrity Team (however designated), from the time of its inception to the present time.

**RESPONSE:** Goodyear objects to this Request to the extent it seeks information that contains confidential information, proprietary information, and/or trade secrets. Goodyear further objects because the request for "all documents and/or writings. . . from the time of its inception to the present" is not reasonably limited in scope, either as to subject matter or time and imposes a burden or expense related to the proposed discovery that outweighs its likely benefit. Goodyear further objects to this Request because it is overly broad, unduly burdensome, and imposes a burden or expense that outweighs its likely benefit to the extent it seeks documents and information unrelated to the Subject Tire. The Subject Tire was manufactured pursuant to a unique specification. This Request seeks information pertaining to different and dissimilar tires

which were made to different design and manufacturing specifications, were built at different plants, built at different times, or designed for different applications; and therefore seeks documents and/or information concerning tires that are not substantially similar to the Tire at Issue.  Goodyear further objects to this Request on the grounds that Plaintiffs have not limited the scope of this Request to the time frame, issues, and alleged defect theories relevant to this case.

Subject to and without waiving the foregoing objections, Goodyear refers Plaintiffs to the documents produced in response to Request No. 2.

**REQUEST FOR PRODUCTION NO. 30:**   Produce all presentations by any representative of Customer Engineering to any RLT Crown Integrity Team (however designated) from the time of its inception to the present time.

**RESPONSE:** Goodyear objects to this Request to the extent it seeks information that contains confidential information, proprietary information, and/or trade secrets.  Goodyear further objects because the request for "all presentations by any representative. . . from the time of its inception to the present" is not reasonably limited in scope, either as to subject matter or time and imposes a burden or expense related to the proposed discovery that outweighs its likely benefit. Goodyear further objects to this Request because it is overly broad, unduly burdensome, and imposes a burden or expense that outweighs its likely benefit to the extent it seeks documents and information unrelated to the Subject Tire.  The Subject Tire was manufactured pursuant to a unique specification.  This Request seeks information pertaining to different and dissimilar tires which were made to different design and manufacturing specifications, were built at different plants, built at different times, or designed for different applications; and therefore seeks documents and/or information concerning tires that are not substantially similar to the Tire at

Issue.  Goodyear further objects to this Request on the grounds that Plaintiffs have not limited the scope of this Request to the time frame, issues, and alleged defect theories relevant to this case.

**REQUEST FOR PRODUCTION NO. 31:**   Produce the "historic Load Range E documents" Beale Robinson testified about in the *Herbert v. Goodyear* case.

**RESPONSE:** Goodyear objects to this Request to the extent it seeks information that contains confidential information, proprietary information, trade secrets, and/or information subject to a duly entered Protective Order.  Goodyear further objects because the phrase "historic Load Range E documents" is not defined, vague and ambiguous and renders this Request overly broad, and thus Goodyear is not able to form a meaningful response to the Request as phrased. Goodyear further objects to this Request because it is overly broad, unduly burdensome, and imposes a burden or expense that outweighs its likely benefit to the extent it seeks documents and information unrelated to the Subject Tire.  The Subject Tire was manufactured pursuant to a unique specification.  This Request seeks information pertaining to different and dissimilar tires which were made to different design and manufacturing specifications, were built at different plants, built at different times, or designed for different applications; and therefore seeks documents and/or information concerning tires that are not substantially similar to the Tire at Issue.  Goodyear further objects to this Request on the grounds that Plaintiffs have not limited the scope of this Request to the time frame, issues, and alleged defect theories relevant to this case.  Goodyear further objects to this Request on the grounds that it seeks information regarding a prior lawsuit without regard to whether there was any similarity whatsoever between the other occurrence and the occurrence in this case much less the "substantial similarity" the law requires.

31

Goodyear further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or the consulting expert privilege.

**REQUEST FOR PRODUCTION NO. 32:**  Produce all documents relating to the decision to add nylon overlays to all Load Range E tires by 2001 as Beale Robinson testified about in the *Herbert v. Goodyear* case.  This includes, but is not limited to, all memos, emails, studies, test results, presentations, authorizations and the like.

**RESPONSE:** Goodyear objects to this Request to the extent it seeks information that contains confidential information, proprietary information, trade secrets, and/or information subject to a duly entered Protective Order.  Goodyear further objects to this Request because it is overly broad, unduly burdensome, and imposes a burden or expense that outweighs its likely benefit to the extent it seeks documents and information unrelated to the Subject Tire.  The Subject Tire was manufactured pursuant to a unique specification.  This Request seeks information pertaining to different and dissimilar tires which were made to different design and manufacturing specifications, were built at different plants, built at different times, or designed for different applications; and therefore seeks documents and/or information concerning tires that are not substantially similar to the Tire at Issue.  Goodyear further objects to this Request on the grounds that Plaintiffs have not limited the scope of this Request to the time frame, issues, and alleged defect theories relevant to this case.  Goodyear further objects to this Request on the grounds that it seeks information regarding a prior lawsuit without regard to whether there was any similarity whatsoever between the other occurrence and the occurrence in this case much less the "substantial similarity" the law requires.  Goodyear further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or the consulting expert privilege.

**REQUEST FOR PRODUCTION NO. 33:**     Produce all documents relating to Beale Robinson's study of "tread throws."

**RESPONSE:** Goodyear objects to this Request to the extent it seeks information that contains confidential information, proprietary information, and/or trade secrets. Goodyear further objects because the phrase "tread throw" is vague and ambiguous, and thus Goodyear is not able to form a meaningful response to the Request as phrased. Goodyear further objects to the extent the Request calls for legal conclusions or expert opinions as to what constitutes "tread throw." Goodyear further objects to this Request because it is overly broad and unduly burdensome in that it is not reasonably limited in scope, either as to subject matter or time. Goodyear further objects to this Request because it is overly broad, unduly burdensome, and imposes a burden or expense that outweighs its likely benefit to the extent it seeks documents and information unrelated to the Subject Tire. The Subject Tire was manufactured pursuant to a unique specification. This Request seeks information pertaining to different and dissimilar tires which were made to different design and manufacturing specifications, were built at different plants, built at different times, or designed for different applications; and therefore seeks documents and/or information concerning tires that are not substantially similar to the Tire at Issue. Goodyear further objects to this Request on the grounds that Plaintiffs have not limited the scope of this Request to the time frame, issues, and alleged defect theories relevant to this case.

**REQUEST FOR PRODUCTION NO. 34:**   Produce all documents relating to the increased number of tread separations in the 1990s and early 2000s as Beale Robinson testified about in the *Herbert v. Goodyear* case.

**RESPONSE:** Goodyear objects to this Request to the extent it seeks information that contains confidential information, proprietary information, trade secrets, and/or information subject to a

duly entered Protective Order.  Goodyear further objects because the phrase "increased number of tread separations" is not defined, vague, ambiguous, argumentative, and misleading. Goodyear further objects to this Request because it is overly broad, unduly burdensome, and imposes a burden or expense that outweighs its likely benefit to the extent it seeks documents and information unrelated to the Subject Tire.  The Subject Tire was manufactured pursuant to a unique specification.  This Request seeks information pertaining to different and dissimilar tires which were made to different design and manufacturing specifications, were built at different plants, built at different times, or designed for different applications; and therefore seeks documents and/or information concerning tires that are not substantially similar to the Tire at Issue.  Goodyear further objects to this Request on the grounds that Plaintiffs have not limited the scope of this Request to the time frame, issues, and alleged defect theories relevant to this case.  Goodyear further objects to this Request on the grounds that it seeks information regarding a prior lawsuit without regard to whether there was any similarity whatsoever between the other occurrence and the occurrence in this case much less the "substantial similarity" the law requires. Goodyear further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or the consulting expert privilege.

**REQUEST FOR PRODUCTION NO. 35:**  Produce all documents relating to communications with the people in charge of design and development regarding the increased number of tread separations in the 1990s and early 2000s as Beale Robinson testified about in the *Herbert v. Goodyear* case.

**RESPONSE:** Goodyear objects to this Request to the extent it seeks information that contains confidential information, proprietary information, trade secrets, and/or information subject to a duly entered Protective Order.  Goodyear objects to the request for "all documents relating to

communications with people" because it is overly broad, vague, and ambiguous, and thus Goodyear is not able to form a meaningful response to the Request as phrased. Goodyear further objects because the phrase "increased number of tread separations" is not defined, vague, ambiguous, argumentative, and misleading. Goodyear further objects to this Request because it is overly broad, unduly burdensome, and imposes a burden or expense that outweighs its likely benefit to the extent it seeks documents and information unrelated to the Subject Tire. The Subject Tire was manufactured pursuant to a unique specification. This Request seeks information pertaining to different and dissimilar tires which were made to different design and manufacturing specifications, were built at different plants, built at different times, or designed for different applications; and therefore seeks documents and/or information concerning tires that are not substantially similar to the Tire at Issue. Goodyear further objects to this Request on the grounds that Plaintiffs have not limited the scope of this Request to the time frame, issues, and alleged defect theories relevant to this case. Goodyear further objects to this Request on the grounds that it seeks information regarding a prior lawsuit without regard to whether there was any similarity whatsoever between the other occurrence and the occurrence in this case much less the "substantial similarity" the law requires. Goodyear further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or the consulting expert privilege.

**REQUEST FOR PRODUCTION NO. 36:** Copies of adjustment records for the subject tire line and all similar green tires for five years prior to the date of manufacture of the subject tire through the present.

**RESPONSE:** Goodyear objects to this Request to the extent it seeks information that contains confidential information, proprietary information, trade secrets, and/or information subject to a

duly entered Protective Order.  Goodyear objects to this Request because the phrase "all similar green tires" is not defined, vague and ambiguous and renders this Request overly broad such that Goodyear is not able to form a meaningful response to the Request as phrased.  Goodyear objects to this Request because it is overly broad in that it is not reasonably limited in scope, either as to subject matter or time.  The Request is unlimited as it concerns tires other than the type of tire alleged to have suffered a disablement in this case.  The Request seeks thirty (30) years of information pertaining to different and dissimilar tires which were made to different design and manufacturing specifications, were built at different plants, built at different times, or designed for different applications; and therefore seeks documents and/or information concerning tires that are not substantially similar to the Subject Tire.  Thus, the Request imposes a burden or expense that far outweighs its likely benefit to the extent it seeks documents and information outside of the time frame, issues, and alleged defect theories relevant to this case.

Subject to and without waiving the foregoing objections, Goodyear produces adjustment data for all conditions for the Subject Tire during the Subject Tire Scope.   See GY_Susman_20838-GY_Susman_20844.  By responding to this Request, Goodyear makes no admissions or representations regarding the similarity between incidents disclosed and the occurrence giving rise to this litigation.

**REQUEST FOR PRODUCTION NO. 37:**   Copies of adjustment records for the subject tire line and all similar green tires for five years prior to the date of manufacture of the subject tire through the present.

**RESPONSE:** See Goodyear's Objections and Response to Request No. 36, which are incorporated herein by reference.

GREENSFELDER, HEMKER & GALE, P.C.

By: _____
Edward S. Bott, Jr.
Clark W. Hedger
Juliane M. Rodriguez
10 South Broadway, Suite 2000
St. Louis, MO  63102
(314) 241-9090
Fax:  (314) 345-5465
esb@greensfelder.com
ch1@greensfelder.com
jrodriguez@greensfelder.com

AND

BAIRD HOLM LLP
Jennifer D. Tricker (NE# 23022)
1700 Farnam Street, Suite 1500
Omaha, NE  68102-2068
(402) 344-0500
jtricker@bairdholm.com

*Attorneys for The Goodyear Tire & Rubber Company*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served by electronic mail and U.S. mail, postage prepaid, this 27th day of August, 2018 to:

Kyle W. Farrar
KASTER, LYNCH, FARRAR & BALL, LLP
1010 Lamar, Suite 1600
Houston, TX 77002
kyle@fbtrial.com

Paul E. Godlewski
SCHWEBEL, GOETZ & SIEBEN, P.A.
80 South 8th Center
5120 IDS Center
Minneapolis, MN 54402
pgodlewski@schwebel.com

Michael F. Coyle
FRASER, STRYKER LAW FIRM
409 South 17th Street
Suite 500, Energy Plaza
Omaha, NE 68102
mcoyle@fraserstryker.com

*Attorney for Plaintiffs*

1741597