**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| RYSTA LEONA SUSMAN, both individually and as Legal Guardian of SHANE ALLEN LOVELAND, et al., | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. 8:18-cv-00127 |
| v. | ) |
| | ) |
| THE GOODYEAR TIRE & RUBBER COMPANY, | ) ) |
| | ) |
| Defendant. | ) |

**GOODYEAR'S TRIAL BRIEF[1]**

The Goodyear Tire & Rubber Company ("Goodyear"), by its attorneys, respectfully submits its Trial Brief:

**I.      Disputed Elements Of Plaintiffs' Claims.**

**A.      Elements of Plaintiffs' Claims.**

**i.      Negligence.**

To succeed on their negligence claim, Plaintiffs must establish "some evidence of duty, breach, causation, and damages." *Jay v. Moog Auto., Inc.*, 652 N.W.2d 872, 879 (Neb. 2002). On the critical question of breach, the key consideration is whether Goodyear's acts or omissions created an "unreasonable risk of causing physical harm to those who use [the product] for a purpose for which the manufacturer should expect it to be used." *Stahlecker v. Ford Motor Co.*, 667 N.W.2d 244, 253 (Neb. 2003). "In order to determine whether appropriate care was exercised, the fact finder must assess the foreseeable risk at the time of the defendant's alleged negligence." *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 784 N.W.2d 907, 917 (Neb. 2010).

---

[1] In this Motion, the term "Subject Tire" refers to LT235/85R16 Goodyear Wrangler HT Tires generally. The term "Tire at Issue" refers specifically to the Tire that was mounted on the truck involved in the accident, and which suffered the tread detachment which has given rise to this lawsuit.

1

### ii.     Strict Liability.

To succeed on their claim for strict products liability, Plaintiffs must prove the following:

> (1) the defendant placed the product on the market for use and knew, or in the exercise of reasonable care should have known, that the product would be used without inspection for defects; (2) the product was in a defective condition when it was placed on the market and left the defendant's possession; (3) the defect is the proximate or a proximately contributing cause of the plaintiff's injury sustained while the product was being used in a way and for the general purpose for which it was designed and intended; (4) the defect, if existent, rendered the product unreasonably dangerous and unsafe for its intended use; and (5) the plaintiff's damages were a direct and proximate result of the alleged defect.

*Pitts v. Genie Indus., Inc.*, 921 N.W.2d 597, 609 (Neb. 2019).

### B.     Breach of Negligence Duties (Negligence).

Plaintiffs claim Goodyear breached its duty of care by failing to include a nylon overlay in the Tire's design, and by manufacturing the Tire with one or more of its belts out of alignment. Goodyear denies both these allegations, and denies that the design and manufacture of the Tire at Issue created an unreasonable risk of harm. The parties, through their respective experts, Joe Grant and David Southwell, will introduce competing evidence on this issue, and it will be up to the jury to determine whether Goodyear breached its duty of care.

### C.     Condition of the Tire at Issue (Strict Liability).

Plaintiffs claim the Tire at Issue was defective for the same reasons it claims Goodyear was negligent. Goodyear denies that the absence of a nylon overlay rendered the Tire defective, and denies that the Tire's belts were out of tolerance. The parties, through their respective experts, Joe Grant and David Southwell, will introduce competing evidence on this score, and it will be up to the jury to determine if the Tire at Issue was defective.

2

1844114

### D.    Causation (Negligence and Strict Liability).

Plaintiffs bear the burden of demonstrating proximate causation on both their claims. *Roskop Dairy, L.L.C. v. GEA Farm Techs., Inc.*, 871 N.W.2d 776, 794 (Neb. 2015); *Stahlecker*, 667 N.W.2d at 248; *see also Pitts v. Genie Indus., Inc.*, 921 N.W.2d 597, 609 (Neb. 2019).  In defense of Plaintiffs claims, Goodyear maintains that neither its acts or omissions, nor the condition of the Tire at Issue, caused Plaintiffs' injuries.  Instead, Goodyear maintains that the Tire was not defective in any way, and disabled because the tire suffered service conditions and abuses that changed its condition substantially after it left Goodyear.  Specifically, the detachment of the tread occurred as a result of a localized road hazard impact and overdeflected operation (i.e., the tire was under-inflated, over-loaded, or both at times throughout its service life).

Even if Goodyear's negligence and/or the alleged defects in the Tire are proved, Goodyear maintains that the acts and omissions of Larry Blair and Kearney Towing & Repair Center, Inc. broke the causal chain and insulate Goodyear from liability here.  Specifically, Goodyear maintains that Kearney Towing's decision to put the Tire at Issue on the Subject Vehicle in the first instance, and its subsequent failure to remove the Tire while servicing the Vehicle after putting the Tire on it, were negligent.  Similarly, Goodyear maintains that Larry Blair acted negligently in responding to the tread separation including by oversteering and accelerating immediately following the separation.

To overcome these attacks on their negligence claim, Plaintiffs must prove each of the following with respect to Goodyear's alleged negligence: "(1) that without the negligent action, the injury would not have occurred, commonly known as the 'but for' rule; (2) that the injury was a natural and probable result of the negligence; and (3) that there was no efficient intervening

3

cause." *Stahlecker*, 667 N.W.2d at 248. Plaintiffs bear the equivalent burden on their strict liability claim. *See Pitts*, 921 N.W.2d at 609; *Roskop Dairy, L.L.C.*, 871 N.W.2d at 794.

For purposes of this test, as to both Plaintiffs' claims, an efficient intervening cause "is a new, independent force intervening between the defendant's negligent act and the plaintiff's injury." *Stahlecker*, 667 N.W.2d at 254. The force "may be the conduct of a third person who had full control of the situation, whose conduct the defendant could not anticipate or contemplate, and whose conduct resulted directly in the plaintiff's injury. An efficient intervening cause must break the causal connection between the original wrong and the injury." *Id.* An intervening cause cuts off an original tortfeasor's liability only when the cause is not foreseeable. *Sacco v. Carothers*, 567 N.W.2d 299, 304 (Neb. 1997).

Whether a force or action constitutes an efficient intervening cause and whether a plaintiff has met its burden to establish proximate cause are typically fact questions to be resolved by the jury. *E.g.*, *Zeller v. Howard Cty.*, 419 N.W.2d 654, 658 (Neb. 1988). The same is true for the question of whether the actions of a third party are foreseeable to the defendant seeking to demonstrate that the third-party's actions constitute an efficient intervening cause. *Hancock v. Paccar, Inc.*, 283 N.W.2d 25, 36 (Neb. 1979); *Certain Underwriters at Lloyd's v. S. Pride Trucking, Inc.*, 301 F. Supp. 3d 949, 958 (D. Neb.), *on reconsideration in part*, 331 F. Supp. 3d 956 (D. Neb. 2018); *Isla Drinkwalter v. Frontera Produce Ltd*, No. 7:13CV5006, 2014 WL 12577029, at *5–6 (D. Neb. June 24, 2014).

### E.    Damages (Negligence and Strict Liability).

The fact that Plaintiffs were injured in the accident at issue is not in dispute. Nevertheless, several factual disputes regarding Plaintiffs' damages will be for the jury to decide.

4

1844114

First, as Plaintiffs have not produced medical bills supporting the full extent of their claimed medical expenses, the parties dispute the dollar amounts of the medical bills Plaintiffs incurred as a result of the accident.

Second, the parties dispute the extent of Mr. Loveland's lost future earnings and the extent of the future medical care Mr. Loveland will need and the costs of that care.  The parties have designated competing medical experts and economist experts to testify on these issues, and the jury will decide which experts are more credible, and the nature and extent of Plaintiffs' damages, if any.

Disputes regarding the nature and extent of Mr. Summers' damages may also exist based on the evidence presented by Plaintiffs.

## II.     Goodyear's Affirmative Defenses.

Goodyear has raised two primary affirmative defenses to Plaintiffs' substantive claims: misuse and state of the art.

### A.     Misuse.

Misuse constitutes an affirmative defense to both negligence and strict liability claims for product liability.  *Jay v. Moog Auto., Inc.*, 652 N.W.2d 872, 882–83 (Neb. 2002) (strict liability); *Hilt Truck Line, Inc. v. Pullman, Inc.*, 382 N.W.2d 310, 313 (Neb. 1986).  To succeed on the affirmative defense of misuse, a defendant must prove "(1) that the plaintiff used the product as claimed by the defendant, (2) that the defendant could not reasonably have foreseen such a use, and (3) that this misuse by the plaintiff was a proximate cause of his own injury."  *Wedgewood v. U.S. Filter/Whittier, Inc.*, No. A-09-1280, 2011 WL 2150102, at \*10 (Neb. Ct. App. May 31, 2011).  To be clear, the misuse need not be "the" proximate cause, so long as it is "a" proximate

1844114

cause of the plaintiff's damage. *Keaschall v. Altec Indus., Inc.*, No. 4:14CV3070, 2017 WL 3084393, at *7 (D. Neb. July 19, 2017).

Goodyear maintains that the Tire was misused after it left Goodyear' possession. Specifically, Goodyear's tire expert, Joe Grant, has opined that the Tire at Issue demonstrated signs of overdeflected operation, and that this overdeflected operation was a cause of the Tire's failure, together with a road hazard impact.

Plaintiffs deny that misuse is a valid affirmative defense and deny that the Tire experienced overdeflected operation. Plaintiffs' tire failure expert, David Southwell, has opined that the Tire did not show signs of overdeflected operation.

### B.     State of the Art.

The defense of state of the art is available for both negligence and strict product liability claims. Neb.Rev.St. § 25-21,182. Under the statute's terms, "proof establishing that [the] design" of the Tire at Issue "was in conformity with the generally recognized and prevailing state of the art in the industry as the time the specific product involved in the action was first sold to any person not engaged in the business of selling such product" is a defense to Plaintiffs' claims. *Id.*

Goodyear maintains that the tire's design, which did not include a nylon overlay, was in conformity with the generally recognized and prevailing state of the art in the Tire industry at the time the Tire was manufactured and sold. Plaintiffs deny that this is the case.

### III.     The Relevant Time to Judge Goodyear's Conduct and the Condition of the Tire.

One issue likely to confuse the jury at trial is the evidence they can consider in determining whether Goodyear was negligent and whether the Tire at Issue was defective or unreasonably dangerous.

6

1844114

On Plaintiffs' negligence claim, the jury must determine whether Goodyear exercised appropriate care at the time of its alleged negligence—i.e., at the time it designed the Tire at Issue, and the time it manufactured the tire at issue. *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 784 N.W.2d at 917. The Tire at Issue was manufactured the 24th week of 1994 (June 13 – June 19, 1994). Thus, any evidence of Goodyear's acts or omissions after June, 1994, is presumptively irrelevant, subject to the exceptions identified in the briefing on the parties' Motions in Limine.

Similarly, on Plaintiffs' strict liability claim, the jury must determine whether the Tire at Issue was defective when it left Goodyear's possession. *E.g.*, *Rahmig v. Mosley Mach. Co.*, 412 N.W.2d 56, 69 (Neb. 1987). Again, this renders evidence post-dating June, 1994 presumptively irrelevant.

Nevertheless, Plaintiffs intend to offer various categories of evidence that post-date the manufacture of the Tire at Issue, including evidence of alleged other similar incidents, design changes in the Subject Tire, and Goodyear's investigation into Load Range E tires. Given the Court's rulings on the parties' Motions in Limine, it is possible that some of this evidence may come in at trial. (ECF No. 263 at 4-5, 9-10, 14.) Goodyear intends to maintain its objections to the admission of this evidence at trial. If its objections are overruled, and this evidence comes in at trial, Goodyear requests that the jury be given a limiting instruction advising the jury of the timeframe it may consider in evaluating Goodyear's negligence and the condition of the Tire. Without a limiting instruction, the jury may be confused in a manner prejudicial to Goodyear on issues that are critical to the determination of the case. *See, e.g.*, *Gregory v. Cincinnati Inc.*, 538 N.W.2d 325, 328 (Mich. 1995); *see also Rahmig v. Mosley Mach. Co.,* 412 N.W.2d 56, 82 (Neb. 1987).

1844114

Also, should the Court determine that any post-manufacture evidence should come in for a limited purpose, Goodyear requests that the evidence come in with a limiting instruction at the time of its introduction, and when the case is submitted to the jury. *See Hale v. Firestone Tire & Rubber Co.*, 756 F.2d 1322, 1334 (8th Cir. 1985) ("Once evidence admissible for one purpose but inadmissible for another is admitted, the trial court cannot refuse a requested limiting instruction.").

### III.   Miscellaneous Issues Regarding Evidence Post-Dating the Manufacture of the Tire at Issue.

#### A.   Post-Manufacture Design Changes To The Subject Tire.

In its Order on the parties' Motions in Limine, the Court reserved ruling on the admissibility of this evidence at trial. The focus of the parties' briefing on this issue was on the addition of a nylon overlay to the design of the Subject Tire in 1996. But in addition to adding a nylon overlay to the design, Goodyear also incorporated a new belt compound in the design of the Subject Tire, and increased the liner gauge on these Tires. Plaintiffs' tire failure expert, David Southwell, has not based any opinions on the compound change or the increased liner gauge, and Plaintiffs have not otherwise articulated a plausible theory for the admissibility of this evidence. Accordingly, before Plaintiffs seek to introduce any evidence of these design changes, or documents discussing them, Goodyear requests that a side-bar conference be held first, so that these issues may be addressed outside the presence of the jury.

#### B.   Adjustments and Claims Information.

Another subject of the Parties' Motions in Limine on which the Court has reserved ruling for trial is adjustment data. The Court's Order on the related pleadings accurately describes adjustments as "credits toward the price of a new tire . . . in response to a customer complaint" and that the related data is "generally categorized" and that a "CA or 'crown area' [adjustment] could

8

1844114

include a tread throw, partial tread separation, or other issue with the crown area of the tire." (ECF No. 263 at 8.) Inherent in this accurate description is that adjustment data does not provide adequate information to determine whether an underlying "damage claim," reflected in the data, has any relationship, similarity, or bearing on the product defect alleged here.

"Damage claims" are "other incidents" involving other tires. Because of this, and as set forth in briefing on Goodyear's Motions in Limine, courts have repeatedly held that the threshold substantial similarity requirement applies to adjustment data and damage claims to establish relevance and to avoid prejudice and jury confusion over collateral issues. (ECF No. 176 at 5-7.) As such, consistent with the Court's ruling on other similar incidents, Goodyear will maintain its objections at trial regarding adjustment data and damage claims absent Plaintiffs' ability to establish the "other incident" foundation criteria already established by the Court. (ECF No. 263 at 2-5.)

### C.    Goodyear's Load Range E Investigation.

As explained in the briefing on the parties' Motions in Limine, Goodyear began undertaking an investigation into "tread throws" in Load Range E tires in late 1995. (ECF No. 161 at 4-5.) Goodyear has produced to Plaintiffs numerous documents generated during the course of this investigation, and Plaintiffs plan on introducing some of these documents into evidence at trial.

For example, Plaintiffs' Trial Exhibit 112 is a Goodyear Product Performance Review PowerPoint presentation from September, 1997. (This proposed exhibit is attached as Exhibit A). The slides in this presentation discuss, reference, and include charts representing various vehicle damage claims involving Goodyear and Kelly-Springfield Load Range E tires. (Ex. A at 2.) Some of the identified claims arose after the manufacture of the Tire at Issue. (*See id.*)

9

1844114

These slides also reference and include charts summarizing adjustment data for Goodyear's Load Range E tires, including adjustment data generated after the manufacture of the Tire at Issue. (*See id.* at 2-3.)   These slides refer to and include charts summarizing adjustment data from Goodyear's Load Range C and Load Range D tires as well.  (*Id.* at 4-5.)   Additionally, one slide in this presentation provides a projection of claims that may arise in the future.  (*Id.* at 19.)

These slides do not provide adequate information to determine whether any damage claim or adjustment reflected in the data has any relationship, similarity, or bearing on the product defect alleged here.   Consistent with its position on adjustment data and OSI evidence generally, as reflected in its briefing on its Motions in Limine, Goodyear maintains that the threshold substantial similarity requirement applies to the adjustment data and damage claim information included in these slides, and other LRE investigation documents Plaintiffs plan to introduce at trial. As such, Goodyear will maintain its objections at trial regarding this adjustment data and damage claims data absent Plaintiffs' ability to establish the "other incident" foundation criteria already established by the Court.  (ECF No. 263 at 2-5.)

Other documents generated in this investigation which Plaintiffs plan to introduce at trial refer to post-manufacture design changes in the Subject Tire, including the addition of a nylon overlay, changes in compounds, and changes in tires' liner gauges.  (See Plaintiffs' Proposed Trial Exhibit 114, attached as Exhibit B, at 2, 8.)   Consistent with its Motions in Limine, Goodyear intends to maintain its objections to the introduction of this evidence at trial.

Still other documents discuss various other potential root causes Goodyear evaluated as contributing to cause or causing the tread throws that prompted its investigation, including issues with the curing process for Load Range E tires and the design of the tires' belt packages.  (See Plaintiffs' proposed Trial Exhibit 119, attached as Exhibit C, at 11-12.)   Plaintiffs have not

10

articulated the relevance of any of this information, and Goodyear intends to maintain its objections to the introduction of these documents at trial.

Given these critical issues, Goodyear requests that, before Plaintiffs reference this evidence, or otherwise seek to introduce it at trial, that a side-bar conference be held first, so that these issues may be addressed outside the presence of the jury.

## IV.    Gadsden, Alabama, Plant Practices.

In their Response to Goodyear's Motion in Limine Regarding Immaterial Plant Practices at the Gadsden, Alabama plant where the Tire at Issue was manufactured, Plaintiffs stipulated that they would not "offer any evidence or make any comment regarding immaterial and irrelevant plant practices." (ECF No. 224 at 1.)  Plaintiffs maintained in this Response that any testimony offered about plant practices will be "relevant to the opinions of Plaintiffs' expert." (*Id.*)  The Court denied Goodyear's Motion as moot in view of this stipulation.  (ECF No. 263 at 7.)

As set forth in the briefing on the parties' other Motions for Summary Judgment, the only manufacturing defect Plaintiffs have identified is that the Tire's belts were out of alignment.  (*E.g.*, ECF No. 108 at 5-6.)  Nevertheless, in their deposition designations, Plaintiffs have designated testimony about Goodyear's Gadsden manufacturing plant generally, testimony about investigations into whether the curing process at the Gadsden plant was responsible for the "tread throws" that spawned Goodyear's Load Range E investigation, and testimony regarding Kelly-Springfield's refusal to allow their tires to be built at the Gadsden plant.  None of this designated testimony relates to the belt-alignment manufacturing defect Plaintiffs have alleged here.  Thus, none of this testimony is relevant to Plaintiffs' claim, and Plaintiffs' designation of this testimony is inconsistent with their position in their Response to Goodyear's Motion in Limine.

Given the inconsistencies in Plaintiffs' representations, Goodyear requests that Plaintiffs be

11

1844114

required to approach the bench before they mention or seek to introduce any evidence related to Goodyear's Gadsden, Alabama plant.

## V.        Punitive Damages.

The Court has ruled that it need not bifurcate the trial for punitive damages as set forth in R.C. 2315.21. Regardless, the remainder of Ohio's comprehensive scheme for the determination of punitive damages in product liability cases applies. Pursuant to Ohio law, the jury makes a determination as to whether punitive damages are warranted, but this Court determines the amount of the punitive damages award pursuant to specific statutory criteria. *See* R.C. 2307.80(B)(1)-(7); *Cawley v. Eastman Outdoors, Inc.*, 2014 WL 5325223, at *6 (N.D. Ohio Oct. 17, 2014) (federal district court, sitting in diversity, holding that under Ohio law "whether punitive damages should be awarded is a question for the jury, though if the jury awards punitive damages, the amount would be decided by the Court.").[2]

---

[2] R.C. 2307.80(B)(5) permits a court to consider the post-sale conduct of a defendant, but was enacted to be in conformity with underlying Ohio punitive damages substantive law. Here, the substantive law of Nebraska applies and as this Court has recognized on more than one occasion Nebraska products liability law does not impose post-sale duties on manufacturers. *See* e.g. *Anderson v. Nissan Motor Co.*, 139 F.3d 599, 602 (8th Cir. 1998); *Vallejo v. Amgen, Inc.*, 2014 WL 4922901, at *1 (D. Neb. Sept. 29, 2014). As such, an enhanced award for punitive damages based on post-sale duties that do not exist in Nebraska would violate the policy and substantive law of the forum state.

12

1844114

GREENSFELDER, HEMKER & GALE, P.C.

By:    /s/ Edward S. Bott, Jr.        
Edward S. Bott, Jr.
Clark W. Hedger
Juliane M. Rodriguez
10 South Broadway, Suite 2000
St. Louis, MO  63102
(314) 241-9090
Fax:  (314) 345-5465
esb@greensfelder.com
ch1@greensfelder.com
jrodriguez@greensfelder.com

AND

BAIRD HOLM LLP
Jennifer D. Tricker (NE# 23022)
1700 Farnam Street, Suite 1500
Omaha, NE  68102-2068
(402) 344-0500
jtricker@bairdholm.com

*Attorneys for The Goodyear Tire & Rubber Company*

1844114

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with NECivR 7.1(d)(3) and further certify that the word count function was applied to include all text, including the caption, headings, footnotes, and quotations.  This document was prepared using Microsoft Word 2010 and contains 3,624 words.

_/s/ Edward S. Bott, Jr._


**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed with the Clerk of the Court and served upon all attorneys of record using the CM/ECF system this 10th day of March, 2020.

Kyle W. Farrar
KASTER, LYNCH, FARRAR & BALL, LLP
1117 Herkimer St.
Houston, TX 77008
kyle@fbtrial.com

Paul E. Godlewski
SCHWEBEL, GOETZ & SIEBEN, P.A.
80 South 8th Center
5120 IDS Center
Minneapolis, MN 54402
pgodlewski@schwebel.com

Michael F. Coyle
FRASER, STRYKER LAW FIRM
409 South 17th Street
Suite 500, Energy Plaza
Omaha, NE 68102
mcoyle@fraserstryker.com

_Attorneys for Plaintiffs_

_/s/ Edward S. Bott, Jr._

14

1844114