IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RYSTA LEONA SUSMAN, both individually and as Legal Guardian of SHANE ALLEN LOVELAND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE GOODYEAR TIRE & RUBBER COMPANY, <br><br> Defendant. | Case No. 8:18-cv-00127 |

**GOODYEAR'S MEMORANDUM IN SUPPORT OF ITS MOTION TO PRECLUDE PLAINTIFFS' REHABILITATION EXPERT, CRAIG LICHTBLAU, M.D., FROM OFFERING OPINIONS AT TRIAL FIRST DISCLOSED IN HIS MARCH 3, 2020 SUPPLEMENTAL EXPERT REPORT, AND TO PRECLUDE PLAINTIFFS' ECONOMIC EXPERT, BERNARD PETTINGILL, FROM OFFERING OPINIONS AT TRIAL FIRST DISCLOSED IN HIS SECOND SUPPLEMENTAL EXPERT REPORT SERVED ON MARCH 9, 2020**

The Goodyear Tire & Rubber Company ("Goodyear"), by its attorneys, hereby submits this Memorandum in Support of its Motion to Preclude Plaintiffs' Rehabilitation Expert, Craig Lichtblau, M.D., from Offering Opinions at Trial First Disclosed in his March 3, 2020 Supplemental Expert Report, and to Preclude Plaintiffs' Economic Expert, Bernard Pettingill, from Offering Opinions at Trial First Disclosed in his Second Supplemental Expert Report Served on March 9, 2020:

**INTRODUCTION**

On March 3, 2020, Plaintiffs served the Supplemental Expert Report of their rehabilitation expert, Craig Lichtblau, M.D. This Report contains two brand new opinions that were entirely absent from Dr. Lichtblau's original Report. It also modifies numerous opinions from Mr. Lichtblau's original report, including on the costs of medical care Mr. Loveland will need, the

drugs Mr. Loveland will need in the future, and the costs of those drugs. Together, these changes increase Dr. Lichtblau's predicted cost of Mr. Loveland's future medical care by more than $4,000,000.

Six days later, on March 9, 2020, Plaintiffs served the Second Supplement Expert Report of their forensic economist expert, Bernard Pettingill. This Report takes the information contained in Dr. Licthblau's Supplemental Report, and projects the costs of Mr. Loveland's future medical care for the remainder of his life. Mr. Pettingill, in short, provides the total monetary value of the care Dr. Lichtblau believes Mr. Loveland will need in the future. Mr. Pettingill based his calculations on a new income growth rate (i.e., a rate different from his original report) and a new future income discount rate.

The Court should preclude both of these experts from offering their newly-disclosed opinions pursuant to Federal Rule of Civil Procedure 37 as a sanction for Plaintiffs' failure to comply with their disclosure obligations under Federal Rule of Civil Procedure 26 and this Court's Final Progression Order. Plaintiffs did not seek leave to serve these Supplemental Reports out of time, and have offered no justification for their belated disclosure. Moreover, given that Dr. Lichtblau provided his first Report based on an evaluation of Mr. Loveland conducted in June, 2017, almost three years before trial, Plaintiffs knew that a Supplemental Report would be necessary, but failed to take any action to adjust the progression order, or disclose their expert's new opinions in a timely manner.

If Plaintiffs are allowed to introduce these opinions at trial, Goodyear will suffer substantial prejudice. Goodyear will have no opportunity to depose Dr. Lichtblau on his brand new opinions, or on the changes in his Report that increase Mr. Loveland's damages by $4,000,000. Goodyear will similarly be deprived of the opportunity to depose Mr. Pettingill on the changes to his Report.

1844737

Given Plaintiffs' blatant disregard of their disclosure obligations, Goodyear should not have to suffer this prejudice.

**RELEVANT FACTUAL BACKGROUND**

**I.   The Court's Progression Orders and Plaintiffs' Service Of Dr. Lichtblau's and Dr. Pettingill's Supplemental Reports.**

Judge Bazis entered her Order Setting Final Schedule for Progression of Case on October 10, 2018.  (ECF No. 77.)  In this Order, Judge Bazis set March 14, 2019 as Plaintiffs' deadline to serve their expert reports.  (ECF No. 77 at 2.)  Per the express terms of this Order, "[a]ll requests for changes of deadlines or settings . . . shall be directed to the assigned magistrate judge by appropriate motion."  (*Id.* at 4.)  No such motion "shall . . . be considered in the absence of a showing by counsel of due diligence in the timely development of the case for trial and the recent development of circumstances, unanticipated prior to the filing of the motion, which require that additional time be allowed."  (*Id.*)

Here, Plaintiffs produced Dr. Lichtblau's original Report on March 14, 2019.  This report was based in large part on his evaluation of Mr. Loveland and interview with Mr. Loveland's mother in June, 2017.  Plaintiffs produced Mr. Lichtblau's Supplemental Report on March 3, 2020. Plaintiffs produced Mr. Pettingill's original Report on March 14, 2019; they produced his first supplemental report on or about November 20, 2019; and they produced his Second Supplemental Report on March 9, 2019.

**II.   Dr. Lichtblau's Supplemental Report.**

Dr. Lichtblau's Supplemental Report differs from his original report in three significant respects.  First, in his Supplemental Report, Dr. Lichtblau for the first time opined on the reasonableness of the bills and medical care Mr. Loveland received following the accident. (*Compare* Dr. Licthblau's Summary Report from his original Report, attached as Exhibit A, *with*

his Updated Summary Report from his Supplemental Report, attached as Exhibit B.)

Second, in his new Report, Dr. Lichtblau opined for the first time about the degree of Mr. Loveland's consciousness and awareness and his ability to feel pain. According to Dr. Lichtblau Mr. Loveland has "enough cognitive awareness to realize his life has totally changed." (Extended Follow-Up Office Visit section of Dr. Lichtblau's Supplemental Report, attached as Exhibit C, at 7.) Dr. Lichtblau did not offer this opinion or a similar opinion in his first Report.

Third, Dr. Lichtblau included brand new pricing information for numerous categories of medical care Mr. Loveland will need in the future, including the costs of physiatrist and physical therapy care (among many others), changed the drugs he opines that Mr. Loveland will need in the future, and changed the prices of the drugs he previously testified Mr. Loveland will need. (*Compare* Dr. Licthblau's Continuation of Care section of his original Report, attached as Exhibit D, *with* Dr. Licthblau's Updated Continuation of Care section of his Supplemental Report, attached as Exhibit E.)

## III.     Mr. Pettingill's Second Supplemental Expert Report.

Mr. Pettingill's Second Supplemental Expert Report mirrors his first Report, which is to say that it takes the costs of care and frequency of care identified in Dr. Lichtblau's Supplemental Report and purports to identify the present value of Mr. Loveland's future medical care and loss of earning capacity over the remainder of his life. As a result of the changes in Dr. Lichtblau's opinions, Mr. Pettingill's calculation of the present value of Mr. Loveland's future medical care increased from $12,395,297 in his first Report to $16,693,758 in his Second Supplemental Report. (*Compare* the Quantitative Economic Loss Summary from Mr. Pettingill's first Report, attached as Exhibit F, *with* the Quantitative Economic Loss Summary from Mr. Pettingill's Second Supplemental Report, attached as Exhibit G.)

1844737

Apart from the change is his top-line damages number, Mr. Pettingill also changed his opinions on the proper income growth rate and future income discount rate to be used to arrive at his present value calculations. (*Compare* the Loss of Earning Capacity Section from Mr. Pettingill's first Report, attached as Exhibit H, *with* the Loss of Earning Capacity Section from Mr. Pettingill's Second Supplemental Report, attached as Exhibit I.)

## ARGUMENT

**I.  The Court Should Preclude Dr. Lichtblau and Mr. Pettingill From Offering Any Opinion From Their Supplemental Reports Under Federal Rule of Civil Procedure 37 As A Sanction For Plaintiffs' Failure To Comply With Rule 26(a) and The Court's Final Progression Order.**

Rule 26(a)(2) governs the mandatory disclosure of expert testimony. Under this Rule, each party must disclose the identity of any expert witness that it may use at trial, along with a detailed written report prepared and signed by the witness, by the date ordered by the court. Fed. R. Civ. P. 26(a)(2)(D). Each written report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i).

If a party does not satisfy Rule 26(a)(2)'s disclosure requirements, or, more specifically, the disclosure requirements set forth in a progression or scheduling order, the undisclosed expert or information is excluded under Rule 37(a) unless the failure was substantially justified or harmless. *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 703 (8th Cir. 2018). This is a "self-executing sanction for failure to make a disclosure as required by Rule 26(a), without need for a motion" for sanctions. *Id*. (quoting Rule 37 Advisory Committee Notes, 1993 Amendments). If a party fails to supplement an expert report, a court may order appropriate sanctions, including the exclusion of the testimony, a continuance of the trial to allow depositions to be taken, or the grant of a new trial. *Tenbarge v. Ames Taping Tool Sys., Inc.*, 190 F.3d 862, 865 (8th Cir. 1999).

5

In determining what remedy to impose for a party's failure to comply with Rule 26, a court should consider "the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Meyer v. Currie Tech Corp.*, 329 F.R.D. 228, 232 (D. Neb. 2018) (quoting *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008)).

Here, each of these factors militates in favor of barring Dr. Lichtblau's and Dr. Pettingill's newly-disclosed opinions. First, as Plaintiffs opted not to seek leave to file these new reports out of time, they have offered no reason or justification for their noncompliance, which, in and of itself, should weigh against the admissibility of these new reports. Presumably, however, Plaintiffs will argue that they needed to provide updated information from Dr. Lichtblau to account for the treatment and care Mr. Loveland is currently receiving, as opposed to the care he was receiving in June, 2017.

To begin, this excuse is entirely unrelated to Dr. Lichtblau's two brand new opinions—Dr. Lichtblau was surely in a position to opine on the reasonableness of Mr. Loveland's post-accident medical bills in June, 2017, when he started formulating his expert opinions. The same is true with respect to Mr. Loveland's ability to perceive his own circumstances: as Dr. Lichtblau has opined that Mr. Loveland's condition did not meaningfully change between June, 2017 and his follow-up office visit with Mr. Loveland's mother in January 2020, Dr. Lichtblau was perfectly capable of offering this opinion in his original Report. (Ex. C at 1.) Plaintiffs, however, chose not to ask him to do so, and they should bear the consequences of this failure.

While the notion that Plaintiffs needed to update Dr. Lichtblau's opinions to account for any changes to Mr. Loveland's conditions that have occurred since June, 2017 has superficial appeal, it is no justification whatsoever for Plaintiffs' belated disclosure. For one thing, Dr.

6

Lichtblau opines in the Extended Follow-up Office Visit section of his new Report that Mr. Loveland "has remained relatively medically stable" since Dr. Lichtblau's last report. (Ex. C. at 1). If this is true, then it is difficult to understand why Dr. Lichtblau changed his opinions on the types and frequency of care Mr. Loveland will need, and on the types of medications he will need to take in the future in his new Report. For another, since Plaintiffs knew that Dr. Lichtblau's original opinions were based on his June, 2017 evaluation, they knew for the last 30+ months or so of their supposed need to update his opinions. Plaintiffs, however, did nothing to account for this fact, did not seek leave to file the new opinions, and did not proactively account for this need in response to any of the Court's Progression orders or otherwise. This sequence of events supports barring Dr. Lichtblau's and Dr. Pettingill's new opinions. *See Beckon Int'l, Inc. v. Amco Ins. Co.*, No. 4:07CV2074 JCH, 2012 WL 12520866, at *2 (E.D. Mo. Apr. 2, 2012) (excluding belatedly-disclosed report while noting, among other things, that the defendant could have sought an extension of the deadlines, but opted not to do so).

Second, Goodyear will be unfairly prejudiced if Dr. Lichtblau's and Dr. Pettingill's new opinions come into evidence at trial, which is now six days away. Goodyear will not have time to depose Dr. Lichtblau on his brand new opinions. It will also, of course, not have time to procure its own expert opinions on Mr. Loveland's cognitive ability, or the reasonableness of Mr. Loveland's medical bills.[1] The same is true of Dr. Pettingill's new opinions on the proper income growth rate and discount rate to apply in determining the present value of Mr. Loveland's future needs. Mr. Pettingill's decision to drop the discount rate by 1.62% in his new Report dramatically increases the amount of money Mr. Pettingill intends to testify that Mr. Loveland needs to meet his future medical needs. Given this dramatic drop in rates and the recent volatility in the equity and

---

[1] Notably, Plaintiffs have not, to date, produced complete documentation supporting Mr. Loveland's medical bills. As such, neither Dr. Lichtblau, or any other provider, is currently in a position to opine on the reasonableness of the total amount of Mr. Loveland's medical bills to date.

7

bond markets, Goodyear needs the opportunity to depose Mr. Pettingill on the assumptions underlying this new opinions, and will be prejudiced if not given that opportunity. These are textbooks examples of unfair prejudice that that commonly justify exclusion of belatedly-disclosed opinions. *See*, *e.g.*, *See Emerson Elec. Co. v. Suzhou Cleva Elec. Appliance Co.*, No. 4:13-CV-01043 SPM, 2015 WL 2176964, at *2 (E.D. Mo. May 8, 2015) (recognizing that late disclosures prejudice the opposing party by limiting opportunities for effective cross examination of the late-disclosed expert opinions and limiting the ability of the non-disclosing party's experts to review and rebut these opinions through further work.)

Third, allowing new opinions into evidence will have at least some disruptive effect on the trial. Now that Dr. Lichtblau has offered brand new opinions on Mr. Loveland's cognitive abilities, this will be wholly new area of inquiry at trial—at least from an expert witness perspective—that would have otherwise been absent from evidence at trial. The same is true with respect to his opinions on the reasonableness of Mr. Loveland's medical bills.

Finally, aside from the fact that Dr. Lichtblau's and Mr. Pettingill's new opinions increase Mr. Loveland's damages by at least $4,000,000, they are not critical to Plaintiffs' case on liability, or on their entitlement to damages. They simply increase Plaintiffs' damages. Thus, Plaintiffs' fundamental rights will not be meaningfully impacted if these new opinions are excluded.

Taken together, these considerations compel the exclusion of Dr. Lichtblau's and Mr. Pettingill's belatedly-disclosed opinions at trial.

## **CONCLUSION**

For each of the foregoing reasons, the Court should bar Dr. Lichtblau and Mr. Pettingill from introducing any opinions from their belatedly-disclosed expert Reports.

8

GREENSFELDER, HEMKER & GALE, P.C.

By:   /s/ Edward S. Bott, Jr.
Edward S. Bott, Jr.
Clark W. Hedger
Robert L. Duckels
10 South Broadway, Suite 2000
St. Louis, MO 63102
(314) 241-9090
Fax: (314) 345-5465
esb@greensfelder.com
ch1@greensfelder.com
rld@greensfelder.com

AND

BAIRD HOLM LLP
Jennifer D. Tricker (NE# 23022)
1700 Farnam Street, Suite 1500
Omaha, NE 68102-2068
(402) 344-0500
jtricker@bairdholm.com

*Attorneys for The Goodyear Tire & Rubber Company*

9

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with NECivR 7.1(d)(3) and further certify that the word count function was applied to include all text, including the caption, headings, footnotes, and quotations. This document was prepared using Microsoft Word 2010 and contains 2,718 words.

/s/ Edward S. Bott, Jr.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed with the Clerk of the Court and served upon all attorneys of record using the CM/ECF system this 11th day of March, 2020.

Kyle W. Farrar (*pro hac vice*)
Wesley Todd Ball (*pro hac vice*)
KASTER, LYNCH, FARRAR & BALL, LLP
1117 Herkimer St.
Houston, TX 77008
kyle@fbtrial.com
wes@fbtrial.com

Paul E. Godlewski
SCHWEBEL, GOETZ & SIEBEN, P.A.
5120 IDS Center
80 South 8th Street
Minneapolis, MN 54402
pgodlewski@schwebel.com

Michael F. Coyle
Brian J. Fahey
FRASER, STRYKER PC LLO
409 South 17th Street
Suite 500, Energy Plaza
Omaha, NE 68102
mcoyle@fraserstryker.com
bfahey@fraserstryker.com

*Attorneys for Plaintiffs*

/s/ Edward S. Bott, Jr.

1844737